# EXHIBIT A

 U.S. Equal Employment Opportunity Commission

# A. Settlement Standards and Procedures

## Contents

1. **Settlement Authority**
    a. **General Counsel**
    b. **Delegation of Settlement Authority to Regional Attorneys**
    c. **Requests for Settlement Approval**
    d. **Cases on Appeal**
    e. **Informing Other Parties Regarding Settlement Authority**
    f. **Presence at Local Settlement Conferences of Representatives with Full Settlement Authority**
    g. **Presuit Settlements**
2. **Settlement Standards**
    a. **Form**
    b. **Terms**
        1. (1) **In General**
        2. (2) **Injunctive Relief**
        3. (3) **Individual Affirmative Relief**
        4. (4) **Monetary Relief**
        5. (5) **References**

6. (6) **Record Retention and Reporting**

7. (7) **Other Provisions**

8. (8) **Successor Liability**

   c. **Scope**

   d. **Claimant Releases**

   e. **Nonconfidentiality**

   f. **Notice to Affected Individuals**

   g. **Notice of Breach**

   h. **Press Releases**

3. **Monetary Relief in Class Matters**

   a. **Identification of Affected Individuals**

   b. **Determining Monetary Entitlement**

   c. **Statistical Cases**

      1. (1) **Estimating Lost Employment Opportunities**

      2. (2) **Allocating Backpay Among Affected Individuals**

      3. (3) **Recovery for Nonapplicants in Hiring Cases**

   d. **Reversions**

   e. **Distribution of Monetary Relief**

Appendix: **Model Release Language**

# A. Settlement Standards and Procedures

## 1. Settlement Authority

## a. General Counsel

Congress assigned the General Counsel the "responsibility for the conduct of litigation" for the agency. 42 U.S.C. § 2000e-4(b)(1). Subject to the limitation that the General Counsel may initiate new litigation only "at the direction of the Commission," . 2000e-4(b)(2), the General Counsel controls the agency's litigation, and therefore has the authority to decide whether to settle Commission lawsuits and on what terms. The General Counsel may delegate that authority in any case or class of cases as he or she deems appropriate.

## b. Delegation of Settlement Authority to Regional Attorneys

Where suit is filed within the Regional Attorney's redelegated authority, the Regional Attorney also has settlement authority unless the Office of General Counsel (OGC) has indicated otherwise in a particular case. Where litigation is authorized by the General Counsel or Commission, the notice to the Regional Attorney of litigation authorization will specify whether, and on what conditions, if any, settlement authority is delegated from the General Counsel to the Regional Attorney. In any case where the General Counsel has retained settlement authority, the legal unit cannot voluntarily dismiss the suit, or any claim in the suit, without approval of the General Counsel.

Where the Regional Attorney would otherwise have settlement authority pursuant to the preceding paragraph, settlements should be submitted to the General Counsel for approval in the following circumstances: (1) the settlement provides specific affirmative relief, such as preferences regarding hiring or promotion, for protected class members not identified as victims of defendant's discriminatory practices; (2) the settlement could be interpreted to preclude litigation by other legal units of charges raising claims related to those resolved; or (3) the settlement contains a provision that could create unfavorable precedential effects for the agency in future suits or resolutions.

## c. Requests for Settlement Approval

Requests for settlement approval should be sent to the Associate General Counsel for Litigation Management Services. The request should be in the form of a memorandum containing a discussion of the case prosecution, the legal unit's opinion of the merits of the case, the settlement terms, and the reasons for

settlement on those terms. All relevant resolution documents, including claimant releases, should be included with the memorandum. See subsection B. of this section of the Manual for further discussion of requirements for memoranda recommending settlement approval.

## d. Cases on Appeal

All settlements of cases on appeal must be approved by the General Counsel whether or not the Regional Attorney had settlement authority at the trial court level.

## e. Informing Other Parties Regarding Settlement Authority

In cases in which the General Counsel has not delegated settlement authority to the Regional Attorney, Commission counsel should inform the other parties early in settlement negotiations that any agreement is subject to the General Counsel's approval. It should be made clear to the parties that the General Counsel will make an independent review of the adequacy of the proposed settlement and reserves the right to request significant changes in its terms. Regional Attorneys should apprise OGC as early in the settlement process as possible of proposed settlement terms in order to minimize any later disagreements between OGC and the legal unit over the adequacy of a recommended settlement.

## f. Presence at Local Settlement Conferences of Representatives with Full Settlement Authority

Where a Regional Attorney has not been delegated settlement authority and the court requires the presence of a Commission representative with full settlement authority at a conference or at mediation, the Regional Attorney should discuss the case with OGC as early as possible. Where sufficient information is available for OGC to determine the elements of adequate relief, settlement authority within those parameters will be delegated to the Regional Attorney. Where it is not possible to delegate settlement authority to the Regional Attorney, the Regional Attorney should raise with the court the impracticability of attendance by a representative of the General Counsel's office, pointing to authority such as In re M.P.W. Stone, 986 F.2d 898 (5th Cir. 1993), a case involving the Department of Justice, where the court held that the district court "abused its discretion in routinely requiring a

representative of the government with ultimate settlement authority to be present at all pretrial or settlement conferences." Id. at 905. Where appropriate, the Regional Attorney can also point to the Advisory Committee Notes to the 1993 amendments to Fed. R. Civ. P. 16(c), which, in discussing settlement authority at pretrial conferences, state that "in litigation in which governmental agencies or large amounts of money are involved, there may be no one with on-the-spot settlement authority, and the most that should be expected is access to a person who would have a major role in submitting a recommendation to the body or board with ultimate decision-making responsibility."

## g. Presuit Settlements

The Regional Attorney has discretion to engage in presuit settlement efforts in any case, whether filed under his or her redelegated authority or authorized by the General Counsel or Commission. Resolutions agreed to through presuit negotiations must be filed with the court together with a complaint, and this requirement should be made clear to the prospective defendant(s) at the time settlement efforts are initiated.

As indicated in OGC Guidance on Civil Justice Reform, Executive Order No. 12988 (see Part 3, section I. of the Manual), presuit settlement efforts should be considered in every case as they sometimes can save the parties substantial time and expense. As long as the Commission insists on a court settlement that is consistent with the settlement standards set forth in subsection 2. below, attempts at presuit resolutions should not undermine the agency's conciliation processes.

# 2. Settlement Standards

## a. Form

To ensure effective enforcement of Commission resolutions, the agency's practice is that settlements be in the form of a consent decree.

## b. Terms

### (1) In General

Settlements should be carefully drafted and as complete as is practicable under the circumstances. Because of the public policy implications of Commission resolutions, care in drafting is even more important than in most private agreements. Attorneys should use precise language and avoid ambiguities. Although it is often helpful to review and sometimes even incorporate language from prior settlements, this should not be done without careful consideration of the applicability of the language to the instant case. (Also, negotiated language in prior agreements will seldom be appropriate for use in proposed agreements; Commission attorneys should keep a file of their initial settlement proposals for use when a model is needed in drafting a new agreement.) Drafting resolution documents should never be treated as a routine task, regardless of the apparent simplicity of what the parties consider the essential provisions.

### (2) Injunctive Relief

Injunctive provisions should specifically address the conduct alleged to be discriminatory. They should be drafted with a view to effective enforcement if similar conduct recurs. Where the evidence shows a history of discriminatory practices, injunctions should be permanent.

Resolutions should not contain affirmations of defendant's prior or ongoing legal conduct, such as "defendant will continue to comply with Title VII" or "defendant restates its policy of nondiscrimination in employment." This does not preclude Commission agreement to nonadmission clauses in appropriate circumstances. But the legal unit should not accept defendant's statements of continuing legal conduct in place of explicit provisions requiring future compliance with the law.

### (3) Individual Affirmative Relief

Individual affirmative relief, such as instatement, reinstatement, wage increases, promotions, transfers, and training, should be sought in all cases unless, as sometimes occurs with instatement and reinstatement, the affected individuals no longer desire such relief. Where applicable, relief should include retroactive seniority and any other lost benefits, such as pension accruals. (With respect to pension accruals, attorneys should be aware of employees' rights to "hours of service" under ERISA for backpay received. See Anderson v. Western Conference of Teamsters Pension Trust Fund, 62 Fair Empl. Prac. Cas. (BNA) 835 (E.D. Cal. 1993).) Individual affirmative relief should not be waived without strong reasons, as it is important to effective enforcement of discrimination laws that victims attain their rightful place in the workforce.

## (4) Monetary Relief

Monetary relief on Commission claims can be allocated to backpay, interest, frontpay, damages, and liquidated damages in accordance with the agreement of the parties as long as the particular relief was sought in the complaint, the allocations are reasonably related to the harm or loss caused by the discriminatory conduct, and damages awards do not exceed the applicable caps. Taxes and the employee's share of Social Security and Medicare contributions (and other mandatory deductions on wages) should be withheld on amounts allocated to backpay and frontpay. (It should be made clear at the time of agreement on amounts of backpay or frontpay relief that the employer cannot deduct its share of Social Security and Medicare contributions from the award.) Other forms of monetary relief (with the exception noted below) are also taxable, but withholding is not required; the employer should determine in what circumstances it is required to provide a Form 1099 for such relief. Compensatory damages for personal physical injuries or physical sickness are not taxable; however, emotional distress cannot be treated as a physical injury or physical sickness, except that damages paid for medical care attributable to emotional distress are not taxable.

## (5) References

For claimants who were employed by the defendant but are not being reinstated, it is important to secure as positive a reference as the defendant can honestly provide. Where there are compelling reasons to agree to a "neutral" reference, such as where the defendant has had a firm, prior policy of providing only basic employment information, the legal unit should obtain defendant's agreement to include with the reference a statement that it is defendant's policy in all cases to provide only such limited information.

## (6) Record Retention and Reporting

It is essential that the Commission have access to all information necessary to evaluate defendant's compliance with the resolution. Thus, the consent decree should specifically identify information to be compiled and records to be retained during its term. In addition, information necessary for ongoing monitoring of defendant's compliance should be submitted to the Commission on a periodic basis. Considerable thought should go into the content of these periodic reports, striking a balance between what the agency needs to know to determine possible violations of the settlement and what the legal unit can reasonably expect to be able to review carefully in a timely manner. Where appropriate, the reports should

be submitted in electronic form. The resolution document should also contain provisions permitting the Commission, upon reasonable notice, to inspect or require production of relevant documents and to interview employees, including managers, who may possess relevant information.

## (7) Other Provisions

The settlement should fully address the discriminatory practices alleged in the complaint. For example, in hiring and promotion cases where defendant's selection procedures may have contributed to the exclusion of members of the protected class, the procedures should be revised to eliminate their discriminatory effects. Where appropriate, policies and complaint procedures addressing harassment should be created or revised. Where training of defendant's managers and officials is necessary, the settlement should be specific regarding the content of the training and should permit Commission review of the trainer(s) and materials. Notices generally should contain specific references to the Commission's suit, the allegations in the complaint, and the terms of the resolution; legal units should not agree to notices that merely restate defendant's statutory obligations.

The above are just a few examples of specific relief that may be necessary to an effective resolution. Attorneys should ensure that every case is treated as unique and that the settlement contains carefully drafted provisions designed to provide full redress for the discriminatory practices at issue and to minimize the likelihood of their recurrence.

## (8) Successor Liability

Successor employers may be held liable for the discriminatory practices of their predecessors. See, e.g., EEOC v. MacMillan Bloedel Containers, Inc. and Local 544, United Paperworkers International Union, AFL-CIO, 503 F.2d 1086, 1089-92 (6th Cir. 1974); Wheeler v. Snyder Buick, Inc., 794 F.2d 1228, 1235-37 (7th Cir. 1986). An important factor in establishing successor liability is notice of the claim to the new employer prior to the transfer of ownership. To assure that the obligations imposed by a settlement are carried out in the event of a transfer in ownership of the defendant, or a transfer of all or a portion of its assets, the following provisions should be included in resolution documents: a statement that the defendant will provide prior written notice to any potential purchaser of defendant's business, or a purchaser of all or a portion of defendant's assets, and to any other potential successor, of the Commission's lawsuit, the allegations raised in the Commission's complaint, and the existence and contents of the settlement.

## c. Scope

The consent decree should contain a statement that it resolves only the claims raised in the Commission's complaint. If the Commission has agreed to waive additional claims, such as claims on which the agency found cause but decided not to litigate, or claims in pending charges where the charges were resolved as part of the settlement, these other claims should be specifically identified. Where the parties do not intend to resolve all claims in the complaint, the decree should clearly describe the claims that are subject to further litigation by the Commission. The decree should contain language reserving the Commission's right to file suit on pending charges not resolved by the decree and on subsequently filed charges alleging violations occurring prior to entry of the decree.

Because the Commission does not represent charging parties and other claimants for whom it seeks relief, the consent decree should never contain language waiving their rights to pursue their individual claims. (Charging parties and other claimants should not be signatories to the decree, as (with the exception of intervenors) they are not parties to the action.) Individuals receiving benefits under Commission settlements can be required to sign separate releases waiving legal claims for which they received relief in the settlement (see subsection 2.d. immediately below).

## d. Claimant Releases

Individual relief in Commission actions cannot be conditioned upon a waiver of legal claims other than those asserted in the Commission's complaint. A claimant represented by private counsel can agree to a broader waiver, but in the absence of such an agreement, a represented claimant's recovery on the Commission's claims cannot be conditioned on the release of any other claim(s). Congress gave the Commission suit authority in 1972 in part to "bring about more effective enforcement of private rights," General Telephone Co. of the Northwest v. EEOC, 446 U.S. 318, 325- 26 (1980). Conditioning an individual's relief in a Commission suit on the release of separate claims would diminish rather than enhance his or her rights. Further, because the Commission could not have recovered on these separate claims if it prevailed at trial, the relief received in a Commission settlement cannot constitute consideration for a release of the claims.

Even though the Commission is not a party to releases executed by claimants, EEOC attorneys are responsible for ensuring that no individual's relief is conditioned on waiver of any legal claim beyond those brought by the Commission. (As indicated in

the preceding paragraph, a represented claimant can agree to a broader waiver. However, this requires actual representation; simply informing a claimant of his or her right to private counsel is not sufficient, even if the claimant expressly declines to exercise the right.) Thus, individual waivers of common law claims or other statutory claims (including claims under state fair employment practices laws) are not permitted even where the factual basis of the claim is identical to that pled in the Commission's action. This means that the release language must not only be limited to the factual claims in the Commission's complaint, but must also refer to the statute(s) under which the claims were brought. The appendix contains model release language.

In addition, no individual can be required as a condition of obtaining relief on a Commission claim to agree to refrain from seeking future employment with the defendant or to keep the terms of his or her recovery confidential. (As with the waiver of separate claims, a represented claimant can agree to such conditions, but his or her right to relief on the Commission's claims cannot be conditioned on such an agreement.)

## e. Nonconfidentiality

Once the Commission has filed suit, the agency will not enter into settlements that are subject to confidentiality provisions, it will require public disclosure of all settlement terms, and it will oppose the sealing of resolution documents. The principle of openness in government dictates that Congress, the media, stakeholders, and the general public should have access to the results of the agency's litigation activities, so that they can assess whether the Commission is using its resources appropriately and effectively. Additionally, one of the principal purposes of enforcement actions under the antidiscrimination statutes is to deter violations by the party being sued and by other entities subject to the laws. Other entities cannot be deterred by the relief obtained in a particular case unless they learn what that relief was.

Therefore, resolutions of Commission suits must contain all settlement terms and be filed in the public court record. Further, the Commission must be free to respond fully to inquiries regarding the suit and resolution, and to provide upon request the resolution documents and any nonprivileged case related documents. Commission attorneys should oppose attempts to seal or otherwise prevent public access to resolution documents, and if, over the Commission's objections, a court issues an order preventing such access, the Regional Attorney should notify the Associate

General Counsel for Litigation Management Services immediately and submit a written recommendation regarding appeal of the order.

## f. Notice to Affected Individuals

Although the Commission determines appropriate relief in suits it files, claimants in Commission cases should be consulted regarding relief the Commission is considering accepting and should be notified prior to execution of a final agreement of the relief they will receive in the settlement. Exceptions to the first requirement can be made in class matters involving large numbers of claimants; however, charging parties should always be consulted before acceptance by the Commission of relief offers. (There should of course be ongoing contact between Commission attorneys and claimants throughout the litigation.) Where the Commission and a claimant disagree on the proper recovery and the Commission believes that continued prosecution of the case is not in the public interest, the Commission should notify the claimant of its intention to settle the case on the terms indicated and provide him or her the opportunity to proceed individually.

In class matters, the Commission should consider asking the court to hold a fairness hearing at which affected individuals can present objections to the Commission's proposed settlement. See subsections C. and D. of this section of the Manual for a discussion of the factors relevant to requesting fairness hearings and the procedures for conducting such hearings.

## g. Notice of Breach

Defendants often seek to negotiate settlement provisions that require a party to notify the opposing party prior to seeking court intervention over an alleged breach of the agreement. In addition to requiring notice of an alleged breach, these provisions typically provide each party a specified time period in which to remedy its noncompliance before the complaining party contacts the court. Such notice provisions become problematic in situations where the defendant's noncompliance may result in harm to the Commission or claimants if a breach is not remedied immediately. Thus, notice of breach provisions should expressly provide for exceptions to the waiting period in situations where a delay in seeking court enforcement may cause harm to the Commission or claimants.

## h. Press Releases

The Commission's practice is to issue a press release upon settlement of a Commission suit. Neither the issuance nor the content of the press release should be the subject of negotiation.

# 3. Monetary Relief in Class Matters

## a. Identification of Affected Individuals

Efforts should be made to identify likely victims of discrimination in settlements involving classwide discrimination. For example, in hiring cases where affected individuals cannot be identified from the defendant's application records, or where relief was sought for nonapplicants (see subsection 3.c.(3) below), external sources should be used to identify potential victims, and publication of notices to encourage class members to identify themselves or participate in claims procedures should be considered.

## b. Determining Monetary Entitlement

The consent decree should describe at least generally the process used to determine the amount of the settlement fund. The decree also should describe the method used to determine apportionment of the fund to aggrieved individuals, including: (1) criteria individuals must meet to be eligible for monetary relief; and (2) where applicable, factors or formula used to determine individual shares of the fund. Wherever possible, aggrieved individuals should be identified and their monetary awards determined prior to the execution of the consent decree, and this information should be included in the decree. Where it is impractical to complete this process prior to filing the consent decree, the decree should provide a procedure through which to identify aggrieved individuals and determine their monetary awards. See the discussion of notice and claims procedures in subsection D. of this section of the Manual.

## c. Statistical Cases

### (1) Estimating Lost Employment Opportunities

When discrimination is inferred from a statistical disparity, backpay may be based on the "shortfall" in positions to which members of the affected group would have been entitled absent defendant's unlawful conduct. Shortfalls should be calculated

as the difference between the number of positions obtained (or in layoff and discharge cases, retained) by members of the affected group and the number they would have received had they been selected in proportion to their availability for such positions. [*]Thus, by this approach, if the statistical evidence showed, for example, a shortfall of 10 positions, total gross backpay would be calculated as the money earned during the liability period by a representative employee working in one of the positions, multiplied by 10.

### (2) Allocating Backpay Among Affected Individuals

Where relief is based on a statistical shortfall, there may be more claimants than the number of missed employment opportunities, making it difficult to determine with certainty who would have received the positions at issue absent the unlawful discrimination. Where the positions require special skills or qualifications and there are significant differences in the backgrounds of the claimants, or where there are other reasons to believe that some claimants were more likely than others to have been discrimination victims, an attempt usually should be made to determine which of the claimants would have had the best opportunity of obtaining the positions at issue absent discrimination. Backpay can then be apportioned in a manner that will better account for the probability that a particular individual was adversely affected by the defendant's discriminatory practices.

Where formulas of some kind are used in determining individual awards, the criteria on which the formulas are based must be relevant to the size of an individual's loss. Examples of possible relevant criteria are: seniority, work experience, job assignment, performance evaluations, education and training, date of application, and whether a claimant applied for a position at issue. Criteria used should be as objective and easy to apply as possible. Examples of formulas are: assigning points to claimants based on their meeting particular criteria (or on the degree to which they meet the criteria) and then according a monetary value to each point by dividing the total points into the settlement fund; and the separation of claimants into subgroups based on various criteria, with a claimant's share of the fund determined in whole or in part by the subgroup to which he or she is assigned. As indicated in subsection B.3.b. above, the criteria and formulas should be described in the resolution document.

Where large individual gross backpay awards are involved, efforts generally should be made to determine claimants' mitigation efforts and interim earnings. Where awards are smaller, particularly where claimants' backgrounds indicate that their

interim employment opportunities likely would have been similar (employment in minimum wage jobs, for example), such individual determinations may not be necessary. Where there is substantial uncertainty regarding which claimants would have obtained positions absent discrimination, consideration should be given to capping the maximum backpay award that an individual claimant can receive. In appropriate circumstances, minimum backpay awards should be considered as well.

The primary consideration is overall fairness to claimants individually and as a group. Exactness is not required, but the process should to the extent practicable apportion awards according to the likely backpay losses discrimination victims actually suffered.

### (3) Recovery for Nonapplicants in Hiring Cases

It is sometimes appropriate in hiring cases to seek relief for individuals who did not apply for the positions at issue. (This of course may also be true in transfer and promotion cases, and the individualized determinations mentioned below will be necessary in those cases as well.) For example, individuals in the protected class may not have applied because of the defendant's reputation for engaging in discriminatory employment practices; or an employer's recruitment methods may have excluded protected class members from the applicant pool.

Nonapplicants should receive relief only if the legal unit is satisfied that they possessed the relevant qualifications for the positions at issue and would have applied but for the defendant's discriminatory practices or the consequences of those practices. This information can be obtained by determining, for example, whether an individual was in the job market during the time period at issue, applied for similar jobs with other companies in the same geographic area during the period (or was willing to relocate to that area), possesses any special skills or education required for the position, or previously worked in the same or similar industries. Decisions to seek relief for nonapplicants will necessarily require careful individual determinations.

## d. Reversions

No portion of the monetary relief agreed to in a settlement should revert to the defendant. Funds which cannot be distributed because of an inability to identify or locate claimants, or for any other reason, should where feasible be reallocated

among identified victims. Where funds still remain, they should be contributed to programs which have the purpose of enhancing the employment opportunities of the group(s) affected by defendant's unlawful practices. Settlements should contain provisions identifying the program(s) receiving the funds (or describing how the program will be selected) and explaining the purposes for which the funds will be used.

### e. Distribution of Monetary Relief

Commission personnel should not assume responsibility for distribution of individual monetary awards provided to claimants in settlements or judgments and should not handle funds, in any form, that are intended for claimants. Awards to claimants should be distributed by the defendant or a mutually agreed upon third party escrow agent. The costs of distribution, including the cost of any escrow arrangement, should be borne by defendant; distribution costs should not be deducted from the award fund (or from interest on the fund). Monetary distribution tasks should be well defined and subject to clear time limits, and a procedure should be established for the Commission to verify that the required distributions took place. Defendant should inform the Commission when the checks are mailed and should provide the Commission with copies of the recipients' canceled checks or other evidence showing that the checks were cashed.

---

[*] The shortfall should **not** be calculated (as defense counsel sometimes argue) by determining the number of lost positions above the figure used to demonstrate statistical significance - two standard deviations, for example. The legal consequence of a finding of statistical significance is that an inference of discrimination can be drawn from the disparity between the representation of the affected group in the availability pool and the rate at which group members were selected for the positions at issue. If discrimination occurred, the defendant is liable for the entire number of positions that, given proportionate selection, would otherwise have gone to members of the affected group.

# Appendix:
# Model Release Language

In consideration for $ _____ paid to me by _____, in

connection with the resolution of EEOC v._____, I waive my right to

recover for any claims of [bases and issues] arising under [statute] that I had against

_____ prior to the date of this release and that were included in the

claims alleged in EEOC's complaint in EEOC v._____ .

Date: _____ Signature:_____