# EXHIBIT D

Christian Schreiber (Bar No. 245597)
christian@osclegal.com
Monique Olivier (Bar No. 190385)
monique@osclegal.com
Rachel Bien (Bar No. 315886)
rachel@osclegal.com
OLIVIER SCHREIBER & CHAO LLP
201 Filbert Street, Suite 201
San Francisco, California 94133
Tel: (415) 484-0980
Fax: (415) 658-7758

Attorneys for Proposed Intervenor
Department of Fair Employment and Housing

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> ACTIVISION BLIZZARD, INC., BLIZZARD ENTERTAINMENT, INC., ACTIVISION PUBLISHING, INC., and KING.COM, INC., and DOES ONE through TEN, inclusive <br><br> Defendants. | Case No. 2:21-CV-07682 DSF-JEM <br><br> **CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S MOTION TO INTERVENE** <br><br> Judge: Hon. Dale S. Fischer <br><br> Action Filed: September 27, 2021 |

# **Table of Contents**

I. Introduction ..................................................................................... 1

II.    Statement of Facts .................................................................... 4

  A.    The Proposed Settlement Seeks to Release Claims Outside of the EEOC Lawsuit and Its Statutory Authority. ................................................. 5

  B.    The Proposed Settlement Includes a Reversion of Undistributed Funds Back to Defendants, Greatly Decreasing Its Actual Value. ..................................... 7

  C.    The Proposed Settlement Requires Activision to Engage in Spoliation and Tampering with Evidence Relevant to the Ongoing DFEH Lawsuit. ............. 9

  D.    The Proposed Settlement Provides No Explanation of the Actual Settlement Value or How the Funds Would Be Allocated .............................................. 10

III. Argument ........................................................................................ 11

  A.    DFEH Seeks Intervention as of Right Under Rule 24(a) Because the Proposed Decree Seeks to Impede DFEH's Pending State Enforcement Action and California's More Protective Civil Rights Laws. ........................ 11

    i.    DFEH's Motion Is Timely. ....................................................... 12

    ii.   DFEH Has an Interest Relating to the Subject of the Action. .................. 14

    iii.  DFEH's Interests Are Not Adequately Represented and Instead Prejudiced. ....................................................................... 16

  B.    DFEH Seeks to Intervene as an Objector to Oppose the Fundamentally Unfair and Unjust Provisions in the Proposed Consent Decree. ................... 18

    i.    The Parties Should Not be Permitted to Use a Consent Decree to Undermine Stronger Civil Rights Protections Under State Law, that Are Not – And Cannot be – a Part of an EEOC Lawsuit. ............................. 19

    ii.   The Parties Failed to Explain What the Workers' Maximum Monetary

Recovery Could Be in Successful Litigation in the Proposed Decree. ...20

iii. The Parties Failed to Explain the Actual Settlement Value and Proposed Allocation of Monetary Relief in the Proposed Decree. .........................21

iv. The Parties Failed to Provide the Actual Release Language in the Proposed Decree. .......................................................................23

v.  The Proposed Consent Decree's Reversion of Unclaimed Funds to Defendants Underscores Its Inadequacy....................................................23

IV. Conclusion .........................................................................24

iii

## <u>Table of Authorities</u>

**Federal Cases** Page(s)

*Berkman v. City of New York*,
  705 F.2d 584 (2d Cir.1983) ...................................................................18

*Brooks v. City of San Mateo*,
  229 F.3d 917 (9th Cir. 2020) ................................................................20

*City of Long Beach v. Monsanto Company*,
  2020 WL 7060140 (C.D. Cal. 2020) ....................................................23

*Cordy v. USS-Posco Industries*,
  2013 WL 4028627 (N.D. Cal. 2013) ....................................................21

*Croyden Assocs. v. Alleco, Inc.*,
  969 F.2d 675 (8th Cir. 1992) ................................................................12

*Cty. of Orange v. Air Cal.*,
  799 F.2d 535 (9th Cir. 1986) ................................................................13

*Custom Led, LLC v. eBay, Inc*,
  2013 WL 4552789 (N.D. Cal. 2013) ....................................................20

*Dept. of Fair Empl. and Hous. v. L.S.A.C., Inc.*,
  941 F.Supp.2d 1159 (N.D. Cal. 2013) .............................................3, 14

*Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) ................................................................13

*Edwards v. City of Houston*,
  78 F.3d 983 (5th Cir. 1996) ..................................................................12

*EEOC v. ABM Industries, Inc.*,
  2013 WL 1455510 (E.D. Cal. April 9, 2013) .......................................12

*EEOC v. New York Times, Co., No.*,
  1995 WL 135577 (1995) .......................................................................16

*EEOC v. Pan American World Airways, Inc.*,
  622 F. Supp. 633 (N.D.Cal. 1985) ........................................1, 18, 21, 24

*Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*,

  62 F.3d 1217 (9th Cir.1995) ........................................................... 12, 13

*Frank v. Gaos*,

  139 S. Ct. 1041, 1046 (2019) ................................................................. 2

*General Telephone Co. of the Northwest v. EEOC*,

  446 U.S. 318 (1980) .............................................................................. 5

*Greene v. United States*,

  996 F.2d 973 (9th Cir.1993) ................................................................ 11

*Kirkland v. New York State Dep't of Correctional Servs.*,

  711 F.2d 1117 (2d Cir.1983) cert. denied sub nom ............................. 16

*Litty v. Merrill Lynch & Co.*,

  2015 WL 4698475 (C.D. Cal. Apr. 27, 2015) ..................................... 20

*Loi Ngo v. United Airlines, Inc.*,

  2019 WL 6050832 (N.D. Cal.) ............................................................ 19

*Moore v. City of San Jose*,

  615 F.2d 1265 (9th Cir.1980) .............................................................. 18

*Portland Audubon Soc'y v. Hodel*,

  866 F.2d 302 (9th Cir.1989) ................................................................ 12

*Roes, 1-2 v. SFBSC Management, LLC*,

  944 F.3d 1035 (9th Cir. 2019) ............................................................ 24

*Sierra Club v. Robertson*,

  960 F.2d 83 (8th Cir.1992) .................................................................. 16

*U.S. v. Carpenter*,

  298 F.3d 1122 (2002) ........................................................................... 12

*U.S. v. Oregon*,

  913 F.2d 576 (9th Cir. 1990) ........................................................... 1, 12

*U.S. v. Loc. 638, Enter. Ass'n of Steam, Hot Water, Hydraulic Sprinkler, Pneumatic Tube, Compressed Air, Ice Mach., Air Conditioning & Gen. Pipefitters*,

   347 F. Supp. 164 (S.D.N.Y. 1972) ........................................................17

*Univ. of Texas Southwestern Medical Center v. Nassar*,

   133 S.Ct. 2517 (2013).............................................................................19

*Wilderness Soc. v. U.S. Forest Serv.*,

   630 F.3d 1173 (9th Cir. 2011) ..............................................................12

*Williams v. Vukovich*,

   720 F.2d 909 (6th Cir.1983) ..................................................................24

**State Cases**

*Armendariz v. Foundation Health Psychcare Services, Inc.*

   24 Cal.4th 83, 99 n.6 (2000) ...................................................................4

*Dept. Fair Empl. & Hous. v. Cathy's Creations, Inc.*,

   54 Cal.App.5th 404 (2020) ...............................................................3, 14

*State Dept. of Health Services v. Sup.Ct.*

   31 Cal. 4th 1026 (2003) ...................................................................3, 19

*State Pers. Bd. v. Fair Employment & Hous. Com.*,

   39 Cal.3d 422 (1985) ...........................................................................14

*Steele v. Youthful Offender Parole Bd.*,

   162 Cal.App.4th 1241 (2008) ...............................................................19

*Victa v. Merle Norman Cosmetics, Inc.*,

   19 Cal.App.4th 454 (1993) .................................................................6, 7

**Federal Statutes**

42 U.S.C. § 2000e.............................................................................2, 25

42 U.S.C. § 2000e(h).............................................................................14

42 U.S.C. § 2000e-5 ..............................................................................13

42 U.S.C. § 2000e-7 ................................................................................7

42 U.S.C. § 2000e-8 ..............................................................................13

42 U.S.C. §§ 2000h-4 .................................................................................... 7

Internal Revenue Code § 501(c)(3) ............................................................... 8

**California State Statutes**

Civ. Code, § 3513 .......................................................................................... 4

Gov. Code, §12900 ........................................................................................ 3

Gov. Code, §12920 ...................................................................................... 14

Gov. Code, §12923(b) .................................................................................. 20

Gov. Code, §12930(h) ........................................................................ 7, 14, 17

Gov. Code, §12940 ...................................................................................... 19

Gov. Code, §12940, subd. (j)(1) .................................................................. 19

Gov. Code, §12946 ...................................................................................... 19

Gov. Code, §12953 ................................................................................ 19, 20

Gov. Code, §12964.5 .............................................................................. 19, 20

Gov. Code, §12965 ...................................................................................... 19

Gov. Code, §12975 ...................................................................................... 19

**Federal Rules**

Fed. R. Civ. P. 24 ........................................................................................... 1

Fed. R. Civ. P. 24(a) .............................................................................. 11, 24

Fed. R. Civ. P. 24(a)(2) ........................................................................ 3, 6, 12

Fed. R. Civ. P. 24(b) .................................................................................... 17

**State Regulations**

2 C.C.R. §11013 .......................................................................................... 22

**Other Authorities**

Cal. Prac. Guide Civ. Pro. Trial Claims and Def. Ch. 13(I.1)-A (Oct. 2020) ............ 3

CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S MOTION TO INTERVENE

## I. Introduction

Pursuant to Federal Rule of Civil Procedure 24, the California Department of Fair Employment and Housing ("DFEH"), the agency of the State of California tasked with enforcement of California's antidiscrimination laws, moves to intervene in the above-captioned matter for the limited purpose of objecting to the proposed consent decree lodged by the U.S. Equal Employment Opportunity Commission ("EEOC"), and Activision Blizzard, Inc., Activision Publishing, Inc., Blizzard Entertainment, Inc., and King.com, Inc. ("Defendants") (collectively, "the Parties"), which improperly seeks to release California State law claims, which the EEOC has no power to pursue, alongside federal law discrimination claims, which the EEOC of course does have the power to pursue.

DFEH seeks limited intervention to obtain the right to (i) request a court-issued notice to the class of aggrieved California workers and a fairness hearing on whether the proposed consent decree is fair, adequate and reasonable, as well as consistent with the public interest, as required under federal law,[1] and (ii) object to any proposed consent decree that will impair or impede the interests of the State of California and its workers, including by, *inter alia*, seeking to release employees' State law discrimination, harassment, retaliation and any other claims.

The objection is particularly important because the proposed settlement (a) seeks to release State law claims that the EEOC has no power to litigate, (b) seeks to release State law claims that are significantly more valuable than the federal claims that the EEOC investigated and has the power to prosecute, (c) would not provide notice to the affected employees of the DFEH's active state enforcement action pending in California Superior Court, *DFEH v. Activision Blizzard, et al.*, Case No. 21STCV26571 (*See* Request for Judicial Notice ("RJN"), Exh. C

---

[1] *U.S. v. Oregon*, 913 F.2d 576, 580-581 (9th Cir. 1990) (a consent decree must be "…fundamentally fair, adequate and reasonable" "as a whole" and "that the decree represents a 'reasonable factual and legal determination.'"); *EEOC v. Pan American World Airways, Inc.*, 622 F. Supp. 633, 639 (N.D. Cal. 1985).

(DFEH's First Amended Complaint)), and (d) includes a reversion, making the $18 million settlement figure deceptive.

DFEH requests that the scope of any approved consent decree and resulting release be limited to the actual contours of EEOC's complaint. It should only seek to release claims to which EEOC is a party (i.e., solely the federal claims alleged in its complaint under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq*.,) as required by EEOC policy. *See* RJN, Exh. A (EEOC Settlement Standards, §§ 2-3).[2] EEOC also lacks standing to prosecute state claims. Therefore, it cannot settle such claims, and any settlement purporting to release claims for which the plaintiff lacks standing cannot be approved. *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019 ) ("We have an obligation to assure ourselves of litigants' standing under Article III…A court is powerless to approve a proposed class settlement if it lacks jurisdiction over the dispute, and federal courts lack jurisdiction if no named plaintiff has standing.")

Without notice to the DFEH, EEOC filed both this civil action and proposed consent decree on the same day, September 27, 2021. Contrary to EEOC's own policy and applicable standards, the proposed decree *inter alia* fails to provide adequate notice to the Court and the class of aggrieved workers about (i) the claims in the lawsuit, (ii) Defendants' liability exposure and the potential maximum recovery in successful litigation, (iii) the allocation and distribution of monetary relief, (iii) the scope and impact of the release, (iv) the claims process, and (v) the right to object and request a fairness hearing.

**Most notably, the proposed decree contravenes EEOC's own guidance. It seeks to obtain a "release of claims <u>to which the EEOC is not a party</u>," and**

---

[2] The EEOC Settlement Standards and Procedures are publicly available. *See* https://www.eeoc.gov/settlement-standards-and-procedures#section2d (last visited Oct. 6, 2021) ("***The consent decree should contain a statement that it resolves only the claims raised in the Commission's complaint***…This means that the release language must not only be limited to the factual claims in the Commission's complaint, but must also refer to the statute(s) under which the claims were brought. The appendix contains model release language.") (emphasis added).

**to revert any undistributed monetary relief back to the Defendants**,[3] including stronger claims under California law (and without additional monetary relief to workers). *See* ECF No. 11 at 15:3-5 (emphasis added); Fair Employment and Housing Act, Cal. Gov. Code, § 12900 *et seq*. ("FEHA"); *see also* RJN, Exh. A (EEOC Settlement Standards and Procedures, § 2.D (***No portion of the monetary relief agreed to in a settlement should revert to the defendant***.")) (emphasis added)).).[4] No proposed notice, claim form, or release are attached, as exhibits, to the proposed consent decree for this Court's review. RJN, Exh. B (EEOC Notice and Claims Procedures in the Settlement of Class Cases, ("The ***notice is generally an exhibit*** to the consent decree, which itself is approved by the court…If there is a ***release***, it should be ***discussed fully*** and ***attached as an exhibit*** to the notice.") (emphasis added)).[5]

DFEH seeks limited intervention to protect the interests of California and its workers under Fed. R. Civ. P. 24(a)(2). In its pending enforcement action against Defendants, "the DFEH's task is to represent the interests of the state and to effectuate the declared public policy of the state to protect and safeguard the rights and opportunities of all persons from unlawful discrimination," and other unlawful practices. *Dept. Fair Empl. & Hous. v. Cathy's Creations, Inc.* 54 Cal.App.5th 404, 410 (2020); *Dept. of Fair Empl. and Hous. v. L.S.A.C., Inc.* 941 F.Supp.2d 1159,

---

[3] *See also id.* ("Thus, individual waivers of common law claims or other statutory claims (including claims under state fair employment practices laws) are not permitted even where the factual basis of the claim is identical to that pled in the Commission's action. This means that the release language must not only be limited to the factual claims in the Commission's complaint, but must also refer to the statute(s) under which the claims were brought." (emphasis added).

[4] Where FEHA provides broader protection than Title VII, federal law is entitled to "little weight." *State Dept. of Health Services v. Sup.Ct. (McGinnis)* 31 Cal. 4th 1026, 1040 (2003); The Rutter Group, Cal. Prac. Guide Civ. Pro. Trial Claims and Def. Ch. 13(I.1)-A (October 2020) at 13:9 ("FEHA provides broader protection than Title VII. Title VII presents serious limitations on plaintiff's recovery, including a cap on emotional distress and punitive damages. In addition, FEHA provides broader protections in a number of important respects... For these reasons, it is generally advantageous to sue under FEHA rather than Title VII.")

[5] This document is publicly available at https://www.eeoc.gov/d-notice-and-claims-procedures-settlement-class-cases#section1 (last visited Oct. 6, 2021).

3

1   1167 (N.D. Cal. 2013). Despite DFEH's numerous efforts to protect these interests,

2   the Parties lodged a proposed decree seeking to impair and impede not only

3   DFEH's pending enforcement action, but the state's more protective civil rights

4   laws, contrary to California law. *Armendariz v. Foundation Health Psychcare*

5   *Services, Inc.* (2000) 24 Cal.4th 83, 99 n.6 (private agreements cannot prevent the

6   DFEH from carrying out its statutory functions…There is no question the statutory

7   rights established by the FEHA are '**for a public reason**.'"); Civ. Code, § 3513.

8   Neither EEOC nor Defendants adequately represent the interests of California and

9   its workers in this proposed decree.

10  **II.    Statement of Facts**

11          On September 27, 2021, the EEOC filed a civil action and lodged a proposed

12  consent decree, which fails to adequately represent California's interests. The

13  proposed decree states that "[t]he [proposed] scope of this Decree includes all

14  United States operations and *United States-based employees of all Defendants*,

15  unless otherwise indicated." (ECF No. 11 at 2:16-18.) This geographical scope and

16  other broad language of the proposed decree seeks to extinguish pending state civil

17  rights claims in the DFEH's own enforcement action filed on July 20, 2021, in

18  California, over two months before EEOC's action and proposed decree. *See* RJN

19  Ex. C (DFEH's First Amended Complaint in Case No. 21STCV26571).

20          The DFEH's enforcement action alleges that Activision Blizzard, Inc.,

21  Blizzard Entertainment, Inc., and Activision Publishing, Inc., as well as their

22  affiliates and/or subsidiaries, who are also defendants in the EEOC's action,

23  violated *inter alia* California's FEHA, including but not limited to violations of its

24  stronger state protections against sex discrimination, sexual harassment, retaliation,

25  destruction of record and forced waivers. However, the EEOC's proposed decree

26  seeks to cover "each current and former employee who worked for any Defendant

27  at its United States locations from September 1, 2016 to the Effective Date," and

28  release claims "**to which the EEOC is not a party**" such as FEHA claims, without

4

1  any notice of DFEH's pending action under more protective state laws. ECF No. 11

2  at 11:23-26 and 15:3-5.

3  **A. The Proposed Settlement Seeks to Release Claims Outside of the**

4  **EEOC Lawsuit and Its Statutory Authority.**

5  The proposed decree expressly seeks releases from each current and former

6  employee of claims outside of the EEOC's complaint and authority. It provides "an

7  opportunity to consult an independent attorney to advise on the **release of claims to**

8  **which the EEOC is not a party**" and that attorney would be paid by Defendants.

9  (*Id*. at 15:3-5) (emphasis added). The "release of claims to which the EEOC is not a

10  party" violates the EEOC's own published guidance on "Claimant Releases" which

11  requires:

12  Individual relief in Commission actions cannot be conditioned upon a
13  waiver of legal claims other than those asserted in the Commission's
    complaint. A claimant represented by private counsel can agree to a
14  broader waiver, but in the absence of such an agreement, a represented
    claimant's recovery on the Commission's claims cannot be conditioned
15  on the release of any other claim(s). Congress gave the Commission
    suit authority in 1972 in part to "bring about more effective
16  enforcement of private rights," *General Telephone Co. of the Northwest*
    *v. EEOC*, 446 U.S. 318, 325- 26 (1980). Conditioning an individual's
17  relief in a Commission suit on the release of separate claims would
    diminish rather than enhance his or her rights. Further, because the
18  Commission could not have recovered on these separate claims if it
    prevailed at trial, the relief received in a Commission settlement cannot
19  constitute consideration for a release of the claims.

20  Even though the Commission is not a party to releases executed by
    claimants, **EEOC attorneys are responsible for ensuring that no**
21  **individual's relief is conditioned on waiver of any legal claim**
    **beyond those brought by the Commission**. (As indicated in the
22  preceding paragraph, a represented claimant can agree to a broader
    waiver. However, this requires actual representation; simply informing
23  a claimant of his or her right to private counsel is not sufficient, even if
    the claimant expressly declines to exercise the right.) **Thus, individual**
24  **waivers of common law claims or other statutory claims (including**
    **claims under state fair employment practices laws) are not**
25  **permitted even where the factual basis of the claim is identical to**
    **that pled in the Commission's action.** This means that the release
26  language **must** not only be limited to the factual claims in the
    Commission's complaint, but **must** also refer to the statute(s) under
27  which the claims were brought. The appendix contains model release
    language.

28  RJN, Exh. A (EEOC Settlement Standards and Procedures, § 2.D) (emphasis

added).

        As a practical matter, the proposed decree effectively seeks to impair and impede the DFEH's pending enforcement action, as well as its ability to protect the interests of California and its workers warranting intervention as of right under Fed. R. Civ. P. 24(a)(2). The EEOC is not a party to the DFEH action filed against Defendants, but the proposed decree asks current and former employees to release more protective state law claims covered by DFEH's action (without notice of DFEH's action, nor additional relief). EEOC lacks authority to do so. *Victa v. Merle Norman Cosmetics, Inc.*, 19 Cal.App.4th 454, 463 (1993) ("The real barrier to litigation of plaintiff's state law claims in EEOC case was that EEOC did not possess standing to prosecute those claims.").

        In order to protect the state's interests and workers' greater rights and remedies under state law, DFEH offered to consult with Defendants' employees about state law and DFEH's action. Its offer was ignored. Instead, EEOC and Defendants now seek to use the proposed decree to not only obtain a "…**release of claims to which the EEOC is not a party,**" (*id*. at 15:3-5) (emphasis added), but also secure those releases with no additional compensation to aggrieved workers.

        Under this unusual arrangement between a government entity and an opposing party, as provided in their proposed decree, "Defendants shall pay for up to **one hour** of attorney consultation to advise on the **release of claims**, at the rate of $450/hour, for each Eligible Claimant. The EEOC shall provide a list of **recommended plaintiff attorneys** for an Eligible Claimant to consult." ECF No. 11 at 13:3-8 (emphasis added). Effectively, the Parties rejected DFEH's offer to consult with aggrieved employees about more protective state law, and instead coordinated to offer unidentified private counsel who are only permitted one hour to review and provide advice to obtain employee-releases of claims outside the EEOC lawsuit, at a below market rate (*i.e.*, $450/hour). Fairness—and EEOC's own policy—prohibit such an unusual arrangement.

This usual and heavy-handed attempt to extinguish more protective state claims covered by a pending state enforcement action, through a federal consent decree, is unprecedented. It also raises greater alarm because, unlike the DFEH's pending action, the EEOC did not investigate state claims, allege them in its lawsuit, nor seek additional relief under California's more protective standards for workers. Indeed, EEOC lacks standing to prosecute the state's civil rights laws at issue.[6]

> The real barrier to litigation of plaintiff's state law claims in the EEOC case was that the EEOC did not possess standing to prosecute those claims. But this deficiency was not one of subject matter jurisdiction. Rather, it was one of standing or practical capacity on the part of the EEOC. **In short, the inability to assert the broader remedies of California law in the EEOC case derived not from limitations on the courts but from limitations of the EEOC's power.**

*Victa v. Merle Norman Cosmetics, Inc.*, 19 Cal.App.4th 454, 463 (1993) (citations omitted; emphasis added).

### B. The Proposed Settlement Includes a Reversion of Undistributed Funds Back to Defendants, Greatly Decreasing Its Actual Value.

The proposed decree further runs afoul of EEOC's own guidance by permitting funds to be "reverted" back to Defendants. EEOC guidance specifically states:

> **No portion of the monetary relief agreed to in a settlement should revert to the defendant.** Funds which cannot be distributed because of an inability to identify or locate claimants, or for any other reason, should where feasible be reallocated among identified victims. Where funds still remain, they should be contributed to programs which have the purpose of enhancing the employment opportunities of the group(s) affected by defendant's unlawful practices. Settlements should contain provisions identifying the program(s) receiving the funds (or describing how the program will be selected) and explaining the purposes for which the funds will be used.

RJN, Exh. A (EEOC Settlement Standards and Procedures, § 3.D) (emphasis added).

---

[6] Unlike EEOC, DFEH has authority to prosecute federal claims in federal court, including Title VII claims. Cal. Gov. Code, §12930(h); U.S. Congress has specifically disavowed an intent to occupy the field to the exclusion of state or local laws on the same subject matter. 42 U.S.C. §§ 2000h-4, 2000e-7.

Here, the proposed decree provides that an eligible claimant's share can go to a "*Cy Pres* Fund," if the claimants fail to return sufficient paperwork or meet certain criteria. (ECF No. 11 at 15:17-23). However, this *Cy Pres* Fund is illusory at best. Undistributed funds go *either* to a charity or back to Defendants' own coffers (*i.e.*, Defendants' Diversity and Inclusion Fund) and **Defendants have the choice** to allocate the "excess funds" to either the company or the charity:

### n. Undistributed Excess Funds

If any of the Settlement Fund remains undistributed after exhausting the efforts to locate the Eligible Claimants as set forth above, **the excess funds will be distributed between** (i) *Cy Pres* Fund for distribution to charitable organizations whose mission involves advancing women in the video game and technology industries or promoting awareness around sexual harassment and gender equality issues **and (ii) the Diversity and Inclusion Fund <u>to be used by Defendants</u>** exclusively for diversity, inclusion and equity efforts beyond the scope and terms of this Decree. **The allocation between the *Cy Pres* Fund and Diversity and Inclusion Fund will be decided by Defendants** but subject to approval by the EEOC. EEOC's approval will not be unreasonably withheld. **Charitable organizations will be selected by Defendants**, subject to input by the EEOC. If any of the selected entities cease to exist as of the time of the distribution, to another organization that has received tax-exempt status under Internal Revenue Code § 501(c)(3) and whose mission involves advancing women in the video game and technology industries or promoting awareness around sexual harassment and gender equality issues.

ECF No. 11 at 17:11-26 (emphasis added).

The proposed decree also pressures workers to give up their rights covered by stronger state laws with an automatic, constructive rejection of "Claims Share Amounts" for not returning enough paperwork, as stated below:

### j. Unaccepted Eligible Claimants' Shares

If an Eligible Claimant (to whom the Claims Administrator has sent a Notice of Eligibility and Claim Share Amount) does not return the relevant documents as required by the Notice of Eligibility and Claim Share Amount, the Eligible Claimant may be **deemed to have rejected the claim share**. However, the EEOC may authorize the acceptance of late-submitted forms. Eligible Claimants' shares deemed to be rejected under this subsection will be distributed to the Cy Pres Fund, as determined by the EEOC.

ECF No. 11 at 15:16-23 (emphasis added).

8

Continuing to deviate from EEOC's own guidelines on designating funds for "programs which have the purpose of enhancing the employment opportunities," the proposed decree fails to identify the eligible *Cy Pres* and further reverts funds to Defendants' own "Diversity and Inclusion Fund." Given Defendants' 470% increase in cash flows as of March 31, 2021, as reported to the U.S. Securities and Exchange Commission, the return of any amounts to their in-house "Diversity and Inclusion Fund" is unfair and unreasonable.[7]

### C. The Proposed Settlement Requires Activision to Engage in Spoliation and Tampering with Evidence Relevant to the Ongoing DFEH Lawsuit.

The proposed decree also contains other substantive provisions that would negatively impact the DFEH's pending litigation. It requires that Defendants tamper with evidence regarding complaints of harassment in employee personnel files, and permanently change terminations to voluntary resignations to the severe detriment of the DFEH's action. The proposed decree requires Defendants to "Remove from the personnel files of each Eligible Claimant any references to the allegations related to sexual harassment, pregnancy discrimination, and/or related retaliation except to the extent that Defendants must keep records of the allegations or any Eligible Claimant's involvement in this Charge in order to effectuate this Decree, in

---

[7] Defendants reported substantial increases in "Financial Results For the three months ended March 31, 2021":

•consolidated net revenues increased 27% to $2.28 billion, while consolidated operating income increased 30% to $795 million, as compared to consolidated net revenues of $1.79 billion and consolidated operating income of $612 million for the three months ended March 31, 2020;

•diluted earnings per common share increased 22% to $0.79, as compared to $0.65 for the three months ended March 31, 2020; and

•cash flows from operating activities were $844 million, **an increase of 470%**, as compared to $148 million for the three months ended March 31, 2020.

*See* Form 10-Q, Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the Quarter Ended March 31, 2021 filed by Activision Blizzard, Inc., *Business Results and Highlights* at p. 27, https://www.sec.gov/ix?doc=/Archives/edgar/data/718877/000162828021008889/atvi-20210331.htm, (emphasis added).

CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S MOTION TO INTERVENE

which case such records must be maintained separately from Eligible Claimants' personnel files." (ECF No. 11 at 19:1-8.)

The proposed decree only allows for preservation of an employee's complaint or inquiry regarding sexual harassment and retaliation related to the EEOC's Charge of Discrimination and the proposed decree. It thereby mandates the destruction of evidence relevant to the sexual harassment and retaliation claims covered by the DFEH's pending action. The proposed decree also tampers with evidence regarding retaliatory termination by requiring Defendants to "Reclassify the terminations of any Eligible Claimant to voluntary resignations if they have been identified by the EEOC as being subjected to retaliation (based on a list provided by the EEOC)." (ECF No. 11 at 19:13-15.) If a retaliatory termination is permanently changed *nunc pro tunc* from a termination to a voluntary resignation, the propose decree will create confusion regarding whether the termination would or could be treated as adverse actions such for purposes of the DFEH action.

### D. The Proposed Settlement Provides No Explanation of the Actual Settlement Value or How the Funds Would Be Allocated.

While the proposed decree sets forth a potential monetary settlement value of $18 million (if no funds revert back to Defendants), there is no explanation of Defendants' potential liability exposure or the class' expected recovery if successful in litigation. The potential recovery therefore cannot be balanced against the value of the settlement offer, as necessary to evaluate the fairness of the proposed decree. The potential settlement calculation is also unexplained. Nothing is provided in the proposed decree to demonstrate the settlement fund is fair and reasonable or minimally adequate.

Because damages under Title VII are capped at $300,000 for large employers, such as the Defendants here, with more than 500 employees, $18 million could only provide $300,000 in damages to 60 workers across the whole of the United States for a five-year period. Even if a victim who suffered egregious

sexual harassment and assault is identified, as alleged by some employees, their damages are capped under federal law.

Nonetheless, the proposed decree directs that the claims administration efforts be targeted to all current and former employees for Defendants from September 16, 2016 to the proposed Effective Date. That means, the proposed $18 million (if no funds revert back to Defendants) will be distributed to thousands of workers across the country who were employed by Defendants during that time frame, resulting in minimal value to the victims. For example, days after DFEH filed suit, in July 2021, 2,600 of Defendants' workers staged a company-wide walk out and petitioned Defendants for changes in their various policies and practices that harm workers in violation of California law. If these 2,600 California workers represent the entire potential pool of retaliation victims (which it would not for EEOC's nationwide class), the proposed decree will provide $6,923.07 per worker, on average. Defendants employ approximately 7,000 employees in the United States meaning that the proposed decree would provide an average of $2,571.43 per employee.

In sum, the EEOC's and Defendants' proposed consent decree contains several terms that seek to impair and impede DFEH's pending enforcement action, including the interests of California and its workers. For these reasons, the DFEH seeks to intervene as an objector regarding the proposed consent decree pending before this Court.

## III. Argument

### A. DFEH Seeks Intervention as of Right Under Rule 24(a) Because the Proposed Decree Seeks to Impede DFEH's Pending State Enforcement Action and California's More Protective Civil Rights Laws.

Fed. R. Civ. P. 24(a) is construed broadly in favor of intervention. *Greene v. United States*, 996 F.2d 973, 976 (9th Cir.1993). "Fed.R.Civ.P. 24(a) establishes

four requirements for intervention as of right: (i) timeliness; (ii) an interest relating to the subject of the action; (iii) practical impairment of the party's ability to protect that interest; and (iv) inadequate representation by the parties to the suit." *United States v. Oregon*, 913 F.2d 576, 587 (9th Cir. 1990) citing *Portland Audubon Soc'y v. Hodel*, 866 F.2d 302, 308 (9th Cir.1989). In evaluating whether Rule 24(a)(2)'s requirements are met, courts in this circuit follow **practical and equitable** considerations and construe the rule broadly in favor of proposed intervenors. *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011). Objectors may intervene in a lawsuit if they seek to challenge the adequacy of a settlement. *Croyden Assocs. v. Alleco, Inc.*, 969 F.2d 675, 680 (8th Cir. 1992); *Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) (granting motion to intervene to contest consent decree in litigation).

### i.  DFEH's Motion Is Timely.

DFEH's motion to intervene is timely. Without advance notice to DFEH, the EEOC filed its lawsuit, and lodged the proposed consent decree, on September 27, 2021. Interveners must act promptly after receiving notice "that the government may not have adequately represented their interests in negotiating the settlement, and they were entitled to rely on the presumption of adequate representation by the government prior to that time." *U.S. v. Carpenter*, 298 F.3d 1122 (2002). DFEH received notice of the inadequacies regarding the proposed consent decree only after EEOC's suit was publicly filed, and thereby its request to intervene as an objector is timely. *EEOC v. ABM Industries, Inc.*, No. 1:07-CV-01428, 2013 WL 1455510 (E.D. Cal. April 9, 2013) at *2 citing *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*, 62 F.3d 1217, 1219 (9th Cir.1995) ("This circuit has not yet decided whether such motions to intervene for ancillary purposes must be timely. We hold that they must.").

To determine the timeliness of a motion to intervene for a limited purpose, the Court evaluates three factors: "1) the stage of the proceeding at which an

applicant seeks to intervene; 2) the prejudice to other parties; and 3) the reason for and length of the delay." *Empire Blue Cross & Blue Shield*, 62 F.3d at 1219 citing *Cty. of Orange v. Air Cal.*, 799 F.2d 535, 537 (9th Cir. 1986), *cert. denied*, 480 U.S. 946 (1987).) When considering a motion to intervene, the court 'must accept as true the non-conclusory allegations in the motion.' *Southwest Ctr. for Biolog. Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001).

In *County of Orange v. Air California*, the Ninth Circuit affirmed the denial of the City of Irvine's motion to intervene as a matter of right and to permissively intervene as untimely because the case had been litigated for five years before the proposed settlement and Irvine had the opportunity to join the settlement negotiations. *Cty. of Orange*, 799 F.2d at 538. Conversely, here, the parties to the proposed decree each declined the DFEH's request to participate in the negotiations and the DFEH was only informed of the unfair and inadequate terms when they lodged the proposed decree.

On September 21, 2021, Law 360 published an article that Activision Blizzard said in a press release that "The company is actively engaged in continued discussions with the EEOC, and has cooperated with the EEOC's investigation concerning certain employment practices," but that "[a]n EEOC spokesperson said Tuesday that complaints made to the agency are confidential under federal law and that she could not comment nor confirm or deny whether there had been a charge." Declaration of Christian Schreiber In Support Of DFEH's Ex Parte Application to Shorten Time Required Under Local Rule 7-3 and Motion to Intervene ("Schreiber Decl."), Ex. A. Because conciliations are confidential under Title VII, 42 U.S.C. 2000e-5 and 2000e-8, and DFEH did not know whether Activision Blizzard waived the confidentiality of their conciliation, the DFEH was unaware that a proposed decree would be lodged on September 27, 2021, with the unfair and inadequate terms.

**ii.  DFEH Has an Interest Relating to the Subject of the Action.**

Before the EEOC and Defendants lodged the proposed consent decree, the DFEH began prosecuting a state enforcement action against the same Defendants for *inter alia* violations of California's Fair Employment and Housing Act ("FEHA"), including but not limited to state claims of sex discrimination, sexual harassment, retaliation and forced waivers. RJN, Ex. C (DFEH's First Amended Complaint in Case No. 21STCV26571). In this action, "the DFEH's task is to represent the interests of the state and to effectuate the declared public policy of the state to protect and safeguard the rights and opportunities of all persons from unlawful discrimination," and other unlawful practices. *Dept. Fair Empl. & Hous. v. Cathy's Creations, Inc.* 54 Cal.App.5th 404, 410 (2020), quoting Cal. Gov. Code, §12920. Because FEHA provides much stronger protections than federal law, DFEH's action did not include less protective claims under Title VII (although DFEH has authority to prosecute such federal claims.) Cal. Gov. Code, §12930(h); 42 U.S.C. § 2000e(h). Indeed, FEHA, the California statute that created DFEH, 'was meant to supplement, not supplant or be supplanted by, existing antidiscrimination remedies, **in order to give [Californians] the maximum opportunity to vindicate their civil rights against discrimination**.'" *Dep't of Fair Emp. & Hous. v. L.S.A.C., Inc.*, 941 F. Supp. 2d 1159, 1167 (N.D. Cal. 2013) citing *State Pers. Bd. v. Fair Employment & Hous. Com.,* 39 Cal.3d 422, 431 (1985).

Despite California's interests, the proposed decree seeks to supplant DFEH's pending enforcement action and its stronger protections under FEHA. The proposed decree seeks to cover California workers, including "each current and former employee who worked for any Defendant at its United States locations from September 1, 2016 to the Effective Date," **without providing the workers (or this Court or the California state court) with any notice of the proposed decree's proposed impact on DFEH's pending action under more protective state laws**.

14

ECF No. 11 at 11:23-26. Indeed, EEOC did not lodge with the Court any proposed notice, as an exhibit, to its proposed decree, nor request a fairness hearing, in violation of its own policies and procedures. RJN, Exh. B ("The ***notice is generally an exhibit*** to the consent decree, which itself is approved by the court…If there is a ***release***, it should be ***discussed fully*** and ***attached as an exhibit*** to the notice.") (emphasis added). Even worse, the proposed decree proposes to waive and "**release of [all] claims to which the EEOC is not a party,**" including the stronger FEHA claims in the pending DFEH action. ECF No. 11 at 13:3-8 (emphasis added). EEOC and Defendants included this term, without providing notice of DFEH's action to this Court or the class of aggrieved workers, and after excluding DFEH from the process entirely.

DFEH's interests will be impaired by the proposed consent decree in two main ways. First, DFEH's pending enforcement action against Defendants will be impaired by the proposed decree's request for waivers of claims "**to which the EEOC is not a party,**" including FEHA claims in DFEH's action. ECF No. 11 at 13:3-8 (emphasis added). DFEH's offered to provide assistance to California workers and protect the state interests. In response, the Parties excluded DFEH from the process entirely.

Second, the proposed consent decree requests that the Court sanction the effective destruction and/or tampering of evidence critical to the DFEH's case, such as personnel files and references to sexual harassment, as reflected in the following proposed provisions:

> Remove from the personnel files of each Eligible Claimant any references to the allegations related to sexual harassment, pregnancy discrimination, and/or related retaliation except to the extent that Defendants must keep records of the allegations or any Eligible Claimant's involvement in this Charge in order to effectuate this Decree, in which case such records must be maintained separately from Eligible Claimants' personnel files.

ECF No. 11 at 19:1-8. This provision only allows for preservation of an employee's complaint or inquiry regarding sexual harassment and retaliation in certain

1  circumstances. Thus, the proposed decree mandates the destruction of evidence

2  relevant to the DFEH's sexual harassment and retaliation claims.

3       The following separate provision enables Defendants to skirt liability in the

4  DFEH action by treating terminations as voluntary resignations:

5       Reclassify the terminations of any Eligible Claimant to voluntary
        resignations if they have been identified by the EEOC as being
6       subjected to retaliation (based on a list provided by the EEOC).

7  ECF No. 11 at 19:13-15. If a retaliatory termination is permanently and

8  retroactively changed from a termination to a voluntary resignation, the proposed

9  decree will create confusion regarding whether the termination would or could be

10  treated as adverse actions such for purposes of the DFEH action and eliminate

11  evidence/records that would be critical for the DFEH's own action.

12       By its express terms, the proposed decree seeks to impair DFEH's ability to

13  protect its interests and the interests of California workers. Remedies in a settlement

14  must not "unnecessarily trammel the interests of affected third parties." *EEOC v.*

15  *New York Times, Co.*, No. 92 Civ. 6548, 1995 WL 135577 (1995) at \*3 (citing

16  *Kirkland v. New York State Dep't of Correctional Servs.*, 711 F.2d 1117, 1132 (2d

17  Cir.1983) *cert. denied sub nom*).

18       **iii. DFEH's Interests Are Not Adequately Represented and Instead**

19          **Prejudiced.**

20       Finally, DFEH's interests are not adequate represented by either EEOC or

21  Defendants. Intervention is permitted where the objector shows that the parties to a

22  settlement will inadequately represent their interest. *Sierra Club v. Robertson*, 960

23  F.2d 83, 85–86 (8th Cir.1992) ("The 'inadequate representation' condition is

24  satisfied if the proposed intervenor shows that the representation of its interests by

25  the current party or parties to the action may be inadequate. The burden for making

26  this showing should be treated as minimal. Doubts regarding the propriety of

27  permitting intervention should be resolved in favor of allowing it, because this

28  serves the judicial system's interest in resolving all related controversies in a single

action.") (citations and internal quotations omitted). As noted above, the terms of the proposed decree here demonstrate that DFEH's interests are not represented. Moreover, DFEH's attempted offers to assist in protecting the state interests at issue were ignored. In sum, DFEH meets the criteria for intervention as of right in this suit.

Alternatively, DFEH meets the standard for permissive intervention, pursuant to Federal Rule of Civil Procedure 24(b). Fed.R.Civ.P. 24(b) ("upon timely application anyone may be permitted to intervene in an action...when an applicant's claim or defense and the main action have a question of law or fact in common...In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."); *see* Cal. Gov. Code, §12930(h); *United States v. Loc. 638, Enter. Ass'n of Steam, Hot Water, Hydraulic Sprinkler, Pneumatic Tube, Compressed Air, Ice Mach., Air Conditioning & Gen. Pipefitters*, 347 F. Supp. 164, 166 (S.D.N.Y. 1972).

Both DFEH's pending enforcement action and its proposed objection to the proposed consent decree have questions of law and fact in common with (i) the instant EEOC action alleging sexual harassment, discrimination and retaliation claims (as in DFEH's action) and (ii) the proposed consent decree, including *inter alia* its terms seeking a waiver of claims "to which EEOC is not a party" (including all state claims in DFEH's action). *See* RJN, Ex. A (DFEH's First Amended Complaint in Case No. 21STCV26571.).

DFEH will not cause undue delay or prejudice. DFEH seeks to timely intervene to avoid undue delay and prejudice by seeking to protect its interests and the interests of the class of aggrieved California workers, including by assisting them in evaluating the proposed decree, and ensuring its final terms are fair and adequate, and consistent with the public interest.

### B. DFEH Seeks to Intervene as an Objector to Oppose the Fundamentally Unfair and Unjust Provisions in the Proposed Consent Decree.

"The sole question before the district court in reviewing a settlement agreement is whether the agreement is fundamentally fair or just." *EEOC v. Pan American World Airways, Inc.*, 622 F. Supp. 633, 639 (N. D. Cal. 1985) ("*EEOC v. PanAm*") (citing *Moore v. City of San Jose*, 615 F.2d 1265, 1271 (9th Cir.1980)). "Courts reviewing both class action settlements and proposed consent decrees in the employment discrimination context have used the standard of fairness, adequacy, and reasonableness." *EEOC v. PanAm*, 622 F. Supp. at 639; *Berkman v. City of New York*, 705 F.2d 584, 597 (2d Cir.1983) (a Title VII settlement that contains provisions that are unreasonable, unlawful, or against public policy should not be approved). "[G]overnment participation in negotiating a consent decree does not insulate the decree from court review; it is simply one factor that the district court should consider in determining the reasonableness of the decree." *EEOC v. PanAm*, 622 F. Supp. at 640. "Moreover, the EEOC's participation should not lower the standard of review for evaluating the claims of those on whose behalf the agency proceeds, as argued by the EEOC." *Id.* Finally, the proposed consent decree raises numerous reg flags that require closer scrutiny by the Court. *See* Rothstein, Barbara J. & Willging, Thomas, Managing Class Action Litigation: A Pocket Guide of Judges (https://www.uscourts.gov/sites/default/files/classgde.pdf).[8]

---

[8] "'Reverse auction' is the label for a defendant's collusive selection of the weakest attorney among a number of plaintiff attorneys who have filed lawsuits dealing with the same subject matter; in other words, a reverse auction is the "sale" of a settlement to the lowest bidder among counsel for competing or overlapping classes. See MCL 4th § 21.61, text at n.952 and sources cited therein. Determining whether a reverse auction might have occurred requires information about all litigation, in state as well as federal courts, dealing with the subject of the dispute. Previous settlements between class counsel and defendant in unrelated cases may provide clues to the possibility of a collusive relationship. . . . Another major indicator of a reverse auction is a difference between the apparent value of the class claims on the merits and the value of the settlement to class members."

### i.   The Parties Should Not be Permitted to Use a Consent Decree to Undermine Stronger Civil Rights Protections Under State Law, that Are Not – And Cannot be – a Part of an EEOC Lawsuit.

In comparison to California's FEHA, Title VII's limitations both in liability standards and available remedies are well-established. For example, Title VII is limited to a "but for" standard for retaliation, under *Univ. of Texas Southwestern Medical Center v. Nassar*, —U.S. —, 133 S.Ct. 2517, 2528-2534 (2013). FEHA is not so limited. FEHA also permits claims of anticipatory retaliation. *Steele v. Youthful Offender Parole Bd.* 162 Cal.App.4th 1241, 1255 (2008) (anticipatory retaliation against a potential class member or complainant violates the FEHA; "Employer retaliation against employees who are believed to be prospective complainants or witnesses for complainants undermines this legislative purpose just as effectively as retaliation after the filing of the complaint. To limit FEHA in such a way would be to condone 'an absurd result'".)

FEHA also provides for much more protective workplace rights and remedies concerning discrimination, harassment, recordkeeping and other practices. Cal. Gov. Code, §§12940, 12946, 12953, 12964.5, 12975. No damages caps exist to limit remedies to aggrieved persons. Cal. Gov. Code, §12965. Liability standards are also much more protective. *See e.g. State Dept. of Health Serv. v. Sup.Ct.,* 31 Cal.4th 1026 (2003) ("Because the FEHA imposes this negligence standard only for harassment 'by an employee other than an agent or supervisor' (§ 12940, subd. (j)(1)), by implication the FEHA makes the employer strictly liable for harassment by a supervisor. This court and the Courts of Appeal have so stated." (citations omitted). "[T]he California legislature has made clear that even '[a] single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive work environment.'" *Loi Ngo v. United Airlines, Inc.* 2019 WL 6050832

19

1   (N.D. Cal.) citing Cal. Gov. Code, §12923(b). Cal. Gov. Code § 12923(b) states

2   that the California legislature rejected *Brooks v. City of San Mateo*, 229 F.3d 917

3   (9th Cir. 2020) and that it "shall not be used in determining what kind of conduct is

4   sufficiently severe or pervasive to constitute a violation" of FEHA.

5       FEHA also contains statutory prohibitions against forced and preemptive

6   waivers of employee rights. (Cal. Gov. Code §§12953 and 12964.5; *Hamilton v.*

7   *Juul Labs, Inc.*, No. 20-cv-03710 2020, WL 5500377, at *9 (N.D. Cal. Sept. 11,

8   2020) (severance agreement waiver provisions at issue held to require a

9   "preemptive and prospective waiver" in violation of Gov. Code §12964.5 because

10  plaintiff was required to waive claims before her official separation date.) Title VII

11  contains no similar statutory provisions to bar preemptive or prospective waivers.

12      Despite FEHA's broader protections, the proposed consent decree seeks to

13  undermine the ability of DFEH, a state agency, to enforce FEHA.

14  **ii.  The Parties Failed to Explain What the Workers' Maximum**

15  **Monetary Recovery Could Be in Successful Litigation in the Proposed**

16  **Decree.**

17      In the proposed decree, the EEOC and Defendants failed to provide any

18  estimate of Defendants' potential liability exposure to the Court or the class of

19  aggrieved workers. The decree also provides no explanation of the $18 million

20  monetary fund (if no funds revert back to Defendants). Thus, this Court cannot

21  consider the class of workers' expected recovery in litigation against the value of

22  the settlement offer, as necessary to evaluate the fairness of the proposed decree.

23      "In determining whether the amount offered in settlement is fair, the Ninth

24  Circuit has suggested that the Court compare the settlement amount to the parties'

25  'estimates of the maximum amount of damages recoverable in a successful

26  litigation.'" *Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA (PJWX), 2015 WL

27  4698475, at *9 (C.D. Cal. Apr. 27, 2015); *Custom Led, LLC v. eBay, Inc*, 2013 WL

28  4552789, *9 (N.D. Cal. 2013) (rejecting settlement because, *inter alia*, the parties

"provided the Court with **no information** as to the class members' potential range of recovery") (emphasis added); *Cordy v. USS-Posco Industries*, 2013 WL 4028627, *4 (N.D. Cal. 2013) (rejecting settlement where plaintiff provided "***no information*** about the maximum amount that the putative class members could have recovered if they ultimately prevailed on the merits of their claims") (emphasis added).

Despite the fairness standards in this circuit, EEOC and Defendants have made no attempt to provide any estimate of potential recovery in the proposed consent decree at all. Neither a range of recovery from *settled* federal and state claims (that the Parties will ask the class of workers to release in the proposed decree), nor a range based on damages *recoverable* in a successful federal and state litigation was provided.

While the proposed decree offers this Court no estimate of Defendants' potential liability nor any explanation of how the settlement figure was calculated, the district court in *EEOC v. PanAm* considered detailed calculations including, but not limited to:

> Pan Am owes claimants an average of $330,000 each. Assuming that this group is a representative sample of all 81 claimants, and there is no evidence to the contrary, Pan Am is potentially liable for approximately $26.7 million ($330,000 per claimant multiplied by 81 claimants). Counsel for Pan Am, in response to a question from the court, conceded that Pan Am's liability could be as much as $20 million.

*EEOC v. PanAm*, 622 F. Supp. at 642. The proposed decree at issue here fails to specify any estimate for Defendants' liability and the maximum exposure to the class to allow for any analysis of whether the settlement value would be fair or reasonable in a state where damages *recoverable* in successful litigation under FEHA's stronger state law protections and uncapped damages would dwarf Title VII. ECF No. 11 at 18:2-7.

**iii. The Parties Failed to Explain the Actual Settlement Value and Proposed Allocation of Monetary Relief in the Proposed Decree.**

Despite the overreach in the proposed decree to cover "all Defendants' U.S. based workers, from September 1, 2016 to the proposed Effective Date," it only offers monetary benefits to workers through an unexplained and unnecessarily restrictive claims procedure (and thus paid only to individuals who will take the initiative to actually file a claim - even though Defendants have records that identify workers and complaints, 2 C.C.R. §11013). Also, there is no proposed claim form explaining the process attached to the proposed decree, as required by EEOC policy. This, along with the meager relief provided, explains why objections have already been raised to the proposed decree. *See* Schreiber Decl., Exs. B-C.

Basic calculations should have been provided to the Court. For example, if all of Defendants' approximately 6,175 U.S. based workers,[9] who worked any time over the five-year period, take the initiative to file a claim, the resulting monetary value is less than two thousand dollars per worker. No justification (and no explanation other than Title VII's weaker protections and therefore EEOC's lack of leverage) exists for the settlement not to include a substantial agreed-upon fund that could be distributed to all workers covered by the proposed decree (which could have been accomplished without any claims procedure).

With respect to the workers who may take the initiative to actually file a claim through the unnecessary claims process, the relief will still be minimal. For example, if the 2,600 California workers who signed the petition and walked out from Defendants' jobsites a few days after the DFEH filed suit were the total pool

_____

[9] *See* Form 10(k), ANNUAL REPORT PURSUANT TO SECTION 13 OR 16(D) OF THE SECURITIES EXCHANGE ACT OF 1934 FOR THE FISCAL YEAR ENDED DECEMBER 31, 2020, FORM 10(K) filed by Activision Blizzard, Inc. and Subsidiaries, at p. 8 , *Human Capital*, ("As of December 31, 2020, Activision Blizzard had approximately 9,500 employees, with approximately 65% in North America, approximately 30% in the Europe, Middle East, and Africa ("EMEA") region, and approximately 5% in the Asia Pacific region. Of these employees, approximately 61% are personnel whose primary focus is on game and technology development, which represents an approximate three percentage point increase from 2019.") Available at (https://www.sec.gov/ix?doc=/Archives/edgar/data/718877/000162828021002828/atvi-20201231.htm).

22

of claimants, each would get an average of $6,923.07. This average amount does not fairly remedy (much less prevent or deter) the widespread discrimination, harassment, retaliation, recordkeeping and forced waiver violations by Defendants, as detailed in the DFEH's First Amended Complaint. *See* RJN Exh. C (DFEH's First Amended Complaint in Case No. 21STCV26571 ("In order to eliminate discrimination, it is necessary to provide effective remedies that will both prevent and deter unlawful employment practices and redress the adverse effects of those practices on aggrieved persons.")).

### iv. The Parties Failed to Provide the Actual Release Language in the Proposed Decree.

Aside from the fact that the release is illegally overbroad, the proposed decree fails to provide a copy of the release, violating EEOC policy. This is an unfair term under settled law. *City of Long Beach v. Monsanto Company*, 2020 WL 7060140, at *2 (C.D. Cal. 2020) (denying approval of a proposed settlement because the release "seeks or suggests that the claims of persons or entities who are not parties to this case are barred" and "the release is overbroad to the extent it requires the release of claims in the Underlying Actions") (quotations omitted). Evidently, the Parties propose to use the decree to seek waivers of stronger state claims (without any notice to workers nor additional relief to them) to *inter alia* seek to impair and impede the DFEH's enforcement action now pending before a California court.

### v. The Proposed Consent Decree's Reversion of Unclaimed Funds to Defendants Underscores Its Inadequacy.

While the proposed decree seeks to impose an unexplained claims process, one term is clear: any worker who is unable to return required documents will be penalized with an automatic rejection of any monetary relief. ECF No. 11 at 15:16-23. This will promote the reversion of settlement funds to Defendants because monetary relief that is deemed automatically rejected by workers reverts back to

23

Defendants. Defendants are then given the authority to decide the allocation of undistributed settlement funds between the *Cy Pres* of their own choosing or Defendants' own in-house Diversity and Inclusion Fund. ECF No. 11 at 17:11-26.

The Ninth Circuit generally disfavors reversionary clauses "because they create perverse incentives." *Roes, 1-2 v. SFBSC Management, LLC*, 944 F.3d 1035, 1058 (9th Cir. 2019). Reversion of settlement funds to defendants "might lead defendants to negotiate for a subpar notice process, a more tedious claims process, or restrictive claim eligibility." *Id.* at 1059. Here, the notice process, claims process and claim eligibility process are subpar or unexplained, and the proposed decree fails to include a proposed notice, claim form or release. These required documents appear hidden for a reason.

Numerous deficiencies in the proposed decree and their potential to impair or impede DFEH's interests compels intervention. It bears noting that "a consent decree, unlike an extrajudicial settlement between two parties, bears the imprimatur of the court. 'Judicial approval of a settlement agreement places the power and prestige of the court behind the compromise struck by the parties.' The court will not lend its authority to a decree that is not 'fair, adequate and reasonable.'" *EEOC v. PanAm*, 622 F. Supp. at 641 (quoting *Williams v. Vukovich*, 720 F.2d 909, 920, 921 (6th Cir.1983)). "Judicial approval [of a consent decree] may not be obtained for an agreement which is illegal, a product of collusion, or contrary to the public interest." *Williams*, 720 F.2d at 920.

**IV. Conclusion**

DFEH requests the Court grant the DFEH's right to intervene under Fed. R. Civ. P. 24(a) because DFEH objects to the proposed consent decree in the instant action for the reasons described above. DFEH requests that, at a minimum, the Court order (i) a notice to the class of aggrieved workers and a fairness hearing on whether the proposed decree is fair, adequate and reasonable, as well as consistent with the public interest, (ii) a limited release of only the federal claims alleged in

EEOC's complaint under Title VII, 42 U.S.C. § 2000e, and (iii) an exclusion of any

term, waiver or release that will impair or impede the interests of the State of

California and its workers, including the DFEH's pending enforcement action

before the California Superior Court in *DFEH v. Activision Blizzard, et al.*, Case

No. 21STCV26571.


Dated: October 6, 2021                    Respectfully submitted,

                                          OLIVIER SCHREIBER & CHAO LLP

                                          /s/ Christian Schreiber
                                          Christian Schreiber

                                          *Attorneys for Proposed Intervenor*
                                          *DEPARTMENT OF FAIR*
                                          *EMPLOYMENT AND HOUSING*