Anna Y. Park, SBN 164242
anna.park@eeoc.gov
Nakkisa Akhavan, SBN 286260
nakkisa.akhavan@eeoc.gov
Taylor Markey, SBN 319557
taylor.markey@eeoc.gov
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone:  (213) 422-8396
Facsimile:  (213) 894-1301
E Mail:  lado.legal@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ACTIVISION BLIZZARD, INC., BLIZZARD ENTERTAINMENT, INC., ACTIVISION PUBLISHING, INC., and KING.COM, INC., and DOES ONE through TEN, inclusive,<br><br>Defendants. | Case No.: 2:21-CV-07682-DSF-JEM<br><br>**PLAINTIFF EEOC'S OPPOSITION TO CALIFORNIA DFEH'S MOTION TO INTERVENE AND OTHER RELIEF; MEMORANDUM OF POINTS & AUTHORITIES; DECLARATIONS; EXHIBITS (ECF No. 13)** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.      INTRODUCTION ............................................................................................ 1

II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND.................... 2

III.    LEGAL DISCUSSION................................................................................... 4

A. Intervention as of Right Should Be Denied Because No Statute Confers
an Unconditional Right to Intervene on DFEH and DFEH Cannot
Meet the Requirements of Federal Rule of Civil Procedure 24(a).................. 4

1.   Title VII Reserves the Right to Intervene for Charging Parties, Not
State Agencies Like DFEH .......................................................... 4

2.   DFEH Cannot Meet the Requirements for Intervention as of Right
under Federal Rule of Civil Procedure 24(a). ................................ 6

a.  DFEH Lacks a Legally Cognizable Interest in This Federal
Litigation ................................................................................. 7

i.  The Proposed Decree Creates a Voluntary Claims Process
That Does Not Implicate DFEH's Interest. ................................ 7

ii.  The Proposed Decree Does Not Require the Destruction of
Any Evidence.......................................................................... 11

iii.  The Potential Cy Pres Fund Providing Money to Charity and
Diversity and Inclusion Efforts Is Not a Reversion And Does
Not Render the Class Fund Amount "Deceptive.".................. 12

iv.  DFEH Cannot Credibly Raise Concerns About the Releases
or Supposed "Reversion" in the Proposed Decree When Its
Decrees Are Not Subjected to This Scrutiny and Have
Contained Provisions That Are Against Public Policy.............. 13

3.   DFEH's Interests Are Adequately Represented by the EEOC........... 15

4.   DFEH's Motion is Untimely.................................................... 16

     5.   DFEH's Arguments About the Differences Between Title VII and FEHA Are Wholly Irrelevant. .............................................................16

B. Permissive Intervention Should be Denied under Federal Rule of Civil Procedure 24(b) Because DFEH Cannot Meet the Threshold Requirements And Lacks an Interest in This Federal Lawsuit..............................................19

     1.   DFEH Cannot Meet the Threshold Requirements for Permissive Intervention. ......................................................................................20

     2.   The Other Factors Courts Consider in Granting Permissive Intervention Also Weigh Against DFEH. ...............................................21

C. The Proposed Consent Decree Before This Court is Fair, Adequate and Reasonable and Should Be Approved ..............................................................21

     1.   There is a strong presumption in favor of approving settlements by government agencies, and deference is afforded to decrees negotiated by EEOC, provided they are fair, adequate, and reasonable. ..............21

     2.   The proposed Consent Decree is fair, adequate and reasonable..........23

     3.   The specific provisions criticized by DFEH are fair. ..........................25

     a.   The Decree Need Not Include the Estimated Maximum Recovery At Trial or Specific Calculations of Relief Per Claimant Because EEOC is Not Subject to Rule 23 Class Certification Requirements. ..25

     b.   The Provision of Private Counsel to Potential Claimants Is Not Only Fair, But Serves as a Safeguard for Individuals' Rights......................27

     c.   Courts Routinely Approve Consent Decrees Without Evaluating the Text of Releases. ...................................................................................28

IV.   CONCLUSION....................................................................................................29

# TABLE OF AUTHORITIES

*Alexander v. Gardner-Denver Co.*
    415 U.S. 36 (1977)..................................................................22
*Arakaki v. Cayetano*
    324 F.3d 1078 (9th Cir. 2003) ................................................15
*Bradley v. Harcourt, Brace & Co.*
    104 F.3d 267 (9th Cir. 1996) ..................................................17
*Bragg v. Robertson*
    83 F.Supp.2d 713 (S.D.W.Va. 2000) ......................................22
*City of Emeryville v. Robinson*
    621 F.3d 1251 (9th Cir. 2010) ..................................................7
*Cooper v. Newsom*
    2021 WL 4203343 (9th Cir. Sept. 16, 2021) .............................7
*DFEH v. Canal Farms, the L.C. Dennis Company, Inc.*
    Case No. 2016-cv-24272 ........................................................14
*DFEH v. Coca-Cola Refreshments USA, Inc.*
    Case No. 2:17-cv-08243-DSF-SK (C.D. Cal.) .........................14
*DFEH v. Derrel's Mini Storage, Inc.*
    Case No. BCV-15-101570 .......................................................14
*DFEH v. Pioneer Pines Mobile Home Park, et al.*
    Case No. BCV-16-100975 .......................................................14
*DFEH v. Shant Bhavan Punjabi Funeral Home, et al.*
    Case Nos. 18CECG01472 and 18CECG00688 .........................14
*DFEH v. Veterans of Foreign Wars (VFW) Post 2422*
    Case No. 201600027812 ..........................................................14
*Dep't of Fair Emp. and Hous.v. Good Guys Pizza, Inc., et al.*
    Case No. 2OSTCV05091 (L.A. Sup. 2021) ............................14
*Dep't of Fair Emp. & Hous. v. L. Sch. Admission Council, Inc.*
    941 F. Supp. 2d 1159 (N.D. Cal. 2013) ..................................17
*Donnelly v. Glickman*
    159 F.3d 405 (9th Cir. 1998) ..................................................21
*E.E.O.C. v. Grays Harbor Cmty. Hosp.*
    791 F. Supp. 2d 1004 (W.D. Wash. 2011) ...............................8
*EEOC v. Alia Corporation dba McDonalds*
    Case No. 1:11-cv-01549 (E.D. Cal. 2013) ...............................27
*EEOC v. Alorica, Inc.*
    Case No. 1:17-cv-01270 (E.D. Cal. 2018) ............................24,28
*EEOC v. Bay Club Fairbanks Ranch, LLC, et al.*
    Case No. 3:18-cv-01853 (S.D. Cal 2020).................................28

*EEOC v. Big Lots Inc.*
   Case No. 2:08-cv-06355 (N.D. W. Va. 2017)......................................................27
*EEOC v. Del Taco, LLC,*
   Case No.  5:18-cv-01978 (C.D. Cal. 2020) .........................................................24
*EEOC v. Discovering Hidden Hawaii Tours, Inc.*, et al.
   Case No. 1:17-cv-00067 (D. Hawaii 2018)..........................................................27
*EEOC v. Hacienda Hotel*
   881 F.2d 1504 (9th Cir. 1989) .............................................................................23
*EEOC v. Hathaway Dinwiddie Constructive Company*
   Case No. 2:20-cv-06741 (C.D. Cal. 2021) .....................................................24,28
*EEOC v. La Rana Hawaii, LLC dba Senor Frog's*, et al.
   Case No. 1:11-cv-00799 (D. Hawaii 2013)..........................................................27
*EEOC v. Lowe's Companies, Inc., et. al.*
   Case No. 2:16-cv-03041 (C.D. Cal. 2016) ......................................................2, 28
*EEOC v. Lucinda Management, LLC, et al.*
   Case No. 2:17-cv-02458 (D. Nev. 2019)..............................................................28
*EEOC v. Marquez Brothers International, Inc.*, et al.
   Case No. 1:17-cv-00044 (E.D. Cal. 2019)............................................................28
*EEOC v. Maurizio's Trattoria Italiana*, LLC
   Case 3:18-cv-00338 (S.D. Cal. 2020) ..................................................................27
*EEOC v. Oceanic Time Warner Cable LLC dba Spectrum*, et al.
   Case No. 1:18-cv-00357 (D. Hawaii 2020)..........................................................27
*EEOC v. Prestige Care, Inc., et al*,
   Case No. 1:17-cv-01299 (E.D. Cal. 2020)............................................................28
*EEOC v. Waffle House*
   534 U.S. 279 (2002) ..............................................................................................1
*EEOC, Erika Morales and Anonymous Plaintiffs One through Eight v. ABM*
   *Industries, Inc., et al.*, Case No. 1:07-cv-01428 (E.D. Cal. 2010)................24,28
*G&G Prods., LLC v. Rusic*
   2019 WL 1976451 (C.D. Cal. Mar. 27, 2019) ...............................................6, 19
*Green v. Los Angeles Cty. Superintendent of Sch*.
   883 F.2d 1472 (9th Cir. 1989) ...............................................................................5
*League of United Latin Am. Citizens v. Wilson (LULAC)*
   131 F.3d 1297 (9th Cir. 1997) ...............................................................................6
*Marshall v. Holiday Magic, Inc.*
   550 F.2d 1173 (9th Cir.1977) ..............................................................................22
*Melanie McCracken, et al. v. Riot Games, Inc*.
   Case. No. 18STCV03957 (LA Sup. Ct. 2019) .....................................................10
*Moore v. City of San Jose*
   615 F.2d 1265 (9th Cir. 1980) .............................................................................22

*Officers for Justice v. Civil Service Com'n of City and Cty. Of San Francisco*
    688 F.2d 615 (9th Cir. 1982) ................................................................... 21
*Perry v. Schwarzenegger*
    630 F.3d 898 (9th Cir. 2011) ............................................................ 6, 20
*Price v. Civil Serv. Com.*
    26 Cal.3d 257 (1980) ............................................................................ 17
*Roes, 1-2 v. SFBSC Management, LLC*
    944 F.3d 1035 (9th Cir. 2019) ............................................................. 13
*S.E.C. v. Randolph*
    736 F.2d 525 (9th Cir. 1984) ............................................................... 21
*State Pers. Bd. v. Fair Emp. & Hous. Com.*
    39 Cal. 3d 422 (1985) ........................................................................... 11
*U.S. Equal Employment Opportunity Commission v. Cardinal Health 200, LLC.*, et al.,
    No. 5:19-cv-00941 (C.D. Cal. May 21, 2019) ........................... 2,11,24
*U.S. Equal Employment Opportunity Commission v. Jet Propulsion Laboratory, et al.*
    No. 2:20-cv-03131 (C.D. Cal. April 3, 2020) .......................................... 2
*U.S. Equal Employment Opportunity Commission v. Kimco Staffing Services, Inc.*, et al.
    No. 5:19-cv-01838 (C.D. Cal Sept. 25, 2019).......................... 2,12,24
*U.S. Equal Employment Opportunity Commission v. Lowe's Companies, Inc.*, et al.
    No 2:16-cv-03041 (C.D. Cal. May 3, 2016)................................... 2,28
*United States v. Akzo Coatings of Am., Inc.*
    949 F.2d 1409 (6th Cir. 1991) ............................................................. 22
*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) ................................................................. 6
*United States v. Armour & Co.*
    402 U.S. 673 (1971) .............................................................................. 22
*United States v. City of Los Angeles*
    288 F.3d 391 (9th Cir. 2002) .......................................................... 6, 15
*United States v. North Carolina*
    180 F.3d 574 (4th Cir. 1981) ............................................................... 22
*United States v. River Cliff Farm, Inc.*
    2016 WL 4582048 (D. Or. Sept. 2, 2016) ............................................. 6
*Wilkerson v. Martin Marietta Corp.*
    171 F.R.D. 273 (1997)........................................................................... 23


## <u>STATUTES:</u>

28 U.S.C. § 1331 .......................................................................................... 20

28 U.S.C. § 1332 .......................................................................................... 20

42 U.S.C. § 2000e-4 ....................................................................................... 5

42 U.S.C. § 2000e-5(b) ............................................................................... 1

42 U.S.C. § 2000e-5(f)(1) ......................................................................... 10

42 U.S.C. § 2000e-8 ............................................................................... 3, 5

Cal. Evid. Code § 413 .............................................................................. 11

Cal. Gov't Code § 12965(a) ..................................................................... 10

Cal. Gov't Code § 12965(b) ..................................................................... 17

Fed. R. Civ. P. § 24(a)(2) ........................................................................... 6

**RULES:**

Model Rules of Prof'l. Conduct R. 4.3 ..................................................... 10

Model Rules of Prof'l. Conduct R. 7.1 (2013) ......................................... 18

Bus. & Prof. Code, § 6157.2, subd. (a) .................................................... 18

Cal. Rule of Prof'l. Conduct, rule 7.1 ...................................................... 18

**ARTICLES:**

*Federal Court Awards DFEH Over $400,000 in Attorney's Fees in Contempt with Law School Admission Council.* Dep't of Fair Employment & Housing. (2018). https://www.dfeh.ca.gov/wp-content/uploads/sites/32/2018/11/LSAC_PR.pdf .......... 17

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC" or "Commission") submits this Opposition to the California Department of Fair Employment and Housing's ("DFEH") Motion to Intervene (the "Motion"), attached as Exhibit D, 2021 (ECF No. 13-12). DFEH's filing relates to an enforcement action the Commission filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq. (§706) ("Title VII") alleging that Defendants Activision Blizzard, Inc., Blizzard Entertainment, Inc., Activision Publishing, Inc., King.com, Inc., and their subsidiaries ("Defendants"), subjected a class of aggrieved employees to sexual harassment, pregnancy discrimination and related retaliation in violation of Title VII. (ECF No. 1).

The EEOC has entered into a proposed Consent Decree with the Defendants (ECF No. 11-1 (the "Decree")), following a three-year investigation and months of arms-length negotiations between the parties. The proposed Decree is a comprehensive agreement under federal law covering all Defendants, including their locations in multiple states. DFEH now seeks to intervene and objects to the Decree, potentially derailing relief for hundreds of harmed individuals. The request should be denied.

The EEOC has been tasked by Congress with enforcing federal anti-discrimination law and possesses broad powers to protect the public interest nationwide, including the power to bring Commissioner's Charges, such as the one that initiated this enforcement action. *Gen. Tel. Co. of Nw. v. EEOC*, 446 U.S. 318, 324-26 (1980) (stating the purpose of the EEOC is to vindicate the public interest in preventing employment discrimination); *EEOC v. Waffle House*, 534 U.S. 279, 291 (2002) (EEOC litigates in the public interest); 42 U.S.C. § 2000e-5(b) (authorizing members of the Commission to initiate enforcement action through Commissioner's Charge). Pursuant to its responsibility as the sole federal civil rights agency enforcing Title VII in the private sector, the EEOC has routinely pursued systemic discrimination cases and achieved,

through litigation and informal methods, significant monetary and injunctive relief, including in several Consent Decrees which have been approved by this Court.[1] In this case, the EEOC has again obtained significant monetary and injunctive relief in the proposed Decree, which, if approved, will provide $18 million to harmed individuals nationwide and transform Defendants' policies and procedures for preventing and correcting harassment, with external monitoring by both an EEO Consultant with expertise in EEO law and the EEOC itself, backed by the power of compliance enforcement in this Court.

The Court should deny DFEH's motion for several reasons. First, DFEH lacks standing, under Rule 24 and controlling legal precedent, to intervene or object because it lacks a legally cognizable interest in this federal proceeding presenting a federal question. Second, the federal claims included in this resolution (and their state law analogues) are claims that DFEH expressly agreed not to pursue under a Worksharing Agreement and a specific agreement between the two agencies involving these claims. Third, the Decree does not resolve anything apart from federal Title VII claims.

For all the reasons set forth herein, DFEH's motion should be denied by the Court. The EEOC respectfully requests that the proposed Consent Decree lodged with the Court (ECF No. 11-1) be approved in the interests of justice.

## II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In February 2018, the EEOC received an anonymous complaint from a Human Resources employee of Defendants Blizzard Entertainment, Inc. alleging, among other things, that a hostile work environment based on sex existed in Defendants' workplaces.

---

[1] *See, e.g.*, *EEOC v. Lowe's Cos., Inc.*, No 2:16-cv-03041 (C.D. Cal. May 3, 2016) ($8,600,000); *EEOC v. Jet Propulsion Lab.*, No. 2:20-cv-03131 (C.D. Cal. April 3, 2020) ($10,000,000); *EEOC v. Kimco Staffing Servs., Inc.*, No. 5:19-cv-01838 (C.D. Cal Sept. 25, 2019) ($2,000,000); *EEOC v. Cardinal Health 200, LLC.*, No. 5:19-cv-00941 (C.D. Cal. May 21, 2019) ($1,450,000).

Declaration of Rosa Viramontes, ¶ 2. On September 26, 2018, one of the EEOC's Commissioners, Chai R. Feldblum, filed a Commissioner's Charge, as authorized by 29 C.F.R. § 1601.11, which opened an investigation into the allegations raised in the anonymous complaint. *Id.* at ¶ 3.In October 2018, about one month after the Commission filed its Charge, DFEH filed a Director's Complaint against Blizzard Entertainment, Inc. and later added entities Activision Blizzard, Inc. and Activision Publishing, Inc. *Id.* at ¶ 4.

At that time, EEOC and DFEH had a Worksharing Agreement in place, as authorized by 42 U.S.C. § 2000e-8, which delineated how investigations were to be handled by and between the agencies. Viramontes Decl., at ¶ ¶ 5-6. This Worksharing Agreement gave EEOC the right to investigate all charges filed by its own Commissioners as well as first-in-time charges. *Id.* at ¶ 7. In the spirit of cooperation and efficiency, EEOC met with DFEH to discuss dividing the responsibility so that each agency would investigate different claims. *Id.* at ¶ ¶ 9-11. After months of negotiations, the agencies agreed in writing in 2020 that, among other terms, EEOC would investigate harassment allegations and that DFEH would investigate discrimination claims, such as pay and promotion claims (the "Interagency Agreement"). *Id.* at ¶ 12, Exh. D. In this agreement, DFEH explicitly agreed *not* to investigate harassment claims. *See id.* In reliance on the Interagency Agreement, EEOC narrowed the scope of its investigation to sexual harassment and related retaliation, relinquishing its right to investigate federal pay and promotion claims.[2] *Id.* at ¶ 11. The EEOC entered into the Interagency Agreement to protect the public and, especially, harmed individuals, from the confusion and re-traumatization that would result from two agencies requesting that they share the same sensitive facts.

---

[2] The Commission's investigation also found evidence of pregnancy discrimination, which had not been included in the Interagency Agreement, leading to its inclusion in this Action.

On June 15, 2021, EEOC completed its over three-year-long investigation and issued its findings in a Letter of Determination. Viramontes Decl., at ¶ 15. Pursuant to the Interagency agreement, EEOC sent this Letter of Determination to DFEH and invited DFEH to participate in a potential resolution as it entered into statutorily mandated conciliation talks with the Defendants on or about June 23, 2021. *Id.* at ¶ 17, Exh. F. The EEOC did not receive any response from the DFEH. *Id.* at ¶ 18. Instead, on or about July 20, 2021, DFEH filed a Complaint in state court including a sexual harassment claim. *Id.* at ¶ 19. Contrary to the Interagency Agreement, DFEH never notified the EEOC of its findings prior to filing, nor did DFEH inform EEOC of its statutorily mandated mediation dates. *Id.* at ¶ 20.

EEOC proceeded with conciliation as required under Title VII, attending multiple sessions with a private mediator and engaging in extensive negotiations with Defendants. These efforts led to a comprehensive agreement, which provides for significant injunctive relief aimed at reforming Defendants' culture and practices and an $18 million class fund available to potential claimants nationally for potential claims going back to September 2016, which is the full temporal scope of the Commissioner's charge.

## III.  LEGAL DISCUSSION

A.   **Intervention As of Right Should Be Denied Because No Statute Confers an Unconditional Right to Intervene on DFEH and DFEH Cannot Meet the Requirements of Federal Rule of Civil Procedure 24(a).**

1. Title VII Reserves the Right to Intervene for Charging Parties, Not State Agencies Like DFEH.

The first question in determining intervention as of right is whether a statute confers an unconditional right to intervene. Fed. R. Civ. P. 24(a) ("the court must permit anyone to intervene who [] is given an unconditional right to intervene by a federal

statute").Title VII does not confer a right to intervene upon DFEH. Rather, its sole role under Title VII is to cooperate with EEOC in the charge handling process.

In Title VII, Congress anticipated that issues of overlapping jurisdiction with Fair Employment Practices Agencies ("FEPAs"), such as DFEH, might arise and provided that, in such cases, FEPAs and the EEOC should "cooperate" pursuant to worksharing agreements to achieve their common goals. 42 U.S.C. § 2000e-8 (Commission authorized to enter into worksharing agreements with state agencies); 42 U.S.C. § 2000e-4 (Commission granted power to "cooperate" with state agencies); *Green v. Los Angeles Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1477 (9th Cir. 1989) ("Congress has authorized the EEOC to cooperate with state and local agencies by entering into 'written agreements' with those agencies in order to promote 'effective enforcement' of Title VII"). The Worksharing Agreement between EEOC and DFEH expressly set out which agency would investigate which types of claims, providing that Commissioner's Charges, and Charges initially received by the EEOC, would be initially processed by the EEOC. Viramontes Decl., ¶ 6, Exh. C (2018 Worksharing Agreement) at § III.A.1.

Many worksharing agreements, such as the Worksharing Agreement between the EEOC and DFEH, also provide dispute resolution mechanisms. *Id.* at § VI.E (providing that any dispute between the two agencies shall be submitted in writing to the Director for the Office of Field Programs for dispute resolution). Thus, if the DFEH had a dispute with EEOC regarding which agency had responsibility for investigating which claims, the Worksharing Agreement provided an avenue for redress. DFEH has never invoked the dispute resolution procedures available to it under the Worksharing Agreement.

In contrast to Title VII's provision regarding FEPAs, Title VII's intervention provision only addresses the intervention rights of Charging Parties and the EEOC. The statute expressly provides Charging Parties a right to intervene in EEOC's enforcement actions. 42 U.S.C. § 2000e–5(f)(1). Congress could have provided for intervention rights for FEPAs, as it did for Charging Parties, but it did not. Instead, Congress viewed their

role as one of "cooperat[ion]" with EEOC investigations, rather than intervention in EEOC enforcement actions.

2. <u>DFEH Cannot Meet the Requirements for Intervention As of Right under Federal Rule of Civil Procedure 24(a).</u>

"In the absence of a statute conferring an unconditional right to intervene, Federal Rule of Civil Procedure 24(a)(2) governs a party's application for intervention as of right in the federal courts." *League of United Latin Am. Citizens v. Wilson (LULAC)*, 131 F.3d 1297, 1302 (9th Cir. 1997). The Ninth Circuit requires that would-be intervenors make a showing of all of the following four elements in order to gain permission to intervene as of right: "(1) [the would-be intervenor] has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *Perry v. Schwarzenegger*, 630 F.3d 898, 903 (9th Cir. 2011).

Generally, an applicant-intervenor demonstrates a significantly protectable interest if: "1) the interest is protected by law and 2) there is a relationship between the legally protected interest and the plaintiff's claims." *Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*, 2010 WL 774037, at *7 (D. Or. Mar. 2, 2010) (*citing United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)). "The relationship requirement is met if the resolution of the plaintiff's claim actually will affect the applicant." *Id.*; *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 398 (9th Cir. 2002).

Courts routinely deny motions to intervene where the interest put forward by the would-be intervenor is "speculative." *G&G Prods., LLC v. Rusic*, No. 2:15-CV-02796-RGK-E, 2019 WL 1976451, at *4 (C.D. Cal. Mar. 27, 2019) (motion to intervene denied where the existence of interest depended on speculation about the outcome of another pending lawsuit); *United States v. River Cliff Farm, Inc.*, 2016 WL 4582048, at *3 (D.

Or. Sept. 2, 2016) (interest put forward was speculative and required court to rule on issues outside the scope of the action); *City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010) (would-be intervenor "cannot rely on an interest that is wholly remote and speculative"). Further, motions to intervene by government agencies such as DFEH are denied where the powers of the agency seeking intervention are not at issue or are "incidentally affect[ed]," as here, where DFEH is only pursuing claims under FEHA in its state court lawsuit and does not seek to raise a Title VII claim in this Court. *Cooper v. Newsom*, 2021 WL 4203343, at *8 (9th Cir. Sept. 16, 2021) (District Attorneys could not intervene in action regarding the constitutionality of methods of execution because their powers do not explicitly include choosing methods of execution).

a. <u>DFEH Lacks a Legally Cognizable Interest in This Federal Litigation.</u>

DFEH lacks a legally cognizable interest in this federal litigation under Title VII and resorts to rampant speculation to insert itself in this case and derail relief for potential claimants. In grasping at ways to show that this Decree would affect its interests, DFEH makes the following assertions: 1) that the proposed Decree waives state law claims or that individuals are required to waive state law claims under the proposed Decree; 2) that the proposed Decree calls for the destruction of evidence relevant to their pending lawsuit; and 3) that the proposed Decree includes a reversion which will confuse potential claimants as to the amount recoverable and thereby draw them away from the state action. *See* Motion at 11-24. All three of these assertions are patently incorrect.

i. <u>The Proposed Decree Creates a Voluntary Claims Process That Does Not Implicate DFEH's Interests.</u>

The proposed Decree contains a comprehensive, transparent, and fair claims process and does not release *any* claims, except those held by the EEOC as Plaintiff. *See* Decree § IV.A. If the proposed Decree is signed, it will release the EEOC's Title VII

1   claim and leave every other existing claim intact. Each potential class member will have

2   a choice whether to release their individual claims and collect from the Class Fund under

3   the proposed Decree. If any individual class member does not want to collect from the

4   Class Fund or release her claims, she is not required to do so. Her claim will not be

5   waived by inaction; this is an opt-*in* Decree, not an opt-*out* Decree.

6           Under the terms of the proposed Decree, individuals who are found eligible for

7   relief will receive private legal representation from a referral list of respected plaintiff's

8   employment lawyers or a lawyer of their choice, at no cost to them, and be advised as to

9   the effect of the releases. *See* Decree § IX.B.4.h. Although EEOC is not a party to any

10  release between claimants and employers, the EEOC has had a longstanding position

11  that releases incidental to its Consent Decrees cannot contain any provisions that are

12  contrary to public policy. Accordingly, Defendants have agreed that the releases here

13  will not include, among other things, arbitration agreements, confidentiality/non-

14  disclosure provisions, non-disparagement provisions, or no rehire clauses. Defendants

15  have also agreed to specifically notify potential claimants of DFEH's lawsuit in the text

16  of the release, including the claims included in DFEH's lawsuit. Given these safeguards,

17  DFEH cannot articulate any genuine interests which it is seeking to protect.

18          DFEH criticizes the EEOC for supposedly not following the guidelines in its

19  Regional Attorney's Manual. Motion at 2-3, 7-9. As a preliminary matter, the Manual's

20  introduction explicitly states that the agency's compliance with the guidelines is not

21  judicially reviewable, which courts have respected. Regional Attorney's Manual,

22  Introduction ("The Manual shall not be construed to create any right to judicial review

23  involving the compliance or noncompliance of the EEOC or its employees with any

24  matter dealt with in the Manual."); *EEOC v. Grays Harbor Cmty. Hosp.*, 791 F. Supp.

25  2d 1004, 1006 (W.D. Wash. 2011) (rejecting argument that EEOC should have

26  consulted parties about a settlement pursuant to provisions in its Regional Attorney's

27  Manual, instead emphasizing EEOC is "master of its case"). Whether a Consent Decree

28

is fair, adequate and reasonable is a question for courts to determine under Title VII, not under the statements in an agency handbook. Further, the EEOC is the expert on the implementation of its own Manual. DFEH overreaches by attempting to instruct a federal agency on its own policies and fails to grasp them.[3]

Contrary to DFEH's claim, EEOC followed its Manual. The provision regarding releases of claims beyond Title VII explicitly allows them as long as the eligible claimant is represented by counsel, as will be the case here. Regional Attorney's Manual § XI.A(d) ("A claimant represented by private counsel can agree to a broader waiver . . . As indicated in the preceding paragraph, a represented claimant can agree to a broader waiver. However, this requires actual representation."). Moreover, the proposed Decree was reviewed and approved through normal channels, including approval from the EEOC's Office of General Counsel.

DFEH has, as it points out in its Motion, requested the names of individuals identified as potential claimants by EEOC more than once, stating it would like to advise them about their rights with respect to any releases under state law. Viramontes Decl., ¶ 22; *see also* Mot. at p. 6. It would be highly inappropriate for either EEOC or DFEH to advise individuals regarding the releases, because both agencies have an institutional interest that may diverge from the interests of the individuals. Moreover, in contrast to the approach in the proposed Decree, DFEH sent an email to employees of the Defendants, advising them that obtaining their own counsel would be "misleading or confusing" and requesting that individuals contact DFEH if a lawyer sought to represent them individually. Request for Judicial Notice, Exh. A, Exh. 2 ("We also wanted to follow up and alert you that you may be contacted by private attorneys seeking to

---

[3] DFEH does not appear to publicly provide its guidelines for settlement or to have made public any of its internal guidelines. As will be discussed further below, DFEH also does not regularly file its consent decrees or agreements with employers in a manner that is readily available to the public. The EEOC is here being criticized for its transparency with a level of scrutiny under which DFEH does not allowed itself to be placed.

become your attorney for this case. It is unnecessary and may be misleading or confusing. A private attorney would have to file suit in your name or get the court's permission for you to intervene as a named plaintiff in this matter. Please let us know if any attorney attempts to solicit your business for this case.").

This conduct is at odds with both state and federal law, under which aggrieved individuals have an absolute right to their own counsel related to governmental antidiscrimination enforcement actions such as this one. Cal. Gov't Code § 12965(a); 42 U.S.C. § 2000e-5(f)(1). An attorney providing advice to individuals that it is against their interest to seek counsel is also against the rules of professional responsibility. *See* California Rule of Professional Conduct, Rule 4.3(a) ("If the lawyer knows or reasonably should know that the interests of the unrepresented person are in conflict with the interests of the client, the lawyer shall not give legal advice to that person, except that the lawyer may, but is not required to, advise the person to secure counsel.").

Under the Interagency Agreement and the previous practice of the agencies working together to resolve or litigate cases, EEOC fully expects that DFEH will have the ability to present class members in its state action with releases that include waivers of federal pay and promotion claims. EEOC has not requested the names of individuals with such pay and promotion claims in order to advise them of their "federal rights" – or to caution them against seeking counsel. The two agencies would be unable to resolve claims at all if DFEH's position on releases were accepted. Ultimately, DFEH's true goal here is to force individuals to recover only through its lawsuit.[4]

---

[4] In an unrelated case, DFEH has also intervened and objected to prevent private plaintiffs who negotiated a $10 million settlement in *Melanie McCracken, et al. v. Riot Games, Inc.* (LA Sup. Ct. 2019) from resolving their case, and has since been roundly criticized by plaintiffs' lawyers in that case. *See, e.g.*, Daily Journal, State civil rights agency may derail game company settlement, plaintiffs say (September 30, 2021), available at dailyjournal.com/articles/364473-state-civil-rights-agency-may-derail-game-company-settlement-plaintiffs-say. Here, DFEH continues to overreach beyond its mandate from the California state legislature in attempts to

ii.    <u>The Proposed Decree Does Not Require the Destruction of Any Evidence.</u>

To protect potential claimants from future retaliation, the proposed Decree requires that documents referencing the allegations be removed from their personnel files – *not destroyed*. DFEH states that the Decree allows preservation only for the purpose of complying with the Decree. This is inaccurate; the Decree says the documents are to be maintained for this purpose and is silent with respect to other recordkeeping obligations. Decree § X.A. That they are relevant to current litigation independently requires that they not be destroyed under rules against spoliation. Cal. Evid. Code § 413. These files would be available in response to discovery requests by DFEH in its state court action.

Class members in EEOC enforcement actions commonly request that information about their charges and participation in protected activity be segregated from their personnel files to prevent future retaliation. With respect to the provision under which Defendants will change records of terminations of Eligible Claimants to resignations, §X.C, this too is to protect individuals in their future attempts to find employment, so that they do not appear to have been fired for cause. There will be a record of the fact that such a change has been made, which DFEH can seek in its lawsuit. These anti-retaliation provisions are standard in EEOC Decrees that have been approved by this Court.[5] These provisions intended to benefit workers in no way impact DFEH's ongoing lawsuit.

_____

block the efforts of others who are also fighting for civil rights. *See State Pers. Bd. v. Fair Emp. & Hous. Com.*, 39 Cal. 3d 422 (1985) ("*The FEHA was meant to supplement, not supplant or be supplanted by, existing antidiscrimination remedies*, in order to give employees the maximum opportunity to vindicate their civil rights against discrimination.") (emphasis added).

[5] *See, e.g., EEOC v. Cardinal Health 200, LLC., et al.*, No. 5:19-cv-00941 (C.D. Cal. May 21, 2019), ECF No. 90 (requires Defendant AppleOne to "remove from its employment any records, of negative performance actions including discipline and terminations that the EEOC reasonably believes are related to the allegations in this Action; 2.remove from its employment files

iii.   <u>The Potential Cy Pres Fund Providing Money to Charity and Diversity and Inclusion Efforts Is Not a Reversion And Does Not Render the Class Fund Amount "Deceptive."</u>

The provision providing for a potential *cy pres* that would provide funding to charities supporting women and girls in gaming and provide funding for further diversity and inclusion initiatives in the Defendants' workplaces above and beyond those already required by the Decree is not – as DFEH claims – the same as a reversion. Importantly, the allocation of any money in these funds must be approved by EEOC. Decree § IX.B.4.n. Any money allocated to the Defendants' Diversity and Inclusion Fund will be specifically earmarked for programs that are intended to promote the purposes of the Decree and women's equal opportunity in Defendants' workforce above and beyond the relief in the Proposed Decree. *Id.*

The *cy pres* provision was included in this case because the DFEH unexpectedly brought a sexual harassment claim during the course of the negotiations. As we have emphasized herein, we encourage individuals to make the choice that is best for them regarding whether they prefer to proceed under the federal or state case. However, given this dynamic, where some individuals may choose to proceed with DFEH, it is conceivable that some money from the Class Fund will be left over. While we intend to make every effort to distribute all funds to eligible claimants, the potential for any undistributed funds would not be present absent the actions of DFEH itself.

reference, if any, to Claimants' participation in this Action; 3.to the extent that Defendant must keep records of this Action in order to effectuate this Decree, such records shall be maintained separately from Defendant's employment records"); *EEOC v. Kimco Staffing Servs., Inc.*, et al., No. 5:19-cv-01838 (C.D. Cal Sept. 25, 2019) (ECF No. 59) ("remove from the personnel file for Charging Party any references to the charges of discrimination filed against Defendants or Charging Party's participation in this Action; 2.remove from Defendant Kimco's files any reference to discipline of Charging Party or her "termination" for "performance"; 3. to the extent that Defendant Kimco must keep records of the charges of discrimination or in order to effectuate this Decree, such records must be maintained separately from Charging Party's personnel files").

DFEH argues that providing a reversion creates a "perverse incentive" that led the EEOC to negotiate a more onerous claims process, relying on *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1059 (9th Cir. 2019). But *SFBSC Management* explicitly states that even truly reversionary funds can be included in fair settlements. *Id.* ("That is not to say that a reversionary clause can never reasonably be included in a settlement; in some cases, the reversionary clause may provide articulable benefits to the class, and any concerns about perverse incentives or collusion may be ameliorated by other aspects of the settlement."). Here, even if the Court were to regard the provisions at issue as true "reversionary clauses," the *cy pres* fund is designed to provide articulable benefits to the class, by either advancing efforts at inclusion for women and girls in the industry – an outcome that was important to many members of the potential class – or by continuing efforts to reform Defendants' workplace and culture above and beyond the Decree provisions. Any concerns raised by the inclusion of a fund for charities and diversity and inclusion efforts are outweighed by the fair and transparent claims process.

The Decree specifically requires the independent Claims Administrator to make extensive efforts to contact potential claimants by mail and email, and, further, to make repeated efforts when it receives returned undeliverable mail. The EEOC will also monitor this process and has the power to allow the Claims Administrator to accept late claim forms. Individuals will not be automatically barred from all relief if they do not submit a timely claim form; they will retain whatever rights they already have. This process was specifically designed to garner maximum participation from affected individuals.

       iv.    <u>DFEH Cannot Credibly Raise Concerns About the Releases or Supposed "Reversion" in the Proposed Decree When Its Decrees Are Not Subjected to This Scrutiny and Have Contained Unfair Provisions.</u>

It is difficult to find publicly filed DFEH decrees and/or agreements. In the vast majority of its cases, the agreements are not filed in court so they can be scrutinized by

the public; only a "notice of settlement" is filed which does not include or describe the terms.[6] Surprisingly, given its arguments here, DFEH has entered into at least one decree containing both a reversion with far more serious problems than what it alleges here and many other concerning provisions. In one of the few publicly available DFEH agreements, *In the matter of the Complaint of the Department of Fair Employment and Housing vs. Verizon Services Corporation, a Delaware Corporation, dba Verizon California, Inc.*, DFEH agreed to a provision whereby if a certain percentage of potential claimants did not come forward, all of the monetary relief would be returned to the employer, Verizon. Request for Judicial Notice, Exh. B at p. 8 ("If, upon expiration of the Claims Deadline more than 10% of CFRA Class Members have submitted full and complete Opt-Out forms, then Verizon shall have the sole, absolute and unfettered discretion to withdraw from this agreement."). This was part and parcel of a claims process in which individuals had to proactively opt out of the class in order not to have both their federal and state claims extinguished. *Id.* at p. 15-16. Further, DFEH's Verizon agreement explicitly waived federal claims and even the ability to recover monetary relief from filing a Charge with the EEOC *on behalf of* the class members. *Id.* It did not provide each person the option to choose to waive claims or proceed with their own claims, except by affirmatively opting out, the opposite of the proposed Decree before this Court.

DFEH cannot position itself as the arbiter of fairness of other agencies' Decrees when it does not allow its own agreements to be scrutinized and has agreed to provisions that are patently unfair.

---

[6] *See, e.g., DFEH v. Pioneer Pines Mobile Home Park, et al.*, Case No. BCV-16-100975; *DFEH v. Derrel's Mini Storage, Inc.*, Case No. BCV-15-101570; *DFEH v. Veterans of Foreign Wars (VFW) Post 2422*, Case No. 201600027812; *DFEH v. Shant Bhavan Punjabi Funeral Home, et al.*, Case Nos. 18CECG01472 and 18CECG00688; *DFEH v. Coca-Cola Refreshments USA, Inc.*, Case No. 2:17-cv-08243-DSF-SK (C.D. Cal.); *Department of Fair Employment and Housing v. Good Guys Pizza, Inc., et al.*, Case No. 2OSTCV05091 (L.A. Sup. 2021); *DFEH v. Canal Farms, the L.C. Dennis Company, Inc.*, Case No. 2016-cv-24272.

3.   <u>DFEH's Interests Are Adequately Represented by the EEOC.</u>

"When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). Here, the Commission and DFEH share the ultimate objective of protecting individuals from unlawful discrimination and have maintained a Worksharing Agreement for decades. In fact, as DFEH has conceded in communications regarding this matter, the two agencies have a common mission and purpose and common "equal employment authorities." Decl. of Rosa Viramontes, ¶ 13, Exh. D. The fact that EEOC and DFEH are at odds with respect to the narrow issue of whether the proposed Decree implicates DFEH's interests does not mean that we do not share an interest in enforcing civil rights laws. EEOC has and will continue to protect the interest of Californians from discrimination and harassment, even if it also has an additional interest in protecting all Americans. The EEOC has investigated and will continue to investigate alongside our state sister agencies to combat discrimination and harassment.

The implication of the Interagency Agreement is that each agency entrusted the other to adequately represent its interests with respect to the laws that each enforces, *i.e.* that EEOC entrusted DFEH to adequately represent its interest with respect to the relinquished pay and promotion claims and that DFEH entrusted EEOC to adequately represent its interests with respect to the sexual harassment claims it stated it would not pursue. This commitment is the backbone of worksharing agreements throughout the nation between EEOC and the state agencies that enforce parallel state antidiscrimination laws.

The specific issues raised by DFEH are "merely differences in strategy, which are not enough to justify intervention as a matter of right." *United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002); *Nw. For. Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) (where a would-be intervenor "took a 'different . . . position' than the [party to the action] did with respect to the district court's decision to enter a permanent

injunction" court considered this "only a difference in strategy[,]" insufficient to show that party did not adequately represent would-be intervenor's interests).

### 4. DFEH's Motion is Untimely.

"A party seeking to intervene must act as soon as he knows or has reason to know that his interest might be adversely affected by the outcome of the litigation." *Cnty. of Orange v. Air Cal.*, 799 F.2d 535, 538 (9th Cir. 1986). DFEH seeks to intervene after the parties have already reached a settlement, awaiting approval by this Court. DFEH protests that this is the first moment in which it could intervene, arguing it was rebuffed from participating in joint settlement efforts. Mot. at p. 13. This is inaccurate; DFEH was invited to coordinate with EEOC several times during and after EEOC concluded its investigation, including most recently when EEOC notified DFEH it was entering conciliation talks, but DFEH did not accept the offer. Viramontes Decl., ¶ 21. In contrast, DFEH did not even notify EEOC of its proposed mediation dates before filing. *Id.* ¶ 22. DFEH only reached out to EEOC regarding coordination after it filed suit. *Id.*, at ¶ 20. At this point, DFEH could no longer legally participate in conciliation, because Title VII makes conciliation a pre-litigation process with strict confidentiality requirements. 42 U.S.C. § 2000e–5(b). Defendants did not waive their right under Title VII to confidentiality with respect to an adverse party in public litigation. Decl. of Rosa Viramontes, ¶ 21. DFEH cannot now be heard to complain that it is left out of a resolution in which it had earlier opportunities to participate. *Cnty. of Orange*, 799 F.2d at 538  (denying motion to intervene to object to a consent decree, because "[t]o protect their interests, appellants should have joined the negotiations before the suit was settled.").

### 5. DFEH's Arguments About the Differences Between Title VII and FEHA Are Wholly Irrelevant.

DFEH cannot ground an interest in intervention in this case based upon purported differences between Title VII and FEHA. There are textual differences between Title VII

16

and FEHA, but they are overall comparable, as courts have recognized. *DFEH v. L. Sch. Admission Council, Inc.*, 941 F. Supp. 2d 1159, 1168 (N.D. Cal. 2013) ("Courts have recognized the similarities between Title VII and FEHA"(*citing Price v. Civil Serv. Com.*, 26 Cal.3d 257, 271 (1980) and *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996))). Even if we accepted arguendo that Title VII was comparatively weak – which we emphatically do not – it is hard to see how this weakness is relevant to any issue in this Action, which includes only a Title VII claim and no claim under FEHA. Because EEOC's action was brought only under Title VII, it is of no moment whether more or different relief could have been obtained under a different law. Any interest of DFEH's that exists uniquely under FEHA should be litigated in the pending state court action.

To the extent we do distinguish the two laws, it is plain that a FEHA claim would result in narrower relief. Title VII applies nationwide and is the vehicle through which the proposed Decree provides relief to Defendants' many out-of-state employees. In contrast, DFEH's lawsuit will necessarily exclude non-California employees. The injunctive relief that EEOC achieved in the proposed Decree also applies to Defendants' locations nationally. In addition, DFEH can and does pursue attorneys' fees and costs, which the EEOC does not, instead providing all money obtained as relief. Cal. Gov't Code § 12965(b). According to a DFEH press release, the attorneys' fees and costs it collects go back into its own budget. DFEH, Federal Court Awards DFEH Over $400,000 In Attorney's Fees In Contempt Litigation With Law School Admission Council, available at https://www.dfeh.ca.gov/wp-content/uploads/sites/32/2018/11/LSAC_PR.pdf ("Fees obtained by DFEH go to an Enforcement and Litigation Fund established by Government Code § 12907").

DFEH stresses that the federal claims in this lawsuit have caps that apply to compensatory damages. But DFEH cannot show that this difference will result in any claimant receiving less relief than she would under state law. Apart from the fact that

1   this is the second-largest harassment resolution in the EEOC's history nationally and the

2   largest in this District, it is extremely speculative to argue, from outside the negotiating

3   process, that more could have been obtained. To the extent DFEH implies to any harmed

4   individuals that their recovery will be greater in the state action, it is also being

5   irresponsible with respect to its ethical duties; attorneys owe an ethical duty not to

6   guarantee or even imply a guarantee of any specific result in litigation. *See* Comment [3]

7   and [4] to California Rule of Professional Conduct 7.1, "Communications Concerning a

8   Lawyer's Services" (also citing Bus. & Prof. Code, § 6157.2, subd. (a)); Comment [3] to

9   ABA Rule 7.1, "Communications Concerning a Lawyer's Services". Moreover, it is far

10  from clear that DFEH's involvement would result in any greater recovery. According to

11  a review of DFEH's press releases regarding its own settlements and judgments, it has

12  never had a sexual harassment settlement or judgment of this size. The largest that we

13  could find was for *one-tenth* of this settlement, $1.8 million, $360,000 of which went to

14  DFEH as attorneys' fees. Request for Judicial Notice, Exh. C.

15      DFEH has advanced a framing of this case in which the settlement value should

16  be compared to the operating budget of the company or the pay of executives. Mot. at p.

17  6. But DFEH knows that achieving large punitive damage awards is rare, risky, and

18  requires a judgment after trial – after which the award is often reduced on appeal or by

19  the sitting judge. Whether it would in some sense be ideal to peg damages to CEO pay

20  for deterrence purposes is not at issue here; neither statute – Title VII nor FEHA –

21  provides for this. Several factors beyond the underlying laws affect settlement

22  negotiations, including the particular facts of the potential claimants identified,

23  calculations regarding the size of the potential class, reticence of some potential

24  claimants to litigate, and, most of all, avoidance of the risk inherent to litigation in favor

25  of the certainty of settlement. The EEOC's position in settlement negotiations was based

26  on a three-year investigation in which it interviewed hundreds of witnesses and potential

27  claimants, reviewed thousands of pages of company records, questioned several

28

executives, HR personnel and managers, and used its expertise to apply Title VII to the facts. DFEH is not in a position to question the findings of that investigation.

The impact of the differences between Title VII and FEHA on any particular case is, like all of DFEH's arguments for its intervention in this case, extremely speculative and results in no practical difference. *G&G Prods., LLC,* 2019 WL 1976451, at *4. Such guesswork provides no basis for a protectable interest required for DFEH to intervene.

For all of the foregoing reasons, DFEH does not have an absolute right to intervene in this matter, and its intervention would jeopardize relief for the nationwide class of claimants. This Court should reject this effort to derail a settlement of Title VII claims agreed to by the federal enforcement agency tasked with enforcing Title VII.

### B. Permissive Intervention Should be Denied under Federal Rule of Civil Procedure 24(b) Because DFEH Cannot Meet the Threshold Requirements And Lacks an Interest in This Federal Lawsuit.

"Intervention is governed by Fed. R. Civ. P. 24, which permits two types of intervention: intervention as of right and permissive intervention." *Nw. Forest Res. Council*, 82 F.3d at 836. "An applicant who seeks permissive intervention [under FRCP 24(b)] must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Cooper,* No. 18-16547, 2021 WL 4203343, at *10 (9th Cir. Sept. 16, 2021).[7] Here, DFEH is unable to

---

[7] Where these threshold factors are met, courts then consider a number of factors in determining whether to permit intervention, including: "the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case[,] whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011).

1    meet the threshold requirements in order to seek permissive intervention and lacks a

2    sufficient interest in these federal proceedings to justify such intervention.

3        1.  <u>DFEH Cannot Meet the Threshold Requirements for Permissive Intervention.</u>

4            First, and fatal to DFEH's claim for permissive intervention, this Court lacks any

5    independent jurisdictional basis to hear its claims. All Defendants are citizens of

6    California, as is DFEH, precluding diversity jurisdiction. 28 U.S.C. § 1332. DFEH's

7    claims in its underlying lawsuit and here are limited to California state law; it does not

8    assert any claim under Title VII, meaning that any claims by DFEH necessarily do not

9    present federal questions. 28 U.S.C. § 1331. Thus, there is no independent basis for this

10   Court's jurisdiction over the issues that DFEH is raising. The correct forum for these

11   questions is the state court action currently pending in Los Angeles Superior Court.

12   Also, as argued above, DFEH has failed to show that this Motion is timely. Timeliness is

13   an even stricter element for permissive intervention than for intervention as of right. *See*

14   *LULAC*, 131 F.3d at 1302, 1308 (while timeliness is a threshold requirement for both

15   intervention of right and permissive intervention, "[i]n the context of permissive

16   intervention . . . we analyze the timeliness element more strictly than we do with

17   intervention as of right").

18           Finally, there is no litigation left to conduct that will present "common questions

19   of law or fact" as the parties have reached a settlement agreement. Title VII and the

20   California Fair Employment and Housing Act ("FEHA") are two separate laws, which

21   DFEH takes great pains to distinguish in its Motion, claiming that Title VII lacks

22   protections that FEHA includes. DFEH's focus on the differences between the two laws,

23   rather than their similarities, undermines any argument that it seeks to intervene based

24   on a common question of law and there are no facts left to be determined in this forum.

25       2.  <u>The Other Factors Courts Consider in Granting Permissive Intervention Also</u>
         <u>Weigh Against DFEH.</u>

26

27

28

"Even if an applicant satisfies [the] threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). For many of the same reasons provided above, DFEH lacks a significant interest that is impacted by the proposed Decree. The arguments put forward by DFEH that its interest will be in any way impacted by the entering of the proposed Decree are speculative. The proper forum for DFEH's claims is state court. The intervention of DFEH into this matter to continue spreading misinformation about the proposed Decree will only confuse potential claimants, prejudice the parties, and delay justice for potential class members.

The Court has already heard the arguments the DFEH will make in its Motion and can consider them, to the extent the Court deems appropriate, in its decision regarding whether to sign the proposed Decree or order a fairness hearing. It is not necessary for DFEH to intervene and make these arguments again as an Objector. DFEH has already accomplished the purpose of its proposed intervention.

**C.    The Proposed Consent Decree Before This Court is Fair, Adequate and Reasonable and Should Be Approved.**

1.    <u>There is a Strong Presumption in Favor of Approving Settlements by Government Agencies, Including EEOC.</u>

The Ninth Circuit has held that the "universally applied standard" by which to judge settlements is whether they are "fair, adequate, and reasonable." *Officers for Justice v. Civil Serv. Comm'n of City and Cnty. Of San Francisco*, 688 F.2d 615 (9th Cir. 1982).  Indeed, "[u]nless a consent decree is unfair, inadequate, or unreasonable, it ought to be approved."  *S.E.C. v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984). When considering whether to enter a proposed consent decree, district courts "should be guided by the general principle that settlements are to be encouraged." *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1981). "[A] trial court approving a settlement need not inquire in the precise legal rights of the parties nor reach and resolve

1  the merits of the claims or controversy. In fact, it is precisely the desire to avoid a

2  protracted examination of the parties' legal rights that underlies entry of consent

3  decrees." *Bragg v. Robertson*, 83 F.Supp.2d 713, 717 (S.D. W.Va. 2000).

4        Furthermore, it is well-settled that voluntary settlement is the favored method of

5  obtaining relief for unlawful employment discrimination. In enacting Title VII,

6  "Congress has specifically endorsed voluntary compliance and settlement as the

7  preferred means of achieving the elimination of unlawful employment discrimination."

8  *Moore v. City of San Jose*, 615 F.2d 1265, 1271 (9th Cir. 1980) (citing *Alexander v.*

9  *Gardner-Denver Co.*, 415 U.S. 36 (1977)). As the Supreme Court explained, consent

10  decrees "are entered into by parties to a case after careful negotiation has produced

11  agreement on their precise terms… the agreement reached normally embodies a

12  compromise; in exchange for the saving of cost and elimination of risk, the parties each

13  give up something they might have won had they proceeded with litigation." *United*

14  *States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971).

15        Specific to decrees entered into by the government, "the courts should pay

16  deference to the judgment of the government agency which has negotiated and submitted

17  the proposed judgment." *Randolph*, 736 F.2d at 529 (citing *Marshall v. Holiday Magic,*

18  *Inc.*, 550 F.2d 1173, 1178 (9th Cir.1977)); s*ee also United States v. Akzo Coatings of*

19  *Am., Inc*., 949 F.2d 1409, 1436 (6th Cir. 1991) (noting judicial deference towards

20  approving settlements is particularly strong where the decree has been negotiated by

21  government attorneys on behalf on a government agency that is an expert in its field).

22        Significantly, courts have long recognized the EEOC's important role in seeking

23  relief under federal law in order to fulfill its mission to eradicate employment

24  discrimination on behalf of the public interest and "vindicate rights belonging to the

25  United States as a sovereign." *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1519 (9th Cir.

26  1989) (internal citations omitted). "Given the primary enforcement power of the EEOC

27  [] and the EEOC's duty to further the public interest," courts give deference "to the

28

1    EEOC's acceptance of" consent decrees. *Wilkerson v. Martin Marietta Corp.,* 171

2    F.R.D. 273, 288 (D. Colo. 1997) (emphasis added). "Deference is particularly

3    appropriate [] since an EEOC enforcement action simply does not raise the same

4    concerns as private class actions," including class counsel fees and "named plaintiffs,

5    who want a greater share of the settlement." *Id*. at 289 (emphasis added).  The EEOC,

6    "whose sole objective is furtherance of the public interest," receives no fees or costs

7    from the settlement. *Id*.

8           In this case, EEOC respectfully requests that deference be afforded to the

9    Commission's negotiation of the instant Decree, which significantly advances the public

10   interest and fulfills the critical mission of eradicating employment discrimination under

11   federal law. As explained below, the Decree is the product of months-long arm's-length

12   negotiations and is patently fair, adequate, and reasonable.

13          2. <u>The Proposed Consent Decree is Fair, Adequate and Reasonable</u>.

14          The proposed Decree is fair because it provides significant monetary

15   compensation for eligible claimants subjected to sexual harassment, pregnancy

16   discrimination, and/or related retaliation. As Defendants have disputed the claimants'

17   entitlement to relief, the Decree affords a certain remedy in lieu of an uncertain outcome

18   through the litigation process. As emphasized above, harmed individuals' participation

19   in the relief is optional; each individual will be provided with her own counsel at no cost

20   to ensure that the decision to participate or not is fully informed. The amount of relief is

21   patently adequate; it is one of the largest amounts ever achieved by the EEOC's Los

22   Angeles District Office for any case and also one of the largest amounts ever achieved

23   by the EEOC as a whole for a sexual harassment case. Further, the claims process

24   through which this money will be allocated is fair, providing for private counsel for

25   potential claimants, a third-party claims administrator to receive claims and evaluation

26   by the EEOC of each claim for relief.

27

28

Additionally, the Decree is fair because Defendants have agreed to comprehensive injunctive relief through which Defendants will create safeguards and protections for current and future employees to ensure that they are protected from future violations of Title VII.  Nowhere does DFEH criticize the substance of the injunctive relief obtained, focusing only on the money, claims process, and victim-specific relief. This is because the injunctive relief aimed at changing Defendants' culture is extremely comprehensive. In particular, the designation of an external, third-party EEO Consultant to conduct audits and oversee investigations, complaint handling, and disciplinary measures is intended to measurably improve Defendant's employment practices. The provisions are similar to those of other EEOC Consent Decrees which have been approved.[8] In fact, this Decree includes even more extensive relief than is usual, adding provisions to protect interns and workers placed by staffing agencies and to provide counseling services for employees who experienced sexual harassment or other trauma.

Furthermore, the reasonableness of a proposed decree should be measured against the cost of litigation and the potential outcome if the case went to trial. Both parties and the Court would have had to spend significant resources and time to litigate this case, especially as the case involves multiple claimants with national reach. A trial would not occur for several years. Most importantly, litigation of this matter would have required individual claimants to be deposed and subjected to discovery and for some of their allegations and names to potentially become public. Many individuals currently involved expressed reticence about these aspects of litigation given the sensitive nature of the sexual harassment claims involved. Thus, a settlement at this juncture has significant

---

[8] *See EEOC v. Del Taco, LLC*, Case No.  5:18-cv-01978 (C.D. Cal. 2020) ECF No. 61; *EEOC v. Alorica, Inc.*, Case No. 1:17-cv-01270 (E.D. Cal. 2018) ECF No. 26;  *EEOC v. Hathaway Dinwiddie Constructive Co.*, Case No. 2:20-cv-06741 (C.D. Cal. 2021) ECF No. 26; *EEOC, Erika Morales and Anonymous Plaintiffs One through Eight v. ABM Industries, Inc.*, Case No. 1:07-cv-01428 (E.D. Cal. 2010) ECF No. 287; *EEOC  v. Kimco Staffing Servs., Inc.*, No. 5:19-cv-01838 (C.D. Cal Sept. 25, 2019); *EEOC v. Cardinal Health 200, LLC.*, No. 5:19-cv-00941 (C.D. Cal. May 21, 2019).

value to all involved. As demonstrated by the terms of the decree, the Court should approve the Parties' proposed Decree because it is fair, adequate, and reasonable.

      3. <u>The Specific Provisions Criticized by DFEH Are Fair.</u>

      DFEH specifically criticizes other aspects of the proposed Decree, including the lack of a statement of the maximum recovery possible at trial in this case, the provision of private, independent counsel to advise potential claimants for one hour each, and the fact that the proposed release is not provided as an attachment for their scrutiny. Even if all of these criticisms were accepted for the sake of argument, they would not be sufficient to find that, on balance, the proposed Decree is unfair. Nonetheless, none of these provisions is extraordinary, and they have all been approved by courts in other decrees.

      a. <u>The Decree Need Not Include the Estimated Maximum Recovery At Trial or Specific Calculations of Relief Per Claimant Because EEOC is Not Subject to Rule 23 Class Certification Requirements.</u>

      DFEH argues that EEOC has failed to abide by the "fairness standards in this circuit" because EEOC has not explained in the Decree what workers' maximum monetary recovery could be in successful litigation. DFEH Mot. at p. 20-21. However, the fairness standards to which DFEH refers do not govern the Decree in this case. There is no requirement that to be fair or just, an EEOC decree must explain what workers' potential monetary recovery could be in successful litigation. No court has ever required a decree to include that figure as a prerequisite for meeting the fairness standards.

      Moreover, the cases DFEH cites are inapplicable to the fairness standards at issue in this case. DFEH cites cases in which courts evaluated the fairness of class settlements under Federal Rule of Civil Procedure 23(e) and its progeny. Rule 23(e) requires a district court to determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable." The Ninth Circuit has suggested that when evaluating a Rule 23 class settlement, the Court compare the settlement amount to the parties

"estimates of the maximum amount of damages recoverable in successful litigation." *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The cases DFEH cites evaluate the fairness of the respective settlements based explicitly on Rule 23 and the case law interpreting it.[9]

However, Rule 23(e) and the cases interpreting it do not govern the proposed Decree here because the EEOC is exempt from the requirements of Rule 23. *See Gen. Tel. Co. of the Nw., Inc.*, 446 U.S. at 323 ("Rule 23 is not applicable to an enforcement action brought by the EEOC in its own name and pursuant to its authority under § 706 to prevent unlawful employment practices."); *accord EEOC v. Dinuba Med. Clinic*, 222 F.3d 580, 587 (9th Cir. 2000) (applying the holding of *Gen. Tel. Co. of the Nw., Inc.* because the Supreme Court reached its "conclusion without any qualifications based on the type of relief sought"); *see also EEOC v. Pan Am. World Airways*, *Inc.*, 1988 WL 224232, at *9 (N.D. Cal. June 17, 1988). The Supreme Court has stated that "forcing EEOC civil actions into the Rule 23 model would in many cases distort the Rule as it is commonly interpreted and in others foreclose enforcement actions not satisfying Rule 23 standards but seemingly authorized by [Title VII] § 706(f)(1)." *Id.* at 329-30. Thus, it is abundantly clear that EEOC's "authority to bring [its] actions [under § 706] is in no way dependent upon Rule 23, and the Rule has no application to a [Title VII] § 706 suit." *Id.* at 324 (emphasis added).[10]

---

[9] *See Litty v. Merrill Lynch & Co.*, 2015 WL 4698475, at *8-*10 (C.D. Cal. Apr. 27, 2015) (applying Rule 23(e) factors and citing, *inter alia*, *Mego*); *Custom Led, LLC v. eBay, Inc.*, 2013 WL 4552789, at *9 (N.D. Cal. Aug 27, 2013) (evaluating settlement based on case law interpreting Rule 23); *Cordy v. USS-Posco Indus.*, 2013 WL 4028627, at *4 (N.D. Cal. Aug 1, 2013) (same and citing *Mego*).

[10] Moreover, the calculations that DFEH provides regarding how the Class Fund could be divided among claimants are misleading and disingenuous. Dividing the amount of recovery that DFEH or any civil rights agency has achieved in each of its cases by the size of the employer's entire workforce would also result in small amounts per case. DFEH knows that employment class cases are not valued based on the unreasonable assumption that *every single worker* has a valid claim and will come forward to accept relief.

b. <u>The Provision of Private Counsel to Potential Claimants Is Not Only Fair But Serves as a Safeguard for Individuals' Rights</u>.

DFEH argues that the provision regarding independent counsel to potential claimants to advise them regarding releases is unfair. As stated above, DFEH, as an institution with an interest that may be adverse to potential claimants, should not be advising them about the releases. The independent counsel provision is designed to safeguard individuals' rights by providing a neutral third party, whom the individuals have a right to select, and who represents *their* interests. DFEH argues that the amount of attorney fees and/or amount of time provided for is insufficient. However, similar provisions requiring Defendants to pay for advice of private counsel for potential claimants for similar amounts of time or fees have been routinely approved by courts in EEOC consent decrees.[11] There is no evidence that these limits on paid attorney time or fees has unfairly deprived any individual of the right to effective counsel or the ability to make a knowing and voluntary release of claims, and EEOC's involvement in the referral of attorneys to eligible claimants will eliminate any possibility of such unfairness.

c. <u>Courts Routinely Approve Consent Decrees Without Evaluating the Text of Releases</u>.

---

[11] *See*, e.g., *EEOC v. La Rana Hawaii, LLC dba Senor Frog's, et al.*, Case No. 1:11-cv-00799 (D. Hawaii 2013), ECF No. 86 at p. 7 ("Defendant and each Claimant have entered into a separate and independent release agreement, to which the EEOC is not a party. Defendant agreed to pay an additional $250.00 per Claimant for private counsel to review and advise each Claimant regarding the separate agreement"); *EEOC v. Maurizio's Trattoria Italiana, LLC*, (S.D. Cal. 2020) (provided $300 for one hour of counsel); *EEOC v. Alia Corporation dba McDonalds*, (E.D. Cal. 2013) ("Defendant will pay up to $500.00 for private counsel to review and advise Charging Party regarding the separate and independent agreement."); *EEOC v. Oceanic Time Warner Cable LLC dba Spectrum, et al.*, Case No. 1:18-cv-00357 (D. Hawaii 2020) ECF No. 50 at p. 43 (release included provision for $250 for private counsel); *EEOC v. Discovering Hidden Hawaii Tours, Inc.*, et al., Case No. 1:17-cv-00067 (D. Hawaii 2018) ECF No. 38 at p. 8 (release provided $250 for private counsel); *EEOC v. Big Lots Inc.*, Case No. 2:08-cv-06355 (N.D. W. Va. 2017) ECF No. 36, at 6:21-7:6, 2/16/2010 (provided $200 for private counsel).

DFEH argues that the EEOC should have attached the proposed release when the parties filed the proposed Decree. Mot. at p. 23. Courts, including this one, routinely approve EEOC Consent Decrees without requesting to review the release of claims.[12] That is because the courts have trusted the federal government to carry out its duties to serve the public interest. If the Court determines a review is necessary, the parties will provide a copy of the propose release to the Court. But such a review is not within DFEH's power to request, and it should not be within the state's power to edit releases in a federal case.

In addition, DFEH seeks the extraordinary remedy for this Court to issue a notice to all California potential claimants implying that California law is superior to Title VII. Mot. at p. 24. DFEH asks this Court to improperly endorse a pending state matter with an uncertain outcome.

In sum, the EEOC did not deviate from the Regional Attorneys' Manual for these Defendants or treat them any differently from how it treats Defendants routinely. This Decree was negotiated at arms-length and necessarily reflects a compromise. DFEH is not in any special position to raise objections to the areas in which the EEOC compromised with Defendants and, in any event, can seek its own relief in state court.

As this Decree is fair, adequate, reasonable, it should be approved. With respect to DFEH's request for a fairness hearing, the EEOC does not believe it is within DFEH's

---

[12] *EEOC v. Alorica, Inc.*, Case No. 1:17-cv-01270 (E.D. Cal. 2018) ECF No. 26; *EEOC v. Hathaway Dinwiddie Constructive Company*, Case No. 2:20-cv-06741 (C.D. Cal. 2021) ECF No. 26; *EEOC, Erika Morales and Anonymous Plaintiffs One through Eight v. ABM Industries, Inc., et al.*, Case No. 1:07-cv-01428 (E.D. Cal.) ECF No. 287; *EEOC v. Bay Club Fairbanks Ranch, LLC, et al.*, Case No. 3:18-cv-01853 (S.D. Cal) ECF No. 155; *EEOC v. Marquez Brothers International, Inc., et al.*, Case No. 1:17-cv-00044 (E.D. Cal. 2019) ECF No. 144; *EEOC v. Lowe's Companies, Inc., et. al.*, Case No. 2:16-cv-03041 (C.D. Cal. 2016) ECF No. 11; *EEOC v. Prestige Care, Inc., et al.*, Case No. 1:17-cv-01299 (E.D. Cal. 2020) ECF No. 89; *EEOC v. Lucinda Management, LLC, et al.*, Case No. 2:17-cv-02458 (D. Nev. 2019) ECF No. 61.

power to request such a hearing. It would be rare for a court to order a fairness hearing in one of EEOC's cases absent indicia of unfairness, inadequacy or unreasonableness on the face of the Decree, which are not present here. More than enough state, federal, and judicial resources have been spent on this matter.  Nonetheless, this decision rests with the Court, and EEOC is ready to respond to any concerns the Court may have.

## IV. CONCLUSION

For the foregoing reasons stated herein, and in the interests of justice, the EEOC respectfully requests that DFEH's motion to intervene and request for other relief be denied in their entirety and that the pending Consent Decree be approved.


Respectfully submitted,


Dated: October 8, 2021            U.S. EQUAL EMPLOYMENT OPPORTUNITY

                                  COMMISSION



                                  By: S/ Taylor Markey
                                      Senior Trial Attorney
                                      E-Mail: taylor.markey@eeoc.gov