Exhibit A

**JML LAW**
A PROFESSIONAL LAW CORPORATION
5855 TOPANGA CANYON BLVD., SUITE 300
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 610-8800
Fax: (818) 610-3030

JOSEPH M. LOVRETOVICH, STATE BAR NO. 73403
NICHOLAS W. SARRIS, STATE BAR NO. 242011

Attorneys for Plaintiff Jess Negron

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

| | |
|---|---|
| MELANIE MCCRACKEN, an individual; JESSICA NEGRON, an individual; and GABRIELA DOWNIE, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> RIOT GAMES, INC., a Delaware corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. <br> _____ <br><br> AND RELATED COMPLAINTS IN INTERVENTION <br> _____ | Case No.:  18STCV03957 <br><br> *Assigned to Hon. Elihu M. Berle in Dept. 6* <br><br> **CLASS ACTION** <br><br> PLAINTIFFS' OPPOSITION TO THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S EX PARTE APPLICATION REGARDING JURISDICTIONAL ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF NICHOLAS W. SARRIS <br><br> Date: September 9, 2021 <br> Time: 8:30 a.m. <br> Dept.: 6 |

1

1      Plaintiffs, on behalf of themselves and all similarly situated individuals, hereby submit

2  the following opposition to the Department of Fair Employment and Housing's Ex Parte

3  Application Regarding Jurisdictional Issues.  This opposition is based upon the foregoing

4  Memorandum of Points and Authorities, the Declaration of Nicholas W. Sarris, and the files and

5  records in this matter.

6

7

8  DATED:     September 10, 2021      GENIE HARRISON LAW FIRM, APC

9

10               By:   */s/ Genie Harrison*

11                  GENIE HARRISON

12                  MIA MUNRO
                    ANDIE FIELDS

13                  Attorneys for Plaintiffs

14  DATED:     September 10, 2021      JML LAW, A Professional Law Corporation

15

16               By:   */s/ Nicholas W. Sarris*

17                  JOSEPH M. LOVRETOVICH

18                  NICHOLAS W. SARRIS
                    BROOKE C. BELLAH

19                  Attorneys for Plaintiffs

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO THE DEPARTMENT OF FAIR EMPLOYMENT AND
HOUSING'S EX PARTE APPLICATION REGARDING JURISDICTIONAL ISSUES

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

*Power tends to corrupt and absolute power corrupts absolutely.* – Lord Acton.

In a blatant attempt by the DFEH to gain absolute power over the course of this litigation by removing the women who have come forward to prosecute this action as Plaintiffs, DFEH seeks an ex parte order allowing DFEH to file what is effectively a motion for summary judgment against Plaintiff Downie on the issuing of standing.  Apparently, DFEH is angered by Riot's failure to file a motion for summary judgment against Plaintiff Downie, particularly since DFEH wasted taxpayer dollars sending an advisory letter to Riot (a letter on which DFEH did not copy Plaintiffs' counsel) explaining why DFEH believes Plaintiff Downie lacks standing, so DFEH now asks the Court to intervene.  The DFEH's bravado, while impressive in its size, is disturbing because its actions seek to disenfranchise the women of Riot by preventing their participation in this case and leaving DFEH with unfettered control over the case's process and outcome. To say that DFEH''s conduct is disturbing is an understatement.

First and foremost, Plaintiff Downie has standing as she did not settle her individual claims that form the basis for this putative class action.[1]  (Declaration of Nicholas Sarris, para. 2).  The settlement agreement between Plaintiff Downie and Riot relates to Plaintiff Downie's individual claims that are distinct from the claims asserted in the class action.  (See Proctor Declaration, Ex. 1, pg. 1, para. A.).  The settlement agreement also explicitly excludes the claims alleged in this class action (Proctor Decl., Ex. 1, pg. 2, para. 2(b)) and permits Plaintiff Downie to participate as a representative and class member in this class action (Proctor Decl., Ex. 1, pg.

---

[1] Once again, DFEH misleads this Court by stating that the individual complaint filed by Plaintiff Downie was virtually identical to the class action.  In her individual complaint, Plaintiff Downie also asserted causes of action for Violation of Statutory Rights (Cal. Civ. Code §3344) and Violation of Common Law Rights of Publicity.  (See Complaint entitled Gabriella Downie v Riot Games, Case no. 18STCV09833 filed in the Los Angeles Superior Court.  With respect to those claims in Plaintiff Downie's individual complaint that overlapped the class action, those claims were specifically excluded from the settlement.  (Sarris Decl., para. 2).

PLAINTIFFS' OPPOSITION TO THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S EX PARTE APPLICATION REGARDING JURISDICTIONAL ISSUES

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

2, para. 2(d)).  Finally, the supplemental mutual release also explicitly does not apply to this class action.  (Proctor Decl., Ex. 1, pg. 12, para. 1(b)).

In its ex parte application, DFEH misleads this Court by failing to inform the Court that Riot has admitted in discovery responses that Plaintiff Downie did not settle her individual claims that are asserted in the putative class action.  Specially, Riot confirmed the following under penalty of perjury:

(1)  Plaintiff Downie is a member of the putative class as described in the Third Amended Complaint ("TAC"); (Sarris Decl., Exhibit 1, Response to Request for Admission ("RFA") No. 10)

(2)  Plaintiff can still pursue any of the claims that are currently alleged on behalf of the class in the above-listed action on an individual basis; (Sarris Decl, Ex. 1, Response to RFA No. 22)

(3)  Plaintiff Downie's settlement agreement does "not impair or otherwise impact [her] abilities to represent the class, participate in the class as [a] class member[], and/or recover as [a] class member[s] in the action."  (Sarris Decl, Ex. 1, Response to RFA No. 26).

As such, DFEH's argument that Plaintiff Downie lacks standing thereby depriving this Court of jurisdiction is complete nonsense.

Second, DFEH's ex parte application fails to establish any irreparable harm or immediate danger justifying ex parte relief.  No MSC is scheduled, no settlement has been reached, no negotiations have taken place since 2020 and no settlement has been presented to this Court for approval.  Moreover, any party can request a MSC pursuant to California Rules of Court.  If Plaintiff and Riot ultimately request an MSC, DFEH can certainly attend, and Plaintiffs' counsel hopes that DFEH would attend.  In fact, Plaintiffs have repeatedly sought DFEH's participation in settlement discussions, including inviting DFEH to participate in a mediation with Mark Rudy for which Plaintiffs and Riot paid at no cost to DFEH.  Despite DFEH's repeated unprofessional behavior in this case, Plaintiffs still prefer to have DFEH attend further mediations and/or an MSC.  But Plaintiffs believe it is completely inappropriate for DFEH to attempt to prevent

PLAINTIFFS' OPPOSITION TO THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S EX PARTE APPLICATION REGARDING JURISDICTIONAL ISSUES

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

Plaintiffs from discussing potential resolution with Riot.  It is disheartening that DFEH views a path forward towards possible resolution as a bad thing.  (Sarris Decl., para. 4).

Third and finally, the sole purpose of this ex parte is for DFEH to eliminate Plaintiffs and their counsel from this case so that DFEH can be the sole decision maker in how the case is prosecuted.  This motivation is evidenced by DFEHs attempt to persuade Riot to move against Plaintiffs to assert the DFEH's frivolous alleged jurisdictional analysis behind the backs of Plaintiff as previously described.  (Sarris Decl., para. 5).  DFEH's pattern of attempting to have sole control over this litigation is also evidenced by DFEH's conduct in another matter with similar allegations to this case, *Department of Fair Employment and Housing v. Activision Blizzard, Inc.*, et al., Case No. 21STCV26571, which was recently filed in Los Angeles Superior Court.  In the *Activision* case, DFEH attempted to dissuade the women working at Activision/Blizzard from speaking with private counsel when it sent the following email to female employees of Blizzard:

> We also wanted to follow up and alert you that you may be contacted by private attorneys seeking to become your attorney for this case. It is unnecessary and may be misleading or confusing.  A private attorney would have to file suit in your name or get the court's permission for you to intervene as a named plaintiff in this matter.  Please let us know if any attorney attempts to solicit your business for this case. (Emphasis added).  (Sarris Decl., para. 6-7, Ex. 2).

The above email makes clear that DFEH does not want private attorneys, other than perhaps counsel it hand-picks and can control, involved in cases where DFEH is a participant. Worse yet, DFEH is actively telling women that it is unnecessary for them to retain private counsel.  The fact is that DFEH represents the interests of the DFEH, not the women who are affected by these lawsuits.

Any settlement of this case by Plaintiffs would require approval by this Court – regardless of whether such settlement was achieved through an MSC -- notification of the class and an opportunity for class members to object or opt out.  But DFEH is devoid of such accountability, which is why it wants Plaintiffs' counsel out; the mere presence of Plaintiffs' counsel ensures that the women of Riot will have their interests heard.  (Sarris Decl., para. 8).

As the record clearly indicates, Plaintiffs' counsel has not placed the DFEH in a position where they must seek emergency relief or else face the loss of any of the DFEH's rights. Plaintiffs and their counsel have neither taken any action to prevent the DFEH's involvement in any settlement discussions nor submitted a settlement to this Court for approval.  If that day comes, DFEH can file all the objections it wants, and this Court will be the arbiter of whether any such settlement is fair and reasonable.  But until then, DFEH should not be permitted to interfere with the putative class action, particularly through frivolous ex parte motions.  (Sarris Decl., para. 9).

## II.    LEGAL ARGUMENT

### A.   THE DFEH HAS FAILED TO MAKE AN AFFIRMATIVE SHOWING OF IRREPARABLE HARM, IMMEDIATE DANGER, OR ANY OTHER STATUTORY BASIS FOR ITS EX PARTE APPLICATION

California Rule of Court, Rule 3.1202(c) states:

> An applicant must make an affirmative factual showing in a declaration containing competent testimony based on personal knowledge of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte.

"A trial court should deny an ex parte application absent the requisite showing." *People ex rel. Allstate Ins. Co. v. Suh* (2019) 37 Cal.App.5th 253, 257.

Here, DFEH has failed to meet its burden of establishing that it faces irreparable harm or immediate danger.  While DFEH claims that it might lose its rights, Plaintiffs and Riot have neither the power nor the authority to settle the putative class such that they could bar the DFEH's claims.  While Plaintiffs and Riot could, in theory, enter into a settlement agreement (presuming, of course, that Riot would be willing to pay what Plaintiffs believe to be a fair and adequate settlement)[2], this Court must preliminarily approve the settlement, give the women of

---

[2] As an aside, we also note that DFEH's suggestion that sufficient discovery has not occurred such that a MSC should not proceed is ridiculous being that DFEH had no problem participating in a mediation with Mark Rudy in 2020 when the parties had less information.  Moreover, the parties possess a statistically significant amount of data such that a settlement framework could be achieved presuming the terms of a settlement can be reached.

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

PLAINTIFFS' OPPOSITION TO THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S EX PARTE APPLICATION REGARDING JURISDICTIONAL ISSUES

1  Riot the opportunity to be heard and, if all goes well, grant final approval.  It is this Court that

2  holds the power to determine the implications of any settlement, not Plaintiffs and not Riot.

3       Based upon the aforementioned facts and law, Plaintiffs respectfully request that the

4  Court deny the DFEH's *ex parte* application as the DFEH has failed to present any evidence of

5  irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte.

**B.  PLAINTIFF DOWNIE HAS STANDING AND THUS NO JURISDCITIONAL ISSUE EXIST.**

8       DFEH is also completely wrong in its assertion that jurisdictional issues exist in this case.

9  In *Watkins v. Wachovia Corp.* (2009) 172 Cal.App.4th 1576, Plaintiff brought a class action

10  against Wachovia seeking damages for unpaid overtime compensation for herself[3] and a

11  purported class of similarly situated workers.  The trial court denied Watkins's motion for class

12  certification, and she subsequently settled all of her claims against Wachovia but attempted to

13  retain the right to appeal the denial of class certification in her representative capacity.

14  Importantly, the settlement of Watkins's individual claims was not limited to her claims related

15  to wrongful termination, but also encompassed her overtime claims. Further, <u>Watkins agreed that</u>

16  <u>if the class action was ultimately successful, she would not be entitled to any class recovery</u>.

17  *Watkins v. Wachovia Corp.*, 172 Cal. App. 4th 1576, 1584–85 (2009).

18       In holding that Watkins lacked standing to pursue her wage claims on behalf of the class,

19  the court relied upon the fact that "Watkins settled her wage claim. Watkins did not simply settle

20  her individual wrongful termination claim, leaving her wage claim—which was asserted as a

21  class action—untouched. Instead, she settled her wage claim and agreed that, if the class was

22  somehow ultimately successful in obtaining relief, she would not be entitled to participate in that

We also note that DFEH's characterization of the discovery efforts made by Plaintiffs is incorrect and offensive.  While we have very strong opinions about the DFEH's litigation style and its lack of effectiveness in advancing the interests of the women of Riot, we will not waste the Court's time with the details of our critiques.

[3] There were actually multiple Plaintiffs in *Watkins*, but their claims are not pertinent to the analysis.

7

PLAINTIFFS' OPPOSITION TO THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S EX PARTE APPLICATION REGARDING JURISDICTIONAL ISSUES

relief." *Id*. at 1588.  As a result, the Court held that "if the class is ultimately certified and obtains a recovery, the settling plaintiff cannot share in it, having already received <u>complete recovery</u>." *Id*. at 1592 (emphasis added).

Unlike in *Watkins*, it is undisputed that Plaintiff Downie did not settle her claims asserted in the putative class action.  In this regard, we note Riot's response to Plaintiff Downie's Request for Admission No. 13, which states in pertinent part:

> Riot admits that Riot and Plaintiff Downie did not settle Downie's individual claims against Riot that were brought on behalf of a putative class in the Second Amended Complaint before Riot's submission of Catherine Conway's Declaration to the Court on March 5, 2020.

Moreover, Riot has also confirmed in in response to Plaintiff Downie's Request for Admission No. 26 that Plaintiff Downie's settlement agreement does "not impair or otherwise impact [her] abilities to represent the class, participate in the class as [a] class member[], and/or recover as [a] class member[s] in the action."

As the evidence clearly establishes that Plaintiff Downie has not obtained complete recovery and has specifically not released either her individual or class claims asserted in the Third Amended Complaint, Plaintiff Downie has standing to pursue the putative class action. We have repeatedly explained this to the DFEH to no avail.

As to DFEH's assertion that the Court lacks jurisdiction, DFEH's citation to *Watkins* is not accurate; the portion of the opinion cited as pertaining to jurisdiction is actually found on page 1588, not 1592.[4]  Next, the full text of DFEH's cherry-picked quote provides context for the question of whether jurisdiction is at issue in our case:

> We begin with the premise that courts will not render opinions on moot questions. (*Larner v. Los Angeles Doctors Hospital*

---

[4] Oddly, DFEH made the same citation error in its secret letter to Riot.  Plaintiffs' counsel pointed this error out to DFEH and Riot, but DFEH did not correct this mistake.  This leads Plaintiffs' counsel to believe that DFEH is not reading correspondence sent in this case by Plaintiffs' counsel and thus is not engaging in good faith discussions with counsel over the legal issues it now raises with the Court.

8

PLAINTIFFS' OPPOSITION TO THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S EX PARTE APPLICATION REGARDING JURISDICTIONAL ISSUES

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

*Associates, LP* (2008) 168 Cal.App.4th 1291, 1296, 86 Cal.Rptr.3d 324.) When the parties to a case have settled their underlying dispute, dismissal of the appeal as moot is appropriate because the settlement moots the issues on appeal. (*Id*. at pp. 1296–1297, 86 Cal.Rptr.3d 324.) This is true even when the parties' agreement purports to preserve the right to appeal. The parties cannot, by agreement, give this court jurisdiction to hear an otherwise moot appeal. (Id. at pp. 1297–1298, 86 Cal.Rptr.3d 324.) We therefore must consider whether Watkins's settlement of her individual claims rendered this appeal moot, regardless of any stated intention of the parties to preserve Watkins's right to pursue her representative claims. *Watkins*, *supra*, 172 Cal. App. 4th at p. 1588.

As the above citation makes clear, the issue of appellate court jurisdiction rested on whether Watkins's settlement rendered her appeal moot. Because Watkins settled her individual claims that formed the basis of her class claims, she was no longer a part of the putative class and thus lacked appellate rights. Here, Plaintiff Downie has not settled her individual claims that form the basis of the current class claims and is a member of the putative class. As such, no jurisdictional issue exists.

## C.  PLAINTIFFS AND RIOT HAVE THE RIGHT TO REQUEST AN MSC

On the court's own motion or at the request of any party, the court may set one or more mandatory settlement conferences. California Rules of Court, Rule 3.1380. California law gives any party to a lawsuit the right to request an MSC while the Court retains the power to order a MSC. The DFEH is requesting that this Court limit its power by not ordering a MSC until DFEH deems it appropriate. No case law exists to support DFEH's request. Moreover, Plaintiffs are more than confident that this Court does not need the DFEH to tell it what powers it should and should not have. Finally, we note that DFEH erroneously argues that Plaintiffs and Riot would seek to utilize a MSC Judge to usurp the approval process of a class action settlement. This is not the case as any settlement would have to be approved by this Court.

## III.   CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that the Court deny the DFEH's ex parte application for an order preventing a MSC and ordering the briefing on an issue that Riot has not raised via a motion for summary judgment/adjudication.

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

9

1

2  DATED:      September 10, 2021          GENIE HARRISON LAW FIRM, APC

3

4                                          By:    /s/ Genie Harrison

5                                                 GENIE HARRISON
                                                  MIA MUNRO
6                                                 ANDIE FIELDS
7                                                 Attorneys for Plaintiffs

8

9  DATED:      September 10, 2021          JML LAW, A Professional Law Corporation

10

11                                         By:    /s/ Nicholas W. Sarris

12                                                JOSEPH M. LOVRETOVICH
                                                  NICHOLAS W. SARRIS
13                                                BROOKE C. BELLAH
                                                  Attorneys for Plaintiffs
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JML LAW**
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

10

PLAINTIFFS' OPPOSITION TO THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S EX PARTE APPLICATION REGARDING JURISDICTIONAL ISSUES

## DECLARATION OF NICHOLAS W. SARRIS

I, Nicholas W. Sarris, do hereby declare:

1.      I am an attorney duly licensed to practice law before all courts of the State of California. I am a partner with the law firm of JML LAW, APLC, and along with the GENIE HARRSIONS LAW FIRM, APC, am co-counsel for Plaintiffs and the putative class in this action. This declaration is submitted in opposition to Plaintiff's Opposition to the Department of Fair Employment and Housing's (hereinafter "DFEH") ex parte application for an order requesting this Court order briefing on a nonexistent jurisdictional issue and asking the Court to prevent negations between Plaintiffs and Riot via a Mandatory Settlement Conference. The following facts are within my personal knowledge and, if called as a witness herein, I can and will competently testify thereto.

2.      Plaintiff Downie has standing as she did not settle her individual claims that form the basis for this putative class action.  In her individual complaint, Plaintiff Downie asserted causes of action for Violation of Statutory Rights (Cal. Civ. Code §3344) and Violation of Common Law Rights of Publicity, in addition to claims for violation of the equal pay act and FEHA.  (See Complaint entitled Gabriella Downie v Riot Games, Case no. 18STCV09833 filed in the Los Angeles Superior Court).  With respect to those claims in Plaintiff Downie's individual complaint that overlapped the class action, those claims were specifically excluded from the settlement.

3.      Attached hereto as **Exhibit 1** is a true and correct copy of Riot Games, Inc.'s Responses to Plaintiff Downie's Request for Admissions, Set Two.

4.      DFEH's ex parte application fails to establish any irreparable harm or immediate danger justifying ex parte relief.  No MSC is scheduled, no settlement has been reached, no negotiations have taken place since 2020 and no settlement has been presented to this Court for approval.  If Plaintiff and Riot ultimately request an MSC, DFEH can certainly attend, and Plaintiffs' counsel hopes that DFEH would attend.  In fact, Plaintiffs have repeatedly sought DFEH's participation in settlement discussions, including inviting DFEH to participate in a mediation with Mark Rudy for which Plaintiffs and Riot paid at no cost to DFEH.  Despite

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

PLAINTIFFS' OPPOSITION TO THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S EX PARTE APPLICATION REGARDING JURISDICTIONAL ISSUES

DFEH's repeated unprofessional behavior in this case, Plaintiffs still prefer to have DFEH attend further mediations and/or an MSC.  But Plaintiffs believe it is completely inappropriate for DFEH to attempt to prevent Plaintiffs from discussing potential resolution with Riot.  It is disheartening that DFEH views a path forward towards possible resolution as a bad thing.

5.     The sole purpose of this ex parte is for DFEH to eliminate Plaintiffs and their counsel from this case so that DFEH can be the sole decision maker in how the case is prosecuted.  This motivation is evidenced by DFEHs attempt to persuade Riot to move against Plaintiffs to assert the DFEH's frivolous alleged jurisdictional analysis behind the backs of Plaintiff as previously described.

6.     DFEH's pattern of attempting to have sole control over this litigation is also evidenced by DFEH's conduct in another matter with similar allegations to this case, *Department of Fair Employment and Housing v. Activision Blizzard, Inc.*, et al., Case No. 21STCV26571, which was recently filed in Los Angeles Superior Court.  In the *Activision* case, DFEH attempted to dissuade the women working at Activision/Blizzard from speaking with private counsel when it sent the following email to female employees of Blizzard:

> We also wanted to follow up and alert you that you may be contacted by private attorneys seeking to become your attorney for this case. It is unnecessary and may be misleading or confusing.  A private attorney would have to file suit in your name or get the court's permission for you to intervene as a named plaintiff in this matter.  Please let us know if any attorney attempts to solicit your business for this case. (Emphasis added).

7.     Attached hereto as **Exhibit 2** is a true and correct copy of the email DFEH sent to women employed at Activision Blizzard, dated August 10, 2021, referenced above.

8.     Any settlement of this case by Plaintiffs would require approval by this Court – regardless of whether such settlement was achieved through an MSC -- notification of the class and an opportunity for class members to object or opt out.

9.     Plaintiffs' counsel has not placed the DFEH in a position where they must seek emergency relief or else face the loss of any of the DFEH's rights. Plaintiffs and their counsel

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

PLAINTIFFS' OPPOSITION TO THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S EX PARTE APPLICATION REGARDING JURISDICTIONAL ISSUES

have neither taken any action to prevent the DFEH's involvement in any settlement discussions nor submitted a settlement to this Court for approval.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on this 10th day of September, 2021, in Woodland Hills, California.

By: /s/ Nicholas W. Sarris                .

NICHOLAS W. SARRIS

PLAINTIFFS' OPPOSITION TO THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S EX PARTE APPLICATION REGARDING JURISDICTIONAL ISSUES

# Exhibit 1

GIBSON, DUNN & CRUTCHER LLP
CATHERINE A. CONWAY, SBN 98366
  cconway@gibsondunn.com
KATHERINE V.A. SMITH, SBN 247866
  ksmith@gibsondunn.com
TIFFANY PHAN, SBN 292266
  tphan@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

KAPLAN HECKER & FINK LLP
ROBERTA A. KAPLAN, *PRO HAC VICE PENDING*
  rkaplan@kaplanhecker.com
GABRIELLE E. TENZER, *PRO HAC VICE PENDING*
  gtenzer@kaplanhecker.com
350 Fifth Avenue, Suite 7110
New York, New York 10118
Telephone: 212.763.0883
Facsimile:  212.564.0883

Attorneys for Defendant RIOT GAMES, INC.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES

### CENTRAL DISTRICT

| | |
|---|---|
| MELANIE MCCRACKEN, an individual; and JESSICA NEGRON, an individual; and GABRIELA DOWNIE, an individual,<br><br>        Plaintiffs,<br><br>        v.<br><br>RIOT GAMES, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants.<br><hr>DIVISION OF LABOR STANDARDS AND ENFORCEMENT, DEPARTMENT OF INDUSTRIAL RELATIONS, an agency of the State of California,<br><br>        Plaintiff-Intervenor,<br><br>        v.<br><br>RIOT GAMES, INC., a Delaware corporation; and DOES 1 through 10, inclusive, | CASE NO. 18STCV03957<br><br>**DEFENDANT RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S SECOND SET OF REQUESTS FOR ADMISSIONS**<br><br>ASSIGNED FOR ALL PURPOSES TO: THE HON. JUDGE ELIHU M. BERLE DEPARTMENT 6<br><br>Action Filed:  Nov. 5, 2018<br>Trial Date:    None set |

Gibson, Dunn & Crutcher LLP

1

Defendants.

2

DEPARTMENT OF FAIR EMPLOYMENT
AND HOUSING, an agency of the State of
California,

Plaintiff-Intervenor,

v.

RIOT GAMES, INC., a Delaware corporation;
RIOT GAMES DIRECT, INC., a Delaware
Corporation; RIOT GAMES
MERCHANDISE, INC., a Delaware
Corporation; RIOT GAMES PRODUCTIONS,
INC., a Delaware Corporation; and DOES 1
through 10, inclusive,

Defendants.

Gibson, Dunn &
Crutcher LLP

2

DEFENDANT RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S
SECOND SET OF REQUESTS FOR ADMISSIONS

**PROPOUNDING PARTY:**      Plaintiff Gabriela Downie

**RESPONDING PARTY:**      Defendant, Riot Games, Inc.

**SET NUMBER:**      Two (2)

Pursuant to California Code of Civil Procedure § 2033.030, Defendant Riot Games, Inc. ("Riot") hereby responds to Plaintiff Gabriela Downie's ("Plaintiff") Second Set of Requests for Admission ("Requests for Admission" or "RFAs").

## **PRELIMINARY STATEMENT**

Riot's responses to Plaintiff's Requests are made solely for the purposes of this action and to the best of Riot's present knowledge, information and belief respecting the matters about which inquiry has been made.  Discovery in this matter is continuing and, consequently, Riot may not have yet identified all information responsive to the Requests.  As discovery in this action proceeds, Riot anticipates that it may discover additional or different information.  Without in any way obligating itself to do so, Riot reserves the right to amend, supplement, clarify or further explain its responses at any time in the future, and to make use of, or to introduce at any hearing, information responsive to these Requests but discovered subsequent to the date of Riot's initial responses.

Furthermore, these responses are without prejudice to the right of Riot to use or rely on at any time, any subsequently discovered information, or information omitted from these responses as a result of mistake, error, oversight or inadvertence.  Riot further reserves the right to provide additional information and evidence at any time, and to object on appropriate grounds to the introduction of any portion of these responses into evidence.

Riot responds to these Requests as it interprets and understands them.  If Plaintiff subsequently asserts an interpretation of any RFA that differs from Riot's understanding, Riot reserves its right to supplement its objections and/or responses herein.

Riot does not concede the relevancy, materiality, or admissibility of any information sought by these Requests or any response hereto.  Riot's responses are made subject to and without waiver of any objections as to the relevancy, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the documents or information referred to or of the responses given herein, or of the subject matter thereof, in any proceeding.

3

Riot states that, except for facts explicitly admitted herein, no admission of any nature whatso-ever is to be implied or inferred from these responses.  The fact that Riot has responded to any Request is not intended to be, and shall not be construed as, a waiver by Riot of any part of any objection to any Request.

## **GENERAL OBJECTIONS**

Specific objections to each Request are made on an individual basis in Riot's responses below.  In addition to these specific objections, Riot makes general objections to these Requests and the defi-nitions and instructions governing them.  Riot's specific objections to individual Requests are submit-ted without waiving any of the general objections, even if not expressly set forth in the individual response.  The inclusion of any objection in any specific response is not a waiver of any general objec-tion.

1.     Riot objects to the Requests and to any instructions, direction, or definitions in the Re-quests to the extent they purport to impose any requirement or discovery obligation beyond that set forth in the California Code of Civil Procedure or other applicable laws and rules of the Court.

2.     Riot objects to the Requests to the extent they seek information protected from dis-closure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.  In responding to the Requests, Riot will not provide any information protected from dis-closure by any of the foregoing privileges.  Riot does not intend to waive any such privilege or immun-ity in connection with these responses.  The inadvertent disclosure of any such information shall not constitute a waiver of any privilege or right that Riot may have to object to the use of any such infor-mation.

3.     Riot objects to the Requests to the extent they purport to seek information that is confi-dential and/or proprietary.  Riot will provide such information, if and when the Court approves and enters a protective order governing the use and protection of confidential and proprietary information that is agreeable to all parties.

4.     Riot objects to the Requests to the extent they purport to request information that is not relevant to the claims or defenses of any party in this litigation and/or is not reasonably calculated to lead to the discovery of admissible evidence.

Gibson, Dunn & Crutcher LLP

4
DEFENDANT RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S SECOND SET OF REQUESTS FOR ADMISSIONS

5.      Riot objects to the Requests to the extent they are overly broad, unduly burdensome, vague, and ambiguous.

6.      Riot objects to the Requests to the extent they seek information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.  In responding to the Requests, Riot will not provide any information protected from disclosure by any of the foregoing privileges.  Riot does not intend to waive any such privilege or immunity in connection with these responses.  The inadvertent disclosure of any such information shall not constitute a waiver of any privilege or right that Riot may have to object to the use of any such information.

7.      Riot objects to the Requests to the extent they purport to require Riot to identify information or documents that support any given fact or legal assertion, on the grounds that such Requests would require subjective judgment on the part of Riot and its attorneys, and would require further disclosure of a conclusion or opinion of counsel in violation of the attorney work product doctrine.

8.      Riot objects to the Requests to the extent they exceed the permissible scope of discovery by purporting to require Riot to provide information not in Riot's possession, custody, or control.  In responding to each individual Request, Riot will not attempt to provide information outside its possession, custody, or control.

9.      Riot objects to the Requests to the extent they call for publicly available information.

10.     Riot objects to the Requests to the extent they seek information in the possession, custody, or control of Plaintiff in this action.

11.     Riot objects to the Requests to the extent they seek documents protected by other individuals' rights of privacy under, among other authorities, Article I, section 1 of the California Constitution, including but not limited to the rights of privacy over personal financial records, employment history, and personnel records.

12.     Riot objects to the Requests to the extent they are vague, ambiguous, unintelligible, overbroad, unduly burdensome, or seek information irrelevant to the subject matter of this action or disproportionate to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed

Gibson, Dunn & Crutcher LLP

5

DEFENDANT RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S SECOND SET OF REQUESTS FOR ADMISSIONS

discovery outweighs the likely benefit.  Where a term is vague or ambiguous, Riot will respond based on its understanding of the term.

13.     Riot objects to the Requests to the extent they are not reasonably limited in time.

14.     Riot objects to the Requests on the grounds, and to the extent, that they call for legal conclusions, legal reasoning, legal theories, or information that is the proper subject of expert discovery.  (See *Sav-On Drugs, Inc.*, supra, 15 Cal.3d at p. 5.)

15.     Riot's objections to the Requests are not admissions to the existence of any fact set forth in or assumed by such Requests or that such answer constitutes relevant evidence.  No incidental or implied admissions are intended by the responses herein.  That Riot has objected to any Request should not be taken as an admission that Riot accepts or admits the existence of any "facts" set forth or assumed by such Request.

16.     Nothing in Riot's Responses constitutes an admission of Plaintiff Negron or Plaintiff Downie's standing and/or adequacy to act as a putative class or PAGA representative in this action, nor does it constitute an admission that Plaintiff Negron or Plaintiff Downie qualifies as an "aggrieved employee."  Riot reserves any and all arguments it may have with respect to Plaintiff Negron and Plaintiff Downie's standing and/or adequacy to act as a putative class or PAGA representative.

## RESPONSES AND OBJECTIONS TO REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 9:**

Admit that Plaintiff Downie and Plaintiff Negron were members of the putative class as defined in the Second Amended Complaint in this action entitled *McCracken v. Riot Games, Inc.*, et al., Case No. 18STCV03957 at all times that the Second Amended Complaint was the operative complaint in this action.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Riot hereby incorporates its Preliminary Statement and General Objections as though fully set forth herein.  Riot further objects to this Request as vague and ambiguous, including but not limited to, its use of the undefined terms "members of the putative class" and "at all times that the Second Amended Complaint was the operative complaint in this action."  Riot further objects to this Request to the extent it calls for a legal conclusion, legal reasoning, or legal theories.  Riot further objects to

Gibson, Dunn & Crutcher LLP

1  this Request to the extent it seeks information protected by the attorney-client privilege, the work

2  product doctrine, or any other applicable privilege.  Riot further objects to this Request on the ground

3  that Plaintiff Downie is improperly propounding discovery requests on behalf of Plaintiff Jessica Ne-

4  gron, particularly because Plaintiff Negron's claims are subject to arbitration.

5       Subject to and without waiving the foregoing objections, Riot responds as follows:  Admit.

6  **REQUEST FOR ADMISSION NO. 10:**

7       Admit that Plaintiff Downie is a member of the putative class as defined in the Third

8  Amended Complaint in this action entitled *McCracken v. Riot Games, Inc.*, et al., Case No.

9  18STCV03957.

10 **RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

11      Riot hereby incorporates its Preliminary Statement and General Objections as though fully set

12 forth herein.  Riot further objects to this Request as vague and ambiguous, including but not limited

13 to, its use of the undefined term "member of the putative class."  Riot further objects to this Request

14 to the extent it calls for a legal conclusion, legal reasoning, or legal theories.  Riot further objects to

15 this Request to the extent it seeks information protected by the attorney-client privilege, the work

16 product doctrine, or any other applicable privilege.

17      Subject to and without waiving the foregoing objections, Riot responds as follows:  Admit.

18 **REQUEST FOR ADMISSION NO. 11:**

19      Admit that Plaintiff Negron was a member of the putative class as defined in the Third

20 Amended Complaint in this action entitled *McCracken v. Riot Games, Inc.*, et al., Case No.

21 18STCV03957 until the Court granted Riot Games' order compelling her to arbitration.

22 **RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

23      Riot hereby incorporates its Preliminary Statement and General Objections as though fully set

24 forth herein.  Riot further objects to this Request as vague and ambiguous, including but not limited

25 to, its use of the undefined term "member of the putative class."  Riot further objects to this Request

26 to the extent it calls for a legal conclusion, legal reasoning, or legal theories.  Riot further objects to

27 this Request to the extent it seeks information protected by the attorney-client privilege, the work

28 product doctrine, or any other applicable privilege.  Riot further objects to this Request on the ground

Gibson, Dunn &
Crutcher LLP

DEFENDANT RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S
SECOND SET OF REQUESTS FOR ADMISSIONS

that Plaintiff Downie is improperly propounding discovery requests on behalf of Plaintiff Jessica Negron, particularly because Plaintiff Negron's claims are subject to arbitration.

Subject to and without waiving the foregoing objections, Riot responds as follows:  Admit.

**REQUEST FOR ADMISSION NO. 12:**

Admit that DEFENDANT's March 5, 2020 representation to the Court in this matter through the Declaration of Catherine Conway (attached hereto as Exhibit A) that "Riot and Plaintiff Downie settled Downie's individual claims that were not being pursued in the class action" was a true and accurate statement.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Riot hereby incorporates its Preliminary Statement and General Objections as though fully set forth herein.  Riot further objects to this Request on the grounds that it is vague and ambiguous, including but not limited to, its use of the undefined term "representation."  Riot further objects to this Request to the extent it calls for a legal conclusion, legal reasoning, or legal theories.  Riot further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.  Riot further objects to this Request on the grounds that it quotes a selected portion of a longer document and that the quoted language is presented without context, rendering the Request vague and ambiguous.

Subject to and without waiving the foregoing objections, Riot responds as follows:  Denied, except Riot admits that Riot and Plaintiff Downie settled Downie's individual claims against Riot, including, but not limited to, all individual allegations in *Downie v. Riot Games, Inc.* (LASC Case No. 18STCV09833), that were not brought on behalf of a putative class in the Second Amended Complaint.

**REQUEST FOR ADMISSION NO. 13:**

Admit that Plaintiff Downie had not settled or released "Downie's individual claims that were . . . being pursued in the class action" (see Exhibit A) prior to DEFENDANT's submission of Catherine Conway's Declaration to the Court on March 5, 2020, attached hereto as Exhibit A.

Gibson, Dunn & Crutcher LLP

8

DEFENDANT RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S SECOND SET OF REQUESTS FOR ADMISSIONS

1  **RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

2      Riot hereby incorporates its Preliminary Statement and General Objections as though fully set

3  forth herein.  Riot further objects to this Request on the grounds that it is vague and ambiguous, in-

4  cluding but not limited to, its use of the undefined terms "settled" and "released."  Riot further ob-

5  jects to this Request to the extent it calls for a legal conclusion, legal reasoning, or legal theories.

6  Riot further objects to this Request to the extent it seeks information protected by the attorney-client

7  privilege, the work product doctrine, or any other applicable privilege.  Riot further objects to this

8  Request on the grounds that it quotes a selected portion of a longer document and that the quoted lan-

9  guage is presented without context, rendering the Request vague and ambiguous.

10      Subject to and without waiving the foregoing objections, Riot responds as follows:  Denied,

11  except Riot admits that Riot and Plaintiff Downie did not settle Downie's individual claims against

12  Riot that were brought on behalf of a putative class in the Second Amended Complaint before Riot's

13  submission of Catherine Conway's Declaration to the Court on March 5, 2020.

14  **REQUEST FOR ADMISSION NO. 14:**

15      Admit that Plaintiff Downie had *only* settled or released "Downie's individual claims that

16  were not being pursued in the class action" (see Exhibit A) prior to DEFENDANT's submission of

17  Catherine Conway's declaration to the Court on March 5, 2020, attached hereto as Exhibit A.

18  **RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

19      Riot hereby incorporates its Preliminary Statement and General Objections as though fully set

20  forth herein.  Riot further objects to this Request on the grounds that it is vague and ambiguous, in-

21  cluding but not limited to, its use of the undefined terms "settled" and "released."  Riot further ob-

22  jects to this Request to the extent it calls for a legal conclusion, legal reasoning, or legal theories.

23  Riot further objects to this Request to the extent it seeks information protected by the attorney-client

24  privilege, the work product doctrine, or any other applicable privilege.  Riot further objects to this

25  Request on the grounds that it quotes a selected portion of a longer document and that the quoted lan-

26  guage is presented without context, rendering the Request vague and ambiguous.

27

28

Gibson, Dunn & Crutcher LLP

9

DEFENDANT RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S SECOND SET OF REQUESTS FOR ADMISSIONS

Subject to and without waiving the foregoing objections, Riot responds as follows:  Denied, except Riot admits that, of Downie's claims asserted against Riot, Riot and Plaintiff Downie only set-tled Downie's individual claims against Riot, including, but not limited to, all individual allegations in *Downie v. Riot Games, Inc.* (LASC Case No. 18STCV09833), that were not brought on behalf of a putative class in the Second Amended Complaint before Riot's submission of Catherine Conway's Declaration to the Court on March 5, 2020.

**REQUEST FOR ADMISSION NO. 15:**

Admit that DEFENDANT's representation to Plaintiffs' counsel in this matter, through the October 30, 2020 letter attached as Exhibit B, stating that Gabriela Downie's execution of DEFEND-ANT's Supplemental Mutual Release would "***not*** release or extinguish any existing claims that are already alleged in the class action entitled *McCracken v. Riot Games, Inc.*, et al., case number 18STCV03957" was a true and accurate statement. (emphasis in original)

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Riot hereby incorporates its Preliminary Statement and General Objections as though fully set forth herein.  Riot further objects to this Request on the grounds that it is vague and ambiguous, in-cluding but not limited to, its use of the undefined terms "representation" and "execution."  Riot fur-ther objects to this Request to the extent it calls for a legal conclusion, legal reasoning, or legal theo-ries.  Riot further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.  Riot further objects to this Request on the grounds that it quotes a selected portion of a longer document and that the quoted language is presented without context, rendering the Request vague and ambiguous.

Subject to and without waiving the foregoing objections, Riot responds as follows:  Admit.

**REQUEST FOR ADMISSION NO. 16:**

Admit that Gabriela Downie's execution of DEFENDANT's Supplemental Mutual Release, attached here as Exhibit C, did "***not*** release or extinguish any existing claims that [were] already al-leged in the class action entitled *McCracken v. Riot Games, Inc.*, et al., case number 18STCV03957" as of the time of her execution of DEFENDANT's Supplemental Mutual Release (see October 30, 2020 letter from Catherine Conway attached as Exhibit B).

Gibson, Dunn & Crutcher LLP

10

DEFENDANT RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S SECOND SET OF REQUESTS FOR ADMISSIONS

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Riot hereby incorporates its Preliminary Statement and General Objections as though fully set forth herein.  Riot further objects to this Request on the grounds that it is vague and ambiguous, including but not limited to, its use of the undefined term "execution."  Riot further objects to this Request to the extent it calls for a legal conclusion, legal reasoning, or legal theories.  Riot further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.  Riot further objects to this Request on the grounds that it quotes a selected portion of a longer document and that the quoted language is presented without context, rendering the Request vague and ambiguous.

Subject to and without waiving the foregoing objections, Riot responds as follows:  Admit.

**REQUEST FOR ADMISSION NO. 17:**

Admit that DEFENDANT's March 5, 2020 representation to the Court in this matter through the Declaration of Catherine Conway (attached here as Exhibit A) that "Riot and Plaintiff Negron settled Negron's constructive termination claim, which is not a claim that Negron seeks to pursue on a class basis" was a true and accurate statement.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Riot hereby incorporates its Preliminary Statement and General Objections as though fully set forth herein.  Riot further objects to this Request on the grounds that it is vague and ambiguous, including but not limited to, its use of the undefined term "representation."  Riot further objects to this Request to the extent it calls for a legal conclusion, legal reasoning, or legal theories.  Riot further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.  Riot further objects to this Request on the grounds that it quotes a selected portion of a longer document and that the quoted language is presented without context, rendering the Request vague and ambiguous.  Riot further objects to this Request on the ground that Plaintiff Downie is improperly propounding discovery requests on behalf of Plaintiff Jessica Negron, particularly because Plaintiff Negron's claims are subject to arbitration.

Subject to and without waiving the foregoing objections, Riot responds as follows:  Admit.

Gibson, Dunn & Crutcher LLP

11

DEFENDANT RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S SECOND SET OF REQUESTS FOR ADMISSIONS

**REQUEST FOR ADMISSION NO. 18:**

Admit that Plaintiff Negron and Riot Games had not settled or released any claim that Negron sought to pursue on a class basis via the Second Amended Complaint of the class action entitled *McCracken v. Riot Games, Inc.*, et al., case number 18STCV03957, as of the time of the submission of Catherine Conway's declaration to the Court on March 5, 2020, attached here as Exhibit A.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Riot hereby incorporates its Preliminary Statement and General Objections as though fully set forth herein.  Riot further objects to this Request on the grounds that it is vague and ambiguous, including but not limited to, its use of the undefined terms "sought to pursue," "released" and "settled." Riot further objects to this Request to the extent it calls for a legal conclusion, legal reasoning, or legal theories.  Riot further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.  Riot further objects to this Request on the ground that Plaintiff Downie is improperly propounding discovery requests on behalf of Plaintiff Jessica Negron, particularly because Plaintiff Negron's claims are subject to arbitration.  Riot further objects to this Request on the grounds that its use of the phrase "any claim that Negron sought to pursue on a class basis via the Second Amended Complaint" renders the Request vague, ambiguous, and unintelligible.

Subject to and without waiving the foregoing objections, Riot responds as follows:  Denied, except that Riot admits that Plaintiff Negron and Riot had not settled or released any claim that Negron had asserted on a class basis via the Second Amended Complaint of the class action entitled *McCracken v. Riot Games, Inc.*, et al., case number 18STCV03957, as of the time of the submission of Catherine Conway's declaration to the Court on March 5, 2020.

**REQUEST FOR ADMISSION NO. 19:**

Admit that Jessica Negron and Riot Games have not settled Negron's individual claims against Riot Games that were brought on behalf of a putative class or on behalf of PAGA representative class via the Second Amended Complaint in the class action entitled *McCracken v. Riot Games, Inc.*, et al., case number 18STCV03957.

Gibson, Dunn &
Crutcher LLP

12
DEFENDANT RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S
SECOND SET OF REQUESTS FOR ADMISSIONS

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Riot hereby incorporates its Preliminary Statement and General Objections as though fully set forth herein.  Riot further objects to this Request on the grounds that it is vague and ambiguous, including but not limited to, its use of the undefined terms "settled" and "individual claims."  Riot further objects to this Request to the extent it calls for a legal conclusion, legal reasoning, or legal theories.  Riot further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.  Riot further objects to this Request on the ground that Plaintiff Downie is improperly propounding discovery requests on behalf of Plaintiff Jessica Negron, particularly because Plaintiff Negron's claims are subject to arbitration.  Riot further objects to this Request on the grounds that its use of the phrase "individual claims" in connection with the phrase "or on behalf of PAGA representative class" renders the Request vague, ambiguous, and unintelligible.  One cannot bring individual claims via a PAGA representative class.  (*Kim v. Reins Int'l California, Inc.* (2020) 9 Cal.5th 73, 86-87 ["Although representative in nature, a PAGA claim is not simply a collection of individual claims for relief, and so is different from a class action… In a class action, the representative plaintiff still possesses only a single claim for relief—the plaintiff's own… There is no individual component to a PAGA action because every PAGA action ... is a representative action on behalf of the state."]; *Arias v. Superior Ct.* (2009) 46 Cal. 4th 969, 986 ["An employee plaintiff suing, as here, under the Labor Code Private Attorneys General Act of 2004, does so as the proxy or agent of the state's labor law enforcement agencies."].)

Subject to and without waiving the foregoing objections, Riot responds as follows: Denied, except that Riot admits that Plaintiff Negron and Riot have not settled Negron's individual claims against Riot that were brought on behalf of a putative class via the Second Amended Complaint in the class action entitled *McCracken v. Riot Games, Inc.*, et al., case number 18STCV03957.

**REQUEST FOR ADMISSION NO. 20:**

Admit that DEFENDANT's representation to Plaintiffs' counsel in this matter, through the October 30, 2020 letter attached as Exhibit B, stating that Jessica Negron's execution of DEFENDANT's Supplemental Mutual Release would "***not*** release or extinguish any existing claims that are

Gibson, Dunn & Crutcher LLP

13

DEFENDANT RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S SECOND SET OF REQUESTS FOR ADMISSIONS

1   already alleged in the class action entitled *McCracken v. Riot Games, Inc.*, et al., case number

2   18STCV03957" was a true and accurate statement. (emphasis in original)

3   **RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

4   Riot hereby incorporates its Preliminary Statement and General Objections as though fully set

5   forth herein.  Riot further objects to this Request on the grounds that it is vague and ambiguous, in-

6   cluding but not limited to, its use of the undefined terms "execution" and "representation."  Riot fur-

7   ther objects to this Request to the extent it calls for a legal conclusion, legal reasoning, or legal theo-

8   ries.  Riot further objects to this Request to the extent it seeks information protected by the attorney-

9   client privilege, the work product doctrine, or any other applicable privilege.  Riot further objects to

10  this Request on the grounds that it quotes a selected portion of a longer document and that the quoted

11  language is presented without context, rendering the Request vague and ambiguous.  Riot further ob-

12  jects to this Request on the ground that Plaintiff Downie is improperly propounding discovery re-

13  quests on behalf of Plaintiff Jessica Negron, particularly because Plaintiff Negron's claims are sub-

14  ject to arbitration.

15  Subject to and without waiving the foregoing objections, Riot responds as follows: Admit.

16  **REQUEST FOR ADMISSION NO. 21:**

17  Admit that Jessica Negron and Riot Games have not settled Negron's individual claims

18  against Riot Games that were brought on behalf of a putative class or on behalf of a PAGA repre-

19  sentative class in the Third Amended Complaint in the class action entitled *McCracken v. Riot*

20  *Games, Inc.*, et al., case number 18STCV03957.

21  **RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

22  Riot hereby incorporates its Preliminary Statement and General Objections as though fully set

23  forth herein.  Riot further objects to this Request to the extent it calls for a legal conclusion, legal rea-

24  soning, or legal theories.  Riot further objects to this Request to the extent it seeks information pro-

25  tected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

26  Riot further objects to this Request on the grounds that it is vague and ambiguous, including but not

27  limited to, its use of the undefined terms "settled" and "individual claims."  Riot further objects to

28  this Request on the ground that Plaintiff Downie is improperly propounding discovery requests on

Gibson, Dunn & Crutcher LLP

14

DEFENDANT RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S SECOND SET OF REQUESTS FOR ADMISSIONS

behalf of Plaintiff Jessica Negron, particularly because Plaintiff Negron's claims are subject to arbitration.  Riot further objects to this Request on the grounds that its use of the phrase "individual claims" in connection with the phrase "or on behalf of PAGA representative class" renders the Request vague, ambiguous, and unintelligible.  One cannot bring individual claims via a PAGA representative class.  (*Kim v. Reins Int'l California, Inc*. (2020) 9 Cal.5th 73, 86-87 ["Although representative in nature, a PAGA claim is not simply a collection of individual claims for relief, and so is different from a class action… In a class action, the representative plaintiff still possesses only a single claim for relief—the plaintiff's own… There is no individual component to a PAGA action because every PAGA action ... is a representative action on behalf of the state."]; *Arias v. Superior Ct*. (2009) 46 Cal. 4th 969, 986 ["An employee plaintiff suing, as here, under the Labor Code Private Attorneys General Act of 2004, does so as the proxy or agent of the state's labor law enforcement agencies."].)

Subject to and without waiving the foregoing objections, Riot responds as follows: Denied, except that Riot admits that Plaintiff Negron and Riot have not settled Negron's individual claims against Riot that were brought on behalf of a putative class via the Third Amended Complaint in the class action entitled *McCracken v. Riot Games, Inc.*, et al., case number 18STCV03957.

**REQUEST FOR ADMISSION NO. 22:**

Admit that DEFENDANT's representation to Plaintiffs' counsel in this matter, through the October 30, 2020 letter attached as Exhibit B, stating that Plaintiffs Downie and Negron "can still pursue any of the claims that are currently alleged on behalf of the class in the above-listed action on an individual basis" was a true and accurate statement.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

Riot hereby incorporates its Preliminary Statement and General Objections as though fully set forth herein.  Riot further objects to this Request to the extent it calls for a legal conclusion, legal reasoning, or legal theories.  Riot further objects to this Request on the grounds that it is vague and ambiguous including, but not limited to, its use of the undefined term "representation."  Riot further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.  Riot further objects to this Request on the

Gibson, Dunn & Crutcher LLP

grounds that it quotes a selected portion of a longer document and that the quoted language is presented without context, rendering the Request vague and ambiguous.  Riot further objects to this Request on the ground that Plaintiff Downie is improperly propounding discovery requests on behalf of Plaintiff Jessica Negron, particularly because Plaintiff Negron's claims are subject to arbitration.

Subject to and without waiving the foregoing objections, Riot responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 23:**

Admit that Plaintiff Downie "can still pursue any of the claims that are currently alleged on behalf of the class in the [*Melanie McCracken v. Riot Games, et al.*] action on an individual basis." (see October 30, 2020 letter from Cathy Conway attached as Exhibit B)

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Riot hereby incorporates its Preliminary Statement and General Objections as though fully set forth herein.  Riot further objects to this Request to the extent it calls for a legal conclusion, legal reasoning, or legal theories.  Riot further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.  Riot further objects to this Request on the grounds that it is vague and ambiguous.  Riot further objects to this Request on the grounds that it quotes a selected portion of a longer document and that the quoted language is presented without context, rendering the Request vague and ambiguous.

Subject to and without waiving the foregoing objections, Riot responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 24:**

Admit that Plaintiff Negron "can still pursue any of the claims that are currently alleged on behalf of the class in the [*Melanie McCracken v. Riot Games, et al.*] action on an individual basis." (see October 30, 2020 letter from Cathy Conway attached as Exhibit B)

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Riot hereby incorporates its Preliminary Statement and General Objections as though fully set forth herein.  Riot further objects to this Request to the extent it calls for a legal conclusion, legal reasoning, or legal theories.  Riot further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Gibson, Dunn & Crutcher LLP

16

DEFENDANT RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S SECOND SET OF REQUESTS FOR ADMISSIONS

Riot further objects to this Request on the grounds that it is vague and ambiguous.  Riot further objects to this Request on the grounds that it quotes a selected portion of a longer document and that the quoted language is presented without context, rendering the Request vague and ambiguous.  Riot further objects to this Request on the ground that Plaintiff Downie is improperly propounding discovery requests on behalf of Plaintiff Jessica Negron, particularly because Plaintiff Negron's claims are subject to arbitration.

Subject to and without waiving the foregoing objections, Riot responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 25:**

Admit that DEFENDANT's representation to Plaintiffs' counsel in this matter, through the October 30, 2020 letter attached as Exhibit B, that "executing the Supplemental Mutual Releases will not impair or otherwise impact Ms. Negron or Ms. Downie's abilities to represent the class, participate in the class as class members, and/or recover as class members in the action" was a true and accurate statement. (see October 30, 2020 letter from Cathy Conway attached as Exhibit B)

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Riot hereby incorporates its Preliminary Statement and General Objections as though fully set forth herein.  Riot further objects to this Request on the grounds that it is vague and ambiguous, including but not limited to, its use of the undefined term "representation."  Riot further objects to this Request to the extent it calls for a legal conclusion, legal reasoning, or legal theories.  Riot further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.  Riot further objects to this Request on the grounds that it quotes a selected portion of a longer document and that the quoted language is presented without context, rendering the Request vague and ambiguous.  Riot further objects to this Request on the ground that Plaintiff Downie is improperly propounding discovery requests on behalf of Plaintiff Jessica Negron, particularly because Plaintiff Negron's claims are subject to arbitration.

Subject to and without waiving the foregoing objections, Riot responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 26:**

Admit that Plaintiff Downie's execution of the Supplemental Mutual Release (attached here as Exhibit C) should "not impair or otherwise impact [her] abilities to represent the class, participate

Gibson, Dunn & Crutcher LLP

17

DEFENDANT RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S SECOND SET OF REQUESTS FOR ADMISSIONS

in the class as [a] class member[], and/or recover as [a] class member[s] in the action." (see October 30, 2020 letter from Cathy Conway attached as Exhibit B)

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Riot hereby incorporates its Preliminary Statement and General Objections as though fully set forth herein.  Riot further objects to this Request on the grounds that it is vague and ambiguous, including but not limited to, its use of the undefined term "execution."  Riot further objects to this Request to the extent it calls for a legal conclusion, legal reasoning, or legal theories.  Riot further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.  Riot further objects to this Request on the grounds that it quotes a selected portion of a longer document and that the quoted language is presented without context, rendering the Request vague and ambiguous.

Subject to and without waiving the foregoing objections, Riot responds as follows: Admit.

Dated:   July 20, 2021

GIBSON, DUNN & CRUTCHER LLP
CATHERINE A. CONWAY
KATHERINE V.A. SMITH
TIFFANY PHAN

By: _____
                Katherine V.A. Smith

Attorneys for Defendant RIOT GAMES, INC.

GIBSON, DUNN & CRUTCHER LLP
CATHERINE A. CONWAY, SBN 98366
  cconway@gibsondunn.com
KATHERINE V.A. SMITH, SBN 247866
  ksmith@gibsondunn.com
TIFFANY PHAN, SBN 292266
  tphan@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

KAPLAN HECKER & FINK LLP
ROBERTA A. KAPLAN, PRO HAC VICE PENDING
  rkaplan@kaplanhecker.com
GABRIELLE E. TENZER, PRO HAC VICE PENDING
  gtenzer@kaplanhecker.com
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: 212.763.0883
Facsimile:  212.564.0883

Attorneys for Defendants RIOT GAMES, INC.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

CENTRAL DISTRICT

| | |
|---|---|
| MELANIE MCCRACKEN, an individual; and JESSICA NEGRON, an individual; and GABRIELA DOWNIE, an individual,<br><br>               Plaintiffs,<br><br>     v.<br><br>RIOT GAMES, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>               Defendants.<br>_____<br>DIVISION OF LABOR STANDARDS AND ENFORCEMENT, DEPARTMENT OF INDUSTRIAL RELATIONS, an agency of the State of California,<br><br>               Plaintiff-Intervenor,<br><br>     v.<br><br>RIOT GAMES, INC., a Delaware corporation; and DOES 1 through 10, inclusive, | CASE NO. 18STCV03957<br><br>**VERIFICATION OF RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S SECOND SET OF REQUESTS FOR ADMISSION AND SECOND SET OF FORM INTERROGATORIES - EMPLOYMENT**<br><br>ASSIGNED FOR ALL PURPOSES TO: THE HON. JUDGE ELIHU M. BERLE DEPARTMENT 6<br><br>Action Filed:    Nov. 5, 2018<br>Trial Date:      None set |

Gibson, Dunn & Crutcher LLP

VERIFICATION OF RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S SECOND SET OF REQUESTS FOR ADMISSION AND SECOND SET OF FORM INTERROGATORIES - EMPLOYMENT

1

Defendants.

2

3  DEPARTMENT OF FAIR EMPLOYMENT
   AND HOUSING, an agency of the State of
4  California,

5              Plaintiff-Intervenor,

6        v.

7  RIOT GAMES, INC., a Delaware corporation;
   RIOT GAMES DIRECT, INC., a Delaware
8  Corporation; RIOT GAMES
   MERCHANDISE, INC., a Delaware
9  Corporation; RIOT GAMES PRODUCTIONS,
   INC., a Delaware Corporation; and DOES 1
10 through 10, inclusive,

11             Defendants.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFICATION OF RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA
DOWNIE'S SECOND SET OF REQUESTS FOR ADMISSION AND SECOND SET OF
FORM INTERROGATORIES - EMPLOYMENT

## **VERIFICATION**

I, Emily Winkle, am the Chief People Officer for Riot Games, Inc., a respondent in this matter. I am an agent of Riot Games, Inc., for the purpose of answering DEFENDANT RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S SECOND SET OF REQUESTS FOR ADMISSION and DEFENDANT RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S SECOND SET OF FORM INTERROGATORIES – EMPLOYMENT for the case *McCracken, et al., v. Riot Games, Inc., et al*., Case No. 18STCV03957. I have read the Requests for Admission and the Form Interrogatories and the Responses and Objections to those Requests and Form Interrogatories and have knowledge of their contents.

The information contained in Riot's Responses and Objections is not within the personal knowledge of any one individual employed by Riot.  Therefore, I state and verify that the responses contained therein were prepared and assembled by authorized representatives and counsel for Riot from record and files kept in the regular and ordinary course of business, from interviews with appropriate representatives and employees of Riot, and/or from documents filed and produced in the above-captioned litigation.  The responses are subject to inadvertent and undiscovered errors and are based on information available at this stage of discovery.  Riot reserves the right to amend or make any change in the responses if it appears at any time that omissions or errors have been made therein or that more accurate or additional information in available.  Subject to the limitations set forth herein, the responses are true and accurate to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Los Angeles, California, on _____7/22/2021_____ 2021.

DocuSigned by:

*Emily Winkle*

44332FDAA62B4BF...

Emily Winkle

VERIFICATION OF RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S SECOND SET OF REQUESTS FOR ADMISSION AND SECOND SET OF FORM INTERROGATORIES - EMPLOYMENT

Gibson, Dunn & Crutcher LLP

**PROOF OF SERVICE**

I, Kristina Eckert, declare as follows:

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 333 South Grand Avenue, Los Angeles, California 90071-3197, in said County and State.  On July 23, 2021, I served the following document(s):

**VERIFICATION OF RIOT GAMES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF GABRIELA DOWNIE'S SECOND SET OF REQUESTS FOR ADMISSION AND SECOND SET OF FORM INTERROGATORIES – EMPLOYMENT**

on the parties listed on the attached Service List, by the following means of service:

☑  **BY ELECTRONIC SERVICE**:  By electronically serving a true and correct copy through Case Anywhere or other electronic court filing system to the email address(es) set forth in the attached service list.

☑  I am employed in the office of Catherine A. Conway, a member of the bar of this court, and that the foregoing document(s) was(were) printed on recycled paper.

☑  (**STATE**) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 23, 2021.

*Kristina Eckert*

Kristina Eckert

Gibson, Dunn & Crutcher LLP

# Electronic Service List

Case:      **McCracken, et al. v. Riot Games, Inc.**

Case Info:      **18STCV03957, Los Angeles Superior Court**

**California Department of Fair Employment and Housing**
Denise Levey, Esq. (denise.levey@dfeh.ca.gov)
Melanie Proctor, Esq. (melanie.proctor@dfeh.ca.gov)
Kaitlin Toyama, Esq. (kaitlin.toyama@dfeh.ca.gov)
Olivia Tran, Esq. (olivia.tran@dfeh.ca.gov)
Janette Wipper, Esq. (janette.wipper@dfeh.ca.gov)
2218 Kausen Drive, Suite 100
Elk Grove, CA 95758
Phone: (916) 585.7110
Fax: (888) 382.5293

*Representing:* Department of Fair Employment and Housing

**Division of Labor Standards Enforcement**
David Balter, Esq. (dbalter@dir.ca.gov)
Patricia Kelly, Esq. (pkelly@dir.ca.gov)
455 Golden Gate Avenue, 9th Floor
San Francisco, CA 94102
Phone: (415) 703-4863

*Representing:* Intervener, Labor Commissioner

**Genie Harrison Law Firm, APC**
Andrea Fields, Esq. (andie@genieharrisonlaw.com)
Genie Harrison, Esq. (genie@genieharrisonlaw.com)
Mia Munro, Esq. (mia@genieharrisonlaw.com)
Amber Phillips, Esq. (amber@genieharrisonlaw.com)
523 West 6th Street, Suite 707
Los Angeles, CA 90014
Phone: (213) 805-5301
Fax: (213) 805-5306

*Representing:* Melanie McCracken, et al.

**Gibson, Dunn & Crutcher LLP**
Virginia Baldwin, Esq. (vbaldwin@gibsondunn.com)
Allie Begin, Esq. (abegin@gibsondunn.com)
Catherine Conway, Esq. (cconway@gibsondunn.com)
Cynthia Chen McTernan, Esq. (cmcternan@gibsondunn.com)
Tiffany Phan, Esq. (tphan@gibsondunn.com)
Yekaterina Reyzis, Esq. (yreyzis@gibsondunn.com)
Katherine Smith, Esq. (ksmith@gibsondunn.com)
Raychel Teasdale, Esq. (rteasdale@gibsondunn.com)
Jenna Voronov, Esq. (jvoronov@gibsondunn.com)
Daniel Weiss, Esq. (dweiss@gibsondunn.com)
333 South Grand Avenue
Los Angeles, CA 90071
Phone: (213) 229-7000
Fax: (213) 229-7520

*Representing:* Riot Games, Inc.

**JML Law, APLC**
Joseph Lovretovich, Esq. (jml@jmllaw.com)
Nicholas Sarris, Esq. (nsarris@jmllaw.com)
5855 Topanga Canyon Boulevard, Suite 300
Woodland Hills, CA 91367
Phone: (818) 610-8800
Fax: (818) 610-3030

*Representing:* Melanie McCracken, et al.

Case 5:21-cv-01035-DSF-JEM Document 12-10 Filed 10/08/21 Page 38 of 74 Page ID #:320

**Kaplan Hecker & Fink LLP**
Kate Doniger, Esq. (kdoniger@kaplanhecker.com)
Roberta Kaplan, Esq. (rkaplan@kaplanhecker.com)
Gabrielle Tenzer, Esq. (gtenzer@kaplanhecker.com)
Rachel Tuchman, Esq. (rtuchman@kaplanhecker.com)
Molly Webster, Esq. (mwebster@kaplanhecker.com)
350 Fifth Avenue, Suite 7110
New York, NY 10118
Phone: (212) 763-0883

*Representing:* Riot Games, Inc.

# Exhibit 2

| | |
|---|---|
| **From:** | Nicholas Sarris |
| **To:** | Nicholas Sarris |
| **Subject:** | FW: DFEH v. Blizzard, Attorney Contact Follow Up |
| **Date:** | Friday, September 10, 2021 9:31:23 AM |

> ---------- Forwarded message ---------
> From: Vuong, Rumduol@DFEH <Rumduol.Vuong@dfeh.ca.gov<mailto:Rumduol.Vuong@dfeh.ca.gov>>
> Date: Tue, Aug 10, 2021, 13:14
> Subject: DFEH v. Blizzard, Attorney Contact Follow Up
> To:
> Cc: Noh, Sue@DFEH <Sue.Noh@dfeh.ca.gov<mailto:Sue.Noh@dfeh.ca.gov>>
>
> Hi all,
>
> We also wanted to follow up and alert you that you may be contacted by private attorneys seeking to become your attorney for this case. It is unnecessary and may be misleading or confusing.  A private attorney would have to file suit in your name or get the court's permission for you to intervene as a named plaintiff in this matter.  Please let us know if any attorney attempts to solicit your business for this case.
>
> Rumie Vuong
> Associate Chief Counsel
> CA Dept of Fair Employment & Housing
> (213) 215-5284
> rumduol.vuong@dfeh.ca.gov<mailto:rumduol.vuong@dfeh.ca.gov>
>
> [cid:image001.png@01D78DDD.013183B0][cid:image002.png@01D78DDD.013183B0]
>
> _____
> CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication
>

**PROOF OF SERVICE**

1013a (3) CCP Revised 5/1/88

STATE OF CALIFORNIA, COUNTY OF COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is, 5855 Topanga Canyon Blvd., Suite 300, Woodland Hills, CA 91367

On September 10, 2021, I served the foregoing document described as **PLAINTIFFS' OPPOSITION TO THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S EX PARTE APPLICATION REGARDING JURISDCITIONAL ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF NICHOLAS W. SARRIS** on the interested parties in this action by placing true copies thereof enclosed in a sealed envelope, addressed as follows:

Genie Harrison
Mia Munro
Andie Fields
GENIE HARRISON LAW FIRM, APC
523 W. 6th Street
Los Angeles, CA 90014
Attorneys for Plaintiffs

David M. Balter
Patricia M. Kelly
STATE OF CALIFORNIA, DIVISION OF LABOR STANDARDS ENFORCEMENT
1515 Clay Street, Suite 2206
Oakland, CA 94612
Attorneys for Intervenor DLSE

Catherine A. Conway
Katherine V.A. Smith
GIBSON DUNN & CRUTCHER LLP
333 S. Grand Avenue
Los Angeles, CA 90071-3197
Attorneys for Defendant Riot Games, Inc.

Jannette Wipper
Melanie Proctor
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
2218 Kausen Drive, Sutie 100
Elk Grove, CA 95758
Attorneys for Department of Fair Employment and Housing

☒ By email service, I delivered such documents via email service through CaseAnyhwere.

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

PLAINTIFFS' OPPOSITION TO THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S EX PARTE APPLICATION REGARDING JURISDICTIONAL ISSUES

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

☐ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on September 10, 2021 at Woodland Hills, California.

By:    */s/ Ryan Gutierrez*
Ryan Gutierrez

PLAINTIFFS' OPPOSITION TO THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S EX PARTE APPLICATION REGARDING JURISDICTIONAL ISSUES

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

# Exhibit B

<u>SETTLEMENT AND RELEASE OF ALL CLAIMS AGREEMENT</u>

<u>SUBJECT TO COURT APPROVAL</u>

This Settlement Agreement (the "Agreement") is made and entered into by and between the California Department of Fair Employment and Housing ("DFEH" or the "Department"), Alma Aranda, Ofelia Cabana Fanol,  Heather Dowl-Lee, Veronica Barcelo, Erica Diaz, Kimberly Gonzalez, Cynthia Martinez, Tanya Dennis and Katrina Grant (the "CFRA Class Representatives") on their own behalf and on behalf of all persons who do not opt out of a class to be certified for settlement purposes only as provided in this Agreement, and Respondents Verizon Services Corporation and Verizon California, Inc., on their own behalf and on behalf of the "Verizon Affiliates," which are identified in the footnote below[1] (collectively, "Verizon").

<u>RECITALS</u>

1.     On or about February 3, 2009, the Department filed with the Fair Employment and Housing Commission ("FEHC") a consolidated Notice of Class Action Complaint and Director's Complaint entitled *In the matter of the Complaint of the Department of Fair Employment and Housing vs. Verizon Services Corporation, a Delaware Corporation, dba Verizon California, Inc.*, Case Nos. E200708-R-2259-00-f, E200809-H-0034-00-f, E200708-S-0131-00-fpe, and E200809-H-0350-00-f (the "CFRA Director's Complaint").  The Department generally alleged in the CFRA Director's Complaint that Verizon engaged in unlawful employment practices in violation of the California Family Rights Act, Cal. Gov't Code §§ 12945.1 *et seq.* ("CFRA") with respect to the class of all current and former Verizon employees who applied to take CFRA-protected leaves of absence from June 18, 2007 through the conclusion of the Department's investigation.

2.     The Department thereafter propounded discovery and conducted an extensive review of Verizon policies, practices and procedures with respect to CFRA leaves of absence, the interactive process and the reasonable accommodation process.  In addition, the Department conducted an extensive review of Verizon attendance records, leave of absence records and discipline files; interviewed numerous current and former Verizon employees; and took all other steps necessary to evaluate the facts and claims asserted in the CFRA Director's Complaint pursuant to section 12963 of the Fair Employment and Housing Act, Cal. Gov't Code §§ 12900, *et seq.* ("FEHA").

3.     Counsel for Verizon has also conducted formal and informal investigation into the facts underlying the CFRA Director's Complaint, including an extensive review of Verizon documents and interviews with Verizon employees.

4.     After completing its factual investigation, the Department concluded over Verizon's objection that it could prosecute the CFRA Director's Complaint on a class-wide basis,

---

[1]     The Verizon Affiliates include IDEARC Media Sales West Inc., Verizon Corporate Resources Group LLC, Verizon Corporate Services Corp., Verizon Corporate Services Group Inc., Verizon Credit Inc., Verizon Data Services Inc., Verizon Data Services LLC, Verizon Enterprise Delivery LLC, Verizon Logistics, Verizon North Inc., Verizon Services Operations Inc., Verizon Services Organization Inc., Verizon Southwest, Verizon West Coast Inc., Contel of New York, Verizon North Retainco Co. and Verizon Online LLC.

that common questions of law and fact predominated, that class action procedures were superior to alternate means for a fair and efficient adjudication of the claims asserted in the CFRA Director's Complaint, and that the Class Representatives could fairly and adequately represent the interests of a proposed class of all current and former Verizon employees who applied to take CFRA-protected leaves of absence.

5.      Thereafter the DFEH initiated confidential conciliation negotiations with Verizon. On or about June 14, 2010, the DFEH and Verizon agreed to the principal terms of a settlement of the claims alleged in the CFRA Director's Complaint.  To effectuate this settlement, the DFEH filed with the Los Angeles Superior Court a Class Action Complaint for Damages and Injunctive Relief for Employment Discrimination, Case No. BC444066 (the "CFRA Action").

6.      As a result of ongoing conciliation negotiations, Verizon and the DFEH agreed to settle on a classwide basis any and all claims occurring from June 18, 2007 through [*the date upon which the Los Angeles Superior Court preliminarily approves settlement of the CFRA Action*] (the "Class Period") alleged in, arising from or relating to the CFRA Action.  Verizon and the DFEH further negotiated a maximum settlement amount from which claims of class members in the CFRA Action could be paid.

7.      The DFEH, CFRA Class Representatives and Verizon (collectively referred to as the "Parties" and each sometimes individually referred to as a "Party") independently concluded that the settlement documented in this Agreement is fair, reasonable and adequate to all concerned.  In particular, the DFEH and the CFRA Class Representatives believe that the claims asserted in the CFRA Action have merit.  However, after frankly assessing the strengths and weaknesses of the their respective claims, as well as Verizon's substantial defenses in fact and law, the risk of trial, and the difficulties, delays, expense and time associated with trial, the DFEH and CFRA Class Representatives are of the opinion that the settlement documented by this Agreement is fair, reasonable, and adequate, and in their respective best interests, in light of all known facts and circumstances.  Similarly, Verizon and its counsel believe that the claims asserted in the CFRA Action lack merit.  Verizon denies, and continues to deny each and all of the claims and contentions alleged in the CFRA Action, further denies that any of the putative class members in the CFRA Action have been injured in any amount or at all, and further claims that the CFRA Action is not suitable for class treatment.  However, Verizon has concluded that it is desirable to settle any and all claims arising from or related to the CFRA Action on the terms provided in this Agreement to avoid additional expense, inconvenience and distraction.

8.      The Parties acknowledge and agree that enforceability of this Agreement shall be contingent upon the preliminary and final approval of each and every term of this Agreement without modification by the Los Angeles Superior Court, and only after the Judgment identified in Section 8 below becomes Final, as that term is defined in this Agreement, without modification.

NOW, THEREFORE, in consideration of the recitals outlined above, and the mutual promises contained in this Agreement, the Parties hereby agree as follows:

A G R E E M E N T

1. <u>Recitals</u>

All of the recitals referenced above are incorporated by reference into the terms and conditions of this Agreement.

2. <u>Provisional Approval Of The Terms Of This Agreement.</u>

a. Within ten (10) days of execution of this Agreement by all Parties, the DFEH, the CFRA Class Representatives and Verizon shall submit a copy of this Agreement to the Los Angeles Superior Court and shall move the Court to enter an Order in the CFRA Action as to all of the following:

     i. Preliminarily certifying for settlement purposes only a class of individuals in the CFRA Action that shall include "all current and former Verizon employees who applied to take CFRA-protected leaves of absence from June 18, 2007 [*the date upon which the Los Angeles Superior Court preliminarily approves settlement of the CFRA Action*]" (the "CFRA Class"). For purposes of this Agreement, members of the CFRA Class are referred to as "CFRA Class Members";

     ii. Appointing the CFRA Class Representatives as representatives of the CFRA Class;

     iii. Appointing the DFEH as counsel on behalf of the CFRA Class;

     iv. Appointing and approving Simpluris, Inc. as the claims administrator responsible for administering the notice and claims procedures required by this Agreement ("Claims Administrator");

     v. Provisionally approving all terms of this Agreement; finding that the terms of this Agreement are fair and reasonable and in the best interests of the CFRA Class; appointing the DFEH to act as class counsel for purposes of settlement only; appointing the Class Representatives to act as representatives of the CFRA Class for purposes of settlement only; and finding that the terms of this Agreement are sufficient to warrant sending of notice to the members of the CFRA Class;

     vi. Approving the Notice of Class Action Settlement for the CFRA Action ("Notice of Class Action Settlement"), including the accompanying CFRA Class Claim And Release Form ("Claim Form"), and CFRA Class Opt-Out Form ("Opt-Out Form"), collectively attached to this Agreement as Exhibit "A";

- 3 -

vii.    Authorizing the mailing of the Notice of Class Action Settlement and accompanying forms to the CFRA Class Members; and

viii.    Confirming that a hearing to fully and finally approve the reasonableness of the settlement of the CFRA Action, and to enter an order permanently enjoining all CFRA Class Members who have not timely opted out from this settlement from pursuing, or seeking to reopen, claims that are in any way related to those asserted in the CFRA Action, will be scheduled within a reasonable period of time after the claims procedures outlined in Sections 5 and 6 below have been fully completed (the "Final Settlement Approval Hearing").

b.    The settlement documented by this Agreement is contingent upon entry of an order by the Los Angeles Superior Court that contains each of the terms specified in this Section 2. This Agreement shall immediately become null and void in the event the Court for any reason does not enter such an Order.

3.    <u>Settlement Payment For The CFRA Action.</u>

a.    Upon execution of this Agreement by all Parties, and no earlier than 30 days after and no later than 60 days after the Judgment identified in Section 8 below becomes Final without modification, Verizon shall become obligated to make monetary settlement payments required by this Agreement. The Parties agree, covenant and represent that Verizon's liability with respect to any and all payments of monetary claims pursuant to this Agreement shall be capped at $6,011,190.00 ("Maximum Settlement Amount"), and that under no circumstances shall Verizon be obligated to make monetary payments that in any way exceed the Maximum Settlement Amount.

b.    Verizon shall not be required to make any settlement payments from the Maximum Settlement Amount unless and until all of the following conditions have been fully satisfied:

i.    The Los Angeles Superior Court conducts the Final Settlement Approval Hearing, and fully and finally approves all terms of this Agreement without modification;

ii.    The Los Angeles Superior Court enters a Judgment that, among other things, permanently enjoins all CFRA Class Members who did not timely opt out from this settlement from pursuing or seeking to reopen claims that are in any way related to those asserted in the CFRA Action;

iii.    The Judgment becomes Final as that term is defined in this Agreement; and

iv.    All other conditions specified in this Agreement are fully satisfied.

- 4 -

4.      Notice of Settlement.

      a.      No later than 30 days after execution of this Agreement by all Parties and the entry of an Order by the Los Angeles Superior Court that includes all of the provisions identified in Section 2 above, Verizon shall review its records and provide to the Claims Administrator a list reflecting the names and last known addresses of all CFRA Class Members.

      b.      Within 15 days after receiving this list of CFRA Class Members from Verizon, the Claims Administrator shall conduct a national change of address search and thereafter send the Notice of Class Action Settlement, Claim Form and Opt-Out Form to the appropriate address of each CFRA Class Member by first class mail.  It shall be conclusively presumed that each and every CFRA Class Member whose Notice of Class Action Settlement is *not* returned to the Claims Administrator as undeliverable within 15 calendar days after mailing, actually received the Notice of Class Action Settlement.

      c.      The Claims Administrator shall promptly re-mail any Notice of Class Action Settlement returned by the post office with a forwarding address.  It shall be conclusively presumed that those CFRA Class Members whose re-mailed Notice of Class Action Settlement is *not* returned to the Claims Administrator as undeliverable within 15 calendar days after re-mailing, actually received the Notice of Class Action Settlement.  The Claims Administrator shall take reasonable and necessary steps to re-mail Notices of Settlement returned by the post office as undeliverable without a forwarding address.

      d.      At or before the Final Settlement Approval Hearing, the Claims Administrator shall provide a declaration to be filed with the Court that Notices of Class Action Settlement were mailed to all CFRA Class Members as required by this Agreement.

      e.      Costs of postage incurred by the Claims Administrator, including the costs incurred in mailing the Notice of Class Action Settlement to the CFRA Class Members, shall be paid from the Maximum Settlement Amount.  All other costs of administration incurred by the Claims Administrator shall be borne by Verizon.

5.      The Claims Procedure.

      a.      The Claims Administrator shall provide a Claim Form and an Opt-Out Form to CFRA Class Members with the Notice of Class Action Settlement.

      b.      CFRA Class Members shall not be entitled to receive a settlement payment under this Agreement unless they individually complete all of the following steps:

          i.      Complete the Claim Form in its entirety;

          ii.      Execute the Claim Form under penalty of perjury; and

          iii.      Return the Claim Form so that it is postmarked or personally delivered to the Claims Administrator at the address listed in the Notice of Class Action Settlement on or before 5:00 p.m. on the "Claims Deadline" listed on the Claim Form.  The Claims Deadline shall be scheduled by Verizon

and the DFEH so that it occurs no earlier than the 60th day from the date upon which the Claims Administrator first sends the Notice of Class Action Settlement and other forms required by this Agreement (the "Claims Deadline").

c.      A Claim Form mailed by a CFRA Class Member to the Claims Administrator must be sent via certified mail.  A valid and completed Claim Form that is postmarked before the Claims Deadline shall be accepted regardless of whether the Claim Form was returned by the CFRA Class Member using certified mail.  Any CFRA Class Member who fails to submit a timely, complete and valid Claim Form shall be barred from receiving any settlement payment pursuant to this Agreement.

      i.      Notwithstanding the foregoing, in the event that a dispute arises regarding a CFRA Class Member's timely submission of a Claim Form, it shall be conclusively presumed that, if a Claim Form is not personally delivered, or postmarked and sent by certified mail before the Claims Deadline, the CFRA Class Member did not return the Claim Form by the Claims Deadline.  A declaration submitted by any CFRA Class Member attesting to the mailing or certified mailing of a Claim Form before the expiration of the Claims Deadline shall be insufficient to overcome the conclusive presumption that the Claim Form was not timely received by the Claims Administrator before the Claims Deadline.

      ii.     The presumption stated in the immediately preceding paragraph may be rebutted if the CFRA Class Member establishes a Genuine Hardship to explain why he or she did not submit a Claim Form by the Claims Deadline.  For purposes of this Agreement, a Genuine Hardship shall include only those circumstances under which a CFRA Class Member was absent from the country due to service in the military, or was mentally incapacitated and therefore could not return the Claim Form by the Claims Deadline.  Any CFRA Class Member who establishes a Genuine Hardship shall be permitted to participate in the settlement so long as the Claim Form submitted by such CFRA Class Member and the documentation establishing a Genuine Hardship is actually received by the Claims Administrator within 30 days after the Claims Deadline.  A Claim Form is "actually received" if it is sent to the Claims Administrator via certified mail and is postmarked within 30 days after the Claims Deadline, or the Claim Form is personally delivered to the Claims Administrator before 5:00 p.m. within 30 days after the Claims Deadline.

d.      The Claims Administrator shall accept Claim Forms from CFRA Class Members who did not receive a Notice of Class Action Settlement and Claim Form in the mail provided that any such CFRA Class Member complies with the requirements set forth in Sections 5(b) and 5(c) above.

e.      CFRA Class Members may choose on an individual basis to opt-out of the settlement provided by this Agreement by completing all of the following steps:

    i.        Complete the Opt-Out Form in its entirety;

    ii.       Execute the Opt-Out Form under penalty of perjury;

    iii.      Return the Opt-Out Form so that it is postmarked or personally delivered to the Claims Administrator at the address listed in the Notice of Class Action Settlement by the Claims Deadline.

    f.     An Opt-Out Form mailed to the Claims Administrator must be sent via certified mail. A valid and completed Opt-Out Form that is postmarked before the Claims Deadline shall be accepted regardless of whether the Opt-Out Form was returned by the CFRA Class Member using certified mail. Unless they fully and completely opt out of the settlement created by this Agreement as described in the paragraphs above, all CFRA Class Members shall be bound by the terms and conditions of this Agreement, and shall also be bound by the Los Angeles Superior Court's Order enjoining all CFRA Class Members from pursuing, or seeking to reopen, claims that are in any way related to those asserted in the Action, regardless of whether they have timely submitted an Opt-Out Form.

    i.        Notwithstanding the foregoing, in the event a dispute arises regarding a CFRA Class Member's timely submission of an Opt-Out Form, it shall be conclusively presumed that, if an Opt-Out Form is not personally delivered or postmarked and sent by certified mail, the CFRA Class Member did not return the Opt-Out Form by the Claims Deadline. A declaration submitted by any CFRA Class Member attesting to the mailing or certified mailing of an Opt-Out Form before the expiration of the Claims Deadline shall be insufficient to overcome the conclusive presumption that the Opt-Out Form was not timely received by the Claims Administrator before the Claims Deadline.

    ii.      The presumption stated above may be rebutted if the CFRA Class Member establishes a Genuine Hardship to explain why he or she did not submit an Opt-Out Form by the Claims Deadline. For purposes of this Agreement, a Genuine Hardship shall include only those circumstances under which a CFRA Class Member was absent from the country due to service in the military, or was mentally incapacitated and therefore could not return the Opt-Out Form by the Claims Deadline. Any CFRA Class Member who establishes a Genuine Hardship shall be permitted to opt out of the Agreement so long as the Opt-Out Form submitted by such CFRA Class Member and the documentation establishing a Genuine Hardship is actually received by the Claims Administrator two days prior to the Final Settlement Approval Hearing. For purposes of this paragraph, an Opt-Out Form is "actually received" if: the Opt-Out Form it is sent to the Claims Administrator via certified mail and is postmarked before the date of the Final Settlement Approval Hearing; or the Opt-Out Form is personally delivered to the Claims Administrator before 5:00 p.m. at least two days before the Final Settlement Approval Hearing.

g.     The Claims Administrator shall review each Claim Form and Opt-Out Form upon receipt for timeliness, completeness, and validity.  In the event that a Claim Form or Opt-Out Form is defective or incomplete, the Claims Administrator will promptly notify the CFRA Class Member of the defect or deficiency and permit the CFRA Class Member fifteen days from the date of the mailing of the deficiency notice to cure the defect (the "Cure Deadline").  CFRA Class Members shall be permitted two opportunities to cure a defective Claim or Opt-Out Form. Notwithstanding the foregoing, any Claim or Opt-Out Form that is cured will not be considered effective unless: the Original Claim Form or Opt-Out Form was postmarked or delivered before the Claims Deadline; and the cured Claim Form or Opt-Out Form was postmarked or delivered before the Cure Deadline.

h.     The Claims Administrator has the right to contact CFRA Class Members who submit a Claim Form or Opt-Out Form.  The Claims Administrator shall not interfere with any CFRA Class Member's right to submit a Claim Form or an Opt-Out Form, and shall communicate with a CFRA Class Member solely for purposes of determining the validity, completeness, and any defect in a submitted Claim Form or Opt-Out Form.  Except as explicitly provided in this Agreement the Claims Administrator shall not have the authority to extend the Claims Deadline.  The Claims Administrator shall provide regular updates concerning claims status to both the DFEH and to counsel for Verizon.

i.     Within 15 days after expiration of the Claims Deadline, the Claims Administrator shall provide to the DFEH and to counsel for Verizon a report listing the information identified in Section 8(c)(i) below.

j.     If, upon expiration of the Claims Deadline, more than 10% of CFRA Class Members have submitted full and complete Opt-Out Forms, then Verizon shall have the sole, absolute and unfettered discretion to withdraw from this Agreement.  Verizon shall provide written notice of such withdrawal to the DFEH no later than 10 business days after its actual receipt of the Claims Administrator's list of CFRA Class Members who submitted fully completed and executed Opt-Out Forms.  In the event that Verizon elects to so withdraw, the withdrawal shall have the same effect as a termination of this Agreement for failure to satisfy a condition of settlement.

6.     <u>The Claims Adjudication Process.</u>

a.     Upon receipt of the list of all CFRA Class Members who timely submitted a completed and executed Claim Form (a "CFRA Claimant"), Verizon shall provide to the DFEH in electronic format whatever attendance and discipline records it has that will assist the DFEH in determining whether each CFRA Claimant was qualified to take CFRA leave; each Claimant properly applied for CFRA leave; Verizon properly determined whether the CFRA Claimant was entitled to take CFRA leave; and whether Verizon disciplined or terminated the CFRA Claimant for CFRA-related absences.  Typically, these records will be derived from Verizon's AMTS electronic reports and from the files maintained by Verizon's FMLA Team.  In the event Verizon cannot locate records for a CFRA Claimant, Verizon shall so notify the DFEH and shall provide whatever records it can locate.  It shall remain the DFEH's obligation to evaluate the claims of CFRA Claimants for whom Verizon cannot locate relevant records.

b.      Upon receipt of the electronic attendance and discipline records identified above, the DFEH shall review each CFRA Claimant's claim on a case-by-case basis to determine whether the claimant is entitled to participate in the settlement fund pursuant to the following formula:

i.      Tier 1:  CFRA Claimants whose applications for CFRA leave the DFEH determines were improperly denied, but who were not disciplined or terminated for CFRA-related absences receive a maximum payment of $3,000;

ii.     Tier 2:  CFRA Claimants whom the DFEH determines were disciplined, but not terminated for using or requesting CFRA leave will receive a maximum payment of $6,000, irrespective of whether they also experienced an unlawful denial and irrespective of the number of times they were disciplined or the severity of the discipline.

iii.    Tier 3:  CFRA Claimants whom the DFEH determines were terminated or constructively terminated in violation of the CFRA will receive $25,000.00, irrespective of whether they also experienced a denial and/or discipline.

c.      The DFEH has the right, but not the obligation, to communicate with individual CFRA Claimants in evaluating their claims and in assessing the appropriate level of damages. The DFEH has the further right, but not the obligation, to adjust individual damage awards as the DFEH determines appropriate, so long as the variance between the adjusted damage award and the original damage award as calculated pursuant to Section 6(b) above does not exceed 20%, and so long as the amount of each award is fair and reasonable.

d.      Notwithstanding the provisions of Sections 6(b) and 6(c) above, the DFEH shall have the sole discretion to make enhanced damage awards to the CFRA Class Representatives over and above the enhancements described in Section 6(c), above.  The CFRA Class Representatives shall not be entitled to any settlement payments pursuant to this Agreement unless and until they execute individual settlement agreements containing a release of all claims they now have or ever had against Verizon.

e.      The DFEH has the further right to adjust and prorate the amount of all individual damage awards made pursuant to the terms of this Agreement in the event that the total value of all payments exceeds the Maximum Settlement Amount.  The total amount of all damage awards to all current and former Verizon employees who receive payments pursuant to this Agreement shall not in any event exceed the Maximum Settlement Amount.

f.      The DFEH shall give to Verizon at least 14 days' advance notice of the determinations it makes with respect to each CFRA Claimant.

i.      Verizon retains the right to challenge or object to the DFEH's determinations with respect to any CFRA Claimant's claim on the bases that: (1) a CFRA Claimant was not employed by Verizon during the Class Period; (2) a CFRA Claimant had not worked for Verizon for 12 months

- 9 -

and/or had not worked 1,250 hours in the 12 months prior to the CFRA leave request and/or had exhausted 12 weeks of CFRA leave entitlement for the year; and (3) a CFRA Claimant for whom the DFEH proposes to make a Tier 3 damages award was not terminated or constructively terminated in violation of the CFRA.  Verizon shall have the further right to object to the DFEH's determinations with respect to any individual who submits a Claim Form pursuant to Section 5(d) above.

ii.     Within 14 days of receipt of Verizon's objections, the Department shall meet and confer with Verizon in an attempt to resolve all objections made by Verizon with respect to the DFEH's determinations.

iii.    In the event that the Department and Verizon are unable to resolve Verizon's objections, the DFEH and Verizon shall, within 30 days from the Department's receipt of Verizon's objections, submit each unresolved objection for final determination to a mutually agreed-upon mediator, or to the Department's Mediation Division.  Verizon has sole discretion to determine whether final resolution shall be submitted to a mutually agreed-upon mediator or to the Department's Mediation Division. Verizon shall be solely responsible for paying the fees and costs of the agreed-upon mediator; the Department shall be solely responsible for paying the fees and costs of the Department's Mediation Division.

g.     The Parties do not know how many CFRA Class Members will become CFRA Claimants, and cannot at this time estimate how much time Verizon will need to produce electronic records to the DFEH, or how much time the DFEH will require to evaluate claims asserted by individual CFRA Claimants, as described in this Section 6.  Verizon and the DFEH shall agree on a schedule by which these records are to be produced and the DFEH's determinations shall be completed.  Verizon and the DFEH shall also agree on a date for the Final Settlement Approval Hearing.

7.     <u>Taxation Of Settlement Payments.</u>

a.     The Parties agree, covenant and represent that Tier 1 and Tier 2 payments made pursuant to this Agreement do not constitute payment of back wages, and shall be treated as compensation for non-wage claims.  Tier 1 and Tier 2 payments shall be paid without withholding and shall be reported to federal and state taxing authorities and the claimant under the claimant's name and social security number on an IRS Form 1099 or similar form.

b.     The Parties further agree, covenant and represent that Tier 3 payments and Class Representative enhancements, shall be apportioned for tax purposes as follows:  50% of each such payment shall be treated as wages and the remaining 50% of each such payment shall be treated as compensation for non-wage claims.  The portion treated as wages shall be paid net of all applicable employment taxes, including federal, state and local income tax withholding and the employee share of the FICA (social security) tax, and shall be reported to federal and state taxing authorities and the claimant under the claimant's name and social security number on an IRS Form W-2 or similar form.  The portion treated as non-wage compensation shall be paid

without withholding and shall be reported to federal and state taxing authorities and the claimant under the claimant's name and social security number on an IRS Form 1099 or similar form.

c.      Except as provided in paragraph (d) below, the Parties agree that the current or former Verizon employees who receive monetary payments pursuant to this Agreement shall be individually and solely responsible for all taxes due with respect to the amounts they receive pursuant to this Agreement and that they shall indemnify, defend and hold Verizon harmless from and against any and all taxes, interest, penalties, attorney's fees and other costs imposed on Verizon as a result of any failure to timely pay such taxes.

d.      Verizon shall pay the employer share of the FICA tax and any federal or state unemployment insurance tax from the Maximum Settlement Amount.

e.      The Parties agree that CFRA Claimants and CFRA Class Representatives may be required to provide Verizon with a completed and signed Form W-9 as a condition of receiving a payment under the Settlement.

8.      <u>Final Settlement Approval Hearing.</u>

a.      This Agreement cannot become effective, and Verizon shall have no obligation to make any settlement payment contemplated by this Agreement, unless and until the Los Angeles Superior Court conducts a Final Settlement Approval Hearing; enters an Order and Final Judgment, as described below, that approves without modification all of the terms of this Agreement, and finds that the damage awards made by the DFEH pursuant to this Agreement are fair and reasonable and in the best interests of the CFRA Class Members; and that Judgment becomes Final without modification.

b.      The DFEH and Verizon shall jointly move the Los Angeles Superior Court for entry of the Order and Judgment in the CFRA Action.  The Parties agree that upon final approval of the settlement documented by this Agreement, the Los Angeles Superior Court shall enter a judgment that makes fully enforceable the release in Section 12 below.  This judgment will constitute a binding and final resolution of any and all claims by CFRA Class Members, as defined by the release provisions of Section 12.

c.      The DFEH and Verizon shall be responsible for ensuring that at least the following documents are filed with the Los Angeles Superior Court in advance of Final Settlement Approval Hearing, so that the Court will have a sufficient basis upon which to evaluate and approve the settlement of the CFRA Action on a classwide basis:

    i.      A report by the Claims Administrator listing the names of all CFRA Class Members to whom notices required by this Agreement were sent; confirming that the Notice, and all other documents were timely mailed to CFRA Class Members as required by this Agreement; and listing the names of all CFRA Claimants, as well as the names of all CFRA Class Members who submitted completed Opt-Out Forms.

ii.      A report by the DFEH listing the names of all CFRA Claimants and the amount of the award to which the Department determined each CFRA Claimant was entitled;

iii.     A duly noticed motion, accompanying Memorandum of Points and Authorities and such other pleadings, evidence or other documents as may be necessary for the Court to determine that the settlement documented by this Agreement is fair, adequate and reasonable, and in the best interests of the CFRA Class;

iv.     An Order certifying the CFRA Class for settlement purposes only, approving the Settlement as being fair, reasonable and adequate to the CFRA Claimants within the meaning of Sections 877 and 877.6 of the California Code of Civil Procedure and applicable California law, and for the entry of a Judgment thereon;

v.      A Judgment for the Court's signature (i) approving each and every term of the settlement documented by this Agreement as being fair, adequate and reasonable; (ii) permanently enjoining all CFRA Class Members who have not timely opted out from this settlement from pursuing, or seeking to reopen claims that are in any way related to those asserted in the CFRA Action; and (iii) dismissing the CFRA Action with prejudice as against all Parties; and

vi.     A Notice of Entry of Judgment.

The DFEH and Verizon shall meet and confer and then jointly submit to the Court such other pleadings and/or evidence as may be required for the approval of this Agreement. The DFEH and Verizon will cooperate in good faith to draft all papers for approval of the Settlement.

d.    CFRA Class Members who wish to present objections to the proposed settlement at the Final Settlement Approval Hearing must first do so in writing. If a CFRA Class Member wishes to object to the approval of this Agreement by the Los Angeles Superior Court, the objector must submit a written statement of the objection to the Claims Administrator. To be considered, such statement must be received by the Claims Administrator by the Claims Deadline. The Claims Administrator shall stamp the date received on the original and send copies to Verizon and the DFEH by e-mail or facsimile and overnight delivery not later than three (3) days after receipt thereof. The Claims Administrator shall also file the date-stamped originals of any objections with the Court. An objector also has the right to appear at the Final Settlement Approval Hearing either in person or through counsel hired by the objector, at the objector's cost. An objector who wishes to appear at the Hearing must state his or her intention to do so at the time he/she submits his/her written objections. An objector may withdraw his/her objections at any time. The Parties may file with the Los Angeles Superior Court written responses to any filed objections.

e.     The Parties and their counsel will support each and every provision of this Agreement before the Los Angeles Superior Court.  If the Court gives preliminary approval of the terms of this Agreement, the CFRA Class Representatives shall not attempt to opt out, and shall timely submit complete and executed Claim Forms to the Claims Administrator.

f.     For purposes of this Agreement the Los Angeles Superior Court's Judgment shall become "Final" when all of the following have occurred:

    i.     The judgment is filed and entered by the Los Angeles Superior Court;

    ii.    If a writ or appeal challenging any aspect of the Judgment has not been lodged or filed, the period of time for filing or noticing any appeal from the Judgment has expired; and

    iii.   If a writ or appeal challenging any aspect of the Judgment has been timely filed, the writ or appeal has been dismissed or the Judgment is affirmed in its entirety on appeal, and a remittitur to the Los Angeles Superior Court has been issued.

9.     **Distribution Of Individual Settlement Payments To The CFRA Claimants And Class Representatives.**

a.     Verizon shall not be obligated to make any settlement payments contemplated by this Agreement unless and until:

    i.     The Judgment identified in Section 8 above becomes Final without modification;

    ii.    The DFEH closes its files with respect to the CFRA Action and with respect to the individual complaints of discrimination, if any, filed by the CFRA Class Representatives.

b.     No earlier than 30 days and no later than 60 days after the Judgment identified in Section 8 above becomes Final without modification, and the DFEH takes the actions identified in Section 9(a) above, Verizon will cause to have issued and delivered to the Claims Administrator settlement checks drawn on the Maximum Settlement Amount, made payable to each CFRA Class Representative and CFRA Claimant (the "Payees") in the total gross amount calculated by the DFEH and approved by the Los Angeles Superior Court.

c.     The Claims Administrator shall mail to each Payee the settlement payment required by this Agreement by first class mail to their last known addresses, as determined from the claims process.  It shall be conclusively presumed that each Payee received his or her settlement payment on the date the payment was deposited in the United States mail, unless the payment is returned to the Claims Administrator by the post office within thirty days after mailing.  Any check returned by the post office with a forwarding address will be re-mailed promptly by the Claims Administrator to that forwarding address.  The Claims Administrator will take reasonable and necessary steps to locate the Payee and to re-mail any checks returned by the post office as undeliverable.  Any checks returned to the Claims Administrator by the post

office as undeliverable after the Claims Administrator takes such steps shall be returned or credited to Verizon for Verizon to use at its discretion.

10.   <u>Prospective Relief.</u>

     a.   No earlier than 60 days after the Judgment identified in Section 8 above becomes Final without modification, Verizon shall do all of the following:

          i.   Provide to the DFEH, post on the Company's intranet in a format and style readily available to all employees, and adopt and implement written policies, rules, and procedures for granting or denying of CFRA leave consistent with the FEHA, as most recently amended, and Fair Employment & Housing Commission ("FEHC") regulations interpreting and implementing the FEHA.  The Parties acknowledge and agree that Verizon shall, consistent with the FEHC's regulations interpreting and implementing the FEHA, respond to requests for CFRA within 10 days of submission of completed CFRA forms and medical certifications.

          ii.   Provide to the DFEH and adopt and implement CFRA forms and notification letters that comply with the FEHA, as most recently amended, and FEHC regulations interpreting and implementing the FEHA.  The Parties acknowledge that Verizon may require employees to submit medical certifications as a condition of granting CFRA leaves of absence, so long as Verizon requires medical certifications of other similarly situated employees.  The Parties further acknowledge and agree that, if the medical certification satisfies the requirements of Title 2, California Code of Regulations, section 7297.11, Verizon shall accept the certification as sufficient, and shall not ask an employee to provide additional medical information beyond that allowed by the FEHA, as most recently amended, and FEHC regulations interpreting and implementing the FEHA.

          iii.   Provide to the DFEH, post on the Company's intranet in a format and style readily available to all employees, and adopt and implement an administrative review and complaint procedure which employees may invoke to appeal any alleged violation of the rules, policies, and procedures identified above.

          iv.   Post on its intranet a downloadable copy of the DFEH's "California Family Rights Act" pamphlet (DFEH-188).

          v.   Discontinue those policies and practices that have been superseded by the policies and practices identified in paragraphs (i) through (iii) above.

          vi.   Train all supervisors, managers, and attendance clerks to comply with the Company's CFRA rules, policies, and procedures in general, and to accept and process all requests for CFRA leave, and to accept and process all medical certifications relating to a request for CFRA leave submitted by any employee, in particular.

vii.    Any leave that is deemed improperly denied may not serve as the basis for future discipline.

b.    Commencing 60 days after the Judgment identified in Section 8 above becomes Final without modification, Verizon shall, every six months for a period of two years, submit written reports in the form of letters to the Department, that provide the following information:

i.    All requests for CFRA leave that were denied and the reason for the denial within the previous six months; and

ii.    The date upon which each request for CFRA leave was submitted to Verizon and the respective dates upon which each request was granted or denied.

c.    Commencing 60 days after the Judgment identified in Section 8 above becomes Final without modification, Verizon shall provide written proof in the form of letters to the Department, addressed to Alexandra Seldin, SIU Administrator, Department of Fair Employment and Housing, 2218 Kausen Drive, Suite 100, Elk Grove, California 95758, that it has complied with the terms outlined in this Section 10.

11.    <u>Invalidation of Agreement for Failure To Satisfy Conditions.</u>

The Parties agree, covenant and represent that, in the event that any of the terms or conditions set forth in Sections 2 through 8 of this Agreement are not fully and completely satisfied, this Agreement shall terminate and all terms of the Agreement, including, but not limited to, the conditional certification of an opt-out class, payment of settlement amounts to the Payees and the release contained herein, shall be null and void.  In such event, nothing in this Agreement shall be used, construed or admissible as evidence by or against any Party as a determination, admission, or concession of any issue of law or fact in this litigation, or in any other proceeding for any purpose; and the Parties do not waive, and instead expressly reserve, their respective rights to prosecute and defend this litigation as if this Agreement never existed.

12.    <u>Class Release Provisions.</u>

a.    Conditioned upon satisfaction of all terms and conditions of this Agreement, and in exchange for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the CFRA Class Representatives, on their own behalves, and on behalf of all CFRA Class Members whom the Claims Administrator certifies failed to timely submit full and complete Opt-Out Forms, and for their respective heirs, assigns, executors, administrators, and agents, past or present (collectively the "Affiliates"), hereby fully and without limitation release, covenant not to sue, and forever discharge Verizon and their respective subsidiaries, divisions, affiliated corporations, affiliated partnerships, parents, trustees, directors, officers, shareholders, partners, agents, employees, representatives, consultants, insurance carriers, attorneys, heirs, assigns, executors and administrators, predecessors and successors, past and present (collectively, the "Verizon Releasees"), both individually and collectively, from any and all rights, claims, demands, liabilities, actions and causes of action (whether in law or in equity, or whether contractual, common law, statutory, federal, state or otherwise), suits, grievances, damages, losses, attorneys' fees, costs and expenses, of whatever nature whatsoever, known or unknown,

fixed or contingent, suspected or unsuspected, that they or their Affiliates now have, or may ever have, against Verizon or any of the Verizon Releasees, that occurred during the Class Period and that arise out of or in any way relate to: (i) the claims and allegations asserted in the CFRA Action; (ii) any claim for disability discrimination arising from or relating to the claims alleged in the CFRA Action; and (iii) any claim for failure to engage in the interactive process or to provide reasonable accommodation arising from or relating to the claims alleged in the CFRA Action.

        b.     Excluded from this release are any claims which cannot be waived by law, including but not limited to the right to file a charge with or participate in an investigation conducted by the United States Department of Labor ("DOL") or the Equal Employment Opportunity Commission ("EEOC"). CFRA Claimants are, however, waiving their right to any monetary recovery or relief should the DOL, EEOC or any other governmental entity or private individual pursue any claims on behalf of individual CFRA Claimants that arise out of or relate to the claims and allegations released in the CFRA Action.

        c.     The Parties each acknowledge on their own behalf, and on behalf of their respective Affiliates, that they are aware of and familiar with the provisions of Section 1542 of the California Civil Code, which provides as follows:

> *"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."*

        With full awareness and understanding of the above provision, the Parties hereby waive and relinquish any and all rights and benefits that they may have under section 1542 of the California Civil Code, or the law of any other state or jurisdiction, or common law principle, to the same or similar effect.

        d.     CFRA Claimants whom the DFEH determines are entitled to a Tier 3 settlement payment shall, as a condition precedent to payment, execute a separate release of all claims agreement attached to this Agreement as Exhibit B.

        e.     Notwithstanding the generality of the foregoing release, the DFEH shall have the right to:

        i.     Conduct a compliance review within one year of the date upon which the Judgment identified in Section 8 above becomes Final, to determine whether Verizon has substantially complied with the Prospective Relief provisions of Section 10 of this Agreement;

        ii.     Bring an action in the Los Angeles Superior Court to enforce the terms of this Agreement.

13.    <u>Dispute Resolution.</u>

a.      Except as otherwise set forth herein, all disputes concerning compliance with this Agreement shall be resolved pursuant to the following dispute resolution procedure:

b.      If any Party believes that another Party is in breach of this Agreement, the complaining Party shall notify all other Parties in writing of the alleged violation.  The responding Party shall have 10 days in which to correct the alleged breach or explain why a breach has not occurred.  The complaining and responding Parties shall thereafter meet and confer in good faith for up to 10 business days after submission of the written response to resolve their differences.  If the complaining and responding Parties are unable to resolve their differences, either Party may file an appropriate motion for enforcement with the Los Angeles Superior Court.  The briefing of such motion should be in letter brief form and shall not exceed five (5) single-spaced pages (excluding exhibits).  In considering an enforcement proceeding under this Agreement, the Court will be bound by the terms of this Agreement.  The Parties agree that, pursuant to Code of Civil Procedure Section 664.6 and Rule 3.769(h) of the California Rules of Court, the Los Angeles Superior Court retains jurisdiction only to enforce the express terms of this Agreement and then only in accordance with the express terms of this Section.

14.     <u>Additional Provisions.</u>

a.      The Department acknowledges that documents produced to the Department by Verizon with respect to its investigation of the CFRA Director's Complaint ("Verizon's Documents") contain confidential personal, personnel, and medical information protected from disclosure by common-law and constitutional rights of privacy, as well as federal and state laws governing confidentiality of medical and other information.  For these reasons, the Department agrees that it shall maintain Verizon's Documents in confidence, and shall not produce them to third parties other than as required by law.  In the event that the Department is subpoenaed, or receives a Public Records Act or similar demand or request, to identify, reveal the contents of, or produce all or a portion of Verizon's Documents (a "Records Request"), the Department shall:

      i.      Promptly notify Verizon and its counsel of record, within 5 business days of receipt, that the Department has received a Records Request, and whether the Department will object to or comply with the Records Request;

     ii.      To the extent reasonable and permitted by law, provide whatever assistance Verizon may require to investigate and evaluate the legal and factual bases of each Records Request;

    iii.      Refrain from complying with a Records Request until the last day required by law, to allow Verizon time to obtain a protective order of a court of competent jurisdiction to excuse the Department from complying with a Records Request, or to otherwise limit or prevent disclosure of Verizon's Documents.

b.      This Agreement shall constitute a compromise of, and full accord and satisfaction of disputed claims.  This Agreement shall not be treated as an admission of liability by Verizon

- 17 -

at any time, or as an admission by Verizon that class certification properly should be granted in this matter.

        c.      The Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Agreement, and that this Agreement has been executed with the consent and advice of counsel.  Further, the DFEH and the CFRA Class Representatives warrant and represent that they are fully authorized to enter into and bind all CFRA Class Members to this Agreement and the terms and conditions thereof, and that Verizon may distribute settlement funds to all CFRA Claimants pursuant to the terms of this Agreement.

        d.      The DFEH, CFRA Class Representatives and Verizon acknowledge and agree, for the purposes of this Agreement only, that because the CFRA Class Members are so numerous, it is impossible or impracticable for all CFRA Class Members to execute this Agreement.  Therefore, the DFEH, CFRA Class Representatives and Verizon agree, covenant and represent that this Agreement may be executed by the DFEH and CFRA Class Representatives on behalf of all CFRA Class Members who do not timely submit completed Opt-Out Forms, and that this Agreement shall have the same force and effect as if individually executed by all CFRA Class Members.

        e.      Each and every provision of this Agreement shall be deemed to be contractual, and shall not be treated as mere recitals at any time or for any purpose.  Therefore, each and every provision of this Agreement shall be considered severable, except for the release provisions of Section 12 above.  If a court of competent jurisdiction finds the release provisions of Section 12 of this Agreement to be unenforceable or invalid, then this Agreement shall become null and void.  If a court of competent jurisdiction finds any provision other than the release provisions of Sections 12 to be invalid or unenforceable for any reason, then such other provision, or part thereof, shall remain in full force and effect to the extent allowed by law, and all of the remaining provisions of this Agreement shall remain in full force and effect.

        f.      The Parties understand and agree that they shall bear their own costs of litigation, including attorney's fees.

        g.      The Recitals as well as all exhibits attached to this Agreement are incorporated by reference as though fully set forth herein.

        h.      This Agreement is in no manner intended, nor shall it be interpreted, as prejudicing or affecting claims or causes of action arising after the Class Period.

        i.      This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement may be executed by way of a facsimile signature, a copy of which will operate as an original.  The party executing the facsimile copy shall promptly transmit a copy thereof to all other parties.

        j.      This Agreement shall be construed and enforced pursuant to the laws of the State of California.

k.     This Agreement has been reviewed by the Parties and by their attorneys, if any. The Parties have had a full opportunity to negotiate the terms and conditions of this Agreement. Accordingly, the Parties expressly waive the common-law and statutory rule of construction that ambiguities should be construed against the drafter of an agreement, and agree, covenant, and represent that the language in all parts of this Agreement shall be in all cases construed as a whole, according to its fair meaning.

l.     This Agreement sets forth the entire agreement between the Parties, and fully supersedes any prior agreements or understandings between them on the subject matter contained in this Agreement.  The Parties acknowledge that they have not relied on any representations, promises, or agreements of any kind made in connection with the decision to accept this Agreement, except for those set forth in this Agreement.  No addition, modification, amendment or waiver of any part of this Agreement shall be binding or enforceable unless executed in writing by the Parties.

m.     The Parties represent that they have thoroughly read and understand the terms of this Agreement; they have consulted with their own attorneys prior to executing this Agreement; they are fully aware of its contents and of its legal effect; and that they are entering into this Agreement voluntarily.

n.     This Agreement is not intended to revive any claims arising out of or relating to alleged CFRA violations by Verizon that have previously been asserted and resolved pursuant to a written settlement agreement containing a release of CFRA claims.  Accordingly, Class Members who have executed written settlement agreements containing a release of CFRA claims shall not be entitled to receive any notices contemplated by this Agreement; shall not be entitled to submit Claim or Opt-Out Forms; and shall not be entitled to any settlement payments contemplated by this Agreement.

IN WITNESS WHEREOF, The DFEH, CFRA Class Representatives and Verizon execute this Agreement on the dates indicated below.

Dated: September 20, 2010.

THE CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

By: _____
Lindsey Urbina
Senior Staff Counsel, California Department of Fair Employment and Housing

Dated: September 20, 2010.

THE CFRA CLAIMANTS

By: _____
Lindsey Urbina
Senior Staff Counsel, California Department of Fair Employment and Housing

- 19 -

Dated: September 15, 2010.

_____
Alma Aranda

Dated: September 15, 2010.

_____
Ofelia Cabana Fanol

Dated: September 15, 2010.

_____
Heather Dowl-Lee

Dated: September 15, 2010.

_____
Veronica Barcelo

Dated: September 15, 2010.

_____
Erica Diaz

Dated: September 15, 2010.

_____
Kimberly Gonzalez

Dated: September 15, 2010.

_____
Cynthia Martinez

Dated: September 15, 2010.

_____
Tanya Dennis

Dated: September 15, 2010.

_____
Katrina Grant

Dated: September 15, 2010.

VERIZON SERVICES CORPORATION, DBA
VERIZON CALIFORNIA, INC.

By: _____
Jonathan Ramsfelder
Assistant General Counsel Labor and Employment

APPROVED AS TO FORM:

Dated: September 15, 2010

JONES DAY

By: _____
Robert A. Naeve
Attorneys for Verizon Services Corporation

Dated: September 15, 2010.

_____
Alma Aranda

Dated: September 15, 2010.

_____
Ofelia Cabana Fanol

Dated: September 15, 2010.

_____
Heather Dowl-Lee

Dated: September 15, 2010.

_____
Veronica Barcelo

Dated: September 15, 2010.

_____
Erica Diaz

Dated: September 15, 2010.

_____
Kimberly Gonzalez

Dated: September 15, 2010.

_____
Cynthia Martinez

Dated: September 15, 2010.

_____
Tanya Dennis

Dated: September 15, 2010.

_____
Katrina Grant

Dated: September 15, 2010.

VERIZON SERVICES CORPORATION, DBA
VERIZON CALIFORNIA, INC.

By: _____
Jonathan Ramsfelder
Assistant General Counsel Labor and Employment

APPROVED AS TO FORM:

Dated: September 15, 2010

JONES DAY

By: _____
Robert A. Naeve
Attorneys for Verizon Services Corporation

Dated: September 15, 2010.

_____
Alma Aranda

Dated: September 15, 2010.

*Ofelia Cabana Fanol*
_____
Ofelia Cabana Fanol

Dated: September 15, 2010.

_____
Heather Dowl-Lee

Dated: September 15, 2010.

_____
Veronica Barcelo

Dated: September 15, 2010.

_____
Erica Diaz

Dated: September 15, 2010.

_____
Kimberly Gonzalez

Dated: September 15, 2010.

_____
Cynthia Martinez

Dated: September 15, 2010.

_____
Tanya Dennis

Dated: September 15, 2010.

_____
Katrina Grant

Dated: September 15, 2010.

VERIZON SERVICES CORPORATION, DBA
VERIZON CALIFORNIA, INC.

By: _____
Jonathan Ramsfelder
Assistant General Counsel Labor and Employment

APPROVED AS TO FORM:

Dated: September 15, 2010

JONES DAY

By: _____
Robert A. Naeve
Attorneys for Verizon Services Corporation

- 20 -

Dated: September 15, 2010.

_____
Alma Aranda

Dated: September 15, 2010.

_____
Ofelia Cabana Fanol

Dated: September 15, 2010.

_____
Heather Dowl-Lee

Dated: September 15, 2010.

_____
Veronica Barcelo

Dated: September 15, 2010.

_____
Erica Diaz

Dated: September 15, 2010.

_____
Kimberly Gonzalez

Dated: September 15, 2010.

_____
Cynthia Martinez

Dated: September 15, 2010.

_____
Tanya Dennis

Dated: September 15, 2010.

_____
Katrina Grant

Dated: September 15, 2010.

VERIZON SERVICES CORPORATION, DBA
VERIZON CALIFORNIA, INC.

By: _____
Jonathan Ramsfelder
Assistant General Counsel Labor and Employment

APPROVED AS TO FORM:

Dated: September 15, 2010

JONES DAY

By: _____
Robert A. Naeve
Attorneys for Verizon Services Corporation

Dated: September 15, 2010.

_____
Alma Aranda

Dated: September 15, 2010.

_____
Ofelia Cabana Fanol

Dated: September 15, 2010.

_____
Heather Dowl-Lee

Dated: September 15, 2010.

_____
Veronica Barcelo

Dated: September 15, 2010.

_____
Erica Diaz

Dated: September 15, 2010.

_____
Kimberly Gonzalez

Dated: September 15, 2010.

_____
Cynthia Martinez

Dated: September 15, 2010.

_____
Tanya Dennis

Dated: September 15, 2010.

_____
Katrina Grant

Dated: September 15, 2010.

VERIZON SERVICES CORPORATION, DBA
VERIZON CALIFORNIA, INC.

By: _____
Jonathan Ramsfelder
Assistant General Counsel Labor and Employment

APPROVED AS TO FORM:

Dated: September 15, 2010

JONES DAY

By: _____
Robert A. Naeve
Attorneys for Verizon Services Corporation

Dated: September 15, 2010.

_____
Alma Aranda

Dated: September 15, 2010.

_____
Ofelia Cabana Fanol

Dated: September 15, 2010.

_____
Heather Dowl-Lee

Dated: September 15, 2010.

_____
Veronica Barcelo

Dated: September 15, 2010.

_____
Erica Diaz

Dated: September 15, 2010.

_____
Kimberly Gonzalez

Dated: September 15, 2010.

_____
Cynthia Martinez

Dated: September 15, 2010.

_____
Tanya Dennis

Dated: September 15, 2010.

_____
Katrina Grant

Dated: September 15, 2010.

VERIZON SERVICES CORPORATION, DBA
VERIZON CALIFORNIA, INC.

By: _____
Jonathan Ramsfelder
Assistant General Counsel Labor and Employment

APPROVED AS TO FORM:

Dated: September 15, 2010

JONES DAY

By: _____
Robert A. Naeve
Attorneys for Verizon Services Corporation

Dated: September 15, 2010.

_____
Alma Aranda

Dated: September 15, 2010.

_____
Ofelia Cabana Fanol

Dated: September 15, 2010.

_____
Heather Dowl-Lee

Dated: September 15, 2010.

_____
Veronica Barcelo

Dated: September 15, 2010.

_____
Erica Diaz

Dated: September 15, 2010.

_____
Kimberly Gonzalez

Dated: September 15, 2010.

_____
Cynthia Martinez

Dated: September 15, 2010.

_____
Tanya Dennis

Dated: September 15, 2010.

_____
Katrina Grant

Dated: September 15, 2010.

VERIZON SERVICES CORPORATION, DBA VERIZON CALIFORNIA, INC.

By: _____
Jonathan Ramsfelder
Assistant General Counsel Labor and Employment

APPROVED AS TO FORM:

Dated: September 15, 2010

JONES DAY

By: _____
Robert A. Naeve
Attorneys for Verizon Services Corporation

Dated: September 15, 2010.

_____
Alma Aranda

Dated: September 15, 2010.

_____
Ofelia Cabana Fanol

Dated: September 15, 2010.

_____
Heather Dowl-Lee

Dated: September 15, 2010.

_____
Veronica Barcelo

Dated: September 15, 2010.

_____
Erica Diaz

Dated: September 15, 2010.

_____
Kimberly Gonzalez

Dated: September 15, 2010.

_____
Cynthia Martinez

Dated: September 15, 2010.

_____
Tanya Dennis

Dated: September 15, 2010.

_____
Katrina Grant


Dated: September 15, 2010.

VERIZON SERVICES CORPORATION, DBA
VERIZON CALIFORNIA, INC.


By: _____
Jonathan Ramsfelder
Assistant General Counsel Labor and Employment


APPROVED AS TO FORM:

Dated: September 15, 2010

JONES DAY


By: _____
Robert A. Naeve
Attorneys for Verizon Services Corporation

Dated: September 15, 2010.

_____
Alma Aranda

Dated: September 15, 2010.

_____
Ofelia Cabana Fanol

Dated: September 15, 2010.

_____
Heather Dowl-Lee

Dated: September 15, 2010.

_____
Veronica Barcelo

Dated: September 15, 2010.

_____
Erica Diaz

Dated: September 15, 2010.

_____
Kimberly Gonzalez

Dated: September 15, 2010.

_____
Cynthia Martinez

Dated: September 15, 2010.

_____
Tanya Dennis

Dated: September 15, 2010.

_____
Katrina Grant

Dated: September 15, 2010.

VERIZON SERVICES CORPORATION, DBA
VERIZON CALIFORNIA, INC.

By: _____
Jonathan Ramsfelder
Assistant General Counsel Labor and Employment

APPROVED AS TO FORM:

Dated: September 15, 2010

JONES DAY

By: _____
Robert A. Naeve
Attorneys for Verizon Services Corporation

Dated: September 15, 2010.

_____
Alma Aranda

Dated: September 15, 2010.

_____
Ofelia Cabana Fanol

Dated: September 15, 2010.

_____
Heather Dowl-Lee

Dated: September 15, 2010.

_____
Veronica Barcelo

Dated: September 15, 2010.

_____
Erica Diaz

Dated: September 15, 2010.

_____
Kimberly Gonzalez

Dated: September 15, 2010.

_____
Cynthia Martinez

Dated: September 15, 2010.

_____
Tanya Dennis

Dated: September 15, 2010.

_____
Katrina Grant

Dated: September 15, 2010.

VERIZON SERVICES CORPORATION, DBA
VERIZON CALIFORNIA, INC.

By: _____
Jonathan Ramsfelder
Assistant General Counsel Labor and Employment

APPROVED AS TO FORM:

Dated: September 15, 2010

JONES DAY

By: _____
Robert A. Naeve
Attorneys for Verizon Services Corporation

- 20 -

Exhibit C



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 (voice) I 800-700-2320 (TTY) | California's Relay Service at 711
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

**FOR IMMEDIATE RELEASE**                    **CONTACT:** Fahizah Alim
May 1, 2020                                     (916) 585-7076
                                        Fahizah.Alim@dfeh.ca.gov

## VENTURE CAPITAL PARTNERSHIP TO PAY $1.8 MILLION TO SETTLE DFEH SEXUAL HARASSMENT LAWSUIT

*Case against Silicon Valley Growth Syndicate and partners is first to be filed by State under new legal authority*

**Sacramento -** The California Department of Fair Employment and Housing (DFEH) today announced a $1.8 million settlement in its federal sexual harassment lawsuit against the Silicon Valley Growth Syndicate (now headquartered in Little Rock, Arkansas), International Direct Mail Consultants, Inc. (headquartered in Dallas, Texas), Lee William McNutt (Dallas, Texas), William Bunker (Little Rock, Arkansas), and Russell Lewis (Las Vegas, Nevada and San Diego, California).

DFEH's complaint alleged that McNutt, a co-founder of the Silicon Valley Growth Syndicate, used his position of power to sexually harass a female employee, identified in the lawsuit as Jane Doe. In one alleged incident, during official travel to a Syndicate investor meeting in La Jolla, California, McNutt exposed himself to her and touched her without her consent.

"The California legislature has recognized that people in business, service, and professional relationships, including those involving investors, have the right to be free from harassment," said DFEH Director Kevin Kish. "DFEH is committed to eradicating such conduct."

In addition to paying $1.8 million, the consent decree filed April 29, 2020, permanently requires Silicon Valley Growth Syndicate, International Mail Consultants, Inc., and Lee William McNutt to include in their future investment contracts a clause prohibiting discrimination or harassment.

The consent decree also includes several permanent injunctions against McNutt, including clauses that prevent him from hiring undergraduate or graduate students from Southern Methodist University, or videotaping or photographing women or girls unrelated to him.

The DFEH filed its civil complaint in the San Francisco Superior Court, which Defendants removed to the United States District Court, Northern District of California. The case is captioned *Department of Fair Employment and Housing v. Silicon Valley Growth Syndicate Fund I, L.P., et al.*, Case No. 19-cv-4204 RS (Northern District of California).

California Civil Code section 51.9 prohibits sexual harassment in business, service, and professional relationships. This was the first complaint brought by the DFEH under Civil Code section 51.9 since it obtained the authority to do so on January 1, 2019.

Chief Counsel Janette Wipper, Associate Chief Counsels Melanie Proctor and Andrew Huang, and Senior Staff Counsel Martha Gomez represented DFEH in this matter.

*The DFEH is the state agency charged with enforcing California's civil rights laws. The mission of the DFEH is to protect the people of California from unlawful discrimination in employment, housing and public accommodations and from hate violence and human trafficking. For more information, visit the DFEH's web site at www.dfeh.ca.gov.*