OUTTEN & GOLDEN LLP
JAHAN C. SAGAFI (SBN 224887)
jsagafi@outtengolden.com
One California Street, Suite 1250
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:   (415) 638-8810

OLIVIER SCHREIBER & CHAO LLP
CHRISTIAN SCHREIBER (SBN 245597)
MONIQUE OLIVIER (SBN 190385)
christian@osclegal.com
monique@osclegal.com
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 484-0980
Facsimile: (415) 659-7758

OLIVIER SCHREIBER AND CHAO LLP
RACHEL BIEN (315886)
rachel@osclegal.com
1149 North Gower Street Suite 215
Los Angeles, CA 90038
Telephone: (415) 484-0522
Facsimile: (415) 658-7758

*Attorneys for Plaintiff Department of Fair Employment and Housing*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVISION BLIZZARD INC., BLIZZARD ENTERTAINMENT, INC., ACTIVISION PUBLISHING, INC. KING.COM, INC., and DOES ONE through TEN, inclusive,<br><br>Defendants. | Case No. 2:21-CV-07682 DSF-JEM<br><br>**CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S MOTION TO INTERVENE; MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE**<br><br>Date:        November 29, 2021<br>Time:        1:30 p.m.<br>Location: 73<br>Judge:      Timothy Patrick Dillon<br><br>Action Filed: September 27, 2021 |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

RELEVANT STATUTORY SCHEME ........................................................4

    A.    The DFEH Has Broad Statutory Authority to Protect the Interests of the State of California and Its People, and Congress Circumscribed the EEOC's Authority Where State Enforcement Is Active ..................................................................................4

    B.    California Antidiscrimination Law Is Significantly Stronger than Corresponding Federal Law.........................................................5

FACTUAL AND PROCEDURAL BACKGROUND ....................................6

    A.    Activision Created a Toxic Culture of Unchecked Gender Bias and Established Policies and Employment Systems that Underpaid Non-Male Employees, Fostered Sexual Harassment, and Retaliated Against Them .......................................................6

    B.    The DFEH and the EEOC Pursued Sex Discrimination Claims Against Activision..................................................................7

    C.    The DFEH Sought to Collaborate with the EEOC to Achieve the Best Outcome for the Covered Individuals.................................7

    D.    The EEOC Simultaneously Filed and Attempted to Settle This Action..........................................................................................8

    E.    The Proposed Consent Decree Suffers from Several Critical Infirmities, Is Inappropriately Vague and Open-Ended, Is Inadequately Justified to Allow the Court to Determine Its Reasonableness, and Violates the EEOC's Own Policies Regarding Consent Decrees ....................................................8

ARGUMENT.............................................................................................14

    A.    Intervention Is Appropriate......................................................14

        1.    The DFEH Is Entitled to Intervention as of Right...........14

            a.    The DFEH Has a Protectable Interest that the Proposed Consent Decree Would Impair..............14

            b.    The DFEH's Interests Are Not Adequately Represented .........................................................17

            c.    The DFEH's Application Is Timely......................19

        2.    The DFEH Also Meets the Standard for Permissive Intervention....................................................................20

    B.    The Court Should Reject the Proposed Consent Decree ..........21

1       1.   The Proposed Consent Decree Fails to Provide the Court with the Information Needed to Assess Whether the Settlement is Fair, Reasonable, and Adequate ...............21

2.   The Proposed Consent Decree Includes Several Infirmities that Preclude or Weigh Against Approval.....21

a.   The Requirement that Important Evidence Be Destroyed Precludes Approval.............................21

b.   The Mechanism for Securing Individual Releases Via One-Hour Engagements with Attorneys Paid for by Activision Precludes Approval..................22

c.   The Vague, Overbroad Scope and Release Precludes Approval ...............................................23

d.   The Settlement Value Is Too Low Given the Release Scope, Strong Claims, and the Reversion ...................................................24

CONCLUSION.............................................................25

CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S MOTION TO INTERVENE

# TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE(S)**

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
   647 F.3d 893 (9th Cir. 2011) ............................................................................................17

*Constr. Laborers Tr. Funds for S. California Admin. Co. v. H & S Elec. Inc.,*
   No. 19 Civ. 05347, 2020 WL 410176 (C.D. Cal. Jan. 23, 2020) .............................................14

*Cooper v. Newsom,*
   13 F.4th 857 (9th Cir. 2021) ............................................................................................20

*Dep't of Fair Emp. & Hous. v. L.S.A.C., Inc.,*
   941 F. Supp. 2d 1159 (N.D. Cal. 2013) ..........................................................................1, 15

*Dept. Fair Empl. & Hous. v. Cathy's Creations, Inc.,*
   54 Cal.App.5th 404 (2020) ..................................................................................................1

*E.E.O.C. v. Navy Fed. Credit Union,*
   424 F.3d 397 (4th Cir. 2005) ....................................................................................5, 15, 18

*League of United Latin Am. Citizens v. Wilson,*
   131 F.3d 1297 (9th Cir. 1997) .........................................................................................19

*Litty v. Merrill Lynch & Co.,*
   No. 14 Civ. 0425, 2015 WL 4698475 (C.D. Cal. Apr. 27, 2015).............................................24

*Love v. Pullman Co.,*
   404 U.S. 522 (1972) .........................................................................................................4

*Nw. Forest Res. Council v. Glickman,*
   82 F.3d 825 (9th Cir. 1996) ............................................................................................19

*Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco,*
   688 F.2d 615 (9th Cir. 1982) ..........................................................................................19

*Oscar Mayer & Co. v. Evans,*
   441 U.S. 750 (1979)..........................................................................................................4

*Roes, 1-2 v. SFBSC Mgmt., LLC,*
   944 F.3d 1035 (9th Cir. 2019) .....................................................................................24, 25

*Ruderman ex rel. Schwartz v. Wash. Nat'l Ins. Co.,*
   263 F.R.D. 670 (S.D. Fla. 2010).....................................................................................17

*Steele v. Youthful Offender Parole Bd.,*
   162 Cal. App. 4th 1241 (2008) .........................................................................................6

*Sw. Ctr. For Biological Diversity v. Berg,*
   268 F.3d 810 (9th Cir. 2001) ....................................................................................14, 19

*Trujillo v. Santa Clara Cty.*,
  775 F.2d 1359 (9th Cir. 1985) ........................................................15

*United States v. Carpenter*,
  298 F.3d 1122 (2002) ..................................................................20

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
  570 U.S. 338 (2013) .....................................................................6

*Victa v. Merle Norman Cosmetics, Inc.*,
  19 Cal. App. 4th 454 (1993) ....................................................17, 18

*Wilderness Soc'y. v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) ......................................................14

**Statutes**

29 U.S.C. § 206(d)(1) ........................................................................6

42 U.S.C. § 1981(a) ......................................................................6, 7

42 U.S.C. § 2000 ..................................................................4, 5, 15

Cal. Gov. Code § 12920 ...............................................................4, 15

Cal. Gov. Code § 12930 .......................................................4, 5, 15, 20

Cal. Gov. Code § 12940(j) ..................................................................6

Cal. Gov. Code § 12950.1 ..................................................................13

Cal. Gov. Code § 12965 ...............................................................4, 16

Cal. Lab. Code § 1197.5(a) .................................................................6

**Other Authorities**

Cal. R. Prof. Conduct 1.8.6 ...............................................................10

Fed. R. Civ. P. 24(a) ..................................................................14, 17

Fed. R. Civ. P. 24(b) .......................................................................20

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 24, the California Department of Fair Employment and Housing ("DFEH") seeks limited intervention to protect the interests of California and its workers.  The California Legislature has tasked the DFEH with enforcing California's civil rights laws.  As one of California's core public prosecution agencies, the DFEH "represent[s] the interests of the state and . . . effectuat[es] the declared public policy of the state to protect and safeguard the rights and opportunities of all persons from unlawful discrimination."  *Dept. Fair Empl. & Hous. v. Cathy's Creations, Inc.*, 54 Cal.App.5th 404, 410 (2020); *Dept. of Fair Empl. and Hous. v. L.S.A.C.*, Inc. 941 F.Supp. 2d 1159, 1167 (N.D. Cal. 2013)

Through this motion, the DFEH moves to intervene for the limited purpose of (a) protecting the interests of California and its workers, especially in light of the DFEH's pending state enforcement action on behalf of those workers currently pending in state court, *Dept. Fair Empl. & Hous. v. Activision Blizzard, Inc. et al.*, Case No. 21STCV26571 (Los Angeles Sup. Ct.) (the "State Action"), (b) commenting on the proposed consent decree lodged by the U.S. Equal Employment Opportunity Commission ("EEOC"), and Activision Blizzard, Inc., Activision Publishing, Inc., Blizzard Entertainment, Inc., and King.com, Inc. ("Defendants" or "Activision"), and (c) requesting a noticed fairness hearing.  The DFEH seeks this limited relief because the consent decree is improper in three key ways:

1. **Overbroad Scope and Release.**  The proposed consent decree encompasses an improperly large scope, purporting to impermissibly release California state law claims that the EEOC lacks standing to litigate or settle, which are significantly more valuable than the federal claims under EEOC's jurisdiction, and which are currently being actively prosecuted by the DFEH in the State Action.  The proposed consent decree also covers individuals and claims not included in the EEOC's investigation.
2. **Missing Information.**  The proposed consent decree is ambiguous and inadequately justified.  <u>First</u>, it is incomplete, failing to provide a proposed notice, plan of allocation, claim form, individual release

language, and details about implementation.  Second, the parties have failed to present adequate information to allow the Court to properly evaluate the reasonableness of the settlement and decide whether to approve it, including key information regarding the value of the claims, the strengths and weaknesses of the claims, the degree of discovery conducted to date, the scope of the release, and how much money each Covered Individual may receive.

3. **Defects.**  The proposed consent decree has defects that require or caution in favor of denial of approval.  First, it requires Activision to destroy evidence of wrongdoing and change employees' termination classification information, which will obstruct the State Action.  Second, it creates a lopsided and highly irregular process by which individual victims will be potentially release claims outside of the EEOC lawsuit through a sixty-minute consultation with a lawyer paid by Activision.  Third, it provides inadequate monetary relief in exchange for a release of federal and state claims without discovery or any notice of DFEH's pending State Action.

Activision is a leading video game developer, with approximately 6,000 U.S. employees, about 21% of whom are women.  Over the past three years, the DFEH has uncovered extensive evidence of rampant sexual harassment against female professionals by male executives and management; discrimination against women in terms of salary, bonus, stock option, and restricted stock grants; discrimination in terms of delayed promotions; and retaliation against those who have questioned management's decisions or asserted the right to be free from harassment and discrimination.  Numerous complaints about this unlawful conduct were made to Activision's human resources department, but Activision ignored complaints and failed to take effective remedial measures.

The DFEH's State Action and the EEOC's litigation both, generally, seek remedies for these victims, who have suffered and continued to suffer harm from Activision's toxic culture of unearned male privilege and bias and its broken employment systems that create biased outcomes harming women workers (the "Covered Individuals").  The DFEH's hope is that each agency will continue to diligently enforce the *specific laws* it is authorized to enforce, while cooperating with each other to implement their statutory mandates.

CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S MOTION TO INTERVENE

Despite the DFEH's dedicated efforts to protect these interests, the EEOC and Activision secretly negotiated a proposed consent decree without the DFEH's input and beyond the EEOC's statutory authority to pursue only *federal* claims, threatening to undermine the DFEH's enforcement of *California* law in the State Action. The consent decree, if approved, would impair and impede California's interest in robust enforcement of its antidiscrimination laws and erode the Covered Individuals' rights to be compensated for and protected from sex discrimination, harassment, retaliation, and other unlawful practices under California law. But the EEOC does not adequately represent the interests of California and its workers in this situation, because the EEOC's authority is limited to pursuit of federal claims, and it lacks the authority to prosecute the stronger California claims.

Specifically, the DFEH seeks intervention for the limited purpose of requesting that the Court:

1. Set a fairness hearing at which the Court will hear evidence and argument regarding whether the proposed consent decree is fair, adequate, and reasonable, and consistent with the public interest, as required under federal law;
2. Provide notice of the hearing to all Covered Individuals explaining the proposed consent decree and allowing them to submit comments on it;
3. Allow the DFEH to submit comments on the proposed consent decree;
4. Confirm that the EEOC is free to prosecute and resolve federal claims alleged in the lawsuit, but it cannot exceed that authority by prosecuting or resolving other claims such as those under California law, which it has no standing to pursue; and
5. Order the EEOC and DFEH to coordinate in any settlement negotiations.

If intervention is granted, it should be for these limited purposes. The DFEH does not seek to participate in litigating the underlying claims here. Rather, the DFEH will continue to litigate the State Action, while collaborating with the EEOC in the enforcement of these important workplace rights to maximize the benefit for all Covered Individuals under federal and California law and to ensure that both agencies' law enforcement duties are robustly carried out. The EEOC will retain full control of its own case pursuing federal claims.

## RELEVANT STATUTORY SCHEME

**A.**   **The DFEH Has Broad Statutory Authority to Protect the Interests of the State of California and Its People, and Congress Circumscribed the EEOC's Authority Where State Enforcement Is Active.**

The DFEH is California's primary public prosecutor of civil rights violations in employment.  Among other things, the DFEH exercises California's police power in protection of "the right and opportunity of all persons to seek, obtain, and hold employment without discrimination."  Cal. Gov. Code §§ 12920 & 12930. The California Legislature granted the DFEH broad and independent power to "receive, conciliate, mediate, and prosecute complaints."  Cal. Gov. Code § 12930. Like many public prosecutors, the DFEH conducts investigations – on its own initiative or based on individual complaints – and it exercises discretion in deciding whether and how to prosecute claims.  Cal. Gov. Code §§ 12930, 12965, 12965(a). The DFEH is not limited to representing the interests of a particular claimant; instead, it is authorized to seek relief beyond what individuals acting alone can pursue directly.  Cal. Gov. Code § 12965(c).  This power allows the DFEH to seek remedies to vindicate what it considers to be the interest of the State and the public.

This broad state authority is fully consistent with and supported by federal law.  Congress specifically structured Title VII with strong federalism concerns in mind, as a legislative mandate to give states with civil rights enforcement agencies like the DFEH priority in antidiscrimination enforcement in their state.  42 U.S.C. §§ 2000h-4, 2000e-7-8.  The Supreme Court has repeatedly held that Title VII gives priority to state agencies:  Title VII "give[s] state agencies a prior opportunity to consider discrimination complaints.  *Love v. Pullman Co.*, 404 U.S. 522, 526 (1972); *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 755 (1979) (Title VII "give[s] state agencies a limited opportunity to resolve problems of employment discrimination [thereby making it unnecessary] to resort to federal relief by victims of the discrimination").  This reflects a "cooperative" federalism in the enforcement

of civil right statutes.  *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 409 (4th Cir. 2005).  In this relationship, the DFEH is afforded equal respect and "a substantial degree of autonomy and discretion."  *Navy Fed.*, 424 F.3d at 409.

Title VII includes several provisions to ensure that the EEOC cooperates with and defers to the authority of state agencies like the DFEH.  42 U.S.C. § 2000e-5,7-8.  For example, Title VII requires the EEOC to "accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law," in determining whether reasonable cause exists.  *Id.*  Similarly, where the EEOC pursues a charge "in a State . . . which has a State or local law prohibiting the practice alleged [like FEHA], the EEOC shall, before taking any action . . ., notify the appropriate State or local officials and, upon request, afford them a reasonable time, . . . to act under such State or local law to remedy the practice alleged."

Similarly, Title VII requires the EEOC to provide employment records and other confidential information obtained in investigations to state agencies, like the DFEH, upon request and without cost.  42 U.S.C. § 2000e-8(c)-(d).  There is no corresponding obligation for the DFEH to defer to, or share information with, the EEOC.  Declaration of Janette Wipper ("Wipper Decl.") ¶ 8.

**B.**   **California Antidiscrimination Law Is Significantly Stronger than Corresponding Federal Law.**

This federal deference to state enforcement is also evident in the asymmetry of federal and state enforcement power.  For example, whereas Title VII limits the EEOC's power to enforcement of federal claims only, the California Legislature empowered the DFEH to prosecute both federal *and* state law claims.  Cal. Gov. Code § 12930(h).  The imbalance in agency authority reflects the different strength of federal and state laws.  While Title VII certainly provides significant protections, California law provides all of those protections and more.  First, California law has a much more protective standard for pay discrimination, a more protective standard

for harassment, and additional claims such as failure to prevent discrimination and harassment. *Compare* 29 U.S.C. § 206(d)(1) (federal Equal Pay Act ("EPA")) (limiting plaintiffs to the use of comparators who perform "equal work" requiring "equal skill, effort, and responsibility" within the same "establishment") *with* Cal. Lab. Code § 1197.5(a) (California EPA) (allowing plaintiffs to use comparators who perform "substantially similar work, when viewed as a composite of skill, effort, and responsibility," without the same establishment limitation). Second, California has stronger protection for retaliation. *Compare Steele v. Youthful Offender Parole Bd.*, 162 Cal. App. 4th 1241, 1255 (2008) *with Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351-62 (2013). Third, California protects contractors. Cal. Gov. Code § 12940(j). Fourth, compensatory and punitive damages are capped under federal law, but not California law. 42 U.S.C. § 1981(a).

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Activision Created a Toxic Culture of Unchecked Gender Bias and Established Policies and Employment Systems that Underpaid Non-Male Employees, Fostered Sexual Harassment, and Retaliated Against Them.

Sexism has plagued the male-dominated video game industry for decades. Declaration of Jahan Sagafi ("Sagafi Decl.") ¶ 4, Ex. A ¶ 1. Activision is a particularly acute example. Activision promotes a toxic culture of gender bias, in which sexual harassment, discrimination, and retaliation, sometimes fueled by alcohol consumption at work, are the norm. In Activision's "frat boy" office culture, male employees regularly banter about sexual encounters and joke about rape. Female employees must fend off unwanted sexual comments and advances by their male peers and supervisors. *Id.* ¶¶ 5-6.

In addition, Activision underpays and underpromotes women. *Id.* ¶¶ 4, 31-40. Activision has given men higher starting pay and, on an ongoing basis, higher pay for virtually identical work. *Id.* ¶¶ 4, 31-40. Activision has promoted men more quickly and terminated them more slowly than comparable women. *Id.*

When Activision received complaints about these conditions, it failed to correct them. *Id.* ¶ ¶ 7,49-51. Activision management discouraged complaints and targeted complainants for layoffs and involuntary transfers. *Id.*

## B. The DFEH and the EEOC Pursued Sex Discrimination Claims Against Activision.

In fall 2018, both the EEOC and the DFEH began investigations into this conduct. Wipper Decl. ¶¶ 3-5. They coordinated their confidential investigations under their long-standing Worksharing Agreement, sharing confidential information and communicating regularly. *Id.* ¶¶ 5-6. The DFEH's investigation focused on state claims, while the EEOC's investigation concerned federal claims under Title VII. *Id.* ¶ 12, Ex. B. During its investigation, the DFEH conducted significant discovery, taking seven depositions, propounding and responding to several sets of discovery requests, reviewing approximately 18,000 pages of discovery and seven years of employment data, exchanging several meet and confer letters, and interviewing hundreds of Activision victims and witnesses. *Id.* ¶ 4. In July 2021, the DFEH filed the State Action. Sagafi Dec. ¶ 4, Ex. A.

## C. The DFEH Sought to Collaborate with the EEOC to Achieve the Best Outcome for the Covered Individuals.

From July to September 2021, the DFEH continued to seek collaboration, inviting the EEOC to a mediation scheduled for December 2021. Wipper Decl. ¶ 15.[1] The EEOC did not respond. *Id.* Activision told the DFEH that it was pursuing settlement with the EEOC. *Id.* ¶ 16. The DFEH contacted the EEOC to confirm whether this was true, and to reiterate its interest in collaborating. *Id.* On August 20, 2021, the agencies set a call for September 14, 2021. *Id.* ¶ 17. On September 10, 2021, the EEOC canceled that call. *Id.* On September 27, 2021, the EEOC filed the proposed consent decree at issue here.

---

[1] Details of the privileged inter-agency communications are not provided here.

**D.    The EEOC Simultaneously Filed and Attempted to Settle This Action.**

On September 27, 2021, the EEOC filed this action and simultaneously lodged a proposed consent decree.  *Id*. ¶ 17.  The EEOC had not included the DFEH in its settlement talks.  *Id*. ¶¶ 16-17.  The DFEH immediately reached out to the EEOC lawyers with whom they had been coordinating for the past three years to understand how this happened.  *Id*. ¶ 18.  Unable to agree on next steps, and concerned that there was no hearing date for the Court to consider input from relevant parties such as the DFEH and the affected women, the DFEH moved to intervene.  *Id*. ¶ 18; ECF No. 13.  The EEOC responded, and the Court ordered the parties to agree on a briefing schedule.  ECF No. 19.  The parties did so; the EEOC insisted that the intervention motion be filed by today.  Sagafi Decl. ¶¶ 5-14.

In recent days, the agencies met and conferred to avoid this motion, speaking and corresponding several times.  *Id*. ¶¶ 6-14.  Given the complexity of the issues, the DFEH repeatedly asked the EEOC to extend today's filing deadline to allow further discussions, but the EEOC declined to do so.  *Id*. ¶¶ 12-14.

**E.    The Proposed Consent Decree Suffers from Several Critical Infirmities, Is Inappropriately Vague and Open-Ended, Is Inadequately Justified to Allow the Court to Determine Its Reasonableness, and Violates the EEOC's Own Policies Regarding Consent Decrees.**

The key elements of the proposed consent decree and the settling parties' submission to the Court are outlined below.  The proposed consent decree suffers from several critical flaws that preclude approval, and the supporting documents fail to provide adequate information and clarity about the settlement, obstructing the Court's ability to assess the decree's reasonableness.  The settling parties have not met their burden to show that the proposed consent decree merits approval.

**Overbroad scope and release.**  The proposed decree is written so broadly that it is difficult to determine its boundaries.  But it unequivocally seeks to reach claims "to which EEOC is not a party," and the EEOC confirmed today that it seeks to release California claims for harassment, pregnancy discrimination, and

retaliation claims. *Id*. ¶ 14.  The EEOC's procedures require that a consent decree "be limited to the factual claims in the Commission's complaint" and must "refer to the statute(s) under which the claims were brought." *Id*. ¶ 18, Ex. D ("EEOC Policy").  Contrary to this sound principle, the decree has no such limitation.  The release does not refer directly to Title VII or even limit itself to the claims brought by the EEOC.  Instead it covers all "allegations [and] issues" raised by the EEOC in the action.  ECF No. 11-1 at 5.  The consent decree does not define "issues." Likewise, the decree's scope exceeds the EEOC's authority in stating that "*all* claims, including those arising out of *any of the same factual predicates* as those implicated by the Action, will be fully and completely resolved by this Decree." *Id*. at 2 (emphasis added).  Although the EEOC lacks the authority to settle state claims, Activision may argue that this language covers such claims.

**Missing release language.**  Relatedly, the proposed consent decree does not provide the release language it intends to provide to potential claimants.  EEOC consent decrees sometimes do not release claims at all, leaving the covered individuals free to pursue individual claims.  But the EEOC's own policy explains that "[i]f there is a release, it should be discussed fully and attached as an exhibit to the notice[, and t]he notice is generally an exhibit to the consent decree, which itself is approved by the court."  Sagafi Decl. ¶ 19, Ex. E at 5.

**Vague and improper individual release process.**  The proposed decree also improperly creates a mechanism that could allow Activision to obtain releases not only of the valid federal claims, but also California state law claims that the EEOC lacks authority to pursue.  ECF No. 11-1 at 11:23-26 & 15:3-5 (creating "an opportunity to consult an independent attorney to advise on the release of claims to which the EEOC is not a party").  "Defendants shall pay for up to one hour of attorney consultation to advise on the release of claims, at the rate of $450/hour, for each Eligible Claimant."  ECF No. 11-1 at 15:3-8.  But the longstanding publicly published EEOC Policy prohibits the EEOC from agreeing to such a process:

"[I]ndividual waivers of common law claims *or other statutory claims* (including claims under *state fair employment practices laws*) **are not permitted** even where the factual basis of the claim is identical to that pled in the Commission's action." Sagafi Decl. ¶ 18, Ex. D at 10 (emphasis added).

The highly unusual process proposed by the EEOC and Activision works as follows.  Activision would have the opportunity to negotiate individually with each Claimant, one by one, to secure releases.  Activision will have the benefit of its in-house and outside counsel, all the evidence it has amassed and all the legal analysis conducted over the past several years in defending itself against the EEOC and DFEH investigations and the DFEH litigation, many hours crafting, negotiating, and analyzing the detailed consent decree.  By contrast, each individual Claimant will have access to *one hour* of advice from a lone lawyer who is paid a maximum of $450 *by Activision* for those sixty minutes of time.  The proposed consent decree states that "The EEOC shall provide a list of recommended plaintiff attorneys for an Eligible Claimant to consult," but it does not list the lawyers' names, experience, or credentials, or how they will be (or have been?) selected.  ECF No. 11-1 at 15:3-8.  Nor does proposed consent decree outline the guidance to be provided to the individual lawyers or the boundaries of their duties.  Nor does it explain how Activision's payment of a lawyer to advise an individual to release claims against Activision is not an ethical conflict precluding this arrangement.  Cal. R. Prof. Conduct 1.8.6 (limiting lawyer's ability to accept compensation from anyone other than the client).  Nor does the proposed consent decree explain how the individual Claimant, if they are in California, will receive the benefit of the DFEH's expertise, knowledge, and analysis of the individual's claims at issue (analysis that has already been performed to some degree based on the pending DFEH action) to assist her in assessing the value of her claims and determining a reasonable amount to expect in exchange for a release.  This imbalance of knowledge is especially harmful here, where the consent decree has such a broad scope, potentially leading

1  even well-meaning attorneys to conclude that the consent decree already covers

2  state rights and therefore the claimant has no further viable claims.

3      **Destruction of evidence.**  The consent decree provides a highly unusual

4  provision blessing Activision's rewriting of its business records to erase evidence

5  of discrimination, harassment, and retaliation.  This astonishing provision reads:

6          [Activision] shall *remove from the personnel files of each*

7          *Eligible Claimant any references to the allegations related to sexual harassment, pregnancy discrimination, and/or related retaliation* except to the extent that

8          Defendants must keep records of the allegations or any Eligible Claimant's involvement in this Charge in order to

9          effectuate this Decree, in which case such records must be maintained separately from Eligible Claimants' personnel

10          files.

11  ECF No. 11-1 at 19:1-8 (emphasis added).  This altering of evidence appears to

12  cover the period from September 1, 2016 to the Effective Date of the proposed

13  consent decree.  *Id.* at 4:20-26.  The proposed decree only allows for preservation

14  of an employee's complaint or inquiry regarding sexual harassment and retaliation

15  related to the EEOC's Charge of Discrimination and the proposed decree.  It

16  thereby appears to mandate the destruction of evidence relevant in the State Action.

17      In addition, the proposed decree tampers with retaliatory termination

18  evidence by requiring Activision to "[r]eclassify the terminations of any Eligible

19  Claimant to voluntary resignations."  ECF No. 11-1 at 19:13-15.  This rewriting of

20  history eliminates evidence crucial to the DFEH's retaliation claims.

21      **Unknown settlement amount (reversion to Activision).**  The proposed

22  decree provides that Activision will pay an unknown amount of money, up to $18

23  million, with an unknown amount reverting to Activision.  ECF No. 11-1 8:21-22.

24  Thus, the proposed consent decree might result in Covered Individuals receiving

25  $18 million, or $1 million, or less, or in between.  No one knows.

26      **Missing claimant scope information.**  The proposed consent decree

27  provides no information as to the number of Covered Individuals.

28      **Missing information about value of the claims.**  The EEOC has provided

no information regarding its analysis of the maximum value of the federal and state law claims of the Covered Individuals.

In the State Action, Activision has produced detailed data to enable the DFEH to analyze the claims both as to liability and monetary relief.  Without revealing work product, the DFEH can very conservatively estimate total potential exposure for an estimated 2,000 California employees (under the more favorable state law standards) and an estimated 500 non-California employees (under the less favorable federal law standards):

| Relief Component | California | Non-California |
|---|---|---|
| **Assumptions** | | |
| Employees | 2,000 | 500 |
| Average total compensation | $140,000 | $140,000 |
| Average annual pay disparity | $16,000 | $16,000 |
| Average tenure | 3 years | 3 years |
| Individual pay disparity | $48,000 | $48,000 |
| **Subtotals and total exposure** | | |
| Pay discrimination | $124,800,000 | $31,200,000 |
| Retaliation | $56,000,000 | $14,000,000 |
| Harassment | $140,000,000 | $35,000,000 |
| Punitive damages | $320,800,000 | $80,200,000 |
| California 10% annual interest | $128,320,000 | $0 |
| **Total exposure** | **$769,920,000** | **$160,400,000** |

Sagafi Decl. ¶¶ 16-17.

**Missing information about the strength of the claims and discovery conducted.**  The EEOC has not submitted detailed evidence describing the strength of the claims and the discovery the EEOC has conducted regarding the chances of success on the merits, to support the discount applied to the maximum exposure.

**Missing notice, claim form, and release.**  The proposed consent decree provides that the EEOC will provide the notice, claim form and release only *after* the settlement has been approved by the Court.  ECF No. 11-1 at 12.  The EEOC Policy explains that notice documents should be exhibits to the consent decree and approved by the Court as part of the consent decree approval process.  Sagafi Dec.

¶ 19, Ex. E at 10 ("The notice is generally an exhibit to the consent decree, which itself is approved by the court."). Yet here, the parties have provided no proposed claim forms, leaving the Court without the ability to determine their propriety.

**Missing information regarding claim scoring process.** The proposed consent decree provides that the EEOC will review claim forms submitted by potential claimants. ECF No. 11-1 at 14. It grants the EEOC discretion to determine "the scoring criteria, eligibility, and monetary relief" for each claimant based on very general guidelines. *Id.* For example, determination of the claim forms will be based on whether the claimant "experienced a harm," *id.*, but no detail is provided regarding types of potential harms that will be requested or considered, and the potential value associated with each experience.

**Inadequate injunctive relief.** The proposed consent decree provides that Activision will hire an equal employment opportunity consultant, designate a parallel internal coordinator, perform compliance audits, review and revise workplace policies, create an internal complaint investigation procedure, distribute relevant workplace policies and procedures, provide harassment training, create a complaint log, revise performance evaluation procedures, provide mental health support, create a hotline for complaints, update their recordkeeping policies, and provide reports to the EEOC. ECF No. 11-1 at 19:19-46:8. These measures are all important and have value, but the proposed consent decree is missing several key elements. First, the proposed injunctive relief is lacks structure and goals. There are no specific targets, timetables, or measures to guide Activision's reformed conduct and against which the EEOC and the Court can assess successful implementation. Second, much of what is included in the relief, such sexual harassment training, is already required under state law. *See, e.g.*, California Government Code § 12950.1. Third, the proposed consent decree lacks a clear mechanism for monitoring by an independent third party and/or the Court to ensure reasonable implementation of the injunctive relief. Policing by a neutral entity with

real authority– especially the Court – is a critical element of the injunctive component of a consent decree to maximize its chances of success.

## ARGUMENT

**A.    Intervention Is Appropriate.**

### 1.    The DFEH Is Entitled to Intervention as of Right.

Under Rule 24(a)(2), intervenors are permitted to intervene to protect their rights and interests.  An applicant may intervene as of right if: (1) the motion is timely; (2) the applicant claims a significantly protectable interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest is inadequately represented by the parties to the action.  *Wilderness Soc'y. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011); *see also* Fed. R. Civ. P. 24(a).  Rule 24 must be construed "'broadly in favor of proposed intervenors.'"  *Id.* at 1179 (quoting *United States v. City of L.A.*, 288 F.3d 391, 397 (9th Cir. 2002)).  In evaluating a motion to intervene, "[c]ourts are to take all well pleaded, nonconclusory allegations in the motion to intervene . . . as true."  *Sw. Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).  And, as a general matter, courts must follow "practical and equitable considerations" in evaluating whether each requirement is met.  *Wilderness Soc'y.*, 630 F.3d at 1179.

Intervenors meet each of the requirements of Rule 24.

#### a.    The DFEH Has a Protectable Interest that the Proposed Consent Decree Would Impair.

A claimed interest is sufficient for intervention if: (1) it is protected under some law; and (2) the applicant shows a relationship between the legally protected interest and the parties' claims.  *Constr. Laborers Tr. Funds for S. California Admin. Co. v. H & S Elec. Inc.*, No. 19 Civ. 05347, 2020 WL 410176, at *2 (C.D. Cal. Jan. 23, 2020) (citing *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir.

1998)).

Intervenors have a concrete, protectable interest in the California claims to be released through this settlement.  The DFEH is California's primary public prosecutor of workplace civil rights violations; it exercises California's police power to protect the California public's right to "seek, obtain, and hold employment without discrimination." Cal. Gov. Code §§ 12920, 12930.  Reflecting Congressional considerations of federalism, federal agencies like the EEOC owe corresponding state agencies deference in the investigation of employment discrimination charges, including under Title VII, that arise within their jurisdiction.  *Navy Fed. Credit Union*, 424 F.3d at 410; 42 U.S.C. § 2000h-4, 2000e-5,7-8.

Before the EEOC and Activision lodged the proposed consent decree, the DFEH had investigated Activision's unlawful conduct for approximately three years, culminating in the filing of active litigation this summer.  Wipper Decl. ¶¶ 3-4.  Because FEHA provides much stronger protections than federal law, the State Action did not include the less protective, redundant federal claims (although the DFEH has authority to prosecute such federal claims).  Cal. Gov. Code, §12930(h); 42 U.S.C. § 2000e(h).  Indeed, FEHA, the California statute that created the DFEH, "was meant to supplement, not supplant or be supplanted by, existing antidiscrimination remedies, in order to give [Californians] the maximum opportunity to vindicate their civil rights against discrimination." *Dep't of Fair Emp. & Hous. v. L.S.A.C., Inc.*, 941 F. Supp. 2d 1159, 1167 (N.D. Cal. 2013) (citing *State Pers. Bd. v. Fair Employment & Hous. Com.,* 39 Cal.3d 422, 431 (1985)); *Trujillo v. Santa Clara Cty.*, 775 F.2d 1359, 1366 (9th Cir. 1985) ("Title VII was enacted not to preempt state discrimination law, but rather to supplement it if state law was inadequate.").

As detailed above, although the proposed consent decree fails to provide a release, it does state that Claimants will be required to "release [] claims to which

15

1    the EEOC is not a party."  ECF No. 11-1 at 15.  The claims to which the EEOC is

2    not a party are primarily the California claims, given that 75% of Activision

3    employees are California-based.  Those California claims are currently being

4    litigated by the DFEH in the State Action.  Thus, the proposed consent decree

5    impairs the DFEH's interest.

6          The EEOC has indicated that it will argue that its pursuit of California claims

7    is justified by the agencies' agreement to divide responsibility for collecting

8    evidence about certain claims.  This argument would be both irrelevant and wrong.

9          First, the EEOC appears to misread an agreement regarding *work sharing* as

10   being about *litigation authority*.  The agencies coordinated only for purposes of

11   sharing resources and information, consistent with Title VII and the Worksharing

12   Agreement.[2]  The agreement did not delegate the DFEH's FEHA enforcement

13   authority to the EEOC.

14         Second, the agreement provided that the EEOC would take the lead in

15   investigating harassment claims only, but the proposed decree addresses other

16   claims as well.

17         Third, it would be impossible for the DFEH (or this Court) to delegate to the

18   EEOC authority to pursue FEHA claims, because the EEOC has no standing under

19   FEHA.  FEHA authorizes persons and the DFEH to bring FEHA claims.  Gov.

20   Code § 12965.  There is no authority allowing the EEOC to do so.  The agencies'

21   coordination efforts relate only to responsibility for sharing work for *investigation*,

22   not prosecution.  Wipper Decl. ¶ 9.

23         Separately, the proposed consent decree requiring Activision to alter its

24   business records to erase important evidence of wrongdoing will substantially

25   _____

26   [2] The DFEH then paused this information sharing when the EEOC adopted a new
     policy of providing information with investigation targets (such as Activision).

27   Wipper Decl. ¶ 10.  Concerned that this new EEOC policy would undermine the
     agencies' civil rights law enforcement efforts by giving Activision a window into

28   the government's work product, the DFEH paused the information sharing.  *Id.* ¶
     11.

interfere with the DFEH's efforts to collect evidence of alleged wrongdoing in the State Action.  Specifically, the proposed consent decree *requires* Activision to (a) delete of all "references to the allegations related to sexual harassment, pregnancy discrimination, and/or related retaliation" in Covered Individuals' personnel files with limited exceptions and (b) change employment data memorializing terminations of all Covered Individuals so that they look like "voluntary resignations".  ECF No. 11-1 at 19:1-8 & 19:13-15.  Destruction of critical evidence via the consent decree would directly and dramatically impair the DFEH's enforcement efforts.

### b.   <u>The DFEH's Interests Are Not Adequately Represented.</u>

The DFEH's interests are not adequately represented by the EEOC.  "The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)); *see also Ruderman ex rel. Schwartz v. Wash. Nat'l Ins. Co.*, 263 F.R.D. 670, 677 (S.D. Fla. 2010) ("[M]ere existence of colorable adequacy issues satisfies Proposed Intervenors' minimal burden to show that representation of their interests 'may be' inadequate."); Fed. R. Civ. P. 24(a) advisory committee note to the 1966 Amendment ("A class member who claims that his 'representative' does not adequately represent him, and is able to establish that proposition with sufficient probability . . . should, as a general rule, be entitled to intervene in the action.").

The proposed consent decree purports to provide Activision with a release of state law claims that the EEOC has no authority to prosecute or settle, and that are being zealously litigated in a parallel action.  The EEOC lacks standing to bring, much less settle, state law claims.  *See, e.g., Victa v. Merle Norman Cosmetics, Inc.*, 19 Cal. App. 4th 454, 463 (1993) ("The real barrier to litigation of plaintiff's state law claims in the EEOC case was that the EEOC did not possess standing to

prosecute those claims."). While the EEOC is entrusted with the responsibility to investigate and litigate federal claims under Title VII, it has no statutory authority to pursue or settle state law claims. *Victa*, 19 Cal. App. 4th at 463.  In addition, the EEOC's own internal guidance, honed by decades of experience and expertise, prohibits the EEOC from seeking to settle claims beyond its federal jurisdiction: "[I]ndividual waivers of common law claims *or other statutory claims* (including claims under *state fair employment practices laws*) **are not permitted** even where the factual basis of the claim is identical to that pled in the Commission's action." Sagafi Decl. ¶ 18, Ex. D at 5 (EEOC Settlement Standards and Procedures, § 2.D). Typically, settlements involving federal agencies are limited to releasing only federal claims; they do not release or provide a mechanism to release state law claims.  *See* Sagafi Decl. ¶ 20, Ex. F.

Similarly, while the DFEH has authority to pursue claims under both Title VII and California law, it has a long tradition of focusing on California claims, which provide equal or greater protection than federal law in all respects.[3]  Wipper Decl. ¶ 2.  Where, as here, two law enforcement agencies are pursuing similar relief in parallel against a defendant for a set of legal violations, the two agencies should join forces, share information, and negotiate with the defendant together to maximize the victims' chances of recovering appropriate compensation and other relief for the various harms they suffered, and to achieve the best forward-looking relief possible to prevent and deter the defendant from continuing to violate the law. This is precisely what was envisioned by Title VII and what DFEH envisioned when it offered its assistance to the EEOC.  Wipper Decl. ¶¶ 8-9.

Furthermore, the proposed consent decree appears to actively impede the DFEH from succeeding in its enforcement action, by requiring that Activision destroy evidence related to complaints of sexual harassment and discrimination and

---

[3] Courts routinely interpret statutes such as Title VII to provided deference to state agencies to investigate discrimination without federal intervention. *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 409 (4th Cir. 2005).

reclassify terminations to voluntary resignations.  This rewriting of history will, at best, create a muddled record, but and at worst eliminate crucial evidence needed by Activision's female employees and minimize the true extent of the harassment and discrimination they faced.

Here, unfortunately, the EEOC exceeded that boundary.  The proposed consent decree's effort to resolve California claims the EEOC has no standing to pursue constitutes classic "overreaching" against which the Ninth Circuit has repeatedly warned.  *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Because the EEOC's overstepping of the proper jurisdictional line violates Title VII and the EEOC's own guidance, and because it leads to an unfair outcome for the Covered Individuals, the interests DFEH represents in this matter are not adequately represented.

### c.  <u>The DFEH's Application Is Timely.</u>

The DFEH's motion is plainly timely.  Three criteria govern the timeliness analysis: "(1) the stage of the proceedings; (2) whether the parties would be prejudiced; and (3) the reason for any delay in moving to intervene."  *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996).  The crucial date is when the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties.  *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1304-05 (9th Cir. 1997) (affirming the denial of a motion to intervene as untimely where the intervenor was aware of "the prospect of inadequate representation on the part of future defendants in future years" at the time litigation commenced but waited twenty-seven months to intervene (emphasis omitted)).  When considering a motion to intervene, the court "must accept as true the non-conclusory allegations in the motion."  *Berg*, 268 F.3d at 819.

Here, the EEOC first indicated inadequacy when it lodged the proposed consent decree, on September 27, 2021.  Interveners must act promptly after receiving notice "that the government may not have adequately represented their

interests in negotiating the settlement, and they were entitled to rely on the presumption of adequate representation by the government prior to that time." *United States v. Carpenter*, 298 F.3d 1122, 1124 (2002).  The DFEH immediately contacted the EEOC on September 29, 2021.  Wipper Decl. ¶ 18.  The DFEH then continued to meet and confer with the EEOC and, when it became clear that no amicable resolution was possible, promptly filed its initial intervention request on October 11, 2021.  ECF No. 18.  The Court then ordered the parties to meet and confer to agree on a deadline for this motion, which the parties did, resulting in this filing on today's agreed-upon deadline.  ECF No. 19.

> ### 2.  The DFEH Also Meets the Standard for Permissive Intervention.

Alternatively, the DFEH meets the standard for permissive intervention, under Rule 24(b).  Fed. R. Civ. P.  24(b) ("upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."); *see* Cal. Gov. Code, §12930(h); *see also Cooper v. Newsom*, 13 F.4th 857, 868 (9th Cir. 2021) ("An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims.")).

As described in detail above, both the DFEH's pending enforcement action and its proposed objection to the proposed consent decree have questions of law and fact in common with (1) the instant EEOC action alleging sexual harassment, discrimination and retaliation claims (as in the DFEH's action) and (2) the proposed consent decree, including its attempt to release claims "to which EEOC is not a party" (including the California claims in the DFEH's action).  ECF No. 11-1.  The DFEH's request is also timely.

The DFEH's limited intervention will not cause undue delay or prejudice. The DFEH seeks to intervene now to avoid undue delay and prejudice by seeking to protect its interests and the interests of the California Covered Individuals, to ensure that any consent decree eventually approved by the Court is fair, adequate, and reasonable, and consistent with the public interest.

**B.**   **The Court Should Reject the Proposed Consent Decree.**

      **1.**   **The Proposed Consent Decree Fails to Provide the Court with the Information Needed to Assess Whether the Settlement is Fair, Reasonable, and Adequate.**

As covered in detail in the Factual and Procedural Background, § E, the proposed consent decree fails to provide adequate information to the Court, the Covered Individuals, and the DFEH about many critical elements of the settlement, including (1) the actual value of the settlement, since it provides for some unknown amount to revert to Activision, (2) the precise claims being released in the action, (3) Activision's total maximum exposure for the federal and state claims that may be released, (4) the strength of those claims and the realistic chances that the EEOC or the DFEH will prevail in their respective actions, (5) the amount of discovery that the EEOC has conducted to justify its view of the strengths and weaknesses of the claims, (6) the notice and claim form and the claims process, (7) the plan of allocation governing how much money each Covered Individual may recover, and (8) the individual Activision-funded one-hour lawyer consultation process.

A key purpose served by the DFEH's intervention will be to provide relevant information and expertise in connection with this information.  Without it, the EEOC and Activision cannot satisfy their burden to show that the consent decree merits approval.

      **2.**   **The Proposed Consent Decree Includes Several Infirmities that Preclude or Weigh Against Approval.**

            **a.**   **The Requirement that Important Evidence Be Destroyed Precludes Approval.**

The provision requiring Activision to destroy evidence of "sexual

1   harassment, pregnancy discrimination, and/or related retaliation" and to

2   "[r]eclassify . . . terminations . . . to voluntary resignations" is inappropriate.  ECF

3   No. 11-1 at 19:1-15.  Considering the pendency of the DFEH action, this provision

4   would hinder the DFEH's ability to present supporting evidence and destruction of

5   these documents would likely prevent any future private actions from the affected

6   employees.  Such provisions cannot be approved.

7              **b.    The Mechanism for Securing Individual Releases Via One-
                       Hour Engagements with Attorneys Paid for by Activision
8                      Precludes Approval.**

9         The proposed consent decree contemplates that each Claimant will meet with

10  a lawyer paid by Activision for a maximum of one hour to understand their claims,

11  their value, the benefits and risks of pursuing their claims individually or

12  collectively, and the contours and consequences of the release being presented by

13  Activision.  The lawyer is entitled to a fee of up to $450 for the hour.  To the extent

14  that this process could result in releases of additional claims, this highly unusual

15  structure should not be approved, as it pits a corporation represented by a group of

16  extremely talented and experienced in-house and outside attorneys and staff with

17  many months or years of experience studying the allegations, defenses, and legal

18  issues against a single lawyer who has sixty minutes to start and finish

19  representation of a lone individual with no legal training or exposure to the data,

20  evidence, and legal arguments in play.  That single lawyer will not have the benefit

21  of the years of investigation and litigation that the DFEH has participated in, or

22  intimate familiarity with the release being proposed.  This structural mismatch is a

23  far cry from a situation where an individual Claimant has the benefit of experienced

24  counsel who have studied the allegations; collected, reviewed, analyzed, and

25  discussed thousands of pages of evidence; hired an experienced expert to conduct

26  statistical analyses of reams of data; researched various relevant legal issues;

27  discussed all of this with an experienced team to assess the strengths and

28  weaknesses of the claims and make a thoughtful recommendation about how to

proceed; and engaged in the negotiation of a multi-page release of claims to ensure that the individual Claimant's rights are protected.  The imbalance is particularly acute here, where the scope of the consent decree is written in such broad terms that the single attorney with limited time could easily conclude that it covers all relevant federal *and state* claims, such that the claimant would be barred from pursuing state law claims and have no remaining leverage.

The contemplated process is a poor substitute for the more efficient and fair process that is already underway:  the DFEH's litigation on behalf of all California Covered Individuals in the pending state action.  That action provides the most efficient path for each individual victim to share evidence with counsel who are duty-bound to assist (and are not paid by Activision), who have gathered and hired an expert to analyze the relevant data, and who can piece together the evidence from hundreds of different victims and witnesses to understand the entire picture.

The proposed mechanism divides and isolates the Covered Individuals from each other, dramatically weakening their bargaining power and undermining the possibility of a fair outcome.

### c.    The Vague, Overbroad Scope and Release Precludes Approval.

As discussed in detail above, the scope of the release – covering vague and overbroad set of "allegations, issues and claims" and attempting negotiate releases to claims to which the EEOC is not a party –  precludes approval.  While the overbroad scope is in and of itself weighs against approval, it is important to note that the California discrimination claims it claims to cover or potential release are stronger than the federal claims, for several reasons.  <u>First</u>, California has significant additional protections that reach beyond federal law, including a more protective standard for harassment, retaliation and discrimination, coverage for contractors as well as employees, and additional claims such as failure to prevent discrimination and harassment.  <u>Second</u>, compensatory damages under Title VII are

capped at $300,000 for employers like Activision, whereas California has no corresponding cap.  Third, punitive damages are capped under federal law but are uncapped under California law.  Fourth, the California EPA has a significantly easier standard of proof for plaintiffs than the federal EPA or Title VII.

### d.   The Settlement Value Is Too Low Given the Release Scope, Strong Claims, and the Reversion.

One of the most important elements in settlement approval is a quantitative comparison of the settlement value with the maximum monetary relief recoverable in a successful litigation.  Courts repeatedly emphasize the importance of the parties walking the court through this math.  *See, e.g.*, *Litty v. Merrill Lynch & Co*., No. 14 Civ. 0425, 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) ("In determining whether the amount offered in settlement is fair, the Ninth Circuit has suggested that the Court compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation").

The settlement amount of $18 million (minus the unknown reversion amount) is too low, given that one conservative estimate of Activision's total exposure for the federal and California claims is approximately $930 million, and the DFEH has already amassed substantial powerful evidence of pay discrimination, rampant sexual harassment, and extensive retaliation.  While any settlement is necessarily a compromise that is significantly less than total exposure, the parties proposing such a settlement owe a duty to the affected individuals to justify the discount between the total exposure and the settlement value.

Relatedly, the reversion raises a red flag.  The Ninth Circuit generally disfavors reversionary clauses "because they create perverse incentives." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1058 (9th Cir. 2019).  Reversion of settlement funds to defendants "might lead defendants to negotiate for a subpar notice process, a more tedious claims process, or restrictive claim eligibility." *Id*. at 1059.  It also contravenes the EEOC's guidelines, which specify that "[n]o portion

1  of the monetary relief agreed to in a settlement should revert to the defendant."

2  Sagafi Decl. ¶ 18, Ex. D at 15.

3  ## CONCLUSION

4  The DFEH respectfully requests that the Court allow limited intervention for

5  the reasons set forth above.

6

7  DATED:  October 25, 2021                Respectfully submitted,

8                                          /s/ Jahan C. Sagafi
9                                          Jahan C. Sagafi (SBN 224887)
                                           Outten & Golden LLP
10                                         One California Street, Suite 1250
11                                         San Francisco, CA 94111
                                           Telephone:  (415) 638-8800
12                                         Facsimile:   (415) 638-8810
13                                         E-Mail:  jsagafi@outtengolden.com

14                                         OLIVIER SCHREIBER & CHAO LLP
                                           CHRISTIAN SCHREIBER (SBN 245597)
15                                         MONIQUE OLIVIER (SBN 190385)
16                                         201 Filbert Street, Suite 201
                                           San Francisco, CA 94133
17                                         Telephone: (415) 484-0980
18                                         Facsimile: (415) 659-7758
                                           E-Mail:  christian@osclegal.com
19                                         E-Mail:  monique@osclegal.com

20                                         OLIVIER SCHREIBER AND CHAO LLP
21                                         RACHEL BIEN (315886)
                                           1149 North Gower Street Suite 215
22                                         Los Angeles, CA 90038
                                           Telephone: (415) 484-0522
23                                         Facsimile: (415) 658-7758
24                                         E-Mail: rachel@osclegal.com

25

26

27

28

CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S MOTION TO INTERVENE