| | |
|---|---|
| 1 | OUTTEN & GOLDEN |
| 2 | JAHAN C. SAGAFI (SBN 224887)<br>jsagafi@outtengolden.com |
| 3 | One California Street, Suite 1250<br>San Francisco, CA 94111 |
| 4 | Telephone:  (415) 638-8800<br>Facsimile:    (415) 638-8810 |
| 5 | OLIVIER SCHREIBER & CHAO LLP |
| 6 | CHRISTIAN SCHREIBER (SBN 245597)<br>MONIQUE OLIVIER (SBN 190385) |
| 7 | christian@osclegal.com<br>monique@osclegal.com |
| 8 | 201 Filbert Street, Suite 201<br>San Francisco, CA 94133 |
| 9 | Telephone: (415) 484-0980<br>Facsimile: (415) 659-7758 |
| 10 | OLIVIER SCHREIBER AND CHAO LLP |
| 11 | RACHEL BIEN (315886)<br>rachel@osclegal.com |
| 12 | 1149 North Gower Street Suite 215<br>Los Angeles, CA 90038 |
| 13 | Telephone: (415) 484-0522<br>Facsimile: (415) 658-7758 |

*Attorneys for Proposed Intervenor,
Department of Fair Employment and Housing*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>                              Plaintiff,<br><br>       v.<br><br>ACTIVISION BLIZZARD INC., BLIZZARD ENTERTAINMENT, INC., ACTIVISION PUBLISHING, INC. KING.COM, INC., and DOES ONE through TEN, inclusive,<br><br>                              Defendants. | Case No. 2:21-CV-07682 DSF-JEM<br><br>**DECLARATION OF JAHAN C. SAGAFI IN SUPPORT OF DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S MOTION TO INTERVENE**<br><br>Date:       November 29, 2021<br>Time:       1:30 p.m.<br>Location: Courtroom 7D<br>Judge:     Hon. Dale S. Fischer<br><br>Action Filed: September 27, 2021 |

---

DECLARATION OF JAHAN C. SAGAFI IN SUPPORT OF DFEH MOTION TO INTERVENE
CASE NO.  2:21-CV-07682 DSF-JEM

I, Jahan C. Sagafi, declare as follows:

1. I am a partner at Outten & Golden LLP ("O&G"), the law firm representing the California Department of Fair Employment and Housing in their Motion to Intervene. I make these statements based on personal knowledge and would so testify if called as a witness.

2. This Declaration is submitted in support of California Department of Fair Employment and Housing's Motion to Intervene.

3. I am a member in good standing of the bar of the State of California, as well as the U.S. District Court for the Central District of California.

**Factual and Procedural History**

4. In July 2021, the DFEH filed suit in Los Angeles Superior Court alleging that Activision's conduct violated California law's protections against sex discrimination, sexual harassment, retaliation, destruction of record and forced waivers. Case No. 21STCV26571. Attached hereto as **Exhibit A** is a true and correct copy of the DFEH's operative complaint, which is the First Amended Complaint.

5. On September 27, 2021, the EEOC filed this action and simultaneously lodged a proposed consent decree. Shortly thereafter, on October 9, my co-counsel Christian Schreiber emailed the EEOC to ask them to withdraw information that was filed or lodged with the Court that included information considered by the DFEH to be privileged and confidential. I understand that Mr. Schreiber received no response, so the DFEH filed objections on Monday, October 11, ECF No. 18.

6. On Tuesday, October 12, the Court ordered the DFEH and the EEOC to meet and confer about the briefing schedule for a Motion to Intervene.  ECF No. 19.  On Thursday, October 14, Mr. Schreiber participated in a video conference meet and confer with EEOC counsel, including Ms. Park and Ms. Markey.  During that call, the EEOC and the DFEH agreed on a briefing and hearing schedule for the Motion to Intervene and agreed to continue discussions aimed at resolving the DFEH's concerns with the Consent Decree.

7. The following day, October 15, 2021, Mr. Schreiber sent an email to the EEOC reiterating the DFEH's concerns about the disclosure of privileged information and requesting a response to the DFEH's request the prior day to withdraw such privileged information from the public docket.  Having not heard back from the EEOC, the DFEH filed the Motion to Strike on October 19.

8. On Tuesday, October 19, Mr. Schreiber emailed the EEOC a detailed recitation of the DFEH's concerns with the proposed decree.

9. On Thursday, October 21, Ms. Markey responded on behalf of the EEOC to Mr. Schreiber.  Her letter stated in part that "EEOC will not be amended its negotiated proposed consent decree," and offered to provide certain assurances about the scope of the settlement and its impact on the DFEH's claims.  That day, Mr. Schreiber responded to the EEOC letter and offered to speak to the EEOC about the statements in its letter.

10. On Friday, October 22, the EEOC and the DFEH participated in another teleconference.  On the call, the parties continued discussions about the DFEH's concerns and agreed to continue their dialogue over the weekend.  The EEOC requested that the DFEH provide the EEOC with a draft copy of a proposed

Notice, the goal of which was to memorialize many of the assurances EEOC made in correspondence and conversations. The parties continued to exchange emails that day and on Saturday, October 23.

11. Yesterday, on Sunday, October 24, 2021, Mr. Schreiber sent the EEOC a proposed notice to be sent to the covered individuals if the Court approves the proposed consent decree, and he responded to the four items raised in the EEOC's October 21 letter. The draft notice explains that only federal claims would be released through the consent decree, and that if claimants wished to resolve California claims, they should contact the DFEH to get the benefit of their expertise regarding the value, strengths, and weaknesses of those claims and provide an update as to the procedural posture of the ongoing DFEH action. A true and correct copy of that correspondence is attached to this Declaration as **Exhibit B.**

12. On the same day, I sent Anna Park, counsel for the EEOC, an email to reintroduce myself and reiterate the DFEH's desire to address any disagreements through discussion rather than motion practice. A true and correct copy of that correspondence is attached to this Declaration as **Exhibit C**.

13. Today, I spoke with the EEOC, led by Anna Park, to find a way to avoid filing the intervention motion. We discussed the DFEH's concerns with the proposed consent decree. Ms. Park clarified some aspects of the decree, which provided me with important information about the consent decree that I had not heard before. I asked Ms. Park if she would agree to postpone the deadline to file today's intervention motion by two days to allow me to confer with the team and consider this new information. She responded that the EEOC will not change the

proposed consent decree and that if the DFEH still sought changes to the proposed consent decree, she preferred that we file the intervention today.

14. In today's conversation, Ms. Park explained that the proposed consent decree will release sexual harassment, pregnancy, and retaliation claims under both federal and state (including FEHA) law. She explained that she understood the release to not release any pay or promotion claims.

**Consent Decree**

15. The proposed consent decree contemplates that each Claimant will meet with a lawyer hired by Defendants for a maximum of one hour to understand their claims, their value, the benefits and risks of pursuing their claims individually or collectively, and the contours and consequences of the release being presented by Activision. The lawyer is entitled to a fee of up to $450 per hour. This hourly rate is what an associate bills at a firm like Paul Hastings or Outten & Golden.

16. Without revealing work product, and using only publicly available information, I can very conservatively estimate total potential exposure for the estimated 2,000 California employees (under the more favorable state law standards) and the estimated 500 non-California employees (under the less favorable federal law standards) whose claims are at issue in the proposed consent decree as follows:

    a. Assumption:
- 10% of women suffered retaliation, with each claim valued at two years of compensation.
- That 20% of women suffer harassment at $100,000 for 20% of women and $250,000 for 20% of women.
- Punitive damages are awarded in a 1:1 ratio to discrimination, retaliation, harassment totals.
- Two years of interest, without compounding.

| Relief Component | California Value | Non-California Value |
|---|---|---|
| **Assumptions** | | |
| Employees | 2,000 | 500 |
| Average total compensation | $140,000 | $140,000 |
| Average annual pay disparity[1] | $16,000 | $16,000 |
| Average tenure | 3 years | 3 years |
| Individual pay disparity | $48,000 | $48,000 |
| **Subtotals and total exposure** | | |
| Pay discrimination | $124,800,000 | $31,200,000 |
| Retaliation | $56,000,000 | $14,000,000 |
| Harassment | $140,000,000 | $35,000,000 |
| Punitive damages | $320,800,000 | $80,200,000 |
| California 10% annual interest | $128,320,000 | $0 |
| **Total exposure** | **$769,920,000** | **$160,400,000** |

17.  These damages are comparable with other California and non-California discrimination, harassment, and retaliation verdicts and settlements. *See, e.g.*, *Owen Diaz v. Tesla Inc., et al.*, No. 17 Civ. 06748 (N.D. Cal., filed Nov. 22, 2017) (ECF No. 291 (Verdict Form)) (On October 4, 2021, a unanimous jury awarded a single plaintiff $137,000,000 against Tesla for race discrimination and harassment claims); *Chopourian v. Catholic Healthcare West*, No. 09-cv-02972 (E.D. Cal. Feb. 29, 2012) (A jury awarded a single sexual harassment plaintiff $168,000,000 in economic damages, emotional distress damages, and punitive damages); *In re Alphabet Inc. S'holder Deriv. Litig.*, No. 19 Civ. 341522 (Cal. Super Ct., Cnty. of Santa Clara 2020) (Alphabet, Inc. entered a $310,000,000 settlement of a stockholder class case alleging that the company had

---

[1]  See **Exhibit G** (Declaration of David Neumark in Support of Motion for Class Certification in Ellis v. Google, LLC, No. CGC-17-561299 (Cal.Super. filed 9/14/2017)) at 7 (finding female employees of Google earned, on average, $16,794 less per year compared to similar male employees).

improperly awarded multi-million-dollar severance packages to executives accused of sexual harassment); *Kraszewski v. State Farm Gen. Insurance Co.*, 912 F.2d 1182 (9th Cir. 1990) (settlement of over $220 million in a gender discrimination in hiring case, providing for backpay only); *Stender v. Lucky Stores*, 803 F.Supp. 259 (N.D. Cal. 1992) (settlement of over $80 million in case addressing gender discrimination in initial assignment, allocation of hours, movement to full time and promotion); *Haynes v. Shoney's, Inc.*, No. 89 Civ. 30093, 1993 WL 19915 (N.D. Fla. Jan. 25 1993) (settlement of $132.5 million in race discrimination in hiring, firing, promotion, and harassment case); *Velez, et. al. v. Novartis Pharmaceuticals Corp.*, No. 04 Civ. 09194 (S.D.N.Y. 2010) ($253 million verdict for gender discrimination in pay, promotion, and pregnancy-related matters, including punitive damages); *McReynolds, et al. v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, No. 05 Civ. 6583 (N. D. Ill. Nov. 18, 2005) (ECF No. 585-1 (Settlement Agreement) at 27; ECF No. 616 (Final Approval Order)) (settlement of $160 million for discrimination against African American financial advisors and trainees in hiring, training, compensation, promotion, and account distribution policies and practices); *Abdallah v. Coca-Cola Co.*, 133 F. Supp. 2d 1364, 1371 (N.D. Ga. 2001) (settlement of $192.5 million for about 5600 employees, addressing discrimination in promotions, compensation, and performance evaluations against salaried African American employees; settlement also required establishment of an independent Task Force to oversee compliance with the four-year agreement and salary adjustments); and *Roberts v. Texaco*, No. 94 Civ. 2015, 979 F.Supp. 185, 193 (S.D.N.Y. 1997) (settling for $172 million, including $115 million for 1500 current and former employees and $20 million in salary increases in a systemic

race discrimination case; settlement included creation of an Equality and Fairness Task Force which was given broad powers over anti-discrimination, affirmative action and diversity efforts for five years).

**Exhibits**

18. Attached to this Declaration as **Exhibit D** is a true and correct copy of the EEOC's Settlement Standards and Procedures.

19. Attached to this Declaration as **Exhibit E** is a true and correct copy of the EEOC's Notice and Claims Procedures in the Settlement of Class Cases.

20. Attached to this Declaration as **Exhibit F** is a true and correct copy of the Google OFCCP settlement agreement.

21. Attached to this Declaration as **Exhibit G** is a true and correct copy of the Declaration of David Neumark in Support of Motion for Class Certification in *Ellis v. Google, LLC*, No. CGC-17-561299 (Cal. Super. Sept. 14, 2017).

Dated: October 25, 2021

OUTTEN & GOLDEN

By: /s/ Jahan C. Sagafi

Jahan C. Sagafi

Attorneys for Proposed Intervenor, Department of Fair Employment and Housing