# Exhibit A

1  JANETTE L. WIPPER, Chief Counsel, (#275264)
   SUE J. NOH, Assistant Chief Counsel, (#192134)
2  RUMDUOL VUONG, Associate Chief Counsel, (#264392)
   320 W. 4th Street, Suite #1000
3  Los Angeles, CA 90013
   Telephone:  (213) 439-6799
4  Facsimile:   (888) 382-5293

5  Attorneys for Plaintiff,
   Department of Fair Employment and Housing          (Fee Exempt, Gov. Code, § 6103)

**FILED**
Superior Court of California
County of Los Angeles

**08/23/2021**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____S. Tresvamt_____ Deputy

6

7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  IN AND FOR THE COUNTY OF LOS ANGELES

10

11 DEPARTMENT OF FAIR EMPLOYMENT AND )   **Case No.**  21STCV26571
   HOUSING, an agency of the State of California,  )
12                                                )   **Dept:** 73
                                       Plaintiff,  )   **Hon.** Timothy P. Dillon
13                                                )
                     vs.                          )   **FIRST AMENDED CIVIL RIGHTS AND**
14 ACTIVISION BLIZZARD, INC., BLIZZARD            )   **EQUAL PAY ACT COMPLAINT FOR**
   ENTERTAINMENT, INC., and ACTIVISION           )   **INJUNCTIVE AND MONETARY**
15 PUBLISHING, INC., and DOES ONE through         )   **RELIEF AND DAMAGES**
   TEN, inclusive,                                )
16                                                )   **JURY TRIAL DEMANDED**
                                     Defendants.  )
17 _____ )

18

19         Plaintiff, DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING ("DFEH"), an

20 agency of the State of California, brings this action in its own name to remedy violations of the

21 California Fair Employment and Housing Act, Government Code section 12900 et seq. ("FEHA") as

22 well as the California Equal Pay Act, Labor Code section 1197.5, by Defendant Activision Blizzard,

23 Inc. ("Activision Blizzard"), Blizzard Entertainment, Inc. ( "Blizzard"), and Activision Publishing,

24 Inc. ("Activision Publishing") and Does One through Ten (collectively referred to as "Defendants").

25 / / /

26 / / /

27 / / /

   / / /

28

Electronically Received 08/23/2021 03:17 PM

**INTRODUCTION**

1.     Headquartered in California since the 1970s – where the nation's strongest anti-harassment, equal pay and other equal employment opportunity protections exist for employees and contingent or temporary workers[1] – Defendants should be a safe-haven workplace in the video gaming industry.  Sexism has plagued the male-dominated gaming industry for decades, and increasingly so in recent years.[2]  Women and girls now make up almost half of gamers in America, but the gaming industry continues to cater to men, even in California.  Activision Blizzard's double-digit percentage growth, ten-figure annual revenues, and recent diversity marketing campaigns have unfortunately changed little.  Defendants' compliance with California's broad workplace protections is long overdue.  To enforce such compliance, DFEH brings this government enforcement action seeking to remedy, prevent and deter Defendants' violations of the state's civil rights and equal pay laws to vindicate the rights of Defendants' female employees and contingent or temporary workers and the public interest of the State of California.

2.     Activision Blizzard, Inc. is headquartered in Santa Monica, California.  It is one of the largest American video game developers and distributors with approximately 9,500 employees

---

[1](See, e.g., *State Dept. of Health Services v. Sup.Ct.* (2003) 31 Cal.4th 1026, 1040 [FEHA provides broader protection than Title VII]; Introduction, Cal. Prac. Guide Civ. Pro. Trial Claims and Def. Ch. 13(I.1)-A ["Title VII presents serious limitations on plaintiff's recovery, including a cap on emotional distress and punitive damages. In addition, FEHA provides broader protections in a number of important respects... For these reasons, it is generally advantageous to sue under FEHA, rather than Title VII."]; Zhou, *Can California Prevent Wage Discrimination Against Women?* (Oct. 7, 2015) The Atlantic <https://www.theatlantic.com/business/archive/2015/10/california-gender-wage-gap-fair-pay-act/409549/> [as of July 19, 2021].)

[2](Wingfield, *Feminist Critics of Video Games Facing Threats in 'Gamergate' Campaign*, N.Y. Times (Oct. 15, 2014) <https://www.nytimes.com/2014/10/16/technology/gamergate-women-video-game-threats-anita-sarkeesian.html> [as of July 19, 2021];  Dockterman, *What Is #GamerGate and Why Are Women Being Threatened About Video Games?* Time (Oct. 16, 2014) <https://time.com/3510381/gamergate-faq/> [as of July 19, 2021]; Lorenz & Browning, *Dozens of Women in Gaming Speak Out About Sexism and Harassment*, N.Y. Times (June 23, 2020) <https://www.nytimes.com/2020/06/23/style/women-gaming-streaming-harassment-sexism-twitch.html> [as of July 19, 2021]; Holden et. al., *The #E-Too Movement: Fighting Back Against Sexual Harassment in Electronic Sports,* (2020) 52 Ariz. St. L.J. 1, 1.)

and over 100 million players worldwide.  It is considered a leading gaming platform in the western world, and it is a member of the Fortune 500 and S&P 500.  Activision Blizzard conducts business through its subsidiaries, Blizzard Entertainment, Inc., King Digital Entertainment, and Activision Publishing, Inc., among others.  Activision Blizzard also operates global esports organizations, Overwatch League and Call of Duty League. The video game franchise Call of Duty is Activision Publishing's key product.  Blizzard Entertainment maintains the online gaming service, Battle.net, and includes key franchises such as World of Warcraft, Diablo, and Overwatch.

3.      Unlike its customer-base of increasingly diverse players, Defendants' workforce is only about 20 percent women.  Its top leadership is also exclusively male and white.  The CEO and President roles are now – and have always been – held by white men.[3]  Very few women ever reach top roles at the company.  The women who do reach higher roles earn less salary, incentive pay and total compensation than their male peers, as evidenced in Defendants' own records.[4]   Similar

---

[3] <https://www.activisionblizzard.com/who-we-are> [as of July 19, 2021]; Fahs, The History of Activision (Oct. 1, 2010, updated Mar. 21, 2020) <https://www.ign.com/articles/2010/10/01/the-history-of-activision>
[4] Activision Blizzard, (June 14, 2021, amended from April 30, 2021), 2021 Proxy Statement at p. 88 <https://www.sec.gov/Archives/edgar/data/718877/000130817921000289/latvi2021_defr14a.htm> [as of July 19, 2021]

*SUMMARY COMPENSATION TABLE*

The table below presents information with respect to each of our named executive officers regarding compensation earned during the periods indicated.

| Name and Principal Position | Year | Salary ($) | Total ($) |
|---|---|---|---|
| Robert Kotick Chief Executive Officer | 2020 | 1,494,231 | 154,613,318 |
| | 2019 | 1,756,731 | 30,122,896 |
| | 2018 | 1,756,731 | 30,841,004 |
| Dennis Durkin[6] Executive Advisor and Former Chief Financial Officer | 2020 | 906,923 | 12,999,754 |
| | 2019 | 901,731 | 9,511,753 |
| | 2018 | 624,808 | 928,025 |
| Daniel Alegre[7] President and Chief Operating Officer | 2020 | 1,002,115 | 12,599,837 |
| Claudine Naughton | 2020 | 655,000 | 3,823,519 |

disparities exist throughout the company.[5]

4.      Like the executive ranks, women across the company are assigned to lower paid and lower opportunity levels.  Female employees receive lower starting pay and also earn less than male employees for substantially similar work.  Defendants promote women more slowly and terminate them more quickly than their male counterparts.  Faced with such adverse terms and conditions of employment, many women have been forced to leave the company.

5.      Defendants have also fostered a pervasive "frat boy" workplace culture that continues to thrive.  In the office, women are subjected to "cube crawls" in which male employees drink copious amounts of alcohol as they "crawl" their way through various cubicles in the office and often engage in inappropriate behavior toward female employees.  Male employees proudly come into work hungover, play video games for long periods of time during work while delegating their responsibilities to female employees, engage in banter about their sexual encounters, talk openly about female bodies, and joke about rape.

6.      Unsurprisingly, Defendants' "frat boy" culture is a breeding ground for harassment and discrimination against women.  Female employees and contingent or temporary workers are subjected to constant sexual harassment, including having to continually fend off unwanted sexual comments and advances by their male co-workers and supervisors and being groped at the "cube

| | | | |
|---|---|---|---|
| Chief People Officer | 2019 | 250,000 | 4,388,854 |
| Chris B. Walther Chief Legal Officer | 2020 | 852,205 | 3,270,992 |
| | 2019 | 836,381 | 5,160,991 |
| | 2018 | 759,238 | 4,763,158 |

[5] (See, e.g., Schreier, *Blizzard Workers Share Salaries in Revolt Over Pay*, Bloomberg (August 6, 2020) <https://www.bloomberg.com/news/articles/2020-08-03/blizzard-workers-share-salaries-in-revolt-over-wage-disparities> [as of July 19, 2021]; Gonzalez, *Blizzard and Overwatch Continue to Fail Black Women* (Nov. 2, 2020) <https://www.hotspawn.com/overwatch/news/blizzard-and-overwatch-continue-to-fail-black-women> [as of July 19, 2021]; see also Kolakowski, *Activision Blizzard Faces Diversity Hiring Controversy* (Jan. 28, 2021) <https://insights.dice.com/2021/01/28/activision-blizzard-faces-diversity-hiring-controversy/> [as of July 19, 2021]; *Ex-Blizzard employee says he left due to "racial abuse and discrimination,* <https://www.pcgamesn.com/blizzard-racial-discrimination> [as of July 19, 2021]

crawls" and other company events.  High-ranking executives and creators engaged in blatant sexual harassment without repercussions.  In a particularly tragic example, a female employee committed suicide during a business trip with a male supervisor who had brought butt plugs and lubricant with him on the trip.  Defendants continuously condone the quid pro quo and hostile work environment. The message is not lost on their employees.

7.      Numerous complaints about unlawful harassment, discrimination, and retaliation were made to Defendants' human resources personnel and executives, including to Blizzard Entertainment's President J. Allen Brack.  But, Defendants failed to take effective remedial measures in response to these complaints.  Employees were further discouraged from complaining as human resource personnel were known to be close to alleged harassers.  An internal investigation into the human resource unit noted that there was a "big lack of trust" and that "HR not held in high regard."  Unsurprisingly, employee's complaints were treated in a perfunctory and dismissive manner and not kept confidential from the alleged perpetrators.  As a result of these complaints, female employees and contingent or temporary workers were subjected to retaliation, including but not limited to being deprived of work on projects, unwillingly transferred to different units, and selected for layoffs.

8.      Plaintiff DFEH, an agency of the State of California, brings this enforcement action against Defendants in its prosecutorial role, seeking relief in the public interest for the state and for Defendants' female employees and contingent or temporary workers ("the Group").  Pursuant to the authority vested in DFEH under FEHA, Government Code section 12900 et seq. and related laws, DFEH's enforcement action seeks to remedy, prevent, and deter unlawful harassment, retaliation, and discrimination.  Specifically, the violations pled herein include claims for sex discrimination in terms and condition of employment (including compensation, assignment, promotion, constructive discharge, termination); unlawful sexual harassment; retaliation; failure to prevent discrimination, harassment, and retaliation; and unequal pay.

## PARTIES

9.      Plaintiff Department of Fair Employment and Housing ("DFEH") is a state agency tasked with investigating and prosecuting civil rights actions.  (Gov. Code, § 12930, subd. (f)(1)-

(5).)  California's legislature exercised its police power in enacting FEHA and investing authority in DFEH "to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination…"  (Gov. Code, § 12920; *Dept. Fair Empl. & Hous. v. Cathy's Creations, Inc.* (2020) 54 Cal.App.5th 404, 410 ["the DFEH's task is to represent the interests of the state and to effectuate the declared public policy of the state to protect and safeguard the rights and opportunities of all persons form unlawful discrimination."].)  As set forth in Government Code section 12900 et seq., DFEH is charged with enforcing FEHA, including initiating and investigating complaints on behalf of itself and persons alleged to be aggrieved by discriminatory employment practices.  (Gov. Code, §§ 12930, 12961.)  DFEH is additionally authorized to investigate and prosecute claims under Labor Code section 1197.5, which prohibits employers from paying employees of one sex less for substantially similar work.  (Gov. Code, § 12930, subd. (f)(5).)  At DFEH's discretion, DFEH may bring a civil action in the name of the department on behalf of a group or class of persons adversely affected, in a similar manner, by an unlawful practice.  (Gov. Code, §12965.)  "'The DFEH acts as a public prosecutor when it pursues civil litigation under the FEHA (*State Personnel Bd. v. Fair Empl. & Hous. Com.* (1985) 39 Cal.3d 422, 444), and it may seek remedies to "'vindicate' what it considers to be in 'the public interest in preventing ... discrimination.'" (*Dept. Fair Empl. & Hous. v. Law Sch. Admission Council, Inc.* (2013) 941 F.Supp.2d 1159, 1172).  (*Dept. Fair Empl. & Hous. v. Superior Ct. of Kern Cty*. (2020) 54 Cal.App.5th 356, 373.)

10.     Defendant Activision Blizzard, Inc., ("Activision Blizzard") is now and was, at all times relevant to this complaint, a Delaware corporation operating in and under the laws of the State of California and conducting business in Los Angeles, California.  Activision Blizzard's corporate headquarters are located in Santa Monica, California.  Activision Blizzard conducts business through its subsidiaries, Defendants Blizzard Entertainment, Inc. ("Blizzard Entertainment") and Activision Publishing, Inc. ("Activision Publishing").  As indicated by its 2021 Form 10-K, Blizzard Entertainment, Inc., and Activision Blizzard, Inc., along with King Digital Entertainment, fall within the three organizations overseen by Activision Blizzard and constitute two of the "three reportable segments" to Activision Blizzard.  At all times relevant to this complaint, Activision Blizzard was an

"employer" subject to FEHA and all other applicable statutes.

11.     Defendant Blizzard Entertainment, Inc., ("Blizzard Entertainment") is now and was, at all times relevant to this complaint, a Delaware corporation operating in and under the laws of the State of California and conducting business in Los Angeles, California.  Blizzard Entertainment is a subsidiary of Activision Blizzard and has its corporate headquarters at 1 Blizzard Way, Irvine, CA 92618.  DFEH is informed that Blizzard Entertainment conducts business in Burbank and Santa Monica, California where employees work.  At all times relevant to this complaint, Blizzard Entertainment, Inc., was an "employer" subject to FEHA and all other applicable statutes.

12.     Defendant Activision Publishing, Inc., ("Activision Publishing") is now and was, at all times relevant to this complaint, a Delaware corporation operating in and under the laws of the State of California and conducting business in Los Angeles, California.  Activision Publishing's corporate headquarters are located in Santa Monica, California.  At all times relevant to this complaint, Activision Publishing was an "employer" subject to FEHA and all other applicable statutes.

13.     Defendants DOES ONE through TEN, inclusive, are sued herein pursuant to Code of Civil Procedure section 474.  DFEH is ignorant of the true names or capacities of the defendants sued herein under the fictitious names DOES ONE through TEN, inclusive.  DFEH will amend this complaint to allege their true names and capacities when the same are ascertained.  DFEH is informed, believes, and alleges, that each of the fictitiously named defendants is legally responsible for the occurrences, injuries, and damages alleged herein.

14.     DFEH is informed, believes, and alleges that at all relevant times, each defendant is and was, the director, agent, employee, and/or representative of every other defendant and acted within the course and scope of their agency, service, employment, and/or representation, and that each defendant herein is jointly and severally responsible and liable to the Group for the damages hereinafter alleged.  At all relevant times, there existed a unity of ownership and interest between or among two or more of the Defendants such that any individuality and separateness between or among those Defendants has ceased, and Defendants are the alter egos of one another.  Defendants exercised domination and control over one another to such an extent that any individuality or

1  separateness of Defendants does not, and at all times herein mentioned did not, exist.  All of the acts

2  and failures to act alleged herein were duly performed by and attributed to all Defendants, each

3  acting as the joint employer as Defendants jointly supervised and controlled employee's conditions

4  of employment, determined rate of pay or method of payment, had authority to hire or fire

5  employees, and maintained employment records.  All actions of all Defendants were taken by

6  employees, supervisors, executives, officers, and directors during employment with all Defendants,

7  were taken on behalf of all Defendants, and were engaged in, authorized, ratified, and approved of

8  by all other Defendants.

9  <u>**PROCEDURAL HISTORY, JURISDICTION, AND VENUE**</u>

10    15. DFEH incorporates and realleges all previous allegations as if fully set forth herein.

11    16. Venue is proper in the County of Los Angeles under Government Code section

12  12965, subdivision (a) as the unlawful practices complained of in this complaint occurred in the

13  County of Los Angeles.

14    17. DFEH's director, in his or her discretion, may file a complaint on behalf of a group or

15  class.  (Gov. Code, § 12961; Cal. Code Regs., tit. 2, §§ 10012 and 10013.)  Pursuant to this

16  authority, DFEH Director Kevin Kish ("DFEH Director") filed and served a complaint of Group or

17  Systemic Investigation and Director's Complaint for Group/Class Relief against Blizzard

18  Entertainment, Inc. on October 12, 2018, (DFEH Case No. 201810-03875512).  On October 29,

19  2018, an Amended Director's Complaint was filed and served to add Activision Blizzard, Inc.  On

20  December 7, 2018, a Second Amended Director's Complaint was filed and served to add Activision

21  Publishing, Inc. (collectively, referred as "Director's Complaints".)  The Director's Complaints

22  alleged that Defendants engaged in discrimination against their employees on the basis of sex-

23  gender, including failing to hire, select, or employ persons because of their sex, as well as

24  discriminating in compensation or in the terms, conditions, privileges of employment due to their

25  sex.  The Director's Complaints further alleged that Defendants failed to take all reasonable steps to

26  prevent unlawful discrimination, harassment, or retaliation.

27    18. After more than two-years of investigation, DFEH issued a cause finding on June 24,

28  2021.  In the course of DFEH's investigation, DFEH found evidence that Defendants discriminated

-8-

*Dept. Fair Empl. & Hous. v. Activision Blizzard, et al.*
First Amended Civil Rights and Equal Pay Complaint for Injunctive and Monetary Relief, and Damages

against female employees and contingent or temporary workers in terms and conditions of employment, including compensation, assignment, promotion, termination, constructive discharge, and retaliation.  DFEH's investigation also found that female employees and contingent or temporary workers were subject to sexual harassment.  DFEH's investigation found that Defendants failed to take all reasonable steps to prevent unlawful discrimination, harassment, or retaliation. Lastly, DFEH's investigation further found that Defendants had committee violations of Labor Code section 1197.5 in paying female employee less than their male counterparts for substantially similar work.  These claims are alleged and/or reasonably related to and like the claims originally alleged in the Director's Complaints.

19.     DFEH attempted to resolve this matter without litigation. Prior to filing this civil action, the DFEH required all parties to participate in mandatory dispute resolution in the department's internal dispute resolution division free of charge to the parties in an effort to resolve the dispute without litigation. Specifically, DFEH invited Defendants to participate in a mediation session with the department's internal dispute resolution division on July 1, 2, and 15, 2021, but the parties were unable to resolve the administrative complaints.

20.     In the case of failure to eliminate an unlawful practice through conference, conciliation, mediation, or persuasion, or in advance thereof if circumstances warrant, the DFEH may bring a civil action in the name of the department in state and federal courts. (Gov. Code, §§ 12930, subd. (h) and 12965, subd. (a).)

21.     All administrative procedures precedent to the institution of this lawsuit have been fulfilled.

22.     By operation of a signed agreement between the parties, DFEH's deadline to file a civil complaint is July 21, 2021.  DFEH filed its complaint prior to the deadline of July 21, 2021.

23.     The amount of damages sought by this complaint exceeds the minimum jurisdictional limits of this Court.

### GOVERNMENT ENFORCEMENT ACTION ALLEGATIONS

24.     DFEH brings this government enforcement action for group relief on behalf of itself in the public interest and all aggrieved female employees (the "Group") pursuant to Government

-9-

Code sections 12961 and 12965.

25.     DFEH's authority to seek relief on behalf of itself in the public interest and the Group stems from a delegation of the power by the Legislature, authorizing DFEH to initiate a complaint itself, investigate claims, and prosecute such claims under FEHA.  (*see, e.g.*, Gov. Code, §§ 12920, 12920.5, 12930, 12961, and 12965.)  Section 12961 expressly authorizes the DFEH Director to file a complaint on behalf of the department seeking relief for a group of persons adversely affected, in a similar manner, by an alleged unlawful practice.  "Any complaint so filed may be investigated as a group *or* class complaint, and, if in the judgment of the director circumstances warrant, *shall* be treated as such for purposes of conciliation, dispute resolution, and *civil action.*"  (Gov. Code, §§ 12961 and 12965, subd. (a), italics added.)

26.     Pursuant to such statutory authorities, DFEH's Director filed and gave notice to Defendants that this was a group or class complaint for purposes of investigation, mediation, and civil action.  DFEH investigated and attempted to mediate the group or class complaint with Defendants and, after a failure to eliminate the unlawful practices through mediation, or in advance thereof if circumstances warrant, the DFEH filed this civil action seeking to remedy the group or class violations in this Court.  (Gov. Code, §§ 12930, subd. (h), 12961, 12965, subd. (a).)

27.     DFEH brought this government enforcement action in its own name pursuant to express statutory authority from the Legislature.  (Gov. Code, § 12900 et seq.; Cal Const., Art III, § 3.)  The Legislature authorized DFEH to proceed on a group or class basis in a civil action.  (Gov. Code, §§ 12961 and 12965, subd. (a).)

28.     DFEH's government enforcement action seeks to remedy, prevent, and deter the pattern or practice of unlawful discrimination and other violations, disparate impact of discrimination, and continuing violations that Defendants engaged in against aggrieved female employees and contingent or temporary workers.

29.     DFEH brings this representative enforcement action in its capacity as a state agency and the authority vested in DFEH by FEHA, which does not require class certification under Code of Civil Procedure sections 378 and 382.  (*People v. Pacific Land Res. Co.* (1977) 20 Cal.3d 10, 17 ["[a]n action filed by the People seeking injunctive relief and civil penalties is fundamentally a law

enforcement action designed to protect the public and not to benefit private parties" and that in such cases the seeking of monetary remedies was "not the primary object of the suit, as it is in most private class actions."]; *Dept. Fair Empl. & Hous. v. Law School Admission Council, Inc.*, *supra*, 941 F.Supp.2d at 1168-1170 [holding that DFEH action is not subject to class certification requirements under Rule 23 of Federal Rules of Civil Procedure as "nothing in § 12961 requires that the complaint be filed as a class action."]; *Washington v. Chimei Innolux Corp.* (9th Cir. 2011) 659 F.3d 842, 848 ["class actions are always representative actions, but representative actions are not necessarily class actions."].)  Thus, DFEH is exempt from class action certification.

## FACTUAL ALLEGATIONS

30.     DFEH incorporates and realleges all previous allegations as if fully set forth herein.

## Sex Discrimination: Pay, Assignment, Promotion, Termination, and Constructive Discharge

31.     Defendants have engaged in and continue to perpetuate discriminatory practices regarding pay, assignment, promotion and other terms and conditions of employment which negatively affect and impact female employees and contingent or temporary workers.

32.     These discriminatory practices began at hire when women were offered lower compensation and less lucrative job assignments and opportunities than their male counterparts. Defendants paid female employees significantly less in starting pay then their male counterparts at hire.  This pattern or practice and violations are continuing.

33.     The pay disparity continued throughout employment for female employees and contingent or temporary workers.    Defendants paid female employees significantly less than their male counterparts after hire.  This pattern or practice and violations are continuing.

34.     Women were also afforded less stock and incentive pay opportunities.  Female employees were overwhelming assigned into lower grades/levels without stock and incentive pay opportunities or less opportunities.  Female employees also received less stock and incentive compensation than male employees.  This pattern or practice and violations are continuing.

35.     Women were steered into the lower levels of Defendants' hierarchy and often had to work harder and longer to earn equal promotional and other opportunities as their male counterparts.

As an example, a female employee working for Blizzard Entertainment was assigned to a lower level role, denied equal pay, and subsequently sought a promotion because she had been carrying out duties exceeding her job description.  She was repeatedly told it was not her turn and others deserved a promotion ahead of her.  Ultimately, the employee was promoted after three years while her male counterpart was promoted within a year of his hire despite having started several months after her.  Her male counterpart was also assigned leadership responsibilities which she was not afforded, responsibilities which furthered the male employee's ability to get promoted.

36.     In another example, a female employee who worked at Blizzard Entertainment was assigned to a lower level, denied equal pay, and passed over for a promotion despite multiple factors that suggested she earned it: (1) highly rated performance reviews; (2) she generated significantly more revenue in her marketing campaigns than her male counterpart; and (3) she ran almost twice as many campaigns as her male counterpart.  Despite her accomplishments, her male counterpart was invited to have monthly or weekly one-on-one meetings with the Vice President.  She was not afforded these same opportunities and unsurprisingly was passed over for a promotion in favor of her male counterpart.

37.     Similarly, other female employees at Blizzard Entertainment were assigned to lower level roles, denied equal pay and further delayed or passed over for promotions in favor of male counterparts who lacked the same experience or qualifications but who were friends with the male head of the unit.  A newly promoted male supervisor delegated his responsibilities to his now female subordinates in favor of playing Call of Duty.  Other male supervisors would refuse to communicate with female employees, going to their male counterparts for information.

38.     Female employees at Activision Publishing were also assigned to lower level roles, denied equal pay, and delayed or passed over for promotions of their male counterparts.  As an example, a female human resources employee at Activision Publishing was delayed and passed over for a promotion despite receiving positive performance reviews, doing substantial more work than her male counterpart, and taking over the actual responsibilities of the departing person.  Female accounting employees at Activision Publishing, likewise, note that male counterparts were paid significantly more than them despite doing the same or less work and having less responsibilities.

39.     Female employees were also not promoted because of Defendants' discriminatory practices against pregnant female employees.  A female employee working on one game team had assumed some of the responsibilities of a manager but when she asked her male supervisor about being fairly paid for the work she was actually doing and promoted into that position, the manager commented that they could not risk promoting her as she might get pregnant and like being a mom too much.  In general, female employees were further treated negatively due to their pregnancies.  Supervisors ignored medical restrictions given to female employees and gave them negative evaluations while they were out on maternity leave.  Other female employees reported that they were criticized for leaving to pick up their children from daycare while their male counterparts were playing video games and female employees were kicked out of lactation rooms so employees could use the room for meetings.

40.     Women of color were particularly vulnerable targets of Defendants' discriminatory practices.  An African American employee noted that it took her two years to be made into a permanent employee while men hired after her were made permanent employees.  She also was micromanaged such that her male coworkers were known to be playing video games without any intervention by her supervisor, but her supervisor would call and check on her if she took a break to go on a walk.  Another African American employee, who worked on information technology, was similarly micromanaged by her manager unlike the men on her team.  When she requested time off of work, her manager made her write a one-page summary of how she would spend that time off of work when no one else had to do any write-up.  The male supervisor also criticized her body language despite male counterparts slouching in meetings and she was scolded for asking for assistance while others could get help on similar tasks without the same criticism.  These experiences led female employees to leave their employment with Defendants.

41.     As a result of these discriminatory pay, assignment, promotion and other practices, Defendants' gender pay gap is significant.  Defendants paid female employees significantly less in base pay and total compensation then their male counterparts.  This pattern or practice and violations are continuing.

42.     When women complained to human resource personnel about the lack of equal

-13-

employment opportunities, especially in comparison to their male counterparts, their complaints fell on deaf ears or were met with an empty promise to investigate the issue.  Indeed, despite having retained Paul Hastings LLP from 2015 to 2017 and Miller Law Group in 2018 to allegedly provide analysis related to compensation data, Defendants failed to take effective and reasonable steps to prevent pay discrimination as the pay disparity between male and female employees was not remedied and continued.

43.     As a result of these discriminatory practices, female employees and contingent or temporary workers were forced to leave their employment with Defendants.  For example, female employees noted that they accepted less compensation than they were making in their prior employment or offered by other companies to work for Defendants with the hollow promise that they would get promoted or get other forms of compensation to make up the difference.  They never made up ground and instead had to watch as male comparators were promoted more quickly and offered more compensation, forcing them to leave the company.

44.     Additionally, Defendants terminated female employees more quickly than their male counterparts.  This pattern or practice and violations are continuing.

45.     In sum, Defendants' discriminatory practices adversely affected women in compensation, assignment, promotion, and termination.  Defendants failed to take effective steps to remedy or adequately correct its compensation disparities despite its awareness that such disparities existed.  Defendants' discriminatory practices continue to the date of this complaint.

**Sexual Harassment**

46.     Female employees almost universally confirmed that working for Defendants was akin to working in a frat house, which invariably involved male employees drinking and subjecting female employees and contingent or temporary workers to sexual harassment with no repercussion. "Cube crawls" in Defendants' offices were common and male employees proudly came into work hungover.  Similarly, male employees would play video games during work, engage in banter about their sexual encounters, talk openly about female bodies, and make numerous jokes about rape.  As a product of this "frat boy" culture, women were subjected to numerous sexual comments and advances, groping and unwanted physical touching, and other forms of harassment.  A female

-14-

*Dept. Fair Empl. & Hous. v. Activision Blizzard, et al.*
First Amended Civil Rights and Equal Pay Complaint for Injunctive and Monetary Relief, and Damages

1  employee noted that random male employees would approach her on Defendants' work site and

2  comment on her breasts.  Female employees working for the World of Warcraft team noted that

3  male employees and supervisors would hit on them, make derogatory comments about rape, and

4  otherwise engage in demeaning behavior.  This behavior was known to supervisors and indeed

5  encouraged by them, including a male supervisor openly encouraging a male subordinate to "buy" a

6  prostitute to cure his bad mood.

7       47.    In a blatant example of Defendants' refusal to deal with a harasser because of his

8  seniority/position, Alex Afrasiabi, the former Senior Creative Director of World of Warcraft at

9  Blizzard Entertainment, was permitted to engage in blatant sexual harassment with little to no

10  repercussions.  During a company event (an annual convention called Blizz Con) Afrasiabi would

11  hit on female employees, telling him he wanted to marry them, attempting to kiss them, and putting

12  his arms around them.  This was in plain view of other male employees, including supervisors, who

13  had to intervene and pull him off female employees.  Afrasiabi was so known to engage in

14  harassment of females that his suite was nicknamed the "Cosby Suite" after alleged rapist Bill

15  Cosby.  Afrasiabi would also call females derogatory names at company events.  Afrasiabi's conduct

16  was known to Blizzard Entertainment's executives, who took no effective remedial measures.  J.

17  Allen Brack, President of Blizzard Entertainment, allegedly had multiple conversations with

18  Afrasiabi about his drinking and that he had been "too friendly" towards female employees at

19  company events but gave Afrasiabi a slap on the wrist (i.e. verbal counseling) in response to these

20  incidents.  Subsequently, Afrasiabi continued to make unwanted advances towards female

21  employees, including grabbing a female employee's hand and inviting her to his hotel room and

22  groping another woman.

23       48.    In a tragic example of the harassment that Defendants allowed to fester in their

24  offices, a female employee committed suicide while on a company trip due to a sexual relationship

25  that she had been having with her male supervisor.  The male supervisor was found by police to

26  have brought a butt plug and lubricant on this business trip.  Another employee confirmed that the

27  deceased female employee may have been suffering from other sexual harassment at work prior to

28  her death.  Specifically, at a holiday party before her death, male co-workers were alleged to be

-15-

*Dept. Fair Empl. & Hous. v. Activision Blizzard, et al.*
First Amended Civil Rights and Equal Pay Complaint for Injunctive and Monetary Relief, and Damages

passing around a picture of the deceased's vagina.

**Retaliation and Defendants Failure to Prevent**

**Discrimination, Harassment, and Retaliation**

49.     The problems of harassment and discrimination extended to and at a minimum were known to those at the top.  Defendants' former Chief Technology Officer was observed by employees groping inebriated female employees at company events and was known for making hiring decisions based on female applicants' looks.  An employee complained to Blizzard Entertainment President J. Allen Brack in early 2019 that employees were leaving due to sexual harassment and sexism.  Specifically, this employee noted that women on the Battle.net team were subjected to disparaging comments, the environment was akin to working in a frat house, and that women who were not "huge gamers" or "core gamers" and not into the party scene were excluded and treated as outsiders.

50.     Female employees had raised further complaints to various human resources personnel about the discrimination they faced, including but not limited to complaints about unfair pay and assignments, male co-workers belittling them or minimizing their contributions, and male counterparts being promoted quickly despite their lack of seniority.  Similarly, female employees also complained of the harassment they suffered, including that male co-workers groped them, that male supervisor asked them on dates, and of other unwanted harassment.  Defendants failed to take reasonable action in responses to these complaints.  Such lack of effective remedial measures was not surprisingly given Defendants' own internal investigation into their human resources unit noted that there was a "big lack of trust" and that "HR not held in high regard."  Multiple employees also noted that their complaints were not kept confidential.

51.     In retaliation for complaints regarding harassment and discrimination, female employees experienced retaliation by Defendants that included involuntary transfers, selection for layoffs, and denial of projects and other opportunities.

**Retaliation for Assisting a Government Enforcement Action**

52.     In addition to retaliation for employee complaints regarding sexual harassment and discrimination, Defendants also retaliated against employee opposition to practices forbidden under

-16-

*Dept. Fair Empl. & Hous. v. Activision Blizzard, et al.*
First Amended Civil Rights and Equal Pay Complaint for Injunctive and Monetary Relief, and Damages

FEHA and employee assistance or perceived assistance with civil rights enforcement.  After DFEH opened its investigation and employees opposed practices forbidden under FEHA, engaged in, or were perceived to be engaged in, protected activity, DFEH requested documents related to employee complaints, communications and records about harassment or discrimination by Defendants. Defendants refused to produce relevant evidence to DFEH, claiming that the company's "***receipt [of complaints] or investigation of discrimination or harassment complaints is privileged,***" and they thereby suppressed evidence and interfered with a government investigation seeking relief for employees who suffered unlawful conduct.  In one instance, Defendants' counsel stated: "***[a]s a threshold issue, we note that [the investigator] is an attorney …; her work related to receipt or investigations of discrimination or harassment complaints is privileged.***"[6]  Throughout the DFEH two-year investigation, Defendants have taken several adverse actions in response to employee complaints and assistance with the DFEH, including repeatedly cloaking the "***receipt or investigation***" of employee discrimination and harassment complaints in attorney-client "privilege," then withholding and suppressing evidence from the governmental department charged with investigating and remedying such complaints, and ultimately interfering with DFEH's statutory-duties to prosecute workplace discrimination and harassment violations on behalf of employees and contingent or temporary workers.

53.     Similarly, in response to the filing of this suit, Defendants again took similar actions. Defendants retained a law firm to conduct an attorney-led "confidential" investigation of unlawful practices raised in employees' complaints and assistance with the government enforcement action. Within a week of filing the action and immediately following employees' public assistance, Defendants issued a public statement that announced it retained the law firm WilmerHale "…to conduct a review of [its] policies and procedures" in the workplace.  Defendants publicly stated that: "This work will begin immediately… We encourage anyone with an experience you believe violates our policies or in any way made you uncomfortable in the workplace to use any of our many existing channels for reporting or to reach out to [an attorney who formerly worked at the United

---

[6] Letter from Paul Hastings

-17-

*Dept. Fair Empl. & Hous. v. Activision Blizzard, et al.*
First Amended Civil Rights and Equal Pay Complaint for Injunctive and Monetary Relief, and Damages

States Securities and Exchange Commission]. ***[The attorney] team at WilmerHale will be available to speak with you on a confidential basis.... Your outreach will be kept confidential***."[7]  And, as previously stated by Defendants' counsel, when ***the investigator is "an attorney…; her work related to receipt or investigations of discrimination or harassment complaints is privileged***" and then withheld from the government department charged with investigating and remedying the complaints. This directly interferes with DFEH's statutory mandate to investigate, prosecute, and remedy workplace discrimination and harassment violations on behalf of employees and contingent or temporary workers who engaged in, or were perceived to be engaged in, protective activity.[8]

54.     Also, in response to employees' protected activity, Defendants have also taken adverse actions aimed at curtailing employee rights in this government enforcement action such as soliciting waivers of employee rights and obtaining repressive, if not punitive, secret settlements of sexual harassment claims, non-disclosure agreements, and non-disparagement agreements with severe penalties against employees.  *Without any notice of the pending government enforcement action under the California Fair Employment and Housing Act and the California Labor Code*, Defendants require employees to *inter alia* agree to the following waivers of rights:

- Employees are required to "release[s] (i.e., give up) all known and unknown claims that I presently have against the Company… (including [sexual harassment and other claims under] the California Fair Employment and Housing Act, the California Labor Code…).

- Employees are required to agree to non-disclosure terms that state: "I have not disclosed and will *never* disclose the terms (including any amount(s) to be paid) or existence of the settlement…, *to anyone* other than a member of my immediate family or my attorney or other professional advisor and, even as to such a person, only if the person agrees to honor this confidentiality requirement. Such a person's violation of this confidentiality requirement shall be treated as a violation by me.

---

[7] https://investor.activision.com/news-releases/news-release-details/letter-ceo-bobby-kotick-all-employees [as of August 18, 2021]
[8] Letter from Paul Hastings

- Employees are required to agree to non-disparagement terms that state: "I agree not to criticize, denigrate, or otherwise disparage the Company …, or any of the Company's … policies, practices, standards of business conduct…"

- Employees are required to notify Defendants *before* talking to the DFEH or another government agency:  I can make "**disclosures** that are truthful representations <u>in connection with a report or complaint</u> to an administrative agency (<u>but **only if I notify the Company** of a disclosure obligation or request **within one business day after I learn of it and permit the Company** to take all steps it deems to be appropriate **to prevent or limit the required disclosure**</u>)."

- "[Employee] will jointly request, with the Company, that [certain] disclosures be filed under seal" in legal proceedings.

- "[Employee] further acknowledge and agree that if I breach any of my agreements with the Company …, my entitlement to any and all benefits …shall immediately and permanently cease and I shall not be entitled to any such benefits, and the Company may require me to repay or otherwise compensate the Company for any and all such benefits previously provided to me, as permitted by law."

55.  Defendants' waivers and releases that overtly interfere with the DFEH's statutory mandate to investigate and remedy discrimination by imposing conditions to and constraints against their employees' ability to notify DFEH of "information about unlawful conduct in the workplace" is "contrary to public policy and shall be unenforceable," as set forth in Government Code sections 12964.5 and 12953.

56.  Defendants' unlawful policies and practices effectively allowed and continue to allow retaliation and other unlawful conduct to occur in Defendants' workplace.  Employees and contingent or temporary workers have suffered and will continue to suffer harm from Defendants' ongoing unlawful policies and practices unless they are remedied and enjoined by this Court.

/ / /

/ / /

/ / /

-19-

*Dept. Fair Empl. & Hous. v. Activision Blizzard, et al.*
First Amended Civil Rights and Equal Pay Complaint for Injunctive and Monetary Relief, and Damages

**FIRST CAUSE OF ACTION**
**Employment Discrimination Because of Sex-Compensation**
**(Gov. Code, § 12940, subd. (a))**

57. DFEH incorporates and realleges all previous allegations as if fully set forth herein.

58. Government Code section 12940 subdivision (a) states that it is an unlawful employment practice for an employer "to discriminate against the person in compensation or in terms, conditions, or privileges of employment," because of that person's sex.

59. Defendants discriminated against women by paying them less than men because of sex in violation of Government Code section 12940, subdivision (a).

60. Defendants intentionally discriminate against women in compensation.  For example, Defendants offered women lower compensation at hire, assigned them to lower paid and less opportunity levels and roles, awarded them less incentive pay and/or equity pay opportunities, and afforded them less advancement and other opportunities than their male counterparts.

61. Defendants' policies, practices, and/or procedures have resulted in unlawful disparate impact discrimination against women with respect to compensation opportunities.  For example, Defendants offered women lower compensation at hire, assigned women to the lower paid and lower opportunity levels and roles, and afforded them less incentive and/or equity pay opportunities than their male counterparts.

62. As a result of Defendants' unlawful employment practices, female workers suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, and other financial loss as well as non-economic damages.

63. Defendants' actions demonstrate that they will continue to engage in the pattern or practice of unlawful employment discrimination and unlawful disparate impact discrimination prohibited by FEHA unless they are enjoined pursuant to the police power granted by Government Code sections 12920 and 12920.5 from failing or refusing to comply with the mandates of FEHA, Government Code section 12900 et seq.

64. Defendants' actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure female workers in conscious disregard of their rights.

65. Unless Defendants are enjoined, pursuant to Government Code section 12965(c),

1  from failing or refusing to comply with the mandates of the FEHA, female employees' right to seek

2  or hold employment free of unlawful discrimination will continue to be violated.

3        66.     By reason of the continuous nature of Defendants' unlawful conduct, the continuing

4  violations doctrine is applicable to all violations alleged herein.

5        67.     Plaintiff DFEH requests relief as described herein.

6                          **SECOND CAUSE OF ACTION**
                  **Employment Discrimination Because of Sex-Promotion**
7                         **(Gov. Code, § 12940, subd. (a))**

8        68.     DFEH incorporates and realleges all previous allegations as if fully set forth herein.

9        69.     Government Code section 12940 subdivision (a) states that it is an unlawful

10  employment practice for an employer "to discriminate against the person in compensation or in

11  terms, conditions, or privileges of employment," because of that person's sex.

12        70.     Defendants discriminated against women by denying them promotional opportunities

13  because of sex in violation of Government Code section 12940, subdivision (a).

14        71.     Defendants intentionally discriminated against women in promotion and

15  advancement opportunities.  For example, Defendants assigned women to the lower paid and lower

16  opportunity levels and roles, delayed their career advancement, denied them promotional

17  opportunities afforded to their male counterparts, and refused to promote women because they might

18  get pregnant even when women performed higher level work for extended periods of time.

19        72.     Defendants' policies, practices, and/or procedures have resulted in unlawful disparate

20  impact discrimination against women with respect to promotion opportunities.  Among other

21  practices, Defendants' quota system, lack of application process for promotional opportunities, as

22  well as its informal and opaque decision-making process resulted in female employees being

23  promoted at slower rates than their male counterparts.

24        73.     As a result of Defendants' unlawful employment practices, female workers suffered

25  and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future

26  employment opportunities, and other financial loss as well as non-economic damages.

27        74.     Defendants' actions demonstrate that they will continue to engage in the pattern or

28  practice of unlawful employment discrimination and unlawful disparate impact discrimination

1    prohibited by FEHA unless they are enjoined pursuant to the police power granted by Government

2    Code sections 12920 and 12920.5 from failing or refusing to comply with the mandates of FEHA,

3    Government Code section 12900 et seq.

4        75.    Defendants' actions were willful, malicious, fraudulent, and oppressive, and were

5    committed with the wrongful intent to injure female employees in conscious disregard of their

6    rights.

7        76.    Unless Defendants are enjoined, pursuant to Government Code section 12965(c),

8    from failing or refusing to comply with the mandates of the FEHA, female workers' right to seek or

9    hold employment free of unlawful discrimination will continue to be violated.

10       77.    By reason of the continuous nature of Defendants' unlawful conduct, the continuing

11   violations doctrine is applicable to all violations alleged herein.

12       78.    Plaintiff DFEH requests relief as described herein.

13                              **THIRD CAUSE OF ACTION**
                  **Employment Discrimination Because of Sex-Termination**
14                          **(Gov. Code, § 12940, subd. (a))**

15       79.    DFEH incorporates and realleges all previous allegations as if fully set forth herein.

16       80.    Government Code section 12940 subdivision (a) states that it is an unlawful

17   employment practice for an employer "to discriminate against the person in compensation or in

18   terms, conditions, or privileges of employment," because of that person's sex.

19       81.    Defendants discriminated against women by terminating their employment because

20   of sex in violation of Government Code section 12940, subdivision (a).

21       82.    Defendants intentionally discriminated against women in terminations.  Defendants'

22   policies, practices, and/or procedures have resulted in unlawful disparate impact discrimination

23   against women with regards to termination.

24       83.    As a result of Defendants' unlawful employment practices, female workers suffered

25   and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future

26   employment opportunities, and other financial loss as well as non-economic damages.

27       84.    Defendants' actions demonstrate that they will continue to engage in the pattern or

28   practice of unlawful employment discrimination and unlawful disparate impact discrimination

1  prohibited by FEHA unless they are enjoined pursuant to the police power granted by Government

2  Code sections 12920 and 12920.5 from failing or refusing to comply with the mandates of FEHA,

3  Government Code section 12900 et seq.

4       85.    Defendants' actions were willful, malicious, fraudulent, and oppressive, and were

5  committed with the wrongful intent to injure female workers in conscious disregard of their rights.

6       86.    Unless Defendants are enjoined, pursuant to Government Code section 12965(c),

7  from failing or refusing to comply with the mandates of the FEHA, female workers' right to seek or

8  hold employment free of unlawful discrimination will continue to be violated.

9       87.    By reason of the continuous nature of Defendants' unlawful conduct, the continuing

10  violations doctrine is applicable to all violations alleged herein.

11       88.    Plaintiff DFEH requests relief as described herein.

**FOURTH CAUSE OF ACTION**
**Employment Discrimination Because of Sex-Constructive Discharge**
**(Gov. Code, § 12940, subd. (a))**

14       89.    DFEH incorporates and realleges all previous allegations as if fully set forth herein.

15       90.    Government Code section 12940 subdivision (a) states that it is an unlawful

16  employment practice for an employer "to discriminate against the person in compensation or in

17  terms, conditions, or privileges of employment," because of that person's sex.

18       91.    Defendants constructively discharged women in violation of Government Code

19  section 12940, subdivision (a).  For example, in denying women promotions, assignments and

20  compensation in comparison to their male counterparts and subjecting them to sexual harassment

21  and a hostile work environment, Defendants effectively forced female workers to leave their

22  employment with Defendants.  Female workers accepted less compensation than they were making

23  in their prior employment or offered by other companies to work with Defendants as Defendants

24  promised to make up the pay differential with future promotions or increased compensation.  Given

25  Defendants' promises, female workers came to work for Defendants only to realize that the promises

26  were empty and watch as male comparators were promoted more quickly and offered more

27  compensation, forcing them to leave the company.

28       92.    Defendants intentionally discriminated against women regarding constructive

discharge.  Defendants' policies, practices, and/or procedures have resulted in unlawful disparate impact discrimination against women regarding constructive discharge.

93.     As a result of Defendants' unlawful employment practices, female workers suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, and other financial loss as well as non-economic damages.

94.     Defendants' actions demonstrate that they will continue to engage in the pattern or practice of unlawful employment discrimination and unlawful disparate impact discrimination prohibited by FEHA unless they are enjoined pursuant to the police power granted by Government Code sections 12920 and 12920.5 from failing or refusing to comply with the mandates of FEHA, Government Code section 12900 et seq.

95.     Defendants' actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure female workers in conscious disregard of their rights.

96.     Unless Defendants are enjoined, pursuant to Government Code section 12965(c), from failing or refusing to comply with the mandates of the FEHA, female workers' right to seek or hold employment free of unlawful discrimination will continue to be violated.

97.     By reason of the continuous nature of Defendants' unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

98.     Plaintiff DFEH requests relief as described herein.

### FIFTH CAUSE OF ACTION
### Employment Discrimination Because of Sex - Harassment
### (Gov. Code, § 12940, subd. (a) and (j))

99.     DFEH incorporates and realleges all previous allegations as if fully set forth herein.

100.    Government Code section 12940 subdivision (j) states that it is an unlawful employment practice for an employer "or any other person" "to harass an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract," because of that person's sex.

101.    Defendants' female workers were routinely subjected to unwelcome sexual advances and other harassing conduct so severe or pervasive that it created a hostile work environment.

102.    The harassment was perpetrated by Defendants' supervisors and/or Defendants knew

-24-

or should have known of the conduct and failed to take immediate and appropriate corrective action.

103.     As a result of Defendants' unlawful employment practices, female workers suffered and continue to suffer harm, including but not limited to emotional pain, humiliation, embarrassment, belittlement, sadness, and mental anguish, in an amount to be determined at trial.

104.     Defendants' actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure female workers and in conscious disregard of their rights.

105.     Defendants engaged in, and by their refusal to comply with the law, continue to engage in, unlawful employment harassment based on sex, including a pattern or practice of unlawful employment conduct and disparate impact of the same, unless they are enjoined pursuant to the police power granted by Government Code sections 12920 and 12920.5, from failing or refusing to comply with the mandates of the FEHA, Government Code section 12900 et seq.

106.     Unless Defendants are enjoined, pursuant to Government Code section 12965(c), from failing or refusing to comply with the mandates of the FEHA, female workers' right to seek or hold employment free of unlawful discrimination, harassment, and retaliation will continue to be violated.

107.     By reason of the continuous nature of all Defendants' unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

108.     Plaintiff DFEH requests relief as described herein.

**SIXTH CAUSE OF ACTION**
**Retaliation**
**(Gov. Code, § 12940, subd. (h); Cal. Code Regs., tit. 2, § 11021)**

109.     DFEH incorporates and realleges all previous allegations as if fully set forth herein.

110.     Government Code section 12940 (h) states that it is an unlawful employment practice for "any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

111.     After workers engaged in protected activities, such as complaining to

human resources, Defendants took adverse employment actions against the workers and potential witnesses.  Such adverse employment actions included but was not limited to denial of professional opportunities, negative performance reviews, forced transfers to less favorable units, constructive termination, and selection for reductions in forces/layoffs likely based on discriminatory criteria applied to formal and/or informal evaluations of performance.

112.    Government Code section 12940 (h) and Cal. Code Regs., tit. 2, § 11021 prohibits anticipatory retaliation against a potential class member, complainant or witness.  Employer retaliation against workers who are believed to be prospective complainants or witnesses for complainants violates FEHA.

113.    Government Code section 12975 prohibits interference with the department's statutory mandate, including enforcement actions brought on behalf of aggrieved employees, and states that any person shall not "willfully resist, prevent, impede, or interfere" with the department "in the performance of duties pursuant to the provisions of this part relating to employment discrimination."

114.    In response to the filing of this action, Defendants issued a public statement that announced their retention of the law firm WilmerHale "…to conduct a review of [its] policies and procedures" in the workplace.  Defendants publicly stated that: "This work will begin immediately… We encourage anyone with an experience you believe violates our policies or in any way made you uncomfortable in the workplace to use any of our many existing channels for reporting or to reach out to [an attorney who formerly worked for the United States Securities and Exchange Commission]. [The attorney] team at WilmerHale will be available to speak with you on a confidential basis.... Your outreach will be kept confidential."

115.    Defendants engaged in similar adverse actions in response to employees' protected activity during DFEH's investigation. DFEH requested documents and communications pertaining to complaints made by Defendants' personnel and any investigation into such complaints. DFEH also requested documents regarding the waiver of claims under FEHA.  In response, Defendants withheld documents and communications related to complaints and investigations from DFEH as privileged and confidential and/or denied the existence of such documents and communications.

1    DFEH is also informed and aware that investigations have been used to interfere with workers'

2    rights.  Defendants further refused to produce as privileged and confidential documents regarding

3    pay equity analyses alleged to have been conducted to address gender-based pay inequities.

4        116.    DFEH is also informed and aware that documents have not been maintained and

5    preserved as required by law or by the DFEH's Document Retention Notice, including but not

6    limited to documents related to investigations and complaints were shredded by human resource

7    personnel and emails are deleted thirty (30) days after an employee's separation.

8        117.    As a result of Defendants' unlawful practices, aggrieved employees suffered and

9    continue to suffer interference with their rights, as well as lost earnings, lost benefits, lost future

10   employment opportunities, and other financial loss as well as non-economic damages, including but

11   not limited to, emotional pain, humiliation, embarrassment, belittlement, sadness, and mental

12   anguish, in an amount to be determined at trial.

13       118.    Defendants' actions were willful, malicious, fraudulent, and oppressive, and were

14   committed with the wrongful intent to injure the Group and in conscious disregard of their rights.

15       119.    Defendants engaged in, and by their refusal to comply with the law, continue to

16   engage in, unlawful employment retaliation, including a pattern or practice of unlawful employment

17   conduct and disparate impact of the same, unless they are enjoined pursuant to the police power

18   granted by Government Code sections 12920 and 12920.5, from failing or refusing to comply with

19   the mandates of the FEHA, Government Code section 12900 et seq.

20       120.    Unless Defendants are enjoined, pursuant to Government Code section 12965(c),

21   from failing or refusing to comply with the mandates of the FEHA, female workers' right to seek or

22   hold employment free of unlawful discrimination, harassment, and retaliation will continue to be

23   violated.

24       121.    By reason of the continuous nature of Defendants' unlawful conduct, the continuing

25   violations doctrine is applicable to all violations alleged herein.

26       122.    Plaintiff DFEH requests relief as described herein.

27   / / /

28   / / /

## SEVENTH CAUSE OF ACTION
### Failure to Prevent Discrimination and Harassment (On Behalf of Group)
### (Gov. Code, § 12940, subd. (k))

123.    DFEH incorporates and realleges all previous allegations as if fully set forth herein.

124.    Government Code section 12940 subsection (k) states that it is an unlawful employment practice for employers to "fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

125.    Defendants violated Government Code section 12940 subsection (k), by failing to take all reasonable steps necessary to prevent discrimination and harassment of workers. Defendants' failure to have and/or enforce adequate and consistent anti-discrimination and harassment policies caused harm to the Group.  Defendants failed to have an effective sexual harassment policy, failed to adequately train all supervisors, managers, and executives on the prevention of discrimination and harassment based on sex, and/or failed to timely discipline or stop discriminatory or harassing behavior from occurring in the workplace.

126.    By engaging in the conduct set forth above, Defendants acted in conscious disregard of the rights or safety of others and acted in an oppressive, fraudulent, or malicious manner in violation of California Civil Code section 3294.

127.    As a further result of the unlawful employment practices of Defendants, the Group suffered lost earnings, lost benefits, lost future employment opportunities, and other financial loss as well as non-economic damages, including but not limited to, emotional pain, humiliation, embarrassment, belittlement, sadness, and mental anguish, in an amount to be determined at trial.

128.    Unless Defendants are enjoined, pursuant to Government Code section 12965(c), from failing or refusing to comply with the mandates of the FEHA, female workers of color right to seek or hold employment free of unlawful discrimination, harassment, and retaliation will continue to be violated.

129.    By reason of the continuous nature of Defendants' unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

130.    DFEH requests relief as herein described.

/ / /

-28-

*Dept. Fair Empl. & Hous. v. Activision Blizzard, et al.*
First Amended Civil Rights and Equal Pay Complaint for Injunctive and Monetary Relief, and Damages

### EIGHTH CAUSE OF ACTION
**Failure to Prevent Discrimination and Harassment (On Behalf of DFEH)**
**(Gov. Code, § 12940, subd. (k); Cal. Code Regs., tit. 2, § 11023, subd. (a)(3))**

131.     DFEH incorporates and realleges all previous allegations as if fully set forth herein.

132.     Government Code section 12940 subdivision (k), requires employers to take all reasonable steps necessary to prevent discrimination and sexual harassment from occurring.

133.     Defendants violated Government Code section 12940 subdivision (k), by failing to take all reasonable steps necessary to prevent discrimination and harassment of workers. Defendants' failure to have and/or enforce adequate and consistent anti-discrimination policies were substantial motivating factors in causing harm to the Group.  Defendants failed to have an effective sexual harassment policy, failed to adequately train all supervisors, managers, and executives on the prevention of discrimination and harassment based on sex, and/or failed to timely discipline or stop discriminatory or harassing behavior from occurring in the workplace.

134.     Defendants' actions were willful, malicious, fraudulent, and oppressive and were committed with the wrongful intent to injure workers in conscious disregard of their rights.

135.     Unless Defendants are enjoined, pursuant to Government Code section 12965(c), from failing or refusing to comply with the mandates of the FEHA, female workers' right to seek or hold employment free of unlawful discrimination, harassment, and retaliation will continue to be violated.

136.     By reason of the continuous nature of Defendants' unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

137.     DFEH requests relief as herein described.

### NINTH CAUSE OF ACTION
**Unequal Pay**
**(Labor Code, § 1197.5; Gov. Code, § 12930, subd. (f)(5))**

138.     DFEH incorporates and realleges all previous allegations as if fully set forth herein.

139.     Labor Code 1197.5 subsection (a)(1) states that "[a]n employer shall not pay any of its employees at wage rates less than the rates paid to employees of the opposite sex for substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions,"

-29-

*Dept. Fair Empl. & Hous. v. Activision Blizzard, et al.*
First Amended Civil Rights and Equal Pay Complaint for Injunctive and Monetary Relief, and Damages

140.     Defendants' female workers received less total compensation than their male counterparts while performing substantially similar work as each other, considering their combination of skill, effort, and responsibilities, as well as their similar working conditions.

141.     Defendants' female workers received less base pay than their male counterparts while performing substantially similar work as each other, considering their combination of skill, effort, and responsibilities, as well as their similar working conditions.

142.     Defendants' female workers received less incentive pay, equity and/or benefits compared to their male counterparts while performing substantially similar work as each other, considering their combination of skill, effort, and responsibilities, as well as their similar working conditions.

143.     As a result of Defendants' conduct, female workers suffered and continue to suffer lost earnings and DFEH is entitled to recover unpaid wages and liquidated damages in addition to costs of suit.

144.     Unless Defendants are enjoined, pursuant to Government Code section 12965(c), from failing or refusing to comply with the mandates of the FEHA, female workers' right to seek or hold employment free of unlawful discrimination, harassment, and retaliation will continue to be violated.

145.     By reason of the continuous nature of Defendants' unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

146.     Plaintiff DFEH requests relief as herein described.

**TENTH CAUSE OF ACTION**
**Waiver of Rights, Forums, or Procedures and Release of Claims**
**(Gov. Code, §§ 12953 and 12964.5 and Labor Code § 432.6)[9]**

147.     DFEH incorporates and realleges all previous allegations as if fully set forth herein.

148.     Government Code section 12953 defines as an unlawful practice an employer's violation of Section 432.6 of the Labor Code.

---

[9] DFEH does not allege a violation of Section 12953 of the Government Code or Section 432.6 of the Labor Code based on the entry into an arbitration agreement covered by the Federal Arbitration Act. (9 U.S.C. §§ 1-16; 9 U.S.C. §§ 201-208; 9 U.S.C. §§ 301-307).

149.     Section 432.6 of the Labor Code states inter alia that "[a] person shall not, as a condition of employment, continued employment, or the receipt of any employment-related benefit, require any applicant for employment or any employee to waive any right, forum, or procedure for a violation of any provision of the California Fair Employment and Housing Act…or this code, including the right to file and pursue a civil action or a complaint with, or otherwise notify, any state agency, other public prosecutor, law enforcement agency, or any court or other governmental entity of any alleged violation."

150.     Based on information and belief, DFEH alleges that Defendants required female workers to waive rights, forums, and/or procedures as a condition of employment, continued employment, or the receipt of any employment-related benefit including but not limited to an adjustment, payment, or severance pay in violation of Labor Code section 432.6 and Government Code section 12953.

151.     Government Code section 12964.5 subsection (a)(1)(A) prohibits "an employer, in exchange for a raise or bonus, or as a condition of employment or continued employment…to require an employee to sign a release of a claim or right under this part."

152.     Based on information and belief, DFEH alleges that Defendants' female workers were required to sign a release of claims and/or rights in exchange for underpayment of compensation, or an adjustment, bonus, raise or payment, and/or other employment-related benefit, in violation of Government Code section 12964.5.

153.     By engaging in the conduct set forth above, Defendants acted in conscious disregard of the rights or safety of others and acted in an oppressive, fraudulent, or malicious manner in violation of California Civil Code section 3294.

154.     As a further result of the unlawful employment practices of Defendants, the Group suffered lost earnings, lost benefits, lost future employment opportunities, and other financial loss as well as non-economic damages, including but not limited to, emotional pain, humiliation, embarrassment, belittlement, sadness, and mental anguish, in an amount to be determined at trial.

155.     Unless Defendants are enjoined, pursuant to Government Code section 12965(c), from failing or refusing to comply with the mandates of the FEHA, female workers' right to seek or

1 hold employment free of unlawful discrimination, harassment, and retaliation will continue to be

2 violated.

3      156.    By reason of the continuous nature of Defendants' unlawful conduct, the continuing

4 violations doctrine is applicable to all violations alleged herein.

5      157.    DFEH requests relief as herein described.

6                              **ELEVENTH CAUSE OF ACTION**
                    **Failure to Maintain and Produce Records (On Behalf of DFEH Only)**
7                      **(Gov. Code, § 12946; Cal. Code Regs., tit. 2 § 11013;**
                       **Labor Code, § 1197.5; Gov. Code, § 12930, subd. (f)(5))**
8

9      158.    DFEH incorporates and realleges all previous allegations as if fully set forth herein.

10     159.    Government Code Section 12946 makes it an unlawful employment practice for an

11 employer to "fail to maintain and preserve any and all applications, personnel, membership, or

12 employment referral records and files for a minimum period of two years after the records and filed

13 are initially created or received, or for employers to fail to retain personnel files of applicants or

14 terminated employees for a minimum period of two years after the date of the employment action

15 taken."  California Labor Code Section 1197.5 requires that "every employer shall maintain records

16 of the wages and wage rates, job classifications, and other terms and conditions of employment of

17 the persons employed by the employer," and "[a]ll of the records shall be kept on file for a period of

18 three years."

19     160.    Other State and federal law, including but not limited to the California Labor Code,

20 Equal Pay Act, and Unemployment Insurance Code (Lab. Code, §§ 226, 1197.5; Unemp. Ins. Code,

21 § 1085; Cal. Code Regs., tit 22, § 1085-2), the Federal Fair Labor Standards Act and Equal Pay Act

22 (29 C.F.R. § 516 et seq.; 29 U.S.C. § 211), and Title VII of the Civil Rights Act of 1964 (29 C.F.R.

23 § 1602 et seq.), require employers to create and maintain various personnel records, including

24 compensation records.

25     161.    Cal. Code Regs., tit. 2 § 11013 requires *inter alia* that, "upon notice of or knowledge

26 that a complaint has been filed against it, any respondent … shall maintain and preserve any and all

27 relevant records and files until such complaint is fully and finally disposed of and all appeals from

28 related proceedings have concluded."

-32-

162.     Upon the filing of the DFEH's Directors Complaint, Amended Complaint and Second Amended Complaint, DFEH sent a Document Retention Notice to Defendants which notified Defendants of their obligation to not destroy, conceal, or alter any documents or data relevant to the Director's Complaints.

163.     In response to the allegations in this action, Defendants issued a public statement that announced their retention of the law firm WilmerHale "…to conduct a review of [its] policies and procedures" in the workplace.  Defendants stated that: "This work will begin immediately… We encourage anyone with an experience you believe violates our policies or in any way made you uncomfortable in the workplace to use any of our many existing channels for reporting or to reach out to [an attorney who formerly worked for the United States Securities and Exchange Commission]. [The attorney] team at WilmerHale will be available to speak with you on a confidential basis.... Your outreach will be kept confidential."

164.     During DFEH's investigation, DFEH requested documents and communications pertaining to complaints made by Defendants' personnel and any investigation into such complaints. DFEH further requested documents and correspondence related to compensation and pay equity analyses and waivers and/or releases of claims under FEHA.  Defendants refused to produce documents regarding complaints and investigations of discrimination and harassment by asserting that they did not exist or that they were privileged and confidential because attorneys were involved in the receipt of complaints and the investigations.  Defendants also withheld as privileged and confidential the documents and correspondence on compensation and pay equity analyses purported to address gender disparities because the analysis involved attorneys.  Defendants also withheld and/or denied the existence of waivers and/or releases.  Defendants have therefore not maintained, preserved and/or made records available upon request to the DFEH, as required under relevant authorities.

165.     DFEH is also informed and aware that documents and records have not been maintained as required by law or by the DFEH's Document Retention Notice, including but not limited to documents related to investigations and complaints were shredded by human resource personnel and emails are deleted thirty (30) days after an employee's separation.

-33-

*Dept. Fair Empl. & Hous. v. Activision Blizzard, et al.*
First Amended Civil Rights and Equal Pay Complaint for Injunctive and Monetary Relief, and Damages

166.     Defendants' failure to retain records that it was required to make and maintain under state and federal law is continuing and violates Government Code section 12946, California Code of Regulations, Title 2, section 11013, and Labor Code section 1197.5.

167.     By reason of the continuous nature of Defendants' unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, DFEH prays that this Court issue judgment in favor of DFEH, and against Defendants, ordering:

1.     Compensatory and punitive damages;

2.     Unpaid wages, liquidated damages, and other remedies and penalties available under the Equal Pay Act;

3.     Injunctive relief;

4.     Declaratory relief;

5.     Equitable relief, including but not limited to reinstatement and/or front pay, pay adjustments, backpay, lost wages and benefits (including base pay, incentive pay, pension benefits and awards), in an amount to be proven at trial;

6.     Prejudgment interest, as required by law;

7.     Attorneys' fees and costs to the Department of Fair Employment and Housing; and

8.     Other relief the Court deems to be just and proper.


DATED:  August 23, 2021                    DEPARTMENT OF FAIR EMPLOYMENT
                                           AND HOUSING



                                           _Rumduol Vuong_____
                                           By: Rumduol Vuong
                                                Attorneys for the Department of
                                                Fair Employment and Housing

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff DFEH hereby demands a trial by jury on all claims.

Dated: August 23, 2021                    DEPARTMENT OF FAIR EMPLOYMENT
                                          AND HOUSING


                                          _____
                                          By: Rumduol Vuong
                                              Attorneys for the Department of
                                              Fair Employment and Housing