ELENA R. BACA (SB# 160564)
elenabaca@paulhastings.com
FELICIA A. DAVIS (SB# 266523)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California  90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

RYAN D. DERRY (SB# 244337)
PAUL HASTINGS LLP
ryanderry@paulhastings.com
101 California Street
Forty-Eighth Floor
San Francisco, California 94111
Telephone:   (415) 856-7000
Facsimile:    (415) 856-7100

Attorneys for Defendants
ACTIVISION BLIZZARD, INC., BLIZZARD
ENTERTAINMENT, INC., ACTIVISION
PUBLISHING, INC., and KING.COM, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ACTIVISION BLIZZARD, INC., BLIZZARD ENTERTAINMENT, INC., ACTIVISION PUBLISHING, INC., and KING.COM, INC., and DOES ONE through TEN, inclusive,<br><br>Defendants. | CASE NO. 2:21-CV-07682 DSF-JEM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S MOTION TO INTERVENE**<br><br>Date:      November 29, 2021<br>Time:     1:30 p.m.<br>Dept.:     7D<br>Judge:    Hon. Dale S. Fischer |

# TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................... 1

II.    PROCEDURAL BACKGROUND ............................................................ 3

    A.     Despite Agreeing To Defer To The EEOC's Harassment
           Investigation, DFEH Filed Premature Harassment Claims,
           Attempting To Interfere With The EEOC Conciliation Process. ......... 3

    B.     After Months Of Arm's Length Conciliation Negotiations And
           Mediation, The EEOC And Activision Blizzard Reached A
           Good-Faith, Fair, And Reasonable Resolution. .................................... 6

III.   DFEH HAS NO LEGITIMATE BASIS TO INTERVENE .......................... 9

    A.     DFEH Has No Significant Protectable Interest That Warrants
           Intervention In This Title VII Case Filed By The EEOC. .................... 9

         1.     DFEH Has No Authority To Usurp Private Individuals'
               Rights To Settle Their State Or Federal Claims. ...................... 10

         2.     DFEH's Arguments To The Contrary Are Meritless. .............. 13

    B.     As A Matter Of Federal Law, DFEH Has No Authority To
           Intervene When, As Here, The EEOC Has Conducted A Federal
           Investigation And Initiated A Title VII Suit In Federal Court. .......... 14

    C.     The Parties In This Action Will Be Significantly Prejudiced If
           DFEH Is Permitted To Intervene, As Will Parties More
           Generally. ........................................................................................... 20

IV.    CONCLUSION ........................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Fed'n of Labor v. Unemployment Ins. Appeals Bd.*,
13 Cal. 4th 1017 (1996) ................................................................. 10

*Ass'n for Retarded Citizens v. Dep't of Developmental Servs.*,
38 Cal. 3d 384 (1985) .................................................................... 12

*California v. IntelliGender, LLC*,
771 F.3d 1169 (9th Cir. 2014) ................................................ 12, 22

*City & Cty. of S.F. v. USCIS*,
992 F.3d 742 (9th Cir. 2021)
(*petition for cert. filed* June 18, 2021 *and docketed* June 23, 2021) .................. 17

*City of N.Y. v. FCC*,
486 U.S. 57 (1988) ........................................................................ 17

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ....................................................... 13

*Cooper v. Newsom*,
No. 18-16547, 2021 WL 4203343
(9th Cir. Sept. 16, 2021) ............................................................ 9, 14

*Culbreath v. Dukakis*,
630 F.2d 15 (1st Cir. 1980) ........................................................... 21

*Dep't of Fair Emp. & Hous. v. L.S.A.C., Inc.*,
941 F. Supp. 2d 1159 (N.D. Cal. 2013) ......................................... 14

*Dyna-Med, Inc. v. Fair Emp't & Hous. Comm'n*,
43 Cal. 3d 1379 (1987) ............................................................ 11, 12

*Hawaii v. Standard Oil Co.*,
405 U.S. 251 (1972) ...................................................................... 15

*Hillsborough Cty. v. Automated Med. Labs., Inc.*,
471 U.S. 707 (1985) ...................................................................... 18

*Hughes v. Talen Energy Mktg., LLC*,
136 S. Ct. 1288 (2016) .................................................................. 17

*In re Am. Inv. Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
No. 05-md-1712, 2013 WL 3463503 (E.D. Pa. Jul. 10, 2013) .................... 12, 21

*In re Baldwin-United Corp.*
*(Single Premium Deferred Annuities Ins. Litig.)*,
770 F.2d 328 (2d Cir. 1985) ................................................................. 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ............................................................... 20

*In re Charles Schwab Corp. Secs. Litig.*,
No. C 08-01510 WHA, 2011 U.S. Dist. LEXIS 18840
(N.D. Cal. Feb. 11, 2011) ..................................................................... 21

*In re Pet Food Prods. Liab. Litig.*,
629 F.3d 333 (3d Cir. 2010) ................................................................. 19

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
314 F.3d 99 (3rd Cir. 2002) .................................................................. 21

*Int'l Paper Co. v. Ouellette*,
479 U.S. 481 (1987) ............................................................................. 17

*Kerzich v. County of Tuolumne*,
335 F. Supp. 3d 1179 (E.D. Cal. 2018) ............................................... 20

*Kim v. Reins Int'l Cal., Inc.*,
9 Cal. 5th 73 (2020) ............................................................................. 11

*Lane v. Wells Fargo Bank*,
No. C 12-04026 WHA, 2013 U.S. Dist. LEXIS 87669
(N.D. Cal. June 21, 2013) ..................................................................... 22

*Louisiana Pub. Serv. Comm'n v. FCC*,
476 U.S. 355 (1986) ............................................................................. 17

*Mach Mining, LLC v. EEOC*,
575 U.S. 480 (2015) ............................................................................. 23

*Maine v. Dir., U.S. Fish & Wildlife Serv.*,
262 F.3d 13 (1st Cir. 2001) ............................................................ 17, 19

*Medix Ambulance Serv., Inc. v. Superior Court*,
97 Cal. App. 4th 109 (2002) ................................................................ 12

*Merck Sharp & Dohme Corp. v. Albrecht*,
139 S. Ct. 1668 (2019) ......................................................................... 18

*Moore v. Verizon Commc'ns, Inc.*,
No. C 09-1923 SBA, 2013 U.S. Dist. LEXIS 15609
(N.D. Cal. Feb. 5, 2013) ....................................................................... 22

*Morazan v. Aramark Uniform & Career Apparel Grp., Inc.*,
  No. 13-cv-00936-YGR, 2013 U.S. Dist. LEXIS 125623
  (N.D. Cal. Sept. 3, 2013) .................................................................................21

*Neary v. Regents of Univ. of Cal.*,
  3 Cal. 4th 273 (1992), *superseded by statute on other grounds* ........................21

*Neilson v. Colgate-Palmolive Co.*,
  199 F.3d 642 (2d Cir. 1999) ............................................................................18

*New Mexico ex rel. King v. Capital One Bank (USA) N.A.*,
  980 F. Supp. 2d 1346 (D.N.M. 2013) ..............................................................12

*O'Connor v. Uber Techs., Inc.*,
  201 F. Supp. 3d 1110 (N.D. Cal. 2016) ............................................................11

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San
  Francisco*,
  688 F.2d 615 (9th Cir. 1982) ............................................................................21

*Peralta Cmty. Coll. Dist. v. Fair Emp't & Hous. Comm'n*,
  52 Cal. 3d 40 (1990) ........................................................................................12

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
  442 F.3d 741 (9th Cir. 2006) ............................................................................13

*Rojo v. Kliger*,
  52 Cal. 3d 65 (1990) ........................................................................................12

*Rubin v. Assicurazioni Generali S.P.A.*,
  290 F. App'x 376 (2d Cir. 2008) ......................................................................13

*United States v. State of New Jersey*,
  No. CIV. 87-2331 (HAA), 1995 WL 1943013
  (D.N.J. Mar. 14, 1995) .....................................................................................16

*Vill. Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*,
  50 Cal. 4th 913 (2010) .....................................................................................20

*Watson v. Limbach Co.*,
  333 F. Supp. 754 (S.D. Ohio 1971) ..................................................................18

*Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) (*en banc*) ...........................................................9

**STATUTES**

15 U.S.C. § 1194(a) ................................................................................................15

15 U.S.C. § 1264(d) ................................................................................................15

MPA IN SUPPORT OF
DEFTS' OPPOSITION TO DFEH'S
MTN TO INTERVENE

15 U.S.C. § 1477 ............................................................................... 15

15 U.S.C. § 2073(b)(1) ..................................................................... 15

42 U.S.C. § 2000e-2
    (CIVIL RIGHTS ACT OF 1964 TITLE VII (TITLE VII)) ................................ *passim*

42 U.S.C. § 2000e-4 .......................................................................... 16

42 U.S.C. § 2000e-5 ...................................................... 16, 17, 18, 23

42 U.S.C. § 2000e(a) ......................................................................... 16

CAL. GOV'T CODE § 12900
    (FAIR EMPLOYMENT AND HOUSING ACT (FEHA)) ..................................... *passim*

CAL. GOV'T CODE § 12907 ................................................................ 20

CAL. GOV'T CODE § 12965(b) ........................................................... 20

CAL. LAB. CODE § 2698
    (PRIVATE ATTORNEYS GENERAL ACT (PAGA)) ................................. 11

CAL. LAB. CODE § 2699(l)(2) ............................................................ 11

**RULES**

FED. R. CIV. P. 24 ............................................................................ *passim*

Fed. R. Evid. 702 ............................................................................ 22

**ARTICLES**

Margaret H. Lemos, *State Enforcement of Federal Law*,
    86 N.Y.U. L. Rev. 698 (2011) ....................................................... 15

I.    **INTRODUCTION**

After a three-year investigation and a lengthy conciliation process, the Equal Employment Opportunity Commission ("EEOC") and Activision Blizzard, Inc., Blizzard Entertainment, Inc., Activision Publishing, Inc., and King.Com, Inc. (collectively, "Activision Blizzard") reached a settlement to resolve the EEOC's claims under Title VII of the Civil Rights Act of 1964 ("Title VII"). The structure of the settlement is routine, and its terms are consistent with past court-approved EEOC agreements. But it also is designed to spur transformative change in the technology industry by preventing discrimination and harassment going forward, while simultaneously resolving past claims. To that end, the Consent Decree that effectuates the settlement includes not only extensive policy-and-practice measures that Activision Blizzard will implement to continue to improve its workplaces, but also an $18-million fund that will be used to compensate eligible employees who voluntarily make claims and choose to participate in that portion of the settlement. The Consent Decree is fair, adequate, and reasonable by any measure, and it will benefit both public and private interests for years to come.

Despite the benefits of the settlement, the California Department of Fair Employment and Housing ("DFEH") seeks to intervene to delay resolution and deny Activision Blizzard employees the choice to decide for themselves whether to take part in the financial component of the settlement. DFEH claims it is doing so to protect California's "interest in robust enforcement of antidiscrimination law" (Dkt. 24-1 ("Motion"), at 8), but once the rhetoric is stripped away, the *real* reason for opposing is clear: DFEH seeks to take for itself the powers of the EEOC and be the ultimate arbiter of any employment law settlement impacting California employees. Nothing in California law authorizes DFEH to countermand individual Californians' remedial decisions ***even for state-law discrimination claims***, and nothing in any law even hints that DFEH has any power to do so in the context of a

MPA IN SUPPORT OF
DEFTS' OPPOSITION TO DFEH'S
MTN TO INTERVENE

1    federal-court settlement resulting from a federal agency's exercise of its

2    congressionally delegated federal powers.

3        In any event, the basic factual premise of DFEH's intervention effort is wrong.

4    DFEH insists that, merely by entering into the settlement with Activision Blizzard,

5    the EEOC is extinguishing California state-law claims.  That is incorrect.  The EEOC

6    is not waiving anything for anyone; nor would the EEOC be a party to any waiver.

7    Under the Consent Decree, the EEOC will offer current and former Activision

8    Blizzard employees *the choice* to release any state-law claims they may have in

9    exchange for sizeable consideration.  The monetary benefits of the EEOC settlement

10    will be borne out by the informed and voluntary decisions of Activision Blizzard

11    employees.  And should an employee wish, after consulting with her legal counsel,

12    to reject the proposed settlement terms and pursue claims against Activision Blizzard

13    on an individual basis, there will be no penalty for doing so.

14        This is standard settlement architecture, backed by the federal agency charged

15    by Congress with enforcing antidiscrimination law nationwide.  And, again, each

16    individual potential claimant has the right to make these sorts of remedial decisions

17    for herself (with the advice of private counsel) even under California law.  In short,

18    DFEH has no role to play here, and the voluntary release of state-law claims as part

19    of the settlement does not give DFEH a role or open the door to intervene.

20        Federal law confirms that conclusion.  As an initial matter, allowing a state

21    agency to intervene in federal proceedings to try to block a federal settlement

22    agreement would be inconsistent with our federal constitutional structure.  Allowing

23    DFEH to do so in this case in particular would also do violence to Title VII's text

24    and structure, as it would open the door to multi-state objections in every federal-

25    agency settlement—effectively precluding the EEOC from carrying out its statutory

26    mandate—despite the fact that Congress did not authorize States or state agencies to

27    enforce Title VII's terms.  Most immediately, allowing DFEH to intervene here

28

MPA IN SUPPORT OF
DEFTS' OPPOSITION TO DFEH'S
MTN TO INTERVENE

would frustrate Activision Blizzard employees' ability to enjoy the substantial benefits of the Consent Decree that the EEOC negotiated on their behalf.

Finally, it is worth pausing on one last point. After two rounds of briefing by two different groups of lawyers, DFEH still has not cited a single case in which a State or state agency was permitted to intervene in federal court to object to a federal settlement negotiated by a federal agency. What DFEH is asking this Court to do is unlawful, unjustified, and unprecedented. DFEH's motion should be denied.

## II.   PROCEDURAL BACKGROUND

### A.   Despite Agreeing To Defer To The EEOC's Harassment Investigation, DFEH Filed Premature Harassment Claims, Attempting To Interfere With The EEOC Conciliation Process.

On September 26, 2018, the EEOC filed a Commissioner's Charge against Activision Blizzard alleging (i) sex discrimination, including harassment, (ii) retaliation against female employees for complaining about sex-based discrimination, and (iii) discrimination in pay, in violation of Title VII. Declaration of Elena R. Baca, filed concurrently herewith ("Baca Decl.") ¶ 3, Ex. A. In October 2018, DFEH followed suit, filing its own state-law Director's Complaint against Activision Blizzard, alleging failure to hire and pay discrimination and other claims based on state law. Baca Decl. ¶ 4, Ex. B. In the almost three years that followed, Activision Blizzard cooperated with both investigations.

As set forth in the EEOC's opposition, the EEOC and DFEH divided their respective investigations and enforcement of the overlapping claims, pursuant to an agreement between the two agencies. *See* Baca Decl., ¶ 11, Ex. H. Under this agreement, the EEOC would investigate harassment claims, and DFEH would investigate pay and promotion discrimination claims. *Id.*

Consistent with that division of authority, Activision Blizzard provided DFEH with pay and promotion data for California employees. This data confirmed that Activision Blizzard had no statistically significant pay disparities or promotion disparities based on gender—*i.e.*, California men and women were paid equitably for

MPA IN SUPPORT OF
DEFTS' OPPOSITION TO DFEH'S
MTN TO INTERVENE

comparable work, and women were promoted at the same rate as comparable men, if not at a higher rate.  DFEH should have ended its inquiry there.  Instead, perhaps realizing the issues it agreed to handle—as its share of the investigation division with the EEOC—were dead ends, DFEH began hunting for something else to investigate—even if it meant violating its agreement with the EEOC.

Meanwhile, Activision Blizzard repeatedly sought coordination between the agencies.  The EEOC acknowledged Activision Blizzard's concerns.  When the EEOC reminded DFEH (and indicated to Activision Blizzard) that the EEOC had jurisdiction over harassment claims, even so, DFEH disputed the EEOC's position. *See* June 7, 2021 Email from R. Vuong to E. Baca, Baca Decl. ¶ 6, Ex. D, at 6-7. DFEH also concurrently pressed Activision Blizzard to extend a tolling agreement to allow DFEH additional time to continue expanding its investigation into harassment claims.  *See* June 8, 2021 Email from R. Vuong to E. Baca, Baca Decl. ¶ 6, Ex. D, at 6.

Activision Blizzard responded to DFEH's overtures by asking that it address the jurisdictional issue with the EEOC:

> We want to be clear that we are not trying to make things difficult for the Agency. . . .  We, however, would appreciate understanding whether—given the workshare agreement and the EEOC's assertion of jurisdiction—we can reduce the burden on our clients with one agency, the EEOC, handling these matters.

June 9, 2021 Email from E. Baca to R. Vuong, Baca Decl. ¶ 6, Ex. D, at 5.

DFEH responded, two days later, rejecting the EEOC's position:

> The DFEH and EEOC have conferred as you suggested.  We do not agree with EEOC's position.

June 11, 2021 Email from R. Vuong to E. Baca, Baca Decl. ¶ 6, Ex. D, at 4-5.

Stuck between the agencies, Activision Blizzard again sought clarity:

> We are genuinely uncertain how to proceed.  There are two concurrently filed, overlapping complaints.  The EEOC has asserted jurisdiction.  Your office apparently has a different view.  We hope you understand that it puts the Company in an

uncomfortable position to be asked to be the arbiter between the two positions.  As we stated yesterday, we suggest we wait until there is final word from both agencies on the jurisdiction; we assume that could happen before we would need to agree to any further extension.  We are not aiming to put the DFEH in a position where the statute would run during your current discussion with the EEOC.

June 15, 2021 Email from E. Baca to R. Vuong, Baca Decl. ¶ 6, Ex. D, at 1.

Over a week later, DFEH directed Activision Blizzard to contact the EEOC for clarification as to which agency would have jurisdiction over harassment claims. *See* June 23, 2021 Email from R. Vuong to E. Baca, Baca Decl. ¶ 6, Ex. D, at 1. Activision Blizzard followed that advice and reached out to the EEOC, which said that DFEH had specifically agreed ***not*** to investigate harassment-related claims and instead to leave harassment allegations and related claims to the EEOC.  Baca Decl. ¶ 7.

On June 24, 2021, apparently worried that the EEOC—which issued a Letter of Determination on June 15, 2021, and thereafter entered conciliation discussions with Activision Blizzard—was nearing a settlement, DFEH maneuvered again.  Baca Decl. ¶ 8, Ex. E.  It announced that its investigation (which DFEH had been asserting was nowhere close to complete) was done.  DFEH declared, "DFEH has reason to file a civil complaint in superior court [sic]" against Activision Blizzard, but offered nothing more by way of explanation, with zero description of its claims or of what group of employees would be covered. *Id.*

In light of the agencies' dueling positions, DFEH's refusal to defer to the EEOC as it had promised, and the total lack of information about what DFEH was claiming, Activision Blizzard went back to DFEH to again discuss tolling of the statute of limitations.  Yet, despite having initially been the one to raise the issue, DFEH now insisted that it would not agree to tolling unless Activision Blizzard waived substantive defenses (*e.g.*, *res judicata*) arising from any resolution Activision Blizzard might reach with the EEOC.  Baca Decl. ¶ 9, Ex. F.  Even though

Activision Blizzard had implemented meaningful policy and practice changes since the years at issue and continuing over the course of the EEOC's investigation, DFEH was unwilling to allow Activision Blizzard to continue those efforts and turn the page.

Activision Blizzard declined DFEH's extreme demands, but, not wanting to force DFEH to face an expiring statute of limitations, it nonetheless provided DFEH with a tolling agreement until at least the end of 2021 that would have allowed for the parties to continue the *status quo*.  This agreement would have given DFEH time to conduct discovery it previously said was "necessary" to determine whether there was cause to find a violation.  Baca Decl. ¶ 5, Ex. C.  The proposed tolling would also have allowed time for further discussions and a pre-filing mediation, as contemplated by the previous tolling agreements, in December 2021.  Baca Decl. ¶ 10, Ex. G.  DFEH, however, refused this path, arguing that it would not go forward with a December private mediation "only to learn that some portion of the claims [had been] resolved [with the EEOC]."  Baca Decl. ¶ 12, Ex. I.

Having rejected the tolling agreement that would have allowed it to meet its statutory obligations of investigating and engaging in good faith conciliation efforts, without warning DFEH filed a state court complaint ("State Lawsuit") on July 20, 2021, alleging harassment claims under state law.  Baca Decl. ¶ 13.  DFEH did so even though it had ***specifically agreed to leave harassment and related claims to the EEOC***.  *See* Dkt. 15-6, at 3.  The same day it filed the State Lawsuit, DFEH also issued a press release touting the complaint—but it did not actually serve the complaint on Activision Blizzard.  It would not do so for more than a month.

### B.   After Months Of Arm's Length Conciliation Negotiations And Mediation, The EEOC And Activision Blizzard Reached A Good-Faith, Fair, And Reasonable Resolution.

After the EEOC issued its June 15, 2021 Letter of Determination, the EEOC and Activision Blizzard began a months-long conciliation process, facilitated by a private mediator.  And after much work, the parties finalized a Consent Decree,

which was lodged with the Court on September 27, 2021, and which provides for:

- **_Relief Fund._**   Creating an $18-million class fund available to potential claimants who voluntarily elect to participate in the settlement and release claims against Activision Blizzard.

- **_Policy Review._**   Reviewing and revising workplace policies and practices to ensure that they incorporate best practices and promote Activision Blizzard's strong commitment to a workplace free of discrimination and harassment.

- **_Complaint Reporting._**   Reviewing and revising investigation procedures to confirm that they, among other things, encourage employee reporting, articulate the variety of mechanisms through which employees can report concerns, and describe the process by which complaints are investigated.

- **_Training._**   Compliance training for all supervisory employees, HR/Investigation training for HR and any other employees responsible for investigating relevant complaints, and workplace harassment prevention training for all non-supervisory and non-human resources employees.

- **_External Consultant Review._**   Engaging a consultant who will be responsible for, among other things, conducting annual audits, reviewing relevant internal complaints, reviewing and providing feedback on Activision Blizzard's discrimination and complaint investigation policies and procedures, assessing trainings, and assisting with the rollout of expanded mental health offerings.

- **_New EEO Coordinator Position._**   Creating an internal Equal Employment Opportunity Coordinator who will assist with implementation of the Consent Decree and broader equal employment opportunity initiatives and activities.

- **_Performance Metrics._**   Revising performance evaluation forms for managers, supervisors, and HR personnel, to include measures for performance on compliance with Activision Blizzard's anti-discrimination, anti-harassment, and anti-retaliation policies and procedures, and giving employees the opportunity to provide performance feedback on their managers.

-7-

- ***Mental Health Services.*** Expanding offerings for employees in need of mental health or counseling services.
- ***Staffing Agency Compliance.*** Ensuring that staffing agencies provide all individuals assigned to work at Activision Blizzard with a copy of Activision Blizzard's workplace policies and procedures.

The Consent Decree also provides numerous measures to ensure that employees who desire to participate in the financial portion of the settlement and receive an individual payment do so knowingly and voluntarily. In particular, the Consent Decree provides for the following:

- ***Notice.*** Every individual who is eligible to participate will receive notice of the Consent Decree terms.
- ***Voluntary Claim Form Submission.*** Current and former employees who wish to participate can submit a claim form, but they are not required to do so, and there will be no retaliation against anyone who chooses to either participate or not.
- ***EEOC Assessment of Claims.*** The EEOC will evaluate the claims of all employees who choose to submit a form, make a determination whether they are eligible for a monetary payment and, if so, the amount of that payment.
- ***Further Notice of Settlement Offer.*** All employees who submit claim forms will be informed of the settlement amount to which they may be entitled based on the EEOC's determination, and will receive a copy of the release agreement from Activision Blizzard that they will need to sign in exchange for their individual payments.[1]
- ***Free Attorney Consultation For Claimants.*** Claimants will have access to counsel of their choice to review the settlement offer, and Activision Blizzard

---

[1] The release agreement will be a form agreement (*see* Dkt. 11 at 14-15 (regarding documents to be provided to eligible claimants)), not a document negotiated one-by-one by Activision Blizzard as DFEH wrongful states (*see* Dkt. 24-1, at 10).

-8-

will pay for one hour of services, so that claimants are fully informed and counseled in deciding whether to participate in the settlement and release their claims.

- ***No Employee Is Required To Participate.*** If any individual elects not to participate, either by choosing not to submit a claim form or by rejecting the settlement offer after receiving notice of their payment amount and the company-provided release agreement, their rights are unaffected.

In short, the terms of the Consent Decree are a model of fairness. The Court should approve the settlement to expedite the broad injunctive relief that it provides in the public interest and that it offers to private individuals who voluntarily choose to resolve their own claims now.

## III. DFEH HAS NO LEGITIMATE BASIS TO INTERVENE

Rule 24 of the Federal Rules of Civil Procedure requires parties seeking intervention to (1) timely establish that (2) they have "a 'significantly protectable' interest relating to the . . . the subject of the action" that (3) will be "impair[ed] or impede[d]" without intervention and that (4) is not "[]adequately represented by the parties to the action." *Cooper v. Newsom*, No. 18-16547, 2021 WL 4203343, at *6 (9th Cir. Sept. 16, 2021) (quoting *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (*en banc*)). "The four parts of the test often are very interrelated and the ultimate conclusion reached as to whether intervention is of right may reflect that relationship." *Id.* (internal quotations omitted). Consistent with this guidance, Activision Blizzard discusses the final three factors in tandem.[2]

### A. DFEH Has No Significant Protectable Interest That Warrants Intervention In This Title VII Case Filed By The EEOC.

EEOC's complaint brings and settles federal claims under Title VII on behalf of Activision Blizzard employees across the country. In seeking to intervene, DFEH

---

[2] Activision Blizzard joins the EEOC's timeliness argument.

takes the position that individuals are not able to decide for themselves whether to choose to accept compensation in exchange for a standard agreement to release all claims arising out of the same set of facts, and that DFEH should make that decision for them.  But California law does not give DFEH any such power, and DFEH cites no authority in support of its position.  Federal law further confirms not only that the EEOC is an adequate representative of all employees' interests here (including California employees), but that DFEH has no standing to assert an interest in this case.  And because DFEH has no power to block an individual's voluntary release of state-law claims, its intervention is neither necessary nor warranted.

DFEH therefore cannot meet its burden as to a "significantly protectable" interest under Rule 24.  As DFEH admits, the "EEOC's underlying lawsuit alleges only federal claims."  DFEH Ex. Parte Application, Dkt. 13-1 ("Ex Parte App."), at 2.  DFEH has no authority to usurp private individuals' rights to settle California-law claims, and it plainly has no such authority with respect to federal claims.  DFEH also cannot prosecute Title VII claims, or claim an interest in their resolution, in any circumstance—let alone when, as here, the EEOC has initiated an investigation and reached a hard-fought settlement for the benefit of employees nationwide.

## 1.    DFEH Has No Authority To Usurp Private Individuals' Rights To Settle Their State Or Federal Claims.

DFEH has no cognizable interest (let alone a significantly protectable interest) in this litigation because it lacks authority to resolve private parties' individual claims (under either state or federal law) or to object to their resolution as a matter of California law.  DFEH is a California administrative agency.  Under California law, "administrative agencies have only those powers that the Constitution or statutes have conferred on them."  *Am. Fed'n of Labor v. Unemployment Ins. Appeals Bd.*, 13 Cal. 4th 1017, 1037 (1996).  The California Constitution does not empower DFEH to pursue antidiscrimination claims; rather, DFEH derives its authority from the

California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900, *et seq*.  And FEHA plainly does not empower DFEH to assert an interest here.

DFEH's role under FEHA is narrowly circumscribed.  Although FEHA created DFEH and grants it the authority to investigate and seek recompense for violations of its terms, FEHA does not make DFEH the master of all FEHA claims or authorize it to exert control over individual remedial decisions.

First, FEHA does ***not*** require employees' private settlements of FEHA claims (which are, of course, state-law claims) to be submitted to DFEH for approval.  Nor does it confer on DFEH any right to review (or preclude) employees' private settlements of those state-law claims with their employer.  That is telling, because the California Legislature knows how to enact a statute that requires State approval of settlements when it wants to do so.  Take, for example, the Labor Code Private Attorneys General Act ("PAGA"), Cal. Labor Code § 2698, *et seq*., which permits private citizens to sue "as the proxy or agent of the state's labor enforcement agencies" and seek civil penalties on behalf of themselves and other purportedly aggrieved employees.  *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73, 80-82 (2020) (emphasis and citation omitted).  PAGA specifically requires parties to submit all settlements to the California Labor and Workforce Development Agency for review prior to court approval.  Cal. Lab. Code § 2699(l)(2); *see O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1131-32 (N.D. Cal. 2016).  In stark contrast, FEHA imposes no such requirement.  That legislative choice must be honored.

Second, the limited remedies FEHA authorizes DFEH to pursue are not the only remedies available to individuals under state law.  Private parties may pursue a host of non-statutory remedies (including punitive and compensatory damages) that DFEH has no right to recover and that do not derive from DFEH's authority pursuant to FEHA.  *See, e.g.*, *Dyna-Med, Inc. v. Fair Emp't & Hous. Comm'n*, 43 Cal. 3d 1379, 1389 (1987) (rejecting "inference that the Legislature intended *sub silentio* to empower the commission to impose punitive damages," and holding DFEH cannot

recover punitive damages on behalf of private individuals); *Peralta Cmty. Coll. Dist. v. Fair Emp't & Hous. Comm'n*, 52 Cal. 3d 40, 47-48 (1990) (rejecting DFEH's attempt to seek "compensatory damages" and holding that DFEH lacked authority to award compensatory damages on harassment claims). The existence of these other remedies makes plain that DFEH is not the sole arbiter of state-law relief.

Third, private parties may choose for their own personal reasons not to pursue a state-law discrimination claim for an injury covered by FEHA, and that choice is not something DFEH can undo. *See, e.g.*, *Rojo v. Kliger*, 52 Cal. 3d 65, 80, 88 (1990); *Medix Ambulance Serv., Inc. v. Superior Court*, 97 Cal. App. 4th 109, 119 (2002). The freedom of choice that California law affords to claimants **is the individual's**; it does not extend to DFEH, let alone provide DFEH with superintending authority not conferred via statute. *See Rojo*, 52 Cal. 3d at 88.[3] DFEH has no authority to countermand private parties' freedom of choice when it comes to resolving state-law discrimination claims, and thus no valid basis to claim the mantle of "the interests of California and its workers" (Dkt. 24-1, at 1), let alone to use those interests as a basis to intervene in federal litigation and disrupt a federal agency's negotiated settlement.

Simply put, nowhere in FEHA (or any law) has the California Legislature granted DFEH authority to interfere with an individual claimant's remedial decisions. That lack of legislative authorization is dispositive. *See Dyna-Med*, 43 Cal. 3d at 1389 (holding that DFEH cannot pursue "a remedy which the Legislature has withheld"); *see also Ass'n for Retarded Citizens v. Dep't of Developmental Servs.*, 38 Cal. 3d 384, 391 (1985) (holding that actions that enlarge a California

---

[3] Individual choice is by no means unique to FEHA; courts repeatedly have affirmed that private parties may release their right to remedies sought on their behalf by state actors. *See, e.g.*, *California v. IntelliGender, LLC*, 771 F.3d 1169 (9th Cir. 2014); *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328 (2d Cir. 1985); *New Mexico ex rel. King v. Capital One Bank (USA) N.A.*, 980 F. Supp. 2d 1346 (D.N.M. 2013). The rationale: "the money ultimately belongs to the claimant individuals, not the government." *In re Am. Inv. Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, No. 05-md-1712, 2013 WL 3463503, at *8 (E.D. Pa. Jul. 10, 2013). Such is also the case here.

administrative agency's statutorily conferred power "must be declared void").  That explains why DFEH cites no cases supporting the agency's position that it has authority to intervene in individual Californians' remedial decisions.  And it confirms that DFEH lacks a cognizable interest in these proceedings sufficient for Rule 24.

### 2.   <u>DFEH's Arguments To The Contrary Are Meritless.</u>

DFEH argues that its authority to bring state-law discrimination claims under FEHA grants it a legally cognizable (and significantly protectable) interest to intervene in these proceedings.  In particular, DFEH claims that it "seeks limited intervention to protect the interests of California and its workers."  Dkt. 24-1, at 1. Examination of this proffered "interest" reveals that it is illusory and insufficient.

Despite referencing "the interests of California" repeatedly throughout its papers (*e.g.*, Dkt. 24-1, at 1), the only interest DFEH actually discusses is its ability to enforce FEHA—and that is an interest that individual claimants are free to displace as a matter of state law.  Again, DFEH has no authority ***even under California law*** to decide what is best for individuals when it comes to choosing how to remedy alleged discrimination, let alone to prevent individuals from resolving their claims for consideration.  DFEH does not, and cannot, dispute that individual claimants may release state-law claims as a matter of state law; nor does (or can) DFEH dispute that it lacks any authority to undo an individual claimant's decision to do so.  As a result, it makes no difference for purposes of DFEH's Motion that individuals may ***choose*** pursuant to the Consent Decree to "release California State law claims" in exchange for compensation.  *See* Dkt. 24-1, at 1.[4]

Indeed, as even DFEH's cases make clear, DFEH is not the beneficiary of

---

[4] There is nothing improper as a general matter with individual or class settlements that release claims beyond the claims alleged in the underlying complaint.  *See, e.g., Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 745 (9th Cir. 2006) (upholding validity of settlement term that released the defendants "of all antitrust liability" over a certain period); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290-1291 (9th Cir. 1992) (similar); *Rubin v. Assicurazioni Generali S.P.A.*, 290 F. App'x 376, 377 (2d Cir. 2008) (similar).

FEHA; California's employees are.  The point of FEHA is *not* to empower DFEH to make choices for individuals, but rather "to give [*Californians*] the maximum opportunity to vindicate their civil rights against discrimination."  Dkt. 24-1, at 15 (some emphasis omitted; alteration in original) (quoting *Dep't of Fair Emp. & Hous. v. L.S.A.C., Inc.*, 941 F. Supp. 2d 1159, 1167 (N.D. Cal. 2013)).  Yet what DFEH wants here is to deprive Californians of any "opportunity" to decide for themselves how to resolve claims that properly belong to them.  That is not something DFEH can do.  The choice to release FEHA claims in exchange for consideration is a choice individuals are entitled to make, and a choice as to which DFEH has no say.

In sum, nothing in FEHA or any other law authorizes DFEH to control private claimants' remedies, even for state-law claims.  DFEH's lack of authority to do so in the context of *a federal agency's settlement of federal claims* follows *a fortiori*.  DFEH may wish to prolong this litigation rather than support a settlement negotiated by a federal agency with the same mission to eliminate discrimination and harassment, but these wishes do not deserve the Court's indulgence.  The Court should reject DFEH's attempt to invade the EEOC's jurisdiction and prevent private parties from voluntarily resolving their claims.

**B.  <u>As A Matter Of Federal Law, DFEH Has No Authority To Intervene When, As Here, The EEOC Has Conducted A Federal Investigation And Initiated A Title VII Suit In Federal Court.</u>**

The lack of state-law authority permitting DFEH to superintend individual claimants' remedial decisions suffices to show that DFEH has no legally cognizable interest in these proceedings, let alone a "significantly protectable" interest.  *See Cooper*, 2021 WL 4203343, at *6.  Federal law confirms this conclusion.  Given that the federal agency charged with enforcing federal antidiscrimination laws is seeking to obtain a *nationwide* resolution of federal Title VII claims, DFEH does not have and cannot have its own interest in enforcing Title VII on behalf of California employees (whose interests the EEOC is charged with protecting, along with employees of every other State).  Whatever possible interest DFEH may have in the

MPA IN SUPPORT OF
DEFTS' OPPOSITION TO DFEH'S
MTN TO INTERVENE

resolution of Title VII claims is adequately represented by the EEOC as a matter of federal law.

The sole authority DFEH cites in support of its argument that it might have such an interest is a recent FEHA amendment purporting to allow DFEH to sue under Title VII.  *See* Dkt. 24-1, at 15.  Of course, filing suit under Title VII in the first instance is not what DFEH is trying to do here; rather, DFEH is trying to interfere with the resolution of the EEOC's own Title VII suit.  In any event, and whether or not state law supports DFEH's theory (it doesn't), ***federal law*** plainly does not.

It is a basic principle of federal law that state legislatures cannot give state agencies a right to sue under federal law; only Congress can do so.  *See* Margaret H. Lemos, *State Enforcement of Federal Law*, 86 N.Y.U. L. Rev. 698, 708 (2011) (citing cases holding that "States have no inherent power to enforce federal statutory law," so "states' authority to sue under any given statute is [] dependent on congressional intent").  That is why the Supreme Court has long held that, for States to be able to bring federal-law claims, there must be a clear statement authorizing suits by States ***in the relevant federal statute***.  *See, e.g.*, *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 263-64 (1972) (insisting on "clear expression of a congressional purpose" before a State may sue as *parens patriae*).

There is no such clear statement here.  To the contrary, the text of Title VII strongly suggests that Congress did not intend to allow States to file Title VII claims, and it certainly did not intend States to be able to claim an interest (or intervene) in Title VII proceedings filed by the EEOC.  Unlike other federal statutes that explicitly authorize State attorneys general to sue to bring about compliance with federal law (*see, e.g.*, 15 U.S.C. §§ 1194(a), 1264(d), 1477, 2073(b)(1)), Title VII contains no such provision.  Nor does Title VII explicitly authorize States to sue as *parens patriae* to obtain remedies on behalf of their residents for violations of federal laws, unlike other federal statutes, *see* Lemos, *supra*, 86 N.Y.U. L. Rev. at 708-10 (cataloging at least a dozen such statutes).  Rather, Title VII only specifically authorizes ***the EEOC***

to enforce its terms (*see* 42 U.S.C. § 2000e-5(a), (f)(1); *see also id.* § 2000e-4), and then generically authorizes "person[s] claiming to be aggrieved" to sue as well (*id.* § 2000e-5(b)).  The statutory text thus strongly suggests that Congress did not intend States or state agencies to be able to bring Title VII enforcement actions or claim a federally cognizable interest in them sufficient for intervention under Rule 24.

Statutory structure confirms that conclusion.  Title VII does in fact specifically discuss suits by States under state law—but not suits by States ***under Title VII***. Section 2000e-5(d) of Title VII provides that the EEOC "shall, before taking any action with respect to [a Title VII] charge, notify the appropriate State or local officials and, upon request, afford them a reasonable time, but not less than sixty days . . . , to act under such State or local law to remedy the practice alleged." *Id.* § 2000e-5(d).  Coupled with the lack of an explicit authorization for States to enforce Title VII's terms, the explicit reference to States acting "***under . . . State . . . law*** to remedy the practice alleged" is strong evidence that Congress contemplated a clear division of authority under which only the EEOC (or private parties) may bring federal Title VII actions.  Given this lack of authority to enforce Title VII, DFEH lacks any interest—let alone a sufficient interest—to intervene in this Title VII suit to preclude this Court from entering the Consent Decree.  *Cf. United States v. State of New Jersey*, No. CIV. 87-2331 (HAA), 1995 WL 1943013, at *22 (D.N.J. Mar. 14, 1995) ("Where state law prevents the execution of a federal consent decree under Title VII, the state law must fall.").[5]

_____

[5] To be sure, Title VII defines "person" to include "governments, governmental agencies, [and] political subdivisions."  42 U.S.C. § 2000e(a).  But that provision notably does not refer to ***state*** governments.  More important, it is difficult to understand how a state government (or state agency like DFEH) could constitute a "person ***claiming to be aggrieved***" within the meaning of Section 2000e-5(b).  In any event, even if Title VII's reference to "persons" could be read to permit state agencies to enforce Title VII in ***some*** circumstances (it can't), the text and structure of the statute make clear that ***these*** circumstances would still not be among them. Section 2000e-5(d) strongly suggests that when, as here, the relevant state agency

Constitutional principles underscore the point. "States may not seek to achieve ends, however legitimate, through regulatory means that intrude on [a federal agency's] authority." *Hughes v. Talen Energy Mktg., LLC*, 136 S. Ct. 1288, 1298 (2016) (FERC case); *see also Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) ("[S]tate regulation will be displaced to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."). That is why the Supreme Court has long held not only that "a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation" (*City of N.Y. v. FCC*, 486 U.S. 57, 63-64 (1988) (citation omitted)), but that "[a] state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach th[at] goal" (*Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987)). Accordingly, any effort by a state instrumentality to exercise its state-law regulatory prerogatives in a manner "that intrude[s] on [the EEOC's] authority" to enforce federal law cannot stand. *See Hughes*, 136 S. Ct. at 1298. Yet that is exactly what DFEH seeks to do here.[6]

That means that even if DFEH did have an interest (and the authority) to control the decisions of individual California citizens—which, again, it doesn't—intervention would still be improper. When it comes to enforcing federal law, the specifically designated federal agency (here, the EEOC) not only takes precedence over state and local agencies, but is presumed to adequately represent the interests of the private parties whose rights Congress has authorized it to invoke. *See, e.g.*, *Maine v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001). Indeed, the

---

has failed "to act" within "sixty days," the agency forfeits any right it may have had to intercede. Any other conclusion would render nonsensical Section 2000e-5(d)'s explicit sequencing, which allows States to go first if they act within the set deadline.
[6] Of course, federal supremacy does not deprive States of the power to intervene, for example, to protect the State's treasury. *See, e.g.*, *City & Cty. of S.F. v. USCIS*, 992 F.3d 742, 751 (9th Cir. 2021) ("The states also have a 'significant protectable interest' in the continuing validity of the rule because invalidating the rule could cost the states as much as $1.01 billion annually.") (*petition for cert. filed* June 18, 2021 *and docketed* June 23, 2021). But that is decidedly not what DFEH seeks to do here.

Supreme Court has long held that the Constitution precludes States (and state agencies) from actively frustrating federal efforts to meet "the need[s] identified by Congress" (*see Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 717 (1985)), when, as here, the federal agency that Congress has specifically tasked with meeting those needs is taking action "pursuant to [its] congressionally delegated authority." *See Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1679 (2019). Allowing DFEH to frustrate the federal government's enforcement of federal law based on state-law prerogatives would turn the Supremacy Clause on its head.[7]

It would also put Title VII in conflict with itself. "The clear Congressional intent evident in [42 U.S.C.] § 2000e-5(b) is that the state and local agencies be allowed sixty days to effect settlement before the EEOC actively intervenes. . . . But 'the underlying purpose of the 60 day provision was to allow the state to act and not to establish an additional roadblock for the plaintiff.' To accept the defendant's theory[] would go a long way along a route which would effectively nullify remedies under [Title VII]. ***Surely Congress did not intend to create a procedural morass, or a trap capable of capturing even the wary traveler.***'" *Watson v. Limbach Co.*, 333 F. Supp. 754, 758-59 (S.D. Ohio 1971) (emphasis both omitted and added; citation omitted). Rather than allow DFEH to frustrate federal enforcement of federal law or turn Title VII into a "trap," the Court should instead conclude that, because the EEOC has initiated a federal lawsuit under Title VII, DFEH lacks authority to claim an interest in these proceedings, let alone an interest sufficient to intervene in them.

All of that explains why, despite being given multiple opportunities to come up with case law supporting its position, DFEH has not cited a single case allowing a state agency to intervene in federal court to object to a federal settlement negotiated

---

[7] As one court has recognized, the fair and reasonable settlement of a Title VII action should not be hindered by state law procedural requirements. *See, e.g., Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 655 (2d Cir. 1999) (affirming approval of Title VII discrimination claim settlement).

by a federal agency.  That is because no such case exists:  We have not found a single case involving any federal agency (not just the EEOC) acting under any federal law (not just Title VII).  What DFEH is asking this Court to do is literally unprecedented.[8]

Finally, it bears repeating that the EEOC is not just any federal agency; it is the federal instrumentality specifically charged by Congress with enforcing Title VII.  As a result, the EEOC is not merely the correct party to resolve this dispute as a matter of common sense, it also is an adequate representative of whatever interest DFEH may claim to have as a matter of federal law.  *See Maine*, 262 F.3d at 19 (recognizing "presumption" that "the government will adequately defend its actions, at least where its interests appear to be aligned with those of the proposed intervenor").  As DFEH notes, the EEOC and DFEH share the common mission of protecting civil rights, and their interests are aligned to the extent federal law vests the EEOC with the responsibility to act as the gatekeeper for individual recipients of relief under the Consent Decree.  And that is what it has done here:  The EEOC negotiated and secured private counsel for individual claimants who can advise the claimants, without a potential conflict of interest, on the meaning and impact of compromising their claims.  DFEH has no role to play here, let alone the right to intervene in these federal proceedings to second guess how the EEOC may draft its notice of settlement.

The EEOC also is presumed an adequate representative under Rule 24 more generally, and DFEH has not (and cannot) come close to rebutting that presumption.  "To overcome the presumption of adequate representation, the proposed intervenor must ordinarily demonstrate adversity of interest, collusion, or nonfeasance on the part of a party to the suit."  *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 n.26 (3d Cir. 2010) (citation omitted).  DFEH fails to articulate, let alone substantiate, any plausible adversity between the EEOC and individual claimants or evidence of

---

[8] The multi-step, class-action-style process DFEH proposes (*see* Dkt. 24-1 at 3) is also not applicable in a Title VII settlement.

MPA IN SUPPORT OF
DEFTS' OPPOSITION TO DFEH'S
MTN TO INTERVENE

collusion.  That is unsurprising—the only possible adversity here is between **DFEH** and claimants:  Whereas Title VII does not authorize the EEOC to obtain fees, DFEH can recover its attorneys' fees incurred in actions under FEHA (*see* Cal. Gov't Code §§ 12907; 12965(b)).  And, for obvious reasons, courts are wary that potential fee awards can influence counsel's decisions to litigate or settle in ways that may not be in individual beneficiaries' best interests.  *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (courts must watch for "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations").[9]

In sum, DFEH has not put forward any remotely valid basis to overcome the presumption of adequacy federal law affords the EEOC.  That should be the end of the matter.  *See* Fed. R. Civ. P. 24(a)(2). DFEH has no cognizable independent interest in this case, and whatever interests it may claim to have are more than adequately represented by the EEOC.

## C.   The Parties In This Action Will Be Significantly Prejudiced If DFEH Is Permitted To Intervene, As Will Parties More Generally.

DFEH's attempt to intervene in this matter and upend a comprehensive settlement of Title VII claims that is the culmination of a three-year EEOC investigation (and the parties' extensive settlement negotiation efforts) will *impede*, not *promote*, the public and private interests advanced in the Consent Decree.

First, although DFEH purports to represent the interests of California residents in challenging the Consent Decree, it is well settled in California that "[t]he law favors settlements."  *Vill. Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 50 Cal. 4th 913, 930 (2010) (citations omitted).   Indeed, in California,

---

[9] Courts likewise scrutinize fee requests in settled cases to ensure counsel does not "sell out the class" to obtain a sizeable award.  *See, e.g.*, *Kerzich v. County of Tuolumne*, 335 F. Supp. 3d 1179, 1187 (E.D. Cal. 2018) ("It is precisely the self-interest of counsel against which the court must guard [in evaluating whether a fee award is reasonable], whether the harm caused to the [group] and the [applicable law] is purposeful or not.").  There is no possible such concern with the EEOC.

"settlement agreements are highly favored as productive of peace and good will in the community, as well as reducing the expense and persistency of litigation." *Neary v. Regents of Univ. of Cal.*, 3 Cal. 4th 273, 277 (1992) (internal quotation marks and citations omitted), *superseded by statute on other grounds*. "This is . . . even more so where the subject matter is employment . . . ." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *accord, e.g.*, *Culbreath v. Dukakis*, 630 F.2d 15, 22 (1st Cir. 1980) (affirming denial of unions' motion to intervene in EEOC suit involving consent decree, and noting that "courts strongly favor resolution of suits such as this one by voluntary agreement").

Second, permitting DFEH to intervene here will threaten not only the settlement of these claims, but similar federal claims in similar cases going forward. Courts routinely reject such attempts at intervention because they prejudice the parties to the settlement as well as the individuals affected by the alleged unlawful practices. *See, e.g.*, *Culbreath*, 630 F.2d at 22; *Morazan v. Aramark Uniform & Career Apparel Grp., Inc.*, No. 13-cv-00936-YGR, 2013 U.S. Dist. LEXIS 125623, at *11-12 (N.D. Cal. Sept. 3, 2013) ("[S]ignificant prejudice will result from intervention given the efforts the parties have invested in settlement"); *cf. In re Charles Schwab Corp. Secs. Litig.*, No. C 08-01510 WHA, 2011 U.S. Dist. LEXIS 18840, at *12 (N.D. Cal. Feb. 11, 2011) ("Courts deny motions to intervene where granting intervention might compromise long-litigated settlement agreements." (alterations omitted)).

That is particularly true when the entity seeking to prevent resolution of a claim is a state actor. "Allowing comprehensive settlements to be undermined in this way would undeniably deter similar settlements in the future." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99 (3rd Cir. 2002); *see also, e.g.*, *In re Am. Inv. Life Ins. Co.*, 2013 WL 3463503, at *2, 8 (highlighting "chilling effect" that comes when States "demand more money from the defendants," and noting that, if such intercessions were permitted, then "defendants would no doubt be reluctant to

enter into settlement agreements in the first instance"); *cf. IntelliGender*, 771 F.3d at 1180-81 (reversing district court's denial of injunction against California State Attorney General's state-court suit that sought restitution on behalf of individuals who were bound by a federal-court-approved settlement where "the State [was] essentially seeking a double (or at least better) recovery"). Opening the door to intervention here—especially after DFEH declined the EEOC's offer to have a seat at the negotiating table[10]—would therefore provide a playbook for States to frustrate federal settlement efforts far beyond this case.

Third, allowing DFEH to derail this federal settlement through intervention as a roundabout means of protecting its state-court lawsuit would be fundamentally at odds with individual claimants' interests.[11] Numerous courts have recognized that such maneuvers are improper and cannot provide a basis for intervention. *See, e.g.*, *Lane v. Wells Fargo Bank*, No. C 12-04026 WHA, 2013 U.S. Dist. LEXIS 87669, at *43 (N.D. Cal. June 21, 2013) (intervention to protect a different lawsuit was "totally unfounded" and "a hold-up maneuver unworthy of [civil] practice"); *Moore v. Verizon Commc'ns, Inc.*, No. C 09-1923 SBA, 2013 U.S. Dist. LEXIS 15609, at *41-42 (N.D. Cal. Feb. 5, 2013) (denying application where movant sought intervention to protect rights in a separate claim). This Court should do the same here.

---

[10] DFEH claims that it sought "collaboration" with the EEOC in its mediation efforts. Dkt. 24-1, at 7. In reality, DFEH rebuffed the EEOC's invitation to participate in conciliation. *See* EEOC Prior Opposition, at 4.

[11] DFEH speculates, absurdly, that the claims against Activision Blizzard could be valued at nearly one billion dollars. Dkt. 24-1, at 12. This claim is based entirely on the impermissible personal opinion and unsupported "calculations" of DFEH's own counsel. That declaration makes no effort to satisfy the requirements of Federal Rule of Evidence 702, which requires that expert testimony help the Court to "determine a fact in issue," that the testimony be "based on sufficient facts or data," that it be the product of "reliable principles and methods," and that the expert has "reliably applied the principles and methods to the facts of the case." See Dkt. 24-2, ¶ 16. In fact, the declaration suggests that the purported foundation for counsel's personal opinions on which DFEH relies cannot be disclosed because they are "work product." *Id*. Thus, DFEH's inadmissible "exposure calculations" have utterly no credibility or basis, and do not deserve a further response.

That is particularly true given that DFEH has repeatedly engaged in improper tactics to try to block the EEOC's exercise of its statutory duties in this case.  First, DFEH filed an overlapping Director's Complaint against Activision Blizzard entities mere weeks after the EEOC filed a Commissioner's Charge against Activision Blizzard.  *See* Dkt. 15-6, at 3.  Second, after DFEH agreed with the EEOC to divide investigative responsibility based on their existing Worksharing Agreement (*see* Baca Decl. ¶ 11, Ex. H; Section II.A, *supra*)—under which issues that more closely track California law would fall under DFEH's purview, and issues under federal law would fall under the EEOC's—it later decided to ignore its agreement and refuse to acknowledge the EEOC's jurisdiction.  Third, after the EEOC notified DFEH of the conclusion of its investigation and findings in a Letter of Determination, DFEH abruptly ended its (incomplete) investigation and issued a fact-free, barebones "cause" letter.  Fourth, DFEH tried to block any meaningful conciliation between the EEOC and Activision Blizzard—refusing to mediate with Activision Blizzard so long as it remained engaged in the conciliation process, and by pleading inflammatory claims in the State Lawsuit that it knew were subject to the EEOC conciliation process.  And now, DFEH seeks to derail the Consent Decree based on fundamentally erroneous claims:  While DFEH implies there is something untoward in the fact that the EEOC "secretly negotiated" the settlement (Dkt. 24-1, at 3), it is no secret that federal conciliation ***is confidential as a matter of federal law***, 42 U.S.C. § 2000e-5(b), or that it is an essential and required component of Title VII's statutory framework, which the EEOC must engage in before filing suit, *see, e.g.*, *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015) (explaining Congress enacted a framework that "preferred" cooperation and voluntary compliance over litigation).

Activision Blizzard, and its employees who will benefit from this settlement, should not be conscripted by DFEH for further battle when a fair resolution has been reached with the federal agency that has jurisdiction over Title VII claims.  Neither FEHA nor any other law provides DFEH with the right to obstruct these federal

1  proceedings, much less to substitute its judgment about the right course of action for

2  the EEOC and the Activision Blizzard employees covered by the Consent Decree.

3  The prejudice that will come from intervention is another reason to deny the Motion.

4  **IV.    CONCLUSION**

5         In reaching the Consent Decree with the EEOC, Activision Blizzard took

6  seriously the conciliation process established by federal law.  The result is a Consent

7  Decree that achieves a fair, adequate, and reasonable settlement.  Its remedial reach

8  is multifaceted.  And, as it pertains to eligible claimants, it establishes a significant

9  fund to ensure meaningful monetary payments for those who elect to participate and

10  compromise their claims.   Activision Blizzard's employees—and not DFEH—

11  should be allowed the opportunity to decide whether to move forward on terms the

12  EEOC has approved, and receive payments from the settlement fund soon.  For these

13  reasons and the reasons provided above, Activision Blizzard requests that the Court

14  deny DFEH's motion, and approve and enter the Consent Decree.

15

16  DATED:  November 8, 2021              PAUL HASTINGS LLP

17                                        ELENA R. BACA
                                          RYAN D. DERRY
18                                        FELICIA A. DAVIS

19

20                                        By:  _____

21                                               ELENA R. BACA

22                                        Attorneys for Defendants
                                          ACTIVISION BLIZZARD, INC.,
23                                        BLIZZARD ENTERTAINMENT, INC.,
                                          ACTIVISION PUBLISHING, INC., and
24                                        KING.COM, INC.

25

26

27

28

MPA IN SUPPORT OF
                                         DEFTS' OPPOSITION TO DFEH'S
                                         MTN TO INTERVENE