1  Anna Y. Park, SBN 164242
2  anna.park@eeoc.gov
   Nakkisa Akhavan, SBN 286260
3  nakkisa.akhavan@eeoc.gov
4  Taylor Markey, SBN 319557
   taylor.markey@eeoc.gov
5  Maurice Neishlos, NY SBN 5639265
6  maurice.neishlos@eeoc.gov
   Alisha Ansari, SBN 312875
7  alisha.ansari@eeoc.gov
8  Ella Hushagen, SBN 297990
   ella.hushagen@eeoc.gov
9  U.S. EQUAL EMPLOYMENT
10 OPPORTUNITY COMMISSION
   255 East Temple Street, Fourth Floor
11 Los Angeles, CA 90012
12 Telephone:  (213) 422-8396
   Facsimile:  (213) 894-1301
13 E Mail:  lado.legal@eeoc.gov

14 Attorneys for Plaintiff
15 U.S. EQUAL EMPLOYMENT
   OPPORTUNITY COMMISSION
16

17              **UNITED STATES DISTRICT COURT**

18              **CENTRAL DISTRICT OF CALIFORNIA**

19
   U.S. EQUAL EMPLOYMENT            Case No.: 2:21-CV-07682-DSF-JEM
20 OPPORTUNITY COMMISSION,
                                    **PLAINTIFF EEOC'S OPPOSITION TO**
21        Plaintiff,               **CALIFORNIA DFEH'S MOTION TO**
                                    **INTERVENE; DECLARATIONS;**
22        vs.                      **EXHIBITS**

23 ACTIVISION BLIZZARD, INC.,
24 BLIZZARD ENTERTAINMENT, INC.,    **Hearing:** November 29, 2021 at 1:30 pm
   ACTIVISION PUBLISHING, INC.,
25 KING.COM, INC., and DOES ONE
26 through TEN, inclusive,

27        Defendants.
28

1
2

# <u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ...................................................................iii

I.      INTRODUCTION ...................................................................1

II.     FACTUAL AND PROCEDURAL SUMMARY.................................2

III.    LEGAL ARGUMENT..............................................................3

    A. Intervention as of Right Under FRCP 24(a) Should Be Denied Because
    No Federal Statute Confers the Right Upon DFEH to Intervene and DFEH
    Lacks a Legally Cognizable Interest in This Federal Litigation .....................3

        1.   DFEH Cannot Meet the Requirements of Rule 24(a)(1) Because
            No Federal Statute Confers the Right Upon DFEH to Intervene .........4

            i.   DFEH Agreed Not to Investigate Harassment Allegations
               and Now Paradoxically Seeks to Block Claimants from
               Releasing Harassment Claims Without Its Approval. ......................5

            ii. The Dispute Resolution Mechanism Provided for in the
               Worksharing Agreement Provides the Appropriate Forum and
               Remedy for DFEH's Concerns, Not this Court...............................8

        2.   DFEH Cannot Satisfy Rule 24(a)(2) Because it Lacks a Legally
            Cognizable Interest in this Litigation, EEOC Adequately Represents
            Any Interest It Does Possess, and Its Motion is Untimely .................9

            i.   DFEH Lacks a Legally Cognizable Interest in this Litigation. ......10

               1) Voluntary Claims Process and Individual Releases..................10
               2) Provision of Private Counsel at No Cost..................................12
               3) Anti-Retaliation Provisions Requiring Alteration of Personnel
                  Files...................................................................................14

            ii. DFEH's Other Criticisms and Requests for Relief Bely the
               Notion that It Intervenes for a "Limited" Purpose.........................15

            iii. EEOC Can Adequately Represent Any Interest in this Action
               DFEH Does Possess. ...............................................................17

iv. DFEH's Motion is Untimely ...................................................... 18

B. Permissive Intervention Under Rule 24(b) Should Be Denied Because DFEH Cannot Meet the Threshold Requirements and Its Intervention Will Cause Delay and Prejudice to the Parties. ......................................... 19

    1. DFEH Does Not Meet the Requirements for Permissive Intervention. ...................................................................... 20

    2. The Other Factors Courts Consider in Granting Permissive Intervention Also Weigh Against DFEH. ............................... 22

C. DFEH Has Not Met the Procedural Requirements of Rule 24(c) and The Court Should Not Relax Them in These Circumstances. ........................... 23

D. The Extreme Remedies DFEH Seeks Impermissibly Subject EEOC to Rule 23 Requirements and Should be Denied. ................................. 23

IV.    CONCLUSION ........................................................................... 25

# TABLE OF AUTHORITIES

*Aleut Corp. v. Tyonek Native Corp.*
   725 F.2d 527 (9th Cir. 1984) ................................................................. 19

*Arakaki v. Cayetano*
   324 F.3d 1078 (9th Cir. 2003) .............................................................. 17

*Buffin v. City & Cty. of San Francisco*
   2016 WL 6025486 (N.D. Cal. Oct. 14, 2016) ...................................... 23

*City of Emeryville v. Robinson*
   621 F.3d 1251 (9th Cir. 2010) .............................................................. 21

*Class Plaintiffs v. City of Seattle*
   955 F.2d 1268, 1287 (9th Cir. 1992) .................................................... 19

*Cooper v. Newsom*
   2021 WL 4203343 (9th Cir. Sept. 16, 2021) ....................................... 20

*Ctr. for Biological Diversity v. Lubchenco*
   2010 WL 1038398 (N.D. Cal. Mar. 19, 2010) ..................................... 21

*Donnelly v. Glickman*
   159 F.3d 405 (9th Cir. 1998) ........................................................... 22, 23

*E.E.O.C. v. Dinuba Med. Clinic*
   222 F.3d 580 (9th Cir. 2000) ................................................................ 24

*E.E.O.C. v. Pan Am. World Airways, Inc.*
   1988 WL 224232 (N.D. Cal. June 17, 1988) ........................................ 24

*EEOC v. Alia Corporation dba McDonalds*
   Case No. 1:11-cv-01549 (E.D. Cal. 2013) ........................................... 13

*EEOC v. Big Lots Inc.*
   Case No. 2:08-cv-06355 (N.D. W. Va. 2017) ...................................... 14

*EEOC v. Cardinal Health 200, LLC., et al.*
   Case No. 5:19-cv-00941 (C.D. Cal. May 21, 2019)............................. 15

*EEOC v. Discovering Hidden Hawaii Tours, Inc.*, et al.
   Case No. 1:17-cv-00067 (D. Hawaii 2018) .......................................... 16

*EEOC v. Grays Harbor Cmty. Hosp.*
   791 F. Supp. 2d 1004 (W.D. Wash. 2011) ...................................... 11, 25

*EEOC v. Kimco Staffing Services, Inc.*, et al.
   No. 5:19-cv-01838 (C.D. Cal Sept. 25, 2019)...................................... 15

*EEOC v. La Rana Hawaii, LLC dba Senor Frog's, et al.*
   Case No. 1:11-cv-00799 (D. Hawaii 2013)........................................... 13

*EEOC v. Maurizio's Trattoria Italiana*, LLC
   Case 3:18-cv-00338 (S.D. Cal. 2020) ................................................... 13

*EEOC v. Oceanic Time Warner Cable LLC dba Spectrum, et al.*
   Case No. 1:18-cv-00357 (D. Hawaii 2020)........................................... 13

*Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*
   62 F.3d 1217 (9th Cir. 1995) ................................................................. 16

*G&G Prods., LLC v. Rusic*
   2019 WL 1976451 (C.D. Cal. Mar. 27, 2019) ..................................... 21

*Gen. Tel. Co. of the N.W., Inc. v. E.E.O.C.*
   446 U.S. 318 (1980) ....................................................................... 24, 25

*Green v. Los Angeles Cty. Superintendent of Sch.*
   883 F.2d 1472 (9th Cir. 1989) ............................................................... 4

*In re Bluetooth Headset Prod. Liab. Litig.*
   654 F.3d 935 (9th Cir. 2011) ............................................................... 24

*Kootenai Tribe of Idaho v. Veneman*
   313 F.3d 1094 (9th Cir. 2002) ............................................................. 20

*League of United Latin Am. Citizens v. Wilson (LULAC)*
   131 F.3d 1297 (9th Cir. 1997) ............................................................... 9

*Ligas ex rel. Foster v. Maram*
   478 F.3d 771 (7th Cir. 2007) ............................................................... 18

*Officers for Justice v. Civil Service Com'n of City and Cty. Of San Francisco*
   688 F.2d 615 (9th Cir. 1982) ............................................................... 25

*Orange Cty. v. Air California*
   799 F.2d 535 (9th Cir. 1986) ............................................................... 19

*Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*
   2010 WL 774037 (D. Or. Mar. 2, 2010) .................................. 10,12,14

*Perry v. Schwarzenegger*
   630 F.3d 898 (9th Cir. 2011) ............................................................... 10

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*
   442 F.3d 741 (9th Cir. 2006) ................................................................. 8

*Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Engineers*
   101 F.3d 503 (7th Cir. 1996) ............................................................... 22

*Spangler v. Pasadena Bd. of Educ.*
   552 F.2d 1326 (9th Cir. 1977) ............................................................. 20

*Sw. Cntr. for Biological Diversity v. Berg*
   268 F.3d 810 (9th Cir. 2001) ................................................................. 5

*Town of Chester, N.Y. v. Laroe Ests., Inc.*
   137 S. Ct. 1645 (2017) ......................................................................... 17

*United States v. Alisal Water Corp.,*
   370 F.3d 915 (9th Cir. 2004) ............................................................... 10

*United States v. Blue Lake Power, LLC*
   215 F. Supp. 3d 838 (N.D. Cal. 2016) ................................................ 16

*United States v. Carrols Dev. Corp.*
   1981 WL 2184 (N.D.N.Y. Oct. 16, 1981) ........................................... 22

*United States v. City of Los Angeles*
   288 F.3d 391 (9th Cir. 2002) ........................................................ 10, 18
*United States v. Pac. Gas & Elec.*
   776 F. Supp. 2d 1007 (N.D. Cal. 2011) ............................................. 21
*United States v. River Cliff Farm, Inc.*
   2016 WL 4582048 (D. Or. Sept. 2, 2016) ........................................ 21
*United States v. State of Or.*
   913 F.2d 576 (9th Cir. 1990) ........................................................ 9, 18
*United States v. State of Wash.*
   86 F.3d 1499 (9th Cir. 1996) ............................................................ 17
*United States v. Yonkers Bd. of Educ.*
   902 F.2d 213 (2d Cir. 1990) .............................................................. 18
*Valley Ctr. Pauma Unified Sch. Dist. v. Interior Bd. of Indian Appeals*
   *of U.S. Dep't of the Interior* 2012 WL 1033576 (S.D. Cal. Mar. 27, 2012) ....... 20
*Vinson v. Washington Gas Light Co.*
   321 U.S. 489 (1944) .......................................................................... 16
*Wilkerson v. Martin Marietta Corp.*
   171 F.R.D. 273 (1997) ...................................................................... 25

## **STATUTES:**

28 U.S.C. § 1331 .................................................................................... 21

28 U.S.C. § 1332 .................................................................................... 21

42 U.S.C. § 2000e-5(b) ...................................................................... 4,5,7

42 U.S.C. § 2000e-5(f)(1) ...................................................................... 13

42 U.S.C. § 2000e-5(k) ........................................................................ 24

42 U.S.C. § 2000e-8(b) ............................................................................ 9

Cal. Evid. Code § 413 ............................................................................ 15

Cal. Gov't Code § 12963 ...................................................................... 5, 7

Cal. Gov't Code § 12965(a) .............................................................. 5,7,13

Fed. R. Civ. P. 23 (e)(2), (e)(4) ............................................................ 24

Fed. R. Civ. P. § 24(a)(1) ........................................................................ 4

# I.    INTRODUCTION

Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC" or "Commission") submits this Opposition to the California Department of Fair Employment and Housing's ("DFEH") Motion to Intervene (the "Motion"). (ECF No. 24-1.) DFEH's filing relates to an enforcement action the Commission filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII") alleging that Defendants Activision Blizzard, Inc., Blizzard Entertainment, Inc., Activision Publishing, Inc., King.com, Inc., and their subsidiaries ("Defendants"), subjected a class of aggrieved employees to sexual harassment, pregnancy discrimination and related retaliation in violation of Title VII. (ECF No. 1.) EEOC and Defendants (the "Parties") have entered into a proposed Consent Decree (ECF No. 11-1 (the "Decree")), which, through its Motion, DFEH seeks to undo, potentially derailing relief for hundreds of individuals.

The Court should deny DFEH's motion for several reasons. DFEH lacks standing, under Rule 24 and controlling legal precedent, to intervene and request the extreme relief it seeks. No federal statute confers upon DFEH the right to intervene; the operative statute that governs this litigation – Title VII – specifically contemplates that DFEH's remedy in a conflict with EEOC is the contractual dispute resolution mechanisms in the agencies' Worksharing Agreement. DFEH has not exhausted these mechanisms. Further, DFEH lacks a basis to otherwise intervene as of right under Rule 24(a) as the entry of the proposed Decree will not affect its legitimate interests in enforcing state law in any way.

Lacking an absolute right to intervene, DFEH should be denied its request to intervene on a permissive basis because it cannot meet the threshold requirements of Rule 24(b) and its intervention will seriously prejudice and delay the Parties. DFEH also failed to follow the procedural requirements for filing a motion to intervene under Rule 24(c), leading to confusion regarding the nature of the intervention and scope of the relief it seeks. DFEH appears to seek to intervene not just as an objector or for a "limited" purpose, as it represents in its motion, but to ask for extraordinary relief, including that the settlement be undone so that it can be renegotiated with DFEH. This extreme relief requires a strong

1  showing of harm to its legitimate interests, which DFEH has not made.

2       For all the reasons herein, DFEH's motion should be denied by the Court.

3  **II.  FACTUAL AND PROCEDURAL SUMMARY**

4       In February 2018, the EEOC received an anonymous complaint from a Human

5  Resources employee of Defendant Blizzard Entertainment, Inc. alleging, among other

6  things, that a hostile work environment based on sex existed in Defendants' workplaces.

7  Declaration of Rosa Viramontes ("Viramontes Decl.") ¶ 2. On September 26, 2018, one of

8  the EEOC's Commissioners, Chai R. Feldblum, filed a Commissioner's Charge, as

9  authorized by 29 C.F.R. § 1601.11, which opened an investigation into the allegations

10  raised in the anonymous complaint. *Id.,* ¶ 3. In October 2018, about one month after the

11  Commission filed its Charge, DFEH filed a Director's Complaint against Blizzard

12  Entertainment, Inc. and later added entities Activision Blizzard, Inc. and Activision

13  Publishing, Inc. Declaration of Janette Wipper In Support of Motion to Intervene ("Wipper

14  Decl.") at ¶ 3.

15       At that time, EEOC and DFEH had a Worksharing Agreement in place, as authorized

16  by 42 U.S.C. § 2000e-8, which delineated how investigations were to be handled by and

17  between the agencies. Viramontes Decl. ¶¶ 4–7. This Worksharing Agreement gave EEOC

18  the right to investigate all charges filed by its own Commissioners as well as first-in-time

19  charges. *Id.,* ¶¶ 8-9; Declaration of Christine Park-Gonzalez ("Park-Gonzalez Decl.") ¶ 6.

20  In the spirit of cooperation and efficiency, however, EEOC met with DFEH to discuss

21  dividing the responsibility so that each agency would investigate different claims. Park-

22  Gonzalez Decl. ¶ 6. After months of negotiations, the agencies agreed in writing in 2020

23  that, among other terms, EEOC would investigate harassment allegations and that DFEH

24  would investigate discrimination claims, such as pay and promotion claims (the

25  "Interagency Agreement"). Viramontes Decl. ¶¶ 12-15, Exs. A-C. In this agreement,

26  DFEH explicitly agreed *not* to investigate harassment claims. *See id.,* ¶ 14, Ex. C. In

27  reliance on the Interagency Agreement, EEOC narrowed the scope of its investigation to

28  sexual harassment and related retaliation, relinquishing its right to investigate federal pay

and promotion claims. *Id.,* ¶ 15.

On June 15, 2021, EEOC completed its approximately three-year-long investigation and issued its findings in a Letter of Determination. Viramontes Decl. ¶ 24. Pursuant to the Interagency Agreement, EEOC sent its Letter of Determination to DFEH and invited DFEH to participate in a potential resolution as it entered into statutorily mandated conciliation with the Defendants on or about June 23, 2021. *Id.,* ¶¶ 24, 26. The EEOC did not receive any response from the DFEH before, on or about July 20, 2021, DFEH filed a Complaint in state court. *Id.,* ¶¶ 29-30. DFEH's Complaint includes a sexual harassment claim. Declaration of Jahan Sagafi In Support of Motion to Intervene ("Sagafi Decl."), ¶ 4, Exh. A (DFEH Complaint) at ¶¶ 46-56, 99-108, 123-130. As acknowledged by DFEH in its *ex parte* motion to intervene, conciliations are strictly confidential under federal law. ECF No. 13-12, at p. 13 ("[C]onciliations are confidential under Title VII, 42 U.S.C. 2000e-5 and 2000e-8"). DFEH knew when it filed its lawsuit that EEOC was in conciliation. Viramontes Decl., ¶¶ 26, 30-31. By filing its state court lawsuit and becoming an opposing party in public litigation, DFEH lost the ability to legally participate in conciliation, as Defendants did not waive their right to confidentiality. *Id.*, ¶¶ 34-36. Only approximately one week after DFEH filed its lawsuit did it first contact the EEOC seeking to "coordinate." *Id.*, ¶ 31, Ex. I.

EEOC proceeded with conciliation as required under Title VII, attending multiple sessions with a private mediator and engaging in extensive negotiations with Defendants. Declaration of Taylor Markey ("Markey Decl.") ¶ 2. These efforts led to a comprehensive agreement, which provides for significant injunctive relief aimed at reforming Defendants' culture and practices and an $18 million class fund available to potential claimants nationally for potential claims going back to September 2016, which is the full temporal scope of the EEOC's Commissioner's Charge. *Id.,* ¶ 3. The proposed Decree was approved by the EEOC's Office of General Counsel through normal procedures. *Id.*

## II.  LEGAL ARGUMENT

### A. Intervention As of Right Under FRCP 24(a) Should be Denied Because No

**Federal Statute Confers The Right Upon DFEH to Intervene and DFEH Lacks a Legally Cognizable Interest in This Federal Litigation.**

1. <u>DFEH Cannot Meet the Requirements of Rule 24(a)(1) Because No Federal Statute Confers the Right Upon DFEH to Intervene.</u>

To determine whether a proposed intervenor should be permitted to intervene as of right under the first prong of Rule 24 (a), the court must consider whether a *federal* statute confers an unconditional right to intervene. Fed. R. Civ. P. 24(a)(1) ("the court must permit anyone to intervene who [] is given an unconditional right to intervene by a *federal* statute") (emphasis added).[1] Title VII contains specific provisions regarding intervention in EEOC enforcement actions. *See* 42 U.S.C. § 2000e–5(f)(1). These provisions do not confer a right to intervene upon state civil rights agencies such as DFEH as they do for individuals who file a Charge of Discrimination with the EEOC. *Id.* (conferring an absolute right to intervene upon Charging Parties). Congress could have provided for intervention rights for state agencies, as it did for Charging Parties, but it did not.

Instead, Congress expressly addresses the role of state agencies in other provisions of Title VII, clearly viewing their role as one of "cooperat[ion]" with EEOC investigations, pursuant to mutually agreed upon worksharing agreements to promote effective enforcement of Title VII. 42 U.S.C. § 2000e-8 (Commission *may* enter into worksharing agreements with state agencies) (emphasis added); *see also Green v. Los Angeles Cty. Superintendent of Sch.*, 883 F.2d 1472, 1477 (9th Cir. 1989) ("Congress has authorized the EEOC to cooperate with state and local agencies by entering into 'written agreements' with those agencies in order to promote 'effective enforcement' of Title VII.").[2] These

---

[1] To the extent that DFEH is arguing it can intervene on the basis of Cal. Gov. Code § 12930(h), which purports to confer upon DFEH the power to litigate Title VII claims, this argument is irrelevant. This is not a federal statute as required by Rule 24(a)(1). DFEH has not brought a Title VII claim in either state or federal court.

[2] DFEH cites to the provisions of Title VII under which EEOC accords substantial weight to final findings and orders made by state civil rights agencies, 42 U.S.C.A. § 2000e-5(b), and under which state civil rights agencies are permitted to investigate charges upon timely request to the EEOC, § 2000e-5(d), as evidencing a general Congressional intent that

worksharing agreements are the practical expression of the federalist principles embodied in Title VII and delineate how investigative work—the necessary prerequisite for either agency to resolve or litigate a case—will be allocated between federal and state agencies. Cal. Gov't Code §§ 12963, 12965(a) (DFEH required to investigate claim before mediating and/or litigating); 42 U.S.C.A. § 2000e-5(b) (EEOC required to investigate claim before conciliating and/or litigating). The particular Worksharing Agreement between EEOC and DFEH includes an agreement between the agencies that any dispute will be resolved under its dispute resolution mechanism, not before a Court. Wipper Decl., ¶ 6, Ex. A (Worksharing Agreement) at § VI.E (providing that any dispute as to the "implementation or application" of the Worksharing Agreement shall be submitted in writing to the Director for the EEOC Office of Field Programs for dispute resolution). DFEH has not exhausted this mechanism.

> i. *DFEH Agreed Not to Investigate Harassment Allegations and Now Paradoxically Seeks to Block Claimants from Releasing Harassment Claims Without Its Approval.*

As DFEH acknowledges, the Worksharing Agreement between the EEOC and DFEH governed the investigation of this case. Mot. at 7. As DFEH also acknowledges, it is "customary" for the EEOC and state civil rights agencies to enter into sub-agreements pursuant to the terms of their worksharing agreements under which they decide how to proceed on particular cases in which they possess overlapping jurisdiction. Wipper Decl. ¶ 5. Although DFEH suggests in some parts of its Motion that the investigative work in this case was split by statute[3] (with EEOC to investigate violations of Title VII and DFEH to

_____

EEOC will defer to state civil rights agencies. Mot. at 5. Rather, these provisions spell out how Congress intended the agencies to cooperate in a spirit of federalism in specific circumstances.

[3] DFEH suggests that this Court must accept factual claims such as this one in considering its Motion. DFEH Mot. at 14. But "[c]ourts are to take all well-pleaded, nonconclusory allegations in the motion to intervene … as true **absent sham, frivolity or other objections.**" *Sw. Cntr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001)(emphasis added). Here, EEOC has objected to much of the evidence in support of

investigate violations of FEHA), Mot. at 7, the agreement was clearly to split the investigation by claim type (with EEOC to investigate sexual harassment and DFEH to investigate sex discrimination), as it acknowledges in other parts of its Motion.[4] Viramontes Decl. ¶ 14(f), Ex. C (email from DFEH stating DFEH "is not conducting the investigation of the harassment allegations in this matter"); *see also* Mot. at 16 (acknowledging that "the agreement provided that the EEOC would take the lead in investigating harassment claims").

EEOC would not have agreed to split the investigation by statute given that such a division of labor would be highly inefficient and impractical. Since sexual harassment is actionable under both Title VII and FEHA, an agreement to divide the investigation by statute would have required individuals who experienced sexual harassment to share their stories with two investigations, potentially leading to unnecessary re-traumatization.[5] Such

---

DFEH's Motion and has begun meet and confer efforts regarding a Motion to Strike. EEOC and DFEH are meeting and conferring to determine whether the deficiencies in evidence can be cured without further motion practice. Declaration of Ella Hushagen ("Hushagen Decl.") ¶ 5.

[4] DFEH suggests in its Motion that the inclusion of pregnancy discrimination and sexual harassment-related and pregnancy-related retaliation in EEOC's Action violates the agreement, Mot. at 16, but these claims were not included in the Interagency Agreement. Viramontes Decl. ¶¶ 13-14.

[5] Additionally, no agreement would have been necessary to split investigative work by statute, since that is the default arrangement. DFEH General Counsel Janette Wipper and EEOC Los Angeles District Director Rosa Viramontes negotiated the split of investigative work for several months before reaching the existing agreement to split the investigation by claim type. Viramontes Decl. ¶¶ 13-14. Ms. Wipper's allegation that EEOC merely offered the split and DFEH "declined" based on Trump administration conciliation regulations, *see* Wipper Decl. at ¶¶ 9-10, is revisionist, at best. Ms. Wipper expressly agreed that DFEH would not investigate harassment. Viramontes Decl., ¶14(f). Only a few months later, she expressed concerns regarding the conciliation regulation, but never stated that therefore the agreement was off or that DFEH would now be conducting an investigation into harassment. Viramontes Decl., ¶¶ 20-23, 25-28 Exs. F-H. DFEH and Ms. Wipper continued to collaborate with EEOC on other cases subject to the conciliation regulation, making the raising of these moral scruples in only one investigation inconsistent. Viramontes Decl. ¶ 23.

an agreement would also contravene the decades-long practice of the two agencies. EEOC and DFEH defer entire cases and claims to one another on a regular basis so that they are not duplicating one another's work. Viramontes Decl. ¶ 6. As a practical matter, whichever agency investigates a claim can provide claimants with optional general releases of all claims based on the same factual predicate. Therefore, splitting investigative responsibilities here came with the ability to provide claimants with the *option* of signing a general release of all claims based on the same factual predicate. This benefits both agencies, as they can offer both harmed individuals and employers peace and finality with respect to a particular claim.

DFEH argues that the agreement to split the investigation between harassment and discrimination has no further consequences. But legal consequences do flow from this division of labor. The Worksharing Agreement specifically states: "***Normally, once an agency begins an investigation, it resolves the charge.*** Charges may be transferred between the EEOC and the [DFEH] within the framework of a mutually agreeable system. ***Each agency will advise Charging Parties that charges will be resolved by the agency taking the charge*** except when the agency taking the charge lacks jurisdiction or when the charge is to be transferred in accordance with Section III (DIVISION OF INITIAL CHARGE-PROCESSING RESPONSIBILITIES)." Wipper Decl., ⚑ 6, Exh. A (Worksharing Agreement) at § II.C (emphasis added).[6] This provision of the Worksharing Agreement is highly practical, as an agency cannot resolve or litigate a claim it has not first investigated. Both agencies are under a statutory obligation to investigate and make findings prior to initiating settlement discussions and litigation. Cal. Gov't Code §§ 12963, 12965(a); 42 U.S.C.A. § 2000e-5(b). Likewise, it is unclear why an agency would investigate a claim that it is not able to litigate or resolve.

---

[6] Here, neither of the exceptions to Section II.C applies as EEOC possesses jurisdiction over sexual harassment claims under Title VII and Section III provides that EEOC should handle both all Commissioner's Charges and charges first filed with EEOC, such as the charge at issue in this case. Wipper Decl., ¶ 6, Ex. A (Worksharing Agreement) at § III.A.

DFEH confuses the issue by stating that the EEOC is seeking to pursue or resolve FEHA claims; the EEOC is not.[7] The EEOC is seeking to: 1) resolve its own Title VII claims against Defendants and 2) set up a mechanism under which individuals have a choice whether or not to fully release their own claims, by contracting with Defendants in exchange for settlement funds, in which there will be no penalty of any kind for deciding not to do so. Such a release is not only not unusual, it is a standard practice in private and public settlements alike. The ability to do this is clearly contemplated by the agreement to divide the investigation between the agencies. The fact that DFEH apparently secretly investigated harassment without informing the EEOC, contrary to the agencies' agreement, or filed a harassment claim without investigating harassment, does not mean that claimants will now need to wait for the resolution of DFEH's action to fully recover for their harassment claims or that claimants can recover twice on the same factual predicate. Any other interpretation of the Interagency Agreement would be entirely impractical and threaten EEOC's authority to resolve claims pursuant to worksharing agreements around the country, since the provisions at issue here are the same as those in EEOC's Model Worksharing Agreement, §§ II.C & III.A.1, utilized by field offices nationwide to collaborate with state agencies. Req. for Judicial Notice, Ex. B.

      ii.  *The Dispute Resolution Mechanism Provided for in the Worksharing Agreement Provides the Appropriate Forum and Remedy for DFEH's Concerns, Not this Court.*

The Worksharing Agreement provides that the proper remedy for disagreements "regarding the implementation or application" of the Worksharing Agreement is the

---

[7] Even if the Decree itself released all federal and state claims based on the same factual predicates underlying EEOC's Action—which it does not—it would be firmly within this Court's power to sign and thereby order. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) ("The weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented *and might not have been presentable in the class action*.") (citations omitted); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 748 (9th Cir. 2006).

invocation of dispute resolution mechanisms. Wipper Decl., Exh. A (Worksharing Agreement) at § VI.E (providing that any dispute shall be submitted in writing to the Director for the EEOC Office of Field Programs for dispute resolution). DFEH's own arguments indicate this is a contractual dispute. *See* Mot. at 16; Wipper Decl. at ¶¶ 8–11. Although DFEH agreed to resolve disputes through this mechanism, it has not sought to do so. Instead, DFEH has brought these complaints to this Court. This is not the proper forum for any argument DFEH makes regarding the implementation or application of the Worksharing Agreement to this case. Congress, in Title VII, contemplated that disputes such as those raised by DFEH would be resolved pursuant to mutually agreed upon contractual provisions. 42 U.S.C. § 2000e-8(b). DFEH attempts to make an end-run around the terms of the Worksharing Agreement by bringing this contractual dispute directly to this Court.

For the foregoing reasons, DFEH cannot meet the first prong of the Rule 24(a) analysis, since the federal statute at issue, Title VII, does not contemplate its intervention and instead contemplates another avenue for relief which has not been exhausted. *See United States v. State of Or.*, 913 F.2d 576, 587 (9th Cir. 1990) (affirming district court decision that intervention was "inappropriate" where the issue was "directly regulated by [another body] and [applicant-intervenor's] proper remedy was with that body").

2. DFEH Cannot Satisfy Rule 24(a)(2) Because it Lacks a Legally Cognizable Interest in this Litigation, EEOC Adequately Represents Any Interest It Does Possess, and Its Motion is Untimely.

"In the absence of a statute conferring an unconditional right to intervene, Federal Rule of Civil Procedure 24(a)(2) governs a party's application for intervention as of right in the federal courts." *League of United Latin Am. Citizens v. Wilson (LULAC)*, 131 F.3d 1297, 1302 (9th Cir. 1997). The Ninth Circuit requires would-be intervenors to make a showing of four elements to intervene as of right: "(1) [the would-be intervenor] has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing

9

parties may not adequately represent the applicant's interest." *Perry v. Schwarzenegger*, 630 F.3d 898, 903 (9th Cir. 2011) (quotations omitted).

Generally, an applicant-intervenor demonstrates a significant protectable interest if: "1) the interest is protected by law and 2) there is a relationship between the legally protected interest and the plaintiff's claims." *Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*, No. 09–CV–00369–PK, 2010 WL 774037, at *7 (D. Or. Mar. 2, 2010) (citing *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)). The second prong is met "if the resolution of the plaintiff's claim actually will affect the applicant." *Id.*; *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 398 (9th Cir. 2002).

i.   *DFEH Lacks a Legally Cognizable Interest in this Litigation.*

DFEH lacks a legally cognizable interest in this federal litigation under Title VII. In grasping at ways to show that this Decree would affect its interests, DFEH makes the following assertions: 1) that the proposed Decree waives state law claims or that individuals are required to waive state law claims under the proposed Decree; 2) that the proposed Decree's provision of private counsel at no cost is somehow improper and that DFEH attorneys should be the ones providing advice to eligible claimants; and 3) that the proposed Decree's anti-retaliation provisions call for the destruction of evidence relevant to DFEH's pending lawsuit. *See generally* Mot. Each of these claims is false or misleading. None indicate that DFEH has an interest to justify intervening in this matter.

1)     **Voluntary Claims Process and Individual Releases**

The proposed Decree contains a comprehensive, transparent, and fair claims process and does not release *any* claims, except those held by the EEOC as Plaintiff under Title VII. Decree § IV.A. If the proposed Decree is signed, it will release the EEOC's Title VII claim and leave every other existing claim intact. Each potential class member will have a choice whether to release their individual claims and collect from the Class Fund under the proposed Decree. If any individual class member does not want to file a claim, does not want to collect from the Class Fund, or does not want to release her claims, she is not required to do so. Her claim will not be waived by inaction; like all of EEOC's consent

decrees, this is an opt-*in* Decree, not an opt-*out* Decree.

DFEH misreads the release provision of the Decree, which clearly and unequivocally releases only EEOC's Title VII claims for sexual harassment, pregnancy discrimination and related retaliation. Decree § IV.A ("The Parties agree that this Decree completely and finally resolves all allegations, issues, and claims *raised by the EEOC* against Defendants made *in the Action*, including Charge Number 480-2018-05212.") (emphasis added). EEOC only raised Title VII claims based on sexual harassment, pregnancy discrimination and related retaliation in the Action. (ECF No. 1.) To interpret this language as if it releases claims on behalf of individual class members ignores the lengthy claims administration section of the proposed Decree which contemplates a system whereby class members will release their own claims by choice and with representation.[8] Decree § IX.B.

DFEH criticizes the EEOC for supposedly not following the guidelines in its Regional Attorney's Manual by allowing individuals to fully release their own claims. Mot. at 9. First, the Manual's introduction explicitly states that the agency's compliance with the guidelines is not judicially reviewable, which courts have respected. Req. for Judicial Notice, Exh. C, Regional Attorney's Manual ("The Manual shall not be construed to create any right to judicial review involving the compliance or noncompliance of the EEOC or its employees with any matter dealt with in the Manual."); *EEOC v. Grays Harbor Cmty. Hosp.*, 791 F. Supp. 2d 1004, 1006, 1009 (W.D. Wash. 2011) (rejecting argument that EEOC should have consulted parties about a settlement pursuant to provisions in its Regional Attorney's Manual, instead emphasizing EEOC is "master of its case"). The EEOC is the expert on the implementation of its own Manual. DFEH overreaches by attempting to instruct a federal agency on its own policies and fails to grasp them.

Contrary to DFEH's claim, EEOC followed its Manual. DFEH selectively quotes the Manual, including the provision that releases cannot include claims beyond Title VII,

---

[8] This process was also described to DFEH's counsel at length during meet and confer efforts prior to its filing of the motion; as such, the EEOC is confused as to why DFEH continues to misunderstand and misconstrue this process. Markey Decl. ¶ 6.

but omitting the very next sentence in which the Manual explicitly allows releases of claims beyond Title VII if the eligible claimant is represented by counsel, as will be the case here. Sagafi Decl., Exh. D, Regional Attorney's Manual § XI.A(d) ("A claimant represented by private counsel can agree to a broader waiver . . . As indicated in the preceding paragraph, a represented claimant can agree to a broader waiver. However, this requires actual representation.").

Ultimately, DFEH's interest in enforcing state law will not be in any way affected if the Decree is entered, EEOC waives its Title VII claim and individuals are presented with a choice to fully release sexual harassment, pregnancy discrimination and related retaliation claims. *See Or. Nat. Desert Ass'n*, 2010 WL 774037, at *7 (applicant for intervention must show "the resolution of the plaintiff's claim actually will affect the applicant"). To the extent DFEH is claiming an interest in forcing individuals to recover in its action only, even if those individuals would prefer to release their own claims, this is not a legitimate or legally cognizable interest.

### 2)   Provision of Private Counsel at No Cost

DFEH criticizes the Decree term regarding the provision of independent counsel to potential claimants to advise them regarding releases and asks that its own attorneys be allowed to advise potential claimants regarding whether to sign a release. It would be highly inappropriate for either EEOC or DFEH to advise individuals regarding the releases, because both agencies have an institutional interest that may diverge from the interests of the individuals. *See* Cal. Rule of Pro. Conduct 4.3(a) ("If the lawyer knows or reasonably should know that the interests of the unrepresented person are in conflict with the interests of the client, the lawyer shall not give legal advice to that person, except that the lawyer may, but is not required to, advise the person to secure counsel.").

In contrast to the approach in the proposed Decree, DFEH sent an email to employees of the Defendants, advising them that obtaining their own counsel would be "misleading or confusing" and requesting that individuals contact DFEH if a lawyer sought

to represent them individually.[9] This conduct is at odds with both state and federal law, under which aggrieved individuals have an absolute right to their own counsel related to governmental antidiscrimination enforcement actions such as this one. Cal. Gov't Code § 12965(a); 42 U.S.C. § 2000e-5(f)(1).In fact, in meet and confer efforts surrounding the instant Motion, counsel for DFEH privately expressed concerns about individuals receiving independent counsel that were the exact opposite of the concerns publicly expressed in its Motion. Rather than concern that individuals will be *inadequately* represented, DFEH expressed concern that counsel not controlled by DFEH might offer *further* representation to claimants that could "pull energy" away from their state court action. Markey Decl. ¶ 8.

The independent counsel provision in the proposed Decree is designed to safeguard individuals' rights by providing a neutral third party, whom the individuals have a right to select, and who represents *their* interests. Similar provisions requiring Defendants to pay for advice of private counsel for potential claimants for similar amounts of time or fees have been routinely approved by courts in EEOC consent decrees.[10] There is no evidence

---

[9] *See* Req. for Judicial Notice, Ex. A, Ex. 2 ("We also wanted to follow up and alert you that you may be contacted by private attorneys seeking to become your attorney for this case. It is unnecessary and may be misleading or confusing. A private attorney would have to file suit in your name or get the court's permission for you to intervene as a named plaintiff in this matter. Please let us know if any attorney attempts to solicit your business for this case.").

[10] *See, e.g.*, *EEOC v. La Rana Hawaii, LLC dba Senor Frog's, et al.*, No. 1:11-cv-00799 (D. Haw. 2013), ECF No. 86 at 7 ("Defendant and each Claimant have entered into a separate and independent release agreement, to which the EEOC is not a party. Defendant agreed to pay an additional $250.00 per Claimant for private counsel to review and advise each Claimant regarding the separate agreement"); *EEOC v. Maurizio's Trattoria Italiana, LLC*, No. 3:18-cv-338-MMA-BLM (S.D. Cal. 2020), ECF No. 30 at 6 (provided $300 for one hour of counsel); *EEOC v. Alia Corporation dba McDonalds*, No. 1:11-CV-01549 LJO BAM (E.D. Cal. 2013), ECF No. 39 at 4 ("Defendant will pay up to $500.00 for private counsel to review and advise Charging Party regarding the separate and independent agreement."); *EEOC v. Oceanic Time Warner Cable LLC dba Spectrum, et al.*, Case No. 1:18-cv-00357 (D. Haw. 2020), ECF No. 50 at 43 (release included provision for $250 for

that these limits on paid attorney time or fees have unfairly deprived any individual of the right to effective counsel or the ability to make a knowing and voluntary release of claims, and EEOC's involvement in the referral of attorneys to eligible claimants will eliminate any possibility of such unfairness.

There is nothing improper, as DFEH suggests (Mot. at p. 10), with Defendants paying private counsel; this was negotiated to ensure concerns about cost or financial hardship would not deter potential claimants from being fully informed by independent counsel regarding the release of claims and their rights. The private attorneys will be bound, as all members of the California bar are, to follow California Rule of Professional Conduct Rule 1.8.6, which allows payment of an attorney by a third party if there is no interference with the attorney's professional judgment, information is kept confidential, and the payment is disclosed to the client. Activision and its counsel are not permitted to be present during consultations with eligible claimants. As with the individual's choice to fully release claims, an individual's choice to receive the advice of counsel does not implicate DFEH's legitimate or legal interests. *Or. Nat. Desert Ass'n*, 2010 WL 774037, at \*7 (interest grounding intervention *must* be one "protected by law").

### 3) Anti-Retaliation Provisions Requiring Alteration of Personnel Files

To protect potential claimants from future retaliation, the proposed Decree requires that documents referencing the allegations be segregated from their personnel files—*not destroyed*. Decree § X.A. In fact, the Decree requires Defendants to retain all documents related to compliance with the Decree in its recordkeeping requirements, which would apply to these documents. § XII.J.H. Defendants have an independent legal obligation not

---

private counsel); *EEOC v. Discovering Hidden Hawaii Tours, Inc.*, No. 1:17-cv-00067 (D. Haw. 2018), ECF No. 38 at 8 (release provided $250 for private counsel); *EEOC v. Big Lots Inc.*, No. 2:08-cv-06355 (N.D. W.Va. 2017), ECF No. 36 at 6–7 (provided $200 for private counsel).

14

to destroy documents relevant to a pending lawsuit under laws against spoliation.[11] Cal. Evid. Code § 413. These files would be available in response to discovery requests by DFEH in its state court action.

With respect to the provision under which Defendants will change records of terminations of eligible claimants to resignations, Decree § X.C, this too is intended to protect individuals in their future attempts to find employment, so that they do not appear to have been fired for cause. There will be a record of the fact that such a change has been made, which DFEH can seek in its lawsuit. These anti-retaliation provisions are standard in EEOC Decrees that have been approved by this Court.[12] These provisions intended to benefit workers in no way impact DFEH's ongoing lawsuit.

In sum, DFEH's inability to point to any provision of the proposed Decree that, if signed, would interfere with its legitimate interests in enforcing state law is fatal to its argument that it is entitled to intervene as of right in this action.

       ii.   *DFEH's Other Criticisms and Requests for Relief Bely the Notion that It Intervenes for a "Limited" Purpose.*

The rest of DFEH's complaints regarding the substance of the proposed Decree

---

[11] That this provision does not require destruction and that other provisions and independent legal obligations prevent Defendants from destroying documents was explained to DFEH in the meet and confer efforts prior to the filing of its Motion. Markey Decl. ¶ 6.

[12] *See, e.g.*, *EEOC v. Cardinal Health 200, LLC., et al.*, No. 5:19-cv-00941 (C.D. Cal. May 21, 2019), ECF No. 90 (requires Defendant AppleOne to "remove from its employment any records, of negative performance actions including discipline and terminations that the EEOC reasonably believes are related to the allegations in this Action," "remove from its employment files reference, if any, to Claimants' participation in this Action," "to the extent that Defendant must keep records of this Action in order to effectuate this Decree, such records shall be maintained separately from Defendant's employment records"); *EEOC v. Kimco Staffing Servs., Inc., et al.*, No. 5:19-cv-01838 (C.D. Cal Sept. 25, 2019), ECF No. 59 ("remove from the personnel file for Charging Party any references to the charges of discrimination filed against Defendants or Charging Party's participation in this Action," "remove from Defendant Kimco's files any reference to discipline of Charging Party or her 'termination' for 'performance,'" "to the extent that Defendant Kimco must keep records of the charges of discrimination or in order to effectuate this Decree, such records must be maintained separately from Charging Party's personnel files").

essentially leap-frog the Court's discretion regarding whether to allow DFEH's intervention and go straight to making the objections it would make if allowed to intervene, including: 1) that EEOC chose not to include post-settlement documents such as the Notice of Settlement and Claim Form; 2) that EEOC is required to meet Rule 23 requirements for settlement approval such as providing a calculation of maximum claim value and number of expected claimants; 3) that the extensive injunctive relief achieved in the Decree is insufficient; 4) that the monetary relief of $18 million is insufficient; and 5) that the proposed Decree's charity and diversity and inclusion funds are somehow improper. *See generally* Mot. These arguments are at best premature, as DFEH has not been granted intervention. In fact, these arguments go far beyond those it would be appropriate for DFEH to make even were the Court to grant its intervention; the purpose of Rule 24 intervention is the protection of the would-be intervenor's interests, not a vehicle for any and all criticisms of the parties' actions. *United States v. Blue Lake Power, LLC*, 215 F. Supp. 3d 838, 844 (N.D. Cal. 2016) ("'[A]n intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding.'" (quoting *Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944)).

DFEH claims that its purpose in intervening is "limited" and will not result in delay and prejudice to the parties, but also asks this Court to allow a comment period of unknown duration for DFEH and employees before the proposed Decree can be entered and to order EEOC to coordinate settlement efforts with DFEH (even though the EEOC's settlement negotiations are completed). Mot. at 3. This is tantamount to an admission that DFEH wants to require the EEOC to reopen its settlement negotiations with Defendants, which is truly extraordinary relief. DFEH counsel stated in meet and confer discussions that one possible outcome of its intervention was that the settlement would fall apart and be litigated for six months at which point DFEH would ask for a seat at the negotiating table. Hushagen Decl. ¶ 4. This is a far cry from intervention for a "limited" purpose. *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*, 62 F.3d 1217, 1219 (9th Cir. 1995)

16

(defining a "limited" intervention as one where the would-be intervenor "does not wish to intervene to substantively attack the underlying settlement"); *United States v. State of Wash.*, 86 F.3d 1499, 1505 (9th Cir. 1996) (refusing to consider applicant-intervenor's request for intervention under the standards for "limited" intervention where the relief requested included participating in future proceedings and being given a "voice" in future negotiations).

To the extent that DFEH seeks changes to the proposed Decree through its objections to the substance of the Decree and its extraordinary requests for relief, it is seeking relief different from that sought by EEOC as Plaintiff and must demonstrate Article III standing. *Town of Chester, N.Y. v. Laroe Ests., Inc.*, __ U.S. __, 137 S. Ct. 1645, 1648 (2017) ("[A]n intervenor must meet the requirements of Article III if the intervenor wishes to pursue relief not requested by a plaintiff. . . . For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right."). EEOC has nowhere requested the relief sought by DFEH including declaratory relief, a comment period, a fairness hearing, and mandatory renewed settlement negotiations. Mot. at 3. Despite making these further requests for relief, DFEH does not even address Article III standing in its Motion. DFEH cannot have it both ways, seeking to be granted intervention under the relaxed standards of a "limited" intervenor, only to turn around and seek relief that requires a much greater initial showing.

### iii. *EEOC Can Adequately Represent Any Interest in this Action DFEH Does Possess.*

It is only necessary to analyze whether EEOC adequately represents DFEH's interests if the Court determines DFEH has an interest in this federal litigation, which EEOC argues above it does not. To the extent this prong needs to be reached, EEOC is able to adequately represent DFEH's interest in protecting Californians. "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003); *see also Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007) ("[W]hen

the representative party is a governmental body charged by law with protecting the interests of the proposed intervenors, the representative is presumed to adequately represent their interests unless there is a showing of gross negligence or bad faith."). Here, the Commission and DFEH share the ultimate objective of protecting individuals from unlawful discrimination and have maintained a Worksharing Agreement for decades. *Viramontes Decl.* ¶ 6. In fact, as DFEH has conceded in communications regarding this matter, the two agencies have a common mission and purpose and common "equal employment opportunity authorities." *Id.,* ¶ 14(a), Ex. A.

DFEH's criticisms of the substance of the Decree are criticisms of the EEOC's settlement strategy, not arguments about its own putative interest in the outcome of this case. The specific issues raised by DFEH, such as the amount of the Class Fund, the inclusion of a *cy pres*, and the injunctive relief sought and agreed to, are "merely differences in strategy, which are not enough to justify intervention as a matter of right." *City of Los Angeles*, 288 F.3d at 402–03; *Nw. For. Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996) (where a would-be intervenor "took a 'different . . . position' than the [party to the action] did with respect to the district court's decision to enter a permanent injunction" court considered this "only a difference in strategy[,]" insufficient to show that party did not adequately represent would-be intervenor's interests); *see also Butler, Fitzgerald & Potter v. Sequa Corp*., 250 F.3d 171, 181 (2d Cir. 2001) (*citing United States v. Yonkers Bd. of Educ*., 902 F.2d 213, 218 (2d Cir. 1990)) ("If disagreement with an existing party over trial strategy qualified as inadequate representation, the requirement of Rule 24 would have no meaning.").

### iv. *DFEH's Motion is Untimely*

"A party seeking to intervene must act as soon as he knows or has reason to know that his interest might be adversely affected by the outcome of the litigation." *State of Or.*, 913 F.2d at 589 (quotations omitted). Timeliness of intervention is also judged in light of the stage of the proceedings and whether intervention at a late stage would expand the scope of the existing case. *Id.* at 588 (it was not abuse of discretion for district court to find

18

intervention untimely where applicant-intervenor wanted to renegotiate settlement because "it [was] too late in the proceeding to change the nature of the suit so dramatically"). DFEH seeks to intervene after the parties have already reached a settlement, awaiting approval by this Court. *See Aleut Corp. v. Tyonek Native Corp.*, 725 F.2d 527, 530 (9th Cir. 1984) (even "intervention on the eve of settlement may be untimely").

DFEH was invited to coordinate with EEOC several times during and after EEOC concluded its investigation, including most recently when EEOC notified DFEH it was entering conciliation talks, but DFEH did not accept the offer. Viramontes Decl. ¶¶ 26-29. DFEH knew EEOC was entering conciliation prior to DFEH filing its lawsuit, but only reached out seeking to cooperate after it filed its action in state court alleging sexual harassment, which was its own strategic choice. *Id.,* ¶¶ 26, 29-31. Defendants did not waive their right to confidentiality in conciliation with respect to their adversary in public litigation. *Id.,* ¶¶ 34-35. DFEH cannot now be heard to complain that it is left out of a resolution in which it had earlier opportunities to participate. *Orange Cty. v. Air California*, 799 F.2d 535, 538 (9th Cir. 1986) (denying motion to intervene to object to a consent decree because "[t]o protect their interests, appellants should have joined the negotiations before the suit was settled.").

For the foregoing reasons, DFEH does not have an absolute right to intervene in this matter, and its intervention would jeopardize relief for the nationwide class of claimants. This Court should reject this effort to derail a settlement of Title VII claims agreed to by the federal enforcement agency tasked with enforcing Title VII.

**B. Permissive Intervention Under Rule 24(b) Should Be Denied Because DFEH Cannot Meet the Threshold Requirements and Its Intervention Will Cause Delay and Prejudice to the Parties.**

"Intervention is governed by Fed. R. Civ. P. 24, which permits two types of intervention: intervention as of right and permissive intervention." *Nw. Forest Res. Council*, 82 F.3d at 836. "An applicant who seeks permissive intervention [under FRCP 24(b)] must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has

an independent basis for jurisdiction over the applicant's claims." *Cooper v. Newsom*, 13 F.4th 857, 868 (9th Cir. 2021) (quotations omitted).[13] Here, DFEH is unable to meet the threshold requirements in order to seek permissive intervention. The Court should not exercise its discretion to permit intervention because it will delay and prejudice the existing Parties and potential claimants.

               1.  <u>DFEH Does Not Meet the Requirements for Permissive Intervention.</u>

First, "[t]he language of the rule makes clear that if the would-be intervenor's claim or defense contains no question of law or fact that is raised also by the main action, [permissive intervention] must be denied." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). Even where an applicant-intervenor establishes it has a "stake" in the outcome of an action, this is insufficient to permit intervention without a "claim" or "defense." *Valley Ctr. Pauma Unified Sch. Dist. v. Interior Bd. of Indian Appeals of U.S. Dep't of the Interior*, No. 11-cv-1260 AJB (BGS), 2012 WL 1033576, at *2 (S.D. Cal. Mar. 27, 2012).

DFEH is not seeking to litigate its FEHA claims in this forum. *See generally* Mot.; Hushagen Decl. ¶ 4. Yet DFEH argues that its FEHA claims pending in a different forum provide the basis for its "claim" under Rule 24(b), providing no case law to support the

---

[13]  Where these threshold factors are met, courts then consider a number of factors in determining whether to permit intervention, including:

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case[,] whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Perry*, 630 F.3d at 905 (quoting *Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)).

assertion that another pending lawsuit can provide the basis for intervention. Mot. at 20. In fact, case law states that, where a would-be intervenor has a pending action in another forum, it cannot use speculation about effects on that litigation to ground an interest in intervention. *See, e.g.*, *G&G Prods., LLC v. Rusic*, No. 2:15-CV-02796-RGK-E, 2019 WL 1976451, at *4 (C.D. Cal. Mar. 27, 2019) (motion to intervene denied where the existence of interest depended on speculation about the outcome of another pending lawsuit); *United States v. River Cliff Farm, Inc.*, No. 3:16–cv–1248–SI, 2016 WL 4582048, at *3 (D. Or. Sept. 2, 2016) (interest put forward was speculative and required court to rule on issues outside the scope of the action); *see also City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010) (would-be intervenor "cannot rely on an interest that is wholly remote and speculative"). DFEH also argues that its "proposed objection to the proposed consent decree" shares questions of law and fact in common with this action and the Decree. Mot. at 20. But its proposed objections are not a "claim" or "defense."

Further, this Court lacks any independent jurisdictional basis to hear DFEH's claims. *See Nw. For. Res. Council*, 82 F.3d at 839 (denying intervention for failure to state independent basis for jurisdiction); *but see Ctr. for Biological Diversity v. Lubchenco*, No. 09–04087 EDL., 2010 WL 1038398, at *9–11 (N.D. Cal. Mar. 19, 2010) (case law is "not entirely uniform as to whether an independent jurisdictional basis is an *absolute* requirement for permissive intervention") (emphasis added). All Defendants are citizens of California, as is DFEH, precluding diversity jurisdiction. 28 U.S.C. § 1332. DFEH does not assert any claim under Title VII, meaning that any claims by DFEH necessarily do not present federal questions. 28 U.S.C. § 1331. Thus, there is no independent basis for this Court's jurisdiction over the issues that DFEH is raising. The correct forum for these questions is the state court action currently pending in Los Angeles Superior Court. *United States v. Pac. Gas & Elec.*, 776 F. Supp. 2d 1007, 1019 (N.D. Cal. 2011) (denying intervention where the applicant-intervenor's "interests would not be impaired if denied intervention because it can pursue other avenues of relief"). Also, as argued above, DFEH has failed to show that this Motion is timely. Timeliness is an even stricter element for

permissive intervention than for intervention as of right. *See LULAC*, 131 F.3d at 1308 (while timeliness is a threshold requirement for both intervention as of right and permissive intervention, "[i]n the context of permissive intervention . . . we analyze the timeliness element more strictly than we do with intervention as of right").

      2.  <u>The Other Factors Courts Consider in Granting Permissive Intervention Also Weigh Against DFEH.</u>

"Even if an applicant satisfies [the] threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). "[I]ntervention can impose substantial costs on the parties and the judiciary, not only by making the litigation more cumbersome but also (and more important) by blocking settlement[.]" *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Engineers*, 101 F.3d 503, 507 (7th Cir. 1996). DFEH's intervention in this matter to continue spreading misinformation about the proposed Decree will only confuse potential claimants, prejudice the parties, and delay justice for class members.

     This Court has already heard the arguments the DFEH will make if allowed to intervene and can consider them, to the extent the Court deems appropriate, in its decision regarding whether to sign the proposed Decree. It is not necessary for DFEH to intervene and make these arguments again. *See United States v. Carrols Dev. Corp.*, 454 F. Supp. 1215, 1221–22 (N.D.N.Y. 1978), *modified*, No. 76-CV-170, 1981 WL 2184 (N.D.N.Y. Oct. 16, 1981) (denying permissive intervention generally, and also denying "limited participation" because the "purposes for granting such participation have already been achieved here since the moving parties have set forth their views in considerable detail in briefs and affidavits filed with this Court as well as in written comments submitted to the Government under the APPA. The Court does not feel that the submission of additional papers, at this time, would serve a useful purpose.").

     DFEH argues that its intervention will not delay or prejudice the existing parties. As argued above, this is belied by the extensive relief it seeks and the significant delays that would be imposed, beyond the months of delay which have already been imposed, by its

continued involvement. The individuals affected will also be prejudiced by the delay, which keeps injunctive relief from being implemented in their workplaces and monetary relief from being made available to eligible claimants. DFEH does not address the impact of its actions on individuals in Defendants' workforce who work outside the state of California and who are also entitled to the injunctive benefits of the Decree and the chance to seek monetary relief, which DFEH's California-specific action cannot provide. Further, DFEH takes a position directly adverse to the existing Plaintiff in this litigation, indicating prejudice. *Donnelly*, 159 F.3d at 412 (affirming denial of permissive intervention where "the interests of plaintiffs and the proposed intervenors '[were] in direct opposition,' resulting in prejudice to existing parties").

### C. DFEH Has Not Met the Procedural Requirements of Rule 24(c) and The Court Should Not Relax Them in These Circumstances.

Rule 24(c) requires a would-be intervenor to attach to its motion to intervene "a pleading that sets out the claim or defense for which intervention is sought." Courts in the Ninth Circuit have relaxed this requirement "[i]n narrow circumstances" and where the intervenor provides a reason it should be relaxed. *Buffin v. City & Cty. of San Francisco*, No. 15-CV-04959-YGR, 2016 WL 6025486, at *13 (N.D. Cal. Oct. 14, 2016). Here, DFEH has not addressed this procedural defect. In any event, Ninth Circuit courts typically relax the requirement only where the Court can clearly understand from the motion to intervene the purposes for which intervention is sought and the type of intervention sought. *See id.* Here, DFEH's purposes and method of intervention are unclear. It states it seeks to intervene for a "limited" purpose but seeks remedies that only a plaintiff or party could possibly request, such as the renegotiation of the Decree and a seat at the negotiating table. In the absence of clarity on these issues, the failure to include the pleading required by Rule 24(c) becomes more than a mere technical defect and provides a separate basis for the Court to deny intervention.

### D. The Extreme Remedies DFEH Seeks Impermissibly Subject EEOC to Rule 23 Requirements and Should be Denied.

DFEH requests several remedies that would essentially require EEOC to submit to

requirements applied to class counsel when seeking approval of a class settlement under Federal Rule of Civil Procedure 23(e), such as pre-entry notice and comment period for class members (§§ (e)(1)(B) & (e)(5)(A)) and a mandatory hearing (§(e)(2)). The substantive changes it seeks to make to the proposed Decree also reflect requirements of Rule 23, including providing a breakdown of how the class relief will be allocated (§(e)(2)(ii)) and including the text of agreements incidental to the settlement (§(e)(3)). Even in class cases subject to Rule 23, these requirements exist only where the proposed settlement "would bind class members" and are tailored to the context of *opt-out* settlements. Fed. R. Civ. P. 23 (e)(2), (e)(4). As described above, the process created by the proposed Decree is *opt-in*.

Rule 23(e) is designed to guard against class action abuse such as class counsel enriching themselves with attorneys' fees at the expense of class members. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (Rule 23 requires courts to be "vigilant" in looking for cases in which class counsel has allowed "pursuit of their own self-interests and that of certain class members to infect the negotiations"). EEOC brings cases in the public interest and does not receive any of the settlement fund or collect attorneys' fees so these considerations are not present. 42 U.S.C. § 2000e-5(k)(EEOC cannot be awarded attorney's fees).

EEOC and its proposed Consent Decrees are not subject to Rule 23. *See Gen. Tel. Co. of the N.W., Inc. v. E.E.O.C.*, 446 U.S. 318, 323 (1980) ("Rule 23 is not applicable to an enforcement action brought by the EEOC in its own name and pursuant to its authority under § 706 to prevent unlawful employment practices."); *accord E.E.O.C. v. Dinuba Med. Clinic*, 222 F.3d 580, 588 (9th Cir. 2000) (applying the holding of *Gen. Tel. Co. of the N.W., Inc.* because the Supreme Court reached its "conclusion without any qualifications based on the type of relief sought"); *see also E.E.O.C. v. Pan Am. World Airways, Inc.*, Nos. C–81–3636 RFP, C–81–4590 RFP, 1988 WL 224232, at *9 (N.D. Cal. June 17, 1988) (order approving settlement and consent decree and holding that EEOC's authority "in no way depends upon Federal Rule of Civil Procedure 23"). The Supreme Court has stated

24

that "forcing EEOC civil actions into the Rule 23 model would in many cases distort the Rule as it is commonly interpreted and in others foreclose enforcement actions not satisfying Rule 23 standards but seemingly authorized by § 706(f)(1)." *Gen. Tel. Co. of the N.W., Inc.*, 446 U.S. at 329–30. Thus, it is abundantly clear that EEOC's "authority to bring [its] actions [under § 706] is in no way dependent upon Rule 23, and the Rule has no application to a § 706 suit." *Id.* at 324.

The only test of whether an EEOC-negotiated Decree should be entered is whether that Decree is "fair, adequate and reasonable" under Title VII. *Officers for Justice v. Civil Serv. Comm'n of City and Cty. Of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). EEOC is afforded deference by courts in making this determination. *See, e.g.*, *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 288 (D. Colo. 1997). DFEH's attempt to add further hurdles to EEOC's enforcement efforts is antithetical to the way courts have interpreted Title VII – as making EEOC the "master of its case." *Grays Harbor*, 791 F. Supp. 2d at 1009 ("[T]he EEOC has been empowered by Congress with full authority to be the master of its case, which includes deciding which claims to bring and whether and on what basis to settle such claims.").

DFEH also seeks a fairness hearing, which is only mandatory in the Rule 23 context and rare for a court to order in one of EEOC's cases absent indicia of unfairness, inadequacy or unreasonableness on the face of the Decree, which are not present here. DFEH's requests for remedies have been ever-shifting (*compare* ECF No. 13-12 pp. 24-25 *with* Mot. p. 3), revealing its true purpose to cause EEOC's settlement to fall apart. Although the Court may choose to order a fairness hearing, EEOC believes that more than enough state, federal, and judicial resources have already been spent on this matter.

## III.   CONCLUSION

For the foregoing reasons, the EEOC respectfully requests that DFEH's motion to intervene and requests for other relief be denied in its entirety.

25

Respectfully submitted,

U.S. EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

Dated: November 8, 2021          By:  S/ Taylor Markey
                                       Senior Trial Attorney
                                       E-Mail: taylor.markey@eeoc.gov