# Exhibit C-1

# PAUL HASTINGS

1(213) 683-6306
elenabaca@paulhastings.com

June 28, 2021

**VIA E-MAIL** (rumduol.vuong@dfeh.ca.gov)

Rumduol Vuong, Esq.
Associate Chief Counsel
Department of Fair Employment & Housing
2218 Kausen Drive, Suite 100
Elk Grove, CA 95758

Re:  Kish v. Blizzard Entertainment, Inc.
     (DFEH Case No. 201810-03875512; EEOC Case No. 480-2018-05212)

Dear Rumie,

Thank you for your letter of June 24. We are trying as hard as possible to understand our clients' obligations to both the EEOC and DFEH, but frankly we are now at a loss as to what is happening. The communications we have received from each agency are at odds with each other about who is handling which issues, and the "cause" letter we received from you provides literally no information about what the DFEH has concluded our clients did wrong. You asked us to mediate within a week of that letter, but we do not know what issues you would like to mediate, based on what facts, or with what alleged liability. We would like to remain in a cooperative mode with the DFEH and ask that you please help us by providing more information.

Over the course of the EEOC's and DFEH's parallel investigations, we have sought clarification as to which agency was taking the lead as to the particular issues identified. The administrative burden and cost of having two, and for a time three, concurrent and overlapping inquiries was daunting and inefficient. We repeatedly sought clarification and coordination; duplicative investigations expend governmental resources unnecessarily and increase the burden and expense to an employer. Moreover, at some point, the investigations must come to an end, at which time attempting to resolve any issues that may exist with two different agencies becomes uncertain and may render potentially inconsistent results.

Initially, we understood the State was looking at pay, and the federal government was reviewing the other issues identified. Then, with no explanation, the DFEH started to broaden its investigation to areas covered by the EEOC's investigation and areas not identified in the Director's Complaint. We again sought clarification. None was forthcoming. The DFEH continued to serve us with requests for more information, documents and data—explaining the materials would be necessary before the DFEH could discuss with us where there might be concerns. In order to investigate the claims within its expanded scope (much of which the EEOC was already investigating), the DFEH explained it needed more time and requested an extension of the tolling agreement.

# PAUL HASTINGS

Rumduol Vuong, Esq.
June 28, 2021
Page 2

In the meantime, the EEOC completed its investigation. It issued a Letter of Determination. Given the impact of the EEOC's Letter of Determination—and the fact that it had asserted jurisdiction—we again asked the DFEH for a conversation regarding scope. We suggested, given the DFEH's need for additional time, that it might be more efficient for the DFEH to transfer the matter to the EEOC as contemplated by the Government Code, thereby obviating the need for a tolling agreement. Whether legally required or not, there are compelling reasons to allow one agency to take the lead and attempt to resolve (or litigate) all pending issues, not the least of which are the degree of burden on an employer, limited agency resources, and the avoidance of inconsistent outcomes.

Over the past several weeks, there has been an inexplicable back-and-forth between the agencies in which it appeared that the DFEH was resisting transferring the case to the EEOC (as the Government Code contemplates might happen should the DFEH not complete its investigation within two years and would be consistent with the Work Share Agreement). Against this backdrop, on June 15, 2021, the DFEH sent a letter requesting again extensive additional information it said would be required to complete its investigation—information we had explained in April would take months to collect and produce. On June 23, 2021, the deadline imposed by the DFEH to respond, we continued the meet and confer process but questioned the efficacy of the requests given the prior tolling agreement's imminent expiration. That said, in an effort to strike some path that would allow the DFEH additional time to prepare to mediate and, if necessary, to litigate the pay issues, we proposed attempting to negotiate a tolling agreement as to the pay issues only. The DFEH did not respond or acknowledge our proposal.

Instead, we received a "cause" letter from the DFEH. The single substantive sentence in the letter provided no insight – at all – as to what claims or for what issues the DFEH believes there is cause. That same letter demanded that we respond in two business days confirming whether Respondents would participate in a mediation program with less than one-week's notice. We have a fundamental problem. ***We are entirely in the dark as to what it is the DFEH proposes we mediate***.

After more than two-and-a-half years of investigation, numerous depositions, more than 17,000 pages of documents produced, almost a decade's worth of employee data provided, and inquiries and requests across numerous areas and issues, all while being provided no insight as to any particular substantive concern, we have no way to evaluate for mediation any concerns, claims, or issues, or discuss those concerns or issues with our clients, let alone assess any reasonable settlement authority for the mediation. No doubt, the DFEH has worked with thousands of employers to resolve claims through mediation. It is well aware that this sequence of events—a cause letter with no explanation, coupled with a request to mediate with less than one-week's notice (when lead counsel is in an arbitration)—does not constitute the good faith effort required by the Government Code or the parties' current tolling agreement. The absence of good faith is particularly striking when one considers prior discussions in which the DFEH acknowledged that, for a meaningful mediation to occur, a pre-mediation discussion providing insight into the Agency's concerns would be required.

To be clear, Respondents have never questioned the DFEH's authority to conduct its investigation. The Government Code, however, provides a timeline by which an investigation must conclude. When the EEOC finished first, it was natural to resurface our conversations with the DFEH regarding its intentions, since the claims overlap. We have repeatedly asked the DFEH to please explain to us how we can efficiently discuss and resolve the variety of issues, to the extent any need to be resolved, with the different agencies. While the EEOC has indicated its willingness to cooperate and separate those issues, we have received no such indication from the DFEH. Nor has the DFEH explained how it believes any overlapping issues between the agencies can be negotiated or resolved in parallel. There is no question

# PAUL HASTINGS

Rumduol Vuong, Esq.
June 28, 2021
Page 3

that Respondents would secure state and federal releases from any employees should there be a resolution with the EEOC and/or the DFEH. It makes no sense for the parties to be engaging in dual track negotiations that are ineffective or ultimately undercut the other.

We have worked cooperatively with the DFEH for more than two years and wish to continue in that cooperative spirit. We cannot respond to a suggested mediation without knowing what claims or issues exist for which the DFEH has found cause. **To be clear, we are not declining mediation**. We are simply asking for more information to understand what the DFEH proposes will be the subject of this mediation, so we can evaluate whether it would even be possible to have a productive mediation with just a few days' notice. We look forward to hearing from you.

Sincerely,

Elena R. Baca
of PAUL HASTINGS LLP

cc: Felicia Davis, Esq. (via email)
Ryan Derry, Esq. (via email)
Soyeon Mesinas, Esq. (Soyeon.Mesinas@dfeh.ca.gov)
Azadeh Hosseinian, Esq. (Azadeh.Hosseinian@dfeh.ca.gov)