Christian Schreiber (Bar No. 245597)
christian@osclegal.com
Monique Olivier (Bar No. 190385)
monique@osclegal.com
OLIVIER SCHREIBER & CHAO LLP
201 Filbert Street, Suite 201
San Francisco, California 94133
Tel: (415) 484-0980
Fax: (415) 658-7758

Rachel Bien (Bar No. 315886)
rachel@osclegal.com
OLIVIER SCHREIBER & CHAO LLP
1149 North Gower Street, Suite 215
Los Angeles, California 90038
Tel: (415) 484-0522
Fax: (415) 658-7758

Jahan C. Sagafi (Bar No. 224887)
jsagafi@outtengolden.com
OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
Tel: (415) 638-8800
Fax: (415) 638-8810

*Attorneys for Proposed Intervenor,*
*Department of Fair Employment and Housing*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVISION BLIZZARD, INC., BLIZZARD ENTERTAINMENT, INC., ACTIVISION PUBLISHING, INC., and KING.COM, INC., and DOES ONE through TEN, inclusive,<br><br>Defendants. | Case No. 2:21-CV-07682 DSF-JEM<br><br>**PROPOSED INTERVENOR CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT'S NOTICE OF MOTION AND MOTION TO STRIKE**<br><br>Date: January 24, 2022<br>Time: 1:30pm<br>Judge: Hon. Dale S. Fischer |

## NOTICE OF MOTION AND MOTION TO STRIKE

PLEASE TAKE NOTICE that on January 24, 2022, at 1:30 p.m. in Courtroom 7D of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California, Proposed Intervenor California Department of Fair Employment and Housing ("DFEH") will and hereby does move this Court pursuant to Federal Rule of Civil Procedure 12(f) for an order striking ECF Dkt. Nos. 35-3, 35-4, and 35-5 from the public record and this Court's consideration. Plaintiff U.S. Equal Employment Opportunity Commission ("Plaintiff" or "EEOC") filed documents that disclose privileged and confidential information in these documents and has refused to take the steps to remove such privileged information.

DFEH's Motion to Strike ("this Motion") is based upon this Notice of Motion and Motion; on the accompanying Memorandum of Points and Authorities; on the declarations of Christian Schreiber and Janette Wipper, the pleadings, files, and records in this action; and on such oral argument as the Court may permit at a hearing on this Motion.

Date:  December 8, 2021

Respectfully submitted,

OLIVIER SCHREIBER & CHAO LLP

*/s/ Christian Schreiber*
Christian Schreiber

*Attorneys for Proposed Intervenor Department of Fair Employment and Housing*

1

## <u>TABLE OF CONTENTS</u>

2

**I.   INTRODUCTION** ...................................................................................1

3

4

**II.  RELEVANT FACTUAL BACKGROUND** .........................................1

5

**III. ARGUMENT** .........................................................................................3

6

7

   A.   Legal Standard ...............................................................................3

8

   B.   The Worksharing Agreement Prohibits EEOC From Disclosing The

9

       Subject Emails. ..............................................................................4

10

   C.   State And Federal Privilege Law Both Protect The Subject Emails. ............6

11

12

     1.   *The Deliberative Process Privilege Protects The Subject Emails*

        *From Disclosure.* ....................................................................7

13

14

     2.   *The Subject Emails Are Protected By The Attorney-Client Privilege.* .......9

15

     3.   *The Rules of Professional Conduct Demand The Confidential and*

16

        *Privileged Documents Be Stricken.* ........................................ 12

17

     4.   *The Subject Emails Are Protected From Disclosure By The*

18

        *Investigatory Privilege.* ......................................................... 13

19

   D.   DFEH Will Suffer Severe Prejudice if the Court Does Not Strike Its

20

       Privileged Information. ................................................................. 14

21

22

   **IV. CONCLUSION** .................................................................................**15**

23

24

25

26

27

28

1

2

# **TABLE OF AUTHORITIES**

**Cases**                                                                                        **Page(s)**

*Brooks v. Cty. of San Joaquin,*
   275 F.R.D. 528 (E.D. Cal. 2011) .......................................................................14

*Cal. Earthquake Auth. v. Metro. West Sec., LLC,*
   2012 WL 6651152 (E.D. Cal. Dec. 20, 2012) ......................................................9

*Dep't of Interior v. Klamath Water Users Protective Ass'n,*
   532 U.S. 1 (2001) ...............................................................................................7, 8

*E.E.O.C. v. Dinuba Medical Clinic,*
   222 F.3d 580 (9th Cir. 2000) ..............................................................................11

*Fantasy, Inc. v. Fogerty,*
   984 F.2d 1524 (9th Cir. 1993) ..............................................................................3

*Fodor v. Blakey,*
   2012 WL 12893986 (C.D. Cal. Dec. 31, 2012).................................................3, 4

*FTC v. Warner Commc'ns,*
   742 F.2d 1156 (9th Cir. 1984) ............................................................................7, 8

*Griffith v. Davis,*
   161 F.R.D. 687 (C.D. Cal. 1995).........................................................................11

*Hartford Cas. Ins. Co. v. Teed,*
   2019 WL 7832604 (N.D. Cal. May 10, 2019).......................................................3

*Izzetov v. Tesla Inc.,*
   2020 WL 1677333 (N.D. Cal. Apr. 6, 2020)..........................................................4

*Jones v. Gen. Motors Corp.,*
   24 F. Supp. 2d 1335 (M.D. Fla. 1998)...................................................................3

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.,*
   926 F. Supp. 2d 121 (D.D.C. 2013)......................................................................10

*Kelly v. L.L. Cool J.,*
   145 F.R.D. 32 (S.D.N.Y. 1992) .............................................................................4

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Labor & Workforce Dev. Agency v. Superior Court*,
   19 Cal. App. 5th 12 (2018) ....................................................................... 9

*Laquaglia v. Rio Hotel & Casino, Inc.*,
   186 F.3d 1172 (9th Cir. 1999) ............................................................... 12

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
   89 F.R.D. 489 (C.D. Cal. 1981) ............................................................... 6

*Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*,
   1997 WL 525482 (S.D.N.Y. Aug. 22, 1997) ........................................... 3

*N.L.R.B. v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) .................................................................................. 8

*N.L.R.B. v. Silver Spur Casino*,
   623 F.2d 571 (9th Cir. 1980) ................................................................. 13

*Nidec Corp. v. Victor Co. of Japan*,
   249 F.R.D. 575 (N.D. Cal. 2007) ........................................................... 11

*North Pacifica, LLC v. City of Pacifica*,
   274 F. Supp. 2d 1118 (N.D. Cal. 2003) .............................................. 7, 8

*Ocean Thermal Energy Corp. v. Coe*,
   2020 WL 5237276 (C.D. Cal. July 29, 2020) ....................................... 13

*People v. Jackson*,
   110 Cal. App. 4th 280 (2003) ............................................................... 14

*Phoenix Ins. Co. v. Diamond Plastics Corp.*,
   2020 WL 4261419 (W.D. Wash. July 24, 2020) ..................................... 3

*Platypus Wear, Inc. v. K.D. Co.*,
   905 F. Supp. 808 (S.D. Cal. 1995) .......................................................... 6

*Regents of Univ. of Cal. v. Affymetrix, Inc.*,
   326 F.R.D. 275 (S.D. Cal. 2018) ..................................................... 10, 11

*Regents of Univ. of Cal. v. Superior Court*,
   20 Cal.4th 509 (1999) .............................................................................. 9

iii

*Scalia v. Int'l Longshore & Warehouse Union*,
   336 F.R.D. 603 (N.D. Cal. 2020).............................................................................13

*Schuler v. PricewaterhouseCoopers, LLP*,
   514 F.3d 1365 (D.C. Cir. 2008)...............................................................................5

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*,
   322 F.R.D. 571 (S.D. Cal. 2017) .............................................................................8

*Solis v. Seafood Peddler of San Rafael, Inc.*,
   2012 WL 12547592 (N.D. Cal. Oct. 16, 2012) ......................................................14

*Stewart v. Wachowski*,
   2004 WL 5618386 (C.D. Cal. Sept. 28, 2004) ........................................................4

*Tax Analysts v. I.R.S.*,
   117 F.3d 607 (D.C. Cir. 1997).................................................................................10

*Times Mirror Co. v. Superior Court*,
   53 Cal.3d 1325 (1991)...........................................................................................8, 9

*United States v. Nelson*,
   2020 WL 8674125 (S.D. Cal. July 10, 2020) .........................................................11

*Valley Surgical Ctr. v. Cty. of Los Angeles*,
   2017 WL 10574239 (C.D. Cal. Sept. 22, 2017) .....................................................13

*Victa v. Merle Norman Cosmetics, Inc.*,
   19 Cal. App. 4th 454 (1993) ....................................................................................5

*Wailua Assocs. v. Aetna Cas. & Sur. Co.*,
   183 F.R.D. 550 (D. Haw. 1998) ..............................................................................4

*Wilcox v. Arpaio*,
   753 F.3d 872 (9th Cir. 2014) ...................................................................................9

*YS Garments v. Cont'l Cas. Co.*,
   2018 WL 3829764 (C.D. Cal. Jan. 29, 2018)........................................................10

**Statutes**

5 U.S.C. § 552..............................................................................................................7

42 U.S.C. § 2000(e) ...................................................................................6

Cal. Bus. & Prof. Code § 6068(e)(1)........................................................10

Cal. Evid. Code §§ 952-954 ....................................................................10

Cal. Evid. Code § 1040............................................................................8, 14

Cal. Gov't. Code § 6255 ............................................................................8

Cal. Gov't Code § 12900 ...........................................................................6

**Rules**

Cal. R. Prof. Conduct 1.6........................................................................12, 13

Fed. R. Civ. P. 12(f)............................................................................1, 3, 4

**Other Authorities**

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2D*
   § 1382 (1990)..........................................................................................3

PROPOSED INTERVENOR DFEH'S NOTICE OF MOTION AND MOTION TO STRIKE
CASE NO. 21-cv-07682-DSF-JEM

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    INTRODUCTION**

3        Proposed Intervenor California Department of Fair Employment and Housing

4   ("DFEH") moves this Court for an Order: (1) striking from the public record

5   documents filed by Plaintiff U.S. Equal Employment Opportunity Commission

6   ("EEOC") that disclose privileged and confidential information. These filings are

7   part of the EEOC's Opposition to DFEH's Motion to Intervene and are attached as

8   Exhibits A-C to the Declaration of Rosa Viramontes. *See* ECF 35-3, 35-4, 35-5.

9   Director Viramontes's declaration includes three exhibits (A-C) that are emails

10  labeled "PRIVILEGED and CONFIDENTIAL, *subject to government privileges*

11  *and attorney-client/ work-product privileges*" and/or "PRIVILEGED &

12  CONFIDENTIAL EEOC/DFEH Investigation of Activision Blizzard." ECF Dkt.

13  35-3, 35-4, 35-5. Declaration of Janette Wipper ("Wipper Decl.") ¶ 2. The emails

14  are from May and June 2020 and are written communications between Janette

15  Wipper, Chief Counsel at DFEH, and Ms. Viramontes.

16       The emails were marked "Privileged and Confidential" by DFEH, and

17  subject to statutory and common law privileges, as well as a Worksharing

18  Agreement entered into by DFEH and EEOC that prohibits such disclosures. DFEH

19  has not waived the privilege or consented to the disclosure. EEOC cannot

20  unilaterally waive the privilege that is held, individually or jointly, by DFEH.

21  Despite the privileged and confidential nature of the documents and prohibitions

22  regarding their disclosure, EEOC has refused to provide a basis for filing of the

23  documents or consented to their removal. Therefore, this Motion should be granted,

24  and the documents filed in the public record should be immediately stricken and

25  sealed to protect the integrity of DFEH's investigative obligations.

26  **II.   RELEVANT FACTUAL BACKGROUND**

27       EEOC's filing of privileged and confidential information in opposition to

28  DFEH's motion to intervene marks the second unauthorized filing of such

1    documents by EEOC. On September 27, 2021, EEOC filed a proposed Consent

2    Decree with Activision Blizzard, Inc., Blizzard Entertainment, Inc., Activision

3    Publishing, Inc., and King.Com, Inc. (the "Activision Defendants"). ECF Dkt. 11-1.

4         On October 6, 2021, DFEH filed an *Ex Parte* Application seeking an order

5    shortening time for it to file a Motion to Intervene in this action. ECF Dkt. 13. In

6    response to DFEH's filing and in Opposition to DFEH's proposed intervention,

7    EEOC filed documents containing and referring to privileged information and

8    lodged declarations and documents that appear to contain and refer to additional

9    privileged information. *See* ECF Dkt. 15.

10        On Saturday, October 9, DFEH Chief Counsel Janette Wipper emailed

11   EEOC Regional Attorney Anna Park and requested that privileged documents be

12   removed from the public record. ECF Dkt.18-2, Ex. B. EEOC thereafter re-filed

13   certain documents pursuant to a Notice of Errata. ECF Dkts. 16, 17. DFEH counsel

14   again requested that EEOC withdraw the documents (ECF 18-1, Ex. A) and

15   requested that EEOC provide unredacted copies of all documents lodged with the

16   Court. *Id.* EEOC did not respond. DFEH filed objections to EEOC's evidence. ECF

17   Dkt. 18.

18        Following meet and confer efforts, DFEH filed a Motion to Strike on

19   October 19. ECF Dkt. 21. This Court granted the Motion on October 27 and sealed

20   Docket Nos. 15, 16, and 17. ECF Dkt. 26. Unfortunately, the Court's October 27

21   Order sealing Docket Nos. 15, 16 and 17 did not prevent EEOC from submitting

22   privileged documents a second time.

23        On October 25, 2021, DFEH filed its Motion to Intervene in this matter. ECF

24   Dkt. 24. EEOC filed its Opposition on November 8. ECF Dkt. 31. EEOC's

25   Opposition includes the Viramontes Declaration with three exhibits that are the

26   subject of this Motion.

27        DFEH first met and conferred with EEOC about its inclusion of privileged

28   materials and the possibility of this Motion on November 11, 2021. Declaration of

1    Christian Schreiber ("Schreiber Decl.") ¶¶ 5-7, Ex. B (email exchange). On

2    November 15, DFEH filed objections to EEOC's evidence, including the privileged

3    material that is the subject of this Motion, as part of DFEH's Reply on the Motion

4    to Intervene. ECF Dkt. 36-06. EEOC and DFEH met and conferred by

5    videoconference on November 17. EEOC contends, as stated in subsequent emails,

6    that the Viramontes emails are not privileged and refused to state a reason for this

7    conclusion. Schreiber Decl., Ex. B (Nov. 19, 2021 email exchange). As a result,

8    DFEH was obligated to file this Motion.

9    **III.   ARGUMENT**

10        **A.    Legal Standard**

11        Federal Rule of Civil Procedure 12(f) provides that the Court may strike from

12   a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R.

13   Civ. P. 12(f). Because privileged material has "no possible bearing upon the subject

14   matter of the litigation . . . Courts utilize Rule 12(f) to strike sections of a pleading

15   that include inadmissible or privileged information." *Fodor v. Blakey*, No.

16   CV1108496MMMRZX, 2012 WL 12893986, at *5 (C.D. Cal. Dec. 31, 2012).

17   "[P]rivileged material falls squarely within the ambit of Rule 12(f)." *Phoenix Ins.*

18   *Co. v. Diamond Plastics Corp.*, No. C19-1983-JCC, 2020 WL 4261419, at *2

19   (W.D. Wash. July 24, 2020) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527

20   (9th Cir. 1993)), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517

21   (1994); *see also* Charles A. Wright & Arthur R. Miller, *Federal Practice and*

22   *Procedure: Civil 2D* § 1382, at 706-07, 711 (1990).

23        A district court may strike pleadings that impermissibly disclose or describe

24   attorney-client privileged communications or work product. *See, e.g.*, *Hartford Cas.*

25   *Ins. Co. v. Teed*, No. 18-CV-00479-RS, 2019 WL 7832604, at *4 (N.D. Cal. May

26   10, 2019) (striking confidential settlement discussions); *Jones v. Gen. Motors*

27   *Corp.*, 24 F. Supp. 2d 1335, 1339 (M.D. Fla. 1998) (striking claim that was

28   "impermissibly based on attorney-client privileged materials"); *Major League*

*Baseball Props., Inc. v. Opening Day Prods., Inc.*, No. 96 Civ. 7078 (DAB), 1997 WL 525482, at *3, *6 (S.D.N.Y. Aug. 22, 1997) (finding that the inclusion in pleadings of part of a statement protected under attorney-client privilege was prejudicial and so should be struck under Rule 12(f)).

The purpose of the rule is to "avoid . . . prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegation any unnecessary notoriety." *Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 183 F.R.D. 550, 553 (D. Haw. 1998). Indeed, courts routinely strike such allegations from public filings to protect against the improper disclosure of privileged information obtained and used without permission by an opposing party. *See, e.g.*, *Izzetov v. Tesla Inc.*, No. 5:19-CV-03734-EJD, 2020 WL 1677333, at *7 (N.D. Cal. Apr. 6, 2020) (granting motion to strike allegations protected under California's litigation privilege); *Fodor*, 2012 WL 12893986, at *5 (granting motion to strike based on privileged marital communications); *Stewart v. Wachowski*, No. CV 03-2873 MMM (VBKx), 2004 WL 5618386, *2 (C.D. Cal. Sept. 28, 2004) ("Courts have used Rule 12(f) to strike allegations from complaints that detail settlement negotiations within the ambit of Rule 408."); *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 40 (S.D.N.Y. 1992) (granting motion to strike portions of a complaint that referenced settlement discussions under Rule 408 as immaterial and potentially prejudicial).

**B.     The Worksharing Agreement Prohibits EEOC From Disclosing The Subject Emails.**

As part of the agencies' investigations, DFEH and EEOC are parties to a publicly available, decades-old Worksharing Agreement that was renewed in 2019 at the outset of the agencies' investigations into the Activision Defendants. Schreiber Decl. ¶ 3, Ex. A. The Worksharing Agreement sets forth various aspects of the agencies' roles and responsibilities in investigating and enforcing their respective civil rights statutes. *Id.* EEOC's disclosure of the subject emails violates the express terms of the Worksharing Agreement. The Worksharing Agreement

provides in relevant part that either Agency, the EEOC or DFEH (in the terminology of the Agreement, the "Fair Employment Practice Agencies" or "FEPAs"), may request information regarding the other's investigation. When information is exchanged, the agency providing the information may designate it as "confidential" and this designation binds the receiving agency: "The Agency accepting information **agrees to comply with any confidentiality requirements imposed on the agency providing the information**." Schreiber Decl. ¶ 3, Ex. A (Worksharing Agreement, § IV.A [emphasis added]).

Worksharing agreements between EEOC and state civil rights agencies such as DFEH bind individual EEOC field offices to individual state agencies and the Commission in general. *See Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1374 (D.C. Cir. 2008). The EEOC/DFEH Worksharing Agreement states, *inter alia*, that it "is designed to provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate California and Federal laws." Schreiber Decl. ¶ 3, Ex. A (Worksharing Agreement, § 1.B). The agreement expressly acknowledges the jurisdictional underpinnings of the EEOC and DFEH's respective charges under Title VII and the Fair Employment and Housing Act ("FEHA"). In fact, because the EEOC lacks standing to pursue or settle state law claims (*see, e.g.*, *Victa v. Merle Norman Cosmetics, Inc.*, 19 Cal. App. 4th 454, 463 (1993)), nothing in the Worksharing Agreement limits DFEH's ability to investigate state or federal claims or expands the right of EEOC to settle state law claims. Instead, the Worksharing Agreement acknowledges that state and federal claims will be pursued and contemplates the coordination of dual-filed charges, as here, and the exchange of information between agencies. Schreiber Decl. ¶ 3, Ex. A (Worksharing Agreement, § IV.A). Moreover, the Worksharing Agreement requires EEOC to comply with the confidentiality obligations to which DFEH is subject. These are the "requirements imposed on" DFEH with which EEOC "agree[d] to

comply." (Worksharing Agreement, § IV.A [emphasis added]). These include California's deliberative process privilege and investigative privileges.

Here, DFEH designated the documents at issue as "Confidential and Privileged" and expressly referenced the Worksharing Agreement in the email exchange. EEOC's decision to file the emails in the public record in spite of DFEH's designation violates the Worksharing Agreement.

**C.    State And Federal Privilege Law Both Protect The Subject Emails.**

District courts in this Circuit have applied both federal and state privilege law in cases involving mixed questions of state and federal law. Here, the gravamen of DFEH's Motion to Intervene involves an assertion of its rights and duties under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900, *et seq.*, and the Worksharing Agreement. While EEOC's proposed consent decree involves application of Title VII, 42 U.S.C. § 2000(e), the privilege issues here involve DFEH's rights under California law and the Worksharing Agreement. *See* ECF Dkt. 24-1 (Mem. at 14-19). As discussed above in Section III.B, the Worksharing Agreement obligates EEOC to comply with California's deliberative process privilege and investigative privileges. Therefore, the Court should apply the Worksharing Agreement and California privilege law where necessary, though federal privilege law also protects the information at issue from disclosure.

This Court has previously found that both federal and state privilege law should apply in a federal question action with pendent state claims and have applied federal privilege law to federal claims and state privilege law to state claims. *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 489, 492 (C.D. Cal. 1981). Other district courts have applied state privilege law in federal question actions with pendent state claims where the predominant nature of all the claims is based on state law. *See Platypus Wear, Inc. v. K.D. Co.*, 905 F. Supp. 808, 812 (S.D. Cal. 1995) (finding "where the evidence sought can be

relevant only to state law claims, the state law privilege should be applied consistent with the express language of Rule 501").

In addition to the Worksharing Agreement, discussed in Section III.B above, both California and federal law require protection of DFEH's confidential and privileged documents.

### 1. The Deliberative Process Privilege Protects The Subject Emails From Disclosure.

The emails attached to the Viramontes Declaration are subject to the deliberative process privilege held by DFEH and recognized under both federal and state law. The privilege protects from disclosure material necessarily created by government agencies in the execution of their public purpose that would compromise such work. The United States Supreme Court explained the purpose of the privilege in the context of a case interpreting exceptions to the mandatory disclosures required under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.* "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions,'[] by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) (internal citation omitted).

The Ninth Circuit has explained that "[f]ederal common law recognizes the deliberative process privilege. Under the privilege, a government can withhold documents or prevent testimony that 'reflect[s] advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated.'" *North Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1120–21 (N.D. Cal. 2003) (quoting *FTC v. Warner Commc'ns*, 742 F.2d 1156, 1161 (9th Cir. 1984)). "The purpose of the privilege is 'to promote frank and independent discussion among those responsible for making

governmental decisions and also to protect against premature disclosure of proposed ... policies or decisions.'" *Id.* (quoting *FTC*, 742 F.2d at 1161). Other district courts in this Circuit have noted that "[t]he Supreme Court has expressly recognized the privilege with respect to the decision-making processes of government agencies." *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 322 F.R.D. 571, 589 (S.D. Cal. 2017) (citing *North Pacifica, LLC*, 274 F. Supp. 2d at 1121). It is well settled that the privilege may cover both testimony or "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Klamath Water Users*, 532 U.S. at 8 (quoting *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)).[1]

The California Supreme Court has recognized the same privilege and exempted information subject to it disclosure under the California Public Records Act, Cal. Gov't. Code § 6255. The privilege permits "a government agency to withhold a record from disclosure by demonstrating the public interest in nondisclosure outweighs that served by disclosure." *Times Mirror Co. v. Superior Court*, 53 Cal.3d 1325, 1326–27 (1991). In *Times Mirror*, the court found that the Governor properly excluded his appointment schedule and calendars because "[a]lthough the raw material in the Governor's appointment calendars and schedules is factual, its essence is deliberative, and disclosure would be a patent intrusion into the deliberative process." *Id.*

---

[1] EEOC's manual is instructive on deliberative process privilege (which is part of the official information privilege, Evid Code 1040 under state law). The manual notes that the EEOC typically asserts the deliberative process privilege in litigation in order to **protect the confidentiality of internal, deliberative material**, such as documents containing the analyses, opinions, or recommendations of enforcement unit staff, and attorney memoranda containing analysis or recommendations. EEOC Regional Attorneys Manual, Part 3, Section II.A (emphasis added). *See* https://www.eeoc.gov/regional-attorneys-manual (last visited Dec. 8, 2021).

The principle has been consistently upheld in the thirty years since *Times Mirror* was decided. California courts have protected from disclosure "the identity of persons with whom the Agency has met and consulted is the functional equivalent of revealing the substance or direction of the Agency's judgment and mental processes." *Labor & Workforce Dev. Agency v. Superior Court*, 19 Cal. App. 5th 12, 30 (2018) (internal quotation marks omitted). "Under the deliberative process privilege, senior officials of all three branches of government enjoy a qualified, limited privilege not to disclose or to be examined concerning not only the mental processes by which a given decision was reached, but the substance of conversations, discussions, debates, deliberations and like materials reflecting advice, opinions, and recommendations by which government policy is processed and formulated." *Cal. Earthquake Auth. v. Metro. West Sec., LLC*, No. 2:10–cv–0291 MCE GGH, 2012 WL 6651152, at *3 (E.D. Cal. 2012) (quoting *Regents of Univ. of Cal. v. Superior Court*, 20 Cal.4th 509, 540 (1999) (Brown, J., concurring)).

These principles apply directly here. The emails attached to the Viramontes Declaration reflect deliberations between EEOC and DFEH regarding the role of each agency in undertaking their respective investigations into the Activision Defendants. The emails cover DFEH's "decision making processes" and its "judgment and mental processes." These communications are improperly disclosed because they reflect the agencies' deliberations about how to accomplish the investigatory tasks between them.

### 2. The Subject Emails Are Protected By The Attorney-Client Privilege.

EEOC's filing of the subject emails violates the attorney-client privilege recognized under federal and state law. "Where evidence relates to both state and federal claims, a federal court applies federal common law to the question of attorney-client privilege." *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014).

PROPOSED INTERVENOR DFEH'S NOTICE OF MOTION AND MOTION TO STRIKE
CASE NO. 21-cv-07682-DSF-JEM

1    However, with respect to the attorney-client privilege, federal and state privilege

2    law are in accord. "Like California, the client is the holder of the attorney-client

3    privilege under federal common law, and only the client can waive the privilege."

4    *YS Garments v. Cont'l Cas. Co.*, CV 17-03345 SJO (JEMx), 2018 WL 3829764, at

5    *4 (C.D. Cal. 2018) (collecting cases); *see also* Cal. Evid. Code §§ 952-954. Under

6    California law, an attorney is required to "maintain inviolate the confidence, and at

7    every peril to himself or herself to preserve the secrets, of his or her client." Cal.

8    Bus. & Prof. Code § 6068(e)(1).

9         EEOC and DFEH may hold the privilege on behalf of their respective

10   agencies, which are clients for purposes of this privilege. "In the governmental

11   context, the 'client' may be the agency and the attorney may be the agency lawyer."

12   *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 144–45

13   (D.D.C. 2013) (quoting *Tax Analysts v. I.R.S.*, 117 F.3d 607, 618 (D.C. Cir.

14   1997)).[2] The privilege here was held jointly by DFEH and EEOC. This is partly

15   because DFEH and EEOC are signatories to a written agreement establishing, at a

16   minimum, a cooperative investigatory role in their respective investigations against

17   the Activision Defendants. Consistent with the purpose of the Worksharing

18   Agreement, the resulting common interest between EEOC and DFEH ensures that

19   communications between the agencies in furtherance of their respective

20   investigations would not waive any privilege held by either agency.

21        This "common interest" privilege "is an exception to the general rule that

22   disclosure of protected material to third parties constitutes a waiver." *Regents of*

23

24   [2] In *Tax Analysts*, the D.C. Circuit considered a challenge to a request for
25   information made under FOIA upon the IRS, which the IRS resisted in part on
     grounds of attorney-client privilege. The court explained that in "dealing with its
26   attorneys as would any private party seeking advice to protect personal interests,
     [the agency] needs the same assurance of confidentiality so it will not be deterred
27   from full and frank communications with its counselors." *Tax Analysts*, 117 F.3d at
28   618.

1    *Univ. of Cal. v. Affymetrix, Inc.*, 326 F.R.D. 275, 279–80 (S.D. Cal. 2018) (quoting

2    *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007)). The

3    common interest privilege "basically expands application of the attorney-client

4    privilege or the work-product doctrine to circumstances in which it otherwise might

5    not apply." *Griffith v. Davis*, 161 F.R.D. 687, 692 (C.D. Cal. 1995). While more

6    common in the context of a "joint defense privilege," a common interest can be

7    found between government and actors who have a "shared objective to obtain

8    relief" from a defendant. *United States v. Nelson*, 19-CV-1087-CAB-WVG, 2020

9    WL 8674125, at *2 (S.D. Cal. July 10, 2020).

10          As explained by the district court in *Affymetrix*:

11
12          The common interest doctrine is "designed to allow attorneys for
            different clients pursuing a common legal strategy to communicate with
13          each other." The exception is available regardless of whether litigation
            has actually commenced. The common interest exception applies when
14          "(1) the communication is made by separate parties in the course of a
            matter of common interest; (2) the communication is designed to
15          further that effort; and (3) the privilege has not been waived."
16

17    *Affymetrix, Inc.*, 326 F.R.D. at 279 (citations omitted).

18          Here, the application of the common interest doctrine is self-evident: EEOC

19    and DFEH as signatories to the Worksharing Agreement, expressly served as each

20    other's agents (at least for filing purposes) and agreed to a *mandatory* sharing of

21    information gathered by either agency. *See* Schreiber Decl. ¶ 3, Ex. A

22    (Worksharing Agreement § IV.A) ("Both the FEPA and the EEOC shall make

23    available for inspection and copying to appropriate officials from the other Agency

24    any information that may assist each Agency in carrying out its responsibilities.");

25    *see also E.E.O.C. v. Dinuba Medical Clinic*, 222 F.3d 580, 585 (9th Cir. 2000)

26    ("Constructive filing is made possible by 'worksharing agreements,' which

27    designate the EEOC and the state agency each other's agents for the purpose of

28

receiving charges." (citing *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1175–76 (9th Cir. 1999)).

EEOC's disclosure of privileged information thus violates its responsibility to hold inviolate the confidences of clients. Here, EEOC and DFEH's allocation of investigatory resources for purposes of each agency's investigation into the Activision Defendants' conduct involved privileged information from DFEH (acting through its attorney, Ms. Wipper, representing her agency), shared with EEOC as part of the agencies' common interest in investigating the Activision Defendants. EEOC, acting through its Regional Director, did not hold an exclusive privilege and thus had no right to waive a privilege held, individually or jointly, by DFEH. The very purpose of the communications contained in the subject emails was consistent with the expectations of the Worksharing Agreement and the agencies' deliberations about how the investigations should proceed. Therefore, EEOC improperly disclosed privileged and confidential communications.

### 3. The Rules of Professional Conduct Demand The Confidential and Privileged Documents Be Stricken.

EEOC's filing should also be stricken because its disclosure violates EEOC counsel's obligations under the California Rules of Professional Conduct. Rule 1.6 prohibits the disclosure of confidential information "a lawyer acquires by virtue of the representation, whatever its source, and encompasses matters communicated in confidence by the client, and therefore protected by the lawyer client privilege, matters protected by the work product doctrine, and matters protected under ethical standards of confidentiality, all as established in law, rule and policy." Cal. R. Prof'l Conduct 1.6, n.2.

Here, as described above, EEOC's counsel knowingly filed documents in the public record that it obtained from DFEH's Chief Counsel, which it knew DFEH considered privileged and confidential. Ms. Viramontes, EEOC's District Director, was acting on behalf of EEOC and was subject to the Worksharing Agreement. She

therefore received the documents in confidence under the terms of the Agreement. EEOC counsel was subject not only to the responsibility of the designation of the Worksharing Agreement, but also Rule 1.6. EEOC understood that these "were private communications between the two and no one else; these communications were not public, publicly available, nor were they 'generally known.'" *Ocean Thermal Energy Corp. v. Coe*, No. LACV19-05299-VAP-JPR, 2020 WL 5237276, at *8 (C.D. Cal. July 29, 2020).

EEOC's continuing efforts to disclose such documents is an act of willful disregard for DFEH's rights. EEOC had already been admonished by the Court for its prior disclosure of confidential and privileged information, and DFEH has made clear its position that it considers the communications to be protected from public disclosure. EEOC's decision to ignore the designation, its ongoing refusal to explain its decision, and its attempt to weaponize a selection of obviously confidential and privileged communications is a violation of EEOC's ethical responsibilities under the Rules.

### 4.     The Subject Emails Are Protected From Disclosure By The Investigatory Privilege.

EEOC's disclosure of the emails between EEOC and DFEH is also improper because the documents are subject to an investigative privilege held by DFEH, which shields such documents from public disclosure. "There is a qualified investigatory privilege for informal deliberations of prosecutorial agencies and branches of government." *Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D. 603, 617 (N.D. Cal. 2020) (citing *Valley Surgical Ctr. v. Cty. of Los Angeles*, No. CV 13-2265-DDP (AGRx), 2017 WL 10574239, at *4 (C.D. Cal. Sept. 22, 2017) (citing *N.L.R.B. v. Silver Spur Casino*, 623 F.2d 571, 580 (9th Cir. 1980)). This privilege has been variously referred to as the "investigatory privilege," the "law enforcement privilege," the "federal investigatory privilege," and the "official information privilege." *See Scalia v. Int'l Longshore & Warehouse*

*Union*, 336 F.R.D. at 617 (N.D. Cal. 2020); *Brooks v. Cty. of San Joaquin*, 275 F.R.D. 528, 532 (E.D. Cal. 2011). The privilege "preserves the confidentiality of investigative files and applies to informal investigatory material and preliminary determinations." *Solis v. Seafood Peddler of San Rafael, Inc.*, Case No. 12-cv-0116 PJH, 2012 WL 12547592, at *6 (N.D. Cal. Oct. 16, 2012).

Thus, to the extent the Viramontes exhibits were the subject of a request made under State or federal law, DFEH would have resisted their disclosure on investigative privilege grounds. Wipper Decl. ¶ 3; *see also People v. Jackson*, 110 Cal. App. 4th 280, 287 (2003) ("Ongoing investigations fall under the privilege for official information. (Evid. Code, § 1040.)").

### D.    DFEH Will Suffer Severe Prejudice if the Court Does Not Strike Its Privileged Information.

DFEH is the holder of the privilege and has not waived it. Wipper Decl. ¶ 2. EEOC has implicitly recognized (in its prior filings stricken by the Court) that the disclosure of privileged and confidential information involved in these investigations, if made to third parties or the public, would be prejudicial. *See* Wipper Decl. ¶ 4. For example, in seeking to seal certain documents, EEOC previously acknowledged in this case that "[t]he disclosure of this privileged information in this litigation would result in unfair prejudice to EEOC because Defendants would be able to gain a significant strategic and tactical advantage if they had access to the information." *See* ECF Dkt. 21 (quoting EEOC Memo. stricken by Order of Court).

If EEOC can unilaterally disclose confidential, privileged information to this Court and possibly to Defendants, DFEH's statutory mandate to investigate and prosecute civil rights violations would be severely impaired, as would government enforcement actions more generally. EEOC regularly engages in parallel investigations with DFEH and comparable Fair Employment Practices Agencies nationwide. If EEOC can willfully disregard the confidentiality requirements of

those agencies, then EEOC poses a significant threat to state-government enforcement activities nationwide.

## IV.   CONCLUSION

For the foregoing reasons, DFEH respectfully requests that the Court grant this Motion to strike ECF Docket Nos. 35-3, 35-4, and 35-5 in their entirety and seal them from the public record. DFEH further requests that the Court prohibit the further use of these documents in any proceeding without an Order showing cause for their use or a voluntary disclosure by DFEH.

Date:   December 8, 2021          Respectfully submitted,

OLIVIER SCHREIBER & CHAO LLP

*/s/ Christian Schreiber*
Christian Schreiber

*Attorneys for Proposed Intervenor*
*Department of Fair Employment and*
*Housing*

PROPOSED INTERVENOR DFEH'S NOTICE OF MOTION AND MOTION TO STRIKE
CASE NO. 21-cv-07682-DSF-JEM