Anna Y. Park, SBN 164242
anna.park@eeoc.gov
Nakkisa Akhavan, SBN 286260
nakkisa.akhavan@eeoc.gov
Taylor Markey, SBN 319557
taylor.markey@eeoc.gov
Maurice Neishlos, NY SBN 5639265
maurice.neishlos@eeoc.gov
Alisha Ansari, SBN 312875
alisha.ansari@eeoc.gov
Ella Hushagen, SBN 297990
ella.hushagen@eeoc.gov
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 422-8396
Facsimile: (213) 894-1301
E Mail: lado.legal@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

*[Counsel continued on next page]*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | CASE NO. 2:21-CV-07682-DSF-JEM |
| Plaintiff, | **JOINT RESPONSE TO COURT REQUESTED CLARIFICATIONS IN SUPPORT OF THE PARTIES' AMENDED [PROPOSED] CONSENT DECREE (DKT. 50-1)** |
| vs. | |
| ACTIVISION BLIZZARD, INC., BLIZZARD ENTERTAINMENT, INC., ACTIVISION PUBLISHING, INC., and KING.COM, INC., and DOES ONE through TEN, inclusive, | Dept:      7D<br>Judge:     Hon. Dale S. Fischer |
| Defendants. | |

1  ELENA R. BACA (SB# 160564)
   elenabaca@paulhastings.com
2  FELICIA A. DAVIS (SB# 266523)
   feliciadavis@paulhastings.com
3  PAUL HASTINGS LLP
   515 South Flower Street
4  Twenty-Fifth Floor
   Los Angeles, California 90071-2228
5  Telephone:  (213) 683-6000
   Facsimile:  (213) 627-0705
6
   RYAN D. DERRY (SB# 244337)
7  ryanderry@paulhastings.com
   PAUL HASTINGS LLP
8  101 California Street
   Forty-Eighth Floor
9  San Francisco, California  94111
   Telephone: (415) 856-7000
10 Facsimile:  (415) 856-7100

11 Attorneys for Defendants
   ACTIVISION BLIZZARD, INC.,
12 BLIZZARD ENTERTAINMENT, INC.,
   ACTIVISION PUBLISHING, INC., AND
13 KING.COM, INC.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................7

II.     GENERAL RESPONSE TO COURT:  OPERATIVE LEGAL
        STANDARD...........................................................................8

III.    GENERAL RESPONSE TO COURT:  ROLE OF EEOC AND
        AGENCY DEFERENCE ...................................................... 13

IV.     GENERAL RESPONSE TO COURT:  INAPPLICABILITY OF
        FRCP 23(E) ......................................................................... 15

V.      SPECIFIC RESPONSES TO COURT-POSED ITEMS ........................... 18

VI.     CONCLUSION ................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Abelar v. Am. Residential Servs., L.L.C.*, No. ED CV19-00726 JAK,
2019 WL 6054607
(C.D. Cal. Nov. 14, 2019)..............................................................................8

*California Dep't of Toxic Substances Control v. Allen's Formal Wear,
Inc.*, No. CV 13-5069-GHK, 2015 WL 12656902
(C.D. Cal. Jan. 8, 2015)...............................................................................14

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020)......................................................................16

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992)......................................................................19

*EEOC v. Dinuba Med. Clinic*,
222 F.3d 580 (9th Cir. 2000)........................................................................16

*EEOC v. Occidental Life Ins. Co.*, 535 F.2d 533 (9th Cir .1976),
aff'd 432 U.S. 355 (1977).............................................................................15

*EEOC v. Pan Am. World Airways, Inc.*,
897 F.2d 1499 (9th Cir. 1990)......................................................................17

*EEOC v. Pan Am. World Airways, Inc.*, Nos. C-81-3636 RFP,
C-81-4590 RFP, 1988 WL 224232
(N.D. Cal. June 17, 1988).............................................................................17

*EEOC v. Safeway Stores, Inc.*,
611 F.2d 795 (10th Cir. 1979)......................................................................14

*EEOC v. Waffle House, Inc.*,
534 U.S. 279 (2002) .....................................................................................14

*Ford Motor Co. v. EEOC*,
458 U.S. 219 (1982) .......................................................................................9

*Freeman v. City of Philadelphia*, 751 F. Supp. 509 (E.D. Pa. 1990),
aff'd, 947 F.2d 935 (3d Cir. 1991)...............................................................15

*Gen. Tel. Co. of the N.W., Inc. v. EEOC*,
   446 U.S. 318 (1980) .................................................................................. 16

*Glover v. City of Laguna Beach*, No. SACV 15-01332 AG,
   2018 WL 6131602
   (C.D. Cal. Nov. 5, 2018) ............................................................................ 8

*In re Robbs*,
   67 F.3d 308 (9th Cir. 1995) ...................................................................... 20

*Kirkland v. New York State Dep't of Corr. Servs.*,
   711 F.2d 1117 (2d Cir. 1983) .................................................................... 15

*Mach Mining, LLC v. EEOC*,
   575 U.S. 480 (2015) ............................................................................. 9, 18

*Matsushita Elec. Indus. Co. v. Epstein*,
   516 U.S. 367 (1996) .................................................................................. 20

*Medellin v. Texas*,
   552 U.S. 491 (2008) .................................................................................. 20

*MK Hillside Partners v. Comm'r of Internal Revenue*,
   826 F.3d 1200 (9th Cir. 2016) .................................................................. 20

*Moore v. City of San Jose*,
   615 F.2d 1265 (9th Cir. 1980) .................................................................. 15

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) .................................................................... 19

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) .................................................................. 25

*Ruiz v. Snohomish Cty. Pub. Util. Dist. No. 1*,
   824 F.3d 1161 (9th Cir. 2016) .................................................................. 20

*S.E.C. v. Randolph*,
   736 F.2d 525 (9th Cir. 1984) .................................................................... 14

*United States v. Akzo Coatings of Am., Inc.*,
   949 F.2d 1409 (6th Cir. 1991) .................................................................. 14

*United States v. Oregon,*
  913 F.2d 576 (9th Cir. 1990) .......................................................................... 8

*United States v. Pac. Gas & Elec.,*
  776 F. Supp. 2d 1007 (N.D. Cal. 2011) ................................................ 8, 9, 13

*United States v. Telluride Co.,*
  849 F. Supp. 1400 (D. Colo. 1994) ................................................................ 8

*Wilkerson v. Martin Marietta Corp.,*
  171 F.R.D. 273 (D. Colo. 1997) ............................................................. 15, 17

**STATUTES**

42 U.S.C.A. § 2000e-5(b) ................................................................................ 18

26 U.S.C. § 501(c)(3) ...................................................................................... 20

29 U.S.C. § 626(c)(1) ...................................................................................... 17

42 U.S.C. § 2000e-2 (Title VII) ............................................................. *passim*

**RULES**

Fed. R. Civ. P. 23.................................................................................. 15, 16, 17

Fed. R. Civ. P. 24............................................................................................... 7

# I.  **INTRODUCTION**

On December 13, 2021, Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC" or "Commission") and Defendants Activision Blizzard, Inc., Activision Publishing, Inc., Blizzard Entertainment, Inc., and King.com, Inc. (collectively, "Defendants" or "Activision Blizzard"), appeared before the Court for oral argument related to Proposed Intervenor California Department of Fair Employment & Housing's ("DFEH") Motion to Intervene ("December 13 Hearing").  The Court DENIED the DFEH's request to intervene under Federal Rules of Civil Procedure Rule 24.  Dkt. 46.

During the December 13 Hearing, the Court requested clarification related to the applicable legal standard for approval and certain terms of the Parties' proposed Consent Decree, as well as typographical corrections.  Dkt. 11-1.  This Joint Response to Court Requested Clarifications in Support of the Parties' Amended Proposed Consent Decree ("Joint Response") provides the Court with the general responses and clarifications sought as well as confirmation of the specific revisions requested.  Concurrent with this filing, the Parties have lodged an amended Proposed Consent Decree ("Decree").[1]

With the clarifications hereby submitted to the Court, the Parties respectfully request that the Court approve the Decree.  Under the operative Title VII legal standard, the Decree is fair, adequate, and reasonable; it was reached through a procedurally fair and adversarial process.  The Decree's terms are designed to ensure compliance with Title VII, to provide non-monetary relief and, for any employee who may seek monetary relief, to provide a process that affords them every opportunity to understand their rights and make an informed choice.  Finally,

---

[1] For the Court's convenience, attached as Exhibit 1 to this Joint Response is a redline comparing the Consent Decree lodged on September 27, 2021 and the Proposed Amended Consent Decree.

the Parties respectfully submit that those questions and corrections sought by the Court are herein addressed.  Accordingly, the Decree should be approved.

## II.   GENERAL RESPONSE TO COURT:  OPERATIVE LEGAL STANDARD

In the Ninth Circuit, courts must evaluate government consent decrees to determine whether they are "fair, adequate and reasonable." *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990).  The question of whether a consent decree is fair, adequate, and reasonable has both procedural and substantive elements. *United States v. Pac. Gas & Elec.*, 776 F. Supp. 2d 1007, 1024-25 (N.D. Cal. 2011).  The Decree before the Court satisfies the "fair, adequate, and reasonable" standard.

First, the procedural element is met.  To be procedurally sound, the Court must be satisfied that the negotiations that led to the proposed consent decree were "fair and full of adversarial vigor." *United States v. Telluride Co.*, 849 F. Supp. 1400, 1402 (D. Colo. 1994) (citations and internal quotation marks omitted).  A negotiated Consent Decree that is "the product of good faith, arms-length negotiations, . . . is presumptively valid." *Oregon*, 913 F.2d at 581.

Here, as the Parties demonstrated in their earlier filings, the Parties engaged in extensive arms-length negotiations, first during conciliation, and later, with the assistance of a third-party mediator over three days of mediation, and subsequent negotiations. *See generally* Mem. of P. & A. in Supp. Of Defs.' Opp to DFEH Mot. to Intervene (Dkt 31) and Pl. EEOC's Opp. to Cal. DFEH's Mot. to Intervene (Dkt 35); *see Glover v. City of Laguna Beach*, No. SACV 15-01332 AG (DFMX), 2018 WL 6131602, at *2 (C.D. Cal. Nov. 5, 2018) (settlement was arms-length where it was negotiated at three settlement conferences of four-to-eight hours); *Abelar v. Am. Residential Servs., L.L.C.*, No. ED CV19-00726 JAK (JPRX), 2019 WL 6054607, at *5 (C.D. Cal. Nov. 14, 2019) (use of mediation process, including

1   acceptance of a mediator's proposal, demonstrated element of arms-length

2   negotiations and absence of collusion).

3        Second, the substantive element is likewise satisfied.  To be substantively

4   sound, the Court does not determine whether "the settlement is one which the court

5   itself might have fashioned, or considers ideal.  Instead, the court's approval is

6   nothing more than an amalgam of delicate balancing, gross approximations and

7   rough justice.  The Court need only be satisfied that the decree represents a

8   reasonable factual and legal determination." *Pac. Gas & Elec.*, 776 F. Supp. 2d at

9   1025 (citations and internal quotation marks omitted).  Congress has long

10  recognized that conciliation, working with employers and securing resolutions that

11  improve workplace conditions for employees by "informal methods of conference,

12  conciliation, and persuasion," without resorting to litigation, advances the overall

13  public interest.  *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015) (in

14  pursuing the goal of "bring[ing] employment discrimination to an end," Congress

15  chose "[c]ooperation and voluntary compliance" as its "preferred means.")

16  (alterations in original), citing *Ford Motor Co. v. EEOC*, 458 U.S. 219, 228 (1982).

17       Here, as demonstrated in prior submissions, the Decree is the model of

18  fairness; it is consistent with years of EEOC past settlements, supporting an

19  inference that the proposed terms are recognized by the EEOC (and prior courts) as

20  reasonably furthering Title VII's purpose.  Specifically, as described in the

21  Amended Consent Decree (Dkt. 50-1), the agreement between the Parties advances

22  the EEOC's mission to ensure Title VII compliance with multiple transparency

23  mechanisms in place.  For example, the Decree provides for:

24      • ***Policy Review***.  Reviewing and revising Activision Blizzard's workplace

25        policies and practices to ensure that they incorporate best practices and

26        promote Activision Blizzard's strong commitment to a workplace free of

27        discrimination and harassment.  Section XII.C.4.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- **_Complaint Reporting_**. Reviewing and revising Activision Blizzard's complaint-investigation procedures to ensure that they, among other things, encourage employee reporting, articulate the variety of mechanisms through which employees can report concerns, and describe the process by which complaints are investigated.  Section XII.C.5.

- **_Training_**.  Requiring compliance training for all supervisory employees, HR/Investigation training for human resources employees and any other employees who are responsible for investigating relevant complaints, and workplace harassment prevention training for all non-supervisory and non-human resources employees.  All trainings will be annual and include bystander intervention and civility components.  Training effectiveness will be evaluated by the EEO Consultant.  Section XII.D.

- **_External Consultant Review_**.  Engaging an external consultant who will be responsible for, among other things, conducting annual audits, reviewing relevant internal complaints, reviewing and providing feedback on Activision Blizzard's discrimination and complaint investigation policies and procedures, assessing trainings, and assisting with the rollout of expanded mental health offerings.  Section XII.A.

- **_New EEO Coordinator Position_**.  Creating an internal Equal Employment Opportunity Coordinator who will assist with implementation of the Consent Decree terms and Activision Blizzard's broader equal employment opportunity initiatives and activities.  Section XII.B.

- **_Performance Metrics_**.  Revising performance evaluation forms for managers, supervisors, and human resource personnel, to include measures for performance on compliance with Activision Blizzard's anti-discrimination, anti-harassment, and anti-retaliation policies and procedures.  Section XII.F.

- ***Mental Health Services***.  Expanding offerings for employees in need of mental health or counseling services.  Section XII.G.
- ***Staffing Agency Compliance***.  Ensuring that staffing agencies provide all individuals assigned to work at Activision Blizzard with a copy of Activision Blizzard's workplace policies and procedures.  Section XII.H.
- ***Victim-Specific Relief***.  Ensuring that Eligible Claimants are afforded equal opportunities in the future by providing neutral references, and in certain circumstances, directing the removal of documents related to the allegations from their personnel file location and reclassifying claimed retaliatory terminations as voluntary resignations.  Section X.
- ***Relief Fund***.  Creating an $18-million class fund available to potential claimants who voluntarily *elect to participate* in the settlement and release claims of sexual harassment, pregnancy discrimination, and related retaliation against Activision Blizzard.  Section IX.A.  None of these funds are allocated to EEOC as attorneys' fees or costs.[2]

Importantly, no current or former employee of Activision Blizzard is bound by the release provision of the Consent Decree that relates to an eligible employee ***unless they choose to be***.  Nor does any individual release their claims of sexual harassment, pregnancy discrimination, and related retaliation against Activision Blizzard simply by virtue of the existence of the Consent Decree.

For those individuals who elect to participate, the Consent Decree provides numerous measures to ensure those eligible employees who participate and receive an individual settlement payment do so knowingly and voluntarily, including:

---

[2] As requested by the Court, to assist it in evaluating the relief fund – as well as the mechanics for the distribution for any excess funds – for "opt in" Eligible Claimants, the Parties will submit a Request for *In Camera* Review, which will provide the Court with more detailed information utilized by the Parties during the conciliation and mediation processes.

- ***Notice***.  Every individual who is eligible to participate will receive notice of the Consent Decree terms.
- ***Voluntary Claim Form Submission***.  Current and former employees who wish to participate can submit a claim form detailing their claims of sexual harassment, pregnancy discrimination, and related retaliation, but no individual is required to participate, and there will be no retaliation against anyone who chooses to participate or who chooses not to participate.
- ***EEOC Assessment Of Claims***.  The EEOC will evaluate the claims of sexual harassment, pregnancy discrimination, and related retaliation by all individuals who choose to submit a form, make a determination indicating whether they are eligible for a monetary payment and, if so, determine the amount of that payment.
- ***Further Notice Of Settlement Offer***.  All individuals who submit claim forms will be informed of the settlement amount to which they may be entitled and will receive a copy of the release agreement from Activision Blizzard that they will sign in exchange for their individual payments.
- ***Free Attorney Consultation For Claimants***.  Claimants will be notified that they can consult counsel of their choice to review the settlement offer, and Activision Blizzard will pay for one hour of such services, so that claimants are fully informed and counseled on their rights as they decide whether they wish to participate in the settlement and release of claims of sexual harassment, pregnancy discrimination, and related retaliation or not.
- ***No Employee Is Required To Participate***.  If any individual elects not to participate, either by choosing not to submit a claim form or by rejecting the settlement offer after receiving notice of their payment amount and the

1  company-provided release agreement, then their rights will be unaffected
2  by the Consent Decree.

3      The Decree's terms also provide for both voluntary compliance and
4  accountability for Activision Blizzard. Once a consent decree is approved by the
5  District Court, the EEOC oversees compliance with the decree for the term. While
6  the District Court typically administratively closes the case, it retains jurisdiction in
7  the event a conflict arises that the EEOC and the defendant are unable to resolve
8  through the consent decree's conflict resolution provisions. This is the mechanism
9  through which the EEOC keeps the Court apprised of issues, should they arise,
10 while preserving judicial resources. The EEOC takes its responsibility for
11 monitoring companies during the pendency of consent decrees very seriously,
12 meeting with EEO Consultants regularly, reviewing their reports carefully, working
13 with defendants directly to ensure compliance, and resorting to the courts when
14 necessary, including to seek extensions of the term of consent decrees if
15 appropriate. *See* Declaration of Taylor Markey In Support Of Joint Response To
16 Court Requested Clarifications In Support Of The Parties' Amended Proposed
17 Consent Decree ("Markey Decl."), Exhibits A-C (EEOC compliance actions in
18 *AHMC Garfield Medical Center LP*, *Lucinda Management, LLC* and *Magnolia*
19 *Health Corporation*, achieving extension of the term of consent decrees[3]). This is a
20 responsibility that EEOC has carried out for decades, gaining deep institutional
21 knowledge regarding effective compliance monitoring.

22 **III.  GENERAL RESPONSE TO COURT:  ROLE OF EEOC AND**
23 **AGENCY DEFERENCE**

24     As it pertains to an EEOC consent decree, Title VII serves as a guide, but the
25 EEOC is permitted to include both less than the full possible relief under Title VII
26 and more than what could be obtained under Title VII in a final judgement. *Pac.*

27 _____
[3] In addition to these cases where the EEOC had to seek judicial intervention to
28 obtain compliance, the EEOC has in many other cases commenced the dispute
resolution process but been able to resolve the dispute short of involving the Court.

1   *Gas & Elec.*, 776 F. Supp. 2d at 1024 ("[W]hile a consent decree 'must conform to

2   applicable laws . . . [it] need not impose all the obligations authorized by law.'")

3   (alterations in original, citation omitted); *EEOC v. Safeway Stores, Inc.*, 611 F.2d

4   795, 799 (10th Cir. 1979) (although Title VII "provide[s] the broad outlines of the

5   objectives to be reached and the mechanisms to be used," EEOC consent decrees

6   are permitted to impose obligations that go beyond what is strictly required by Title

7   VII, with agreement from the employer).

8       While Title VII is the guide, the EEOC is the governmental agency charged

9   with enforcing Title VII.  Thus, courts have recognized that, when considering

10  decrees entered into by the government, "the courts should pay deference to the

11  judgment of the government agency which has negotiated and submitted the

12  proposed judgment."  *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984); s*ee also*

13  *California Dep't of Toxic Substances Control v. Allen's Formal Wear, Inc.*, No. CV

14  13-5069-GHK (JCGX), 2015 WL 12656902, at *3 (C.D. Cal. Jan. 8, 2015)

15  (deference afforded "when a government agency charged with protecting the public

16  interest 'has pulled the laboring oar in constructing the proposed settlement'")

17  (citation omitted); *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436

18  (6th Cir. 1991) (noting judicial deference towards approving settlements is

19  particularly strong where the decree has been negotiated by government attorneys

20  on behalf on a government agency that is an expert in its field).

21      After all, the EEOC does not function simply as a vehicle for conducting

22  litigation on behalf of private parties; nor does it "stand in the employee's shoes."

23  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297-98 (2002).  But rather is "the

24  master of its own case" which includes "the authority to evaluate the strength of the

25  public interest at stake" and to determine whether public resources should be

26  committed to the recovery of victim-specific relief.  *Id.* at 291-92.  As such, the

27  EEOC has the authority to both seek victim-specific relief on behalf of claimants

28  and to obtain appropriate relief to further the public's interest in preventing

discrimination, harassment, and retaliation. "Given the primary enforcement power of the EEOC . . . and the EEOC's duty to further the public interest," courts afford "deference to the EEOC's acceptance of [] Consent Decree[s]." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 288 (D. Colo. 1997).[4]

Finally, courts have long recognized the EEOC's important role in seeking relief under federal law in order to fulfill its mission to eradicate employment discrimination on behalf of the public interest and the preference to do so through voluntary compliance and settlement. *EEOC v. Occidental Life Ins. Co.*, 535 F.2d 533, 537 (9th Cir .1976), aff'd 432 U.S. 355 (1977). In enacting the operative statute (Title VII), Congress "specifically endorsed voluntary compliance and settlement as the preferred means of achieving the elimination of unlawful employment discrimination." *Moore v. City of San Jose*, 615 F.2d 1265, 1271 (9th Cir. 1980); *Kirkland v. New York State Dep't of Corr. Servs.*, 711 F.2d 1117, 1128 (2d Cir. 1983) ("[V]oluntary compromises of Title VII actions enjoy a presumption of validity."); *Freeman v. City of Philadelphia*, 751 F. Supp. 509, 515 (E.D. Pa. 1990) ("[A] presumption of validity attaches to proposed consent decrees in employment discrimination cases."), aff'd, 947 F.2d 935 (3d Cir. 1991). For this reason too, settlements negotiated by EEOC further the purpose of Title VII and should be afforded deference.

## IV.   GENERAL RESPONSE TO COURT:  INAPPLICABILITY OF FRCP 23(E)

While Federal Rules of Civil Procedure Rule 23(e) does include the phrase "fair, reasonable and adequate," Rule 23 analysis is inapplicable here. On its face, Rule 23(e) specifically applies to opt-out classes, in order to protect absent class members against a result negotiated by private counsel or a class representative that

---

[4] Deference has also been given "since an EEOC enforcement action simply does not raise the same concerns as private class actions," including class counsel fees, named plaintiffs desiring a larger portion of the settlement, and the extinguishment of the rights of non-named class members. *Wilkerson*, 171 F.R.D. at 289.

*binds absent class members but does not, in fact, actually serve their interest.* See Fed. R. Civ. P. 23(e)(2), (e)(4) (applied where settlement "would bind class members"). In such a circumstance, a trial court is called upon to intercede and take steps to ensure that the settlement presented to the court for "approval" – thereby binding absent class members – is "fair, reasonable and adequate."[5] *See* Fed. R. Civ. P. 23 Advisory Committee's notes to 2003 amendment ("Settlement may be a desirable means of resolving a class action. But court review and approval are essential to assure adequate representation of class members who have not participated in shaping the settlement."); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) ("Courts reviewing class action settlements must ensure that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.") (citations and internal quotation marks omitted). Such steps – and the level of scrutiny typically associated with the "fair, reasonable and adequate" analysis – are not required here for several reasons.

First, the Supreme Court and other courts have long recognized that EEOC is exempt from Rule 23's requirements. *See Gen. Tel. Co. of the N.W., Inc. v. EEOC*, 446 U.S. 318, 323, 331 (1980) ("Rule 23 is not applicable to an enforcement action brought by the EEOC in its own name and pursuant to its authority under § 706 to prevent unlawful employment practices"; "[u]nlike the Rule 23 class representative, the EEOC is authorized to proceed in a unified action and to obtain the most satisfactory overall relief even though competing interests are involved and particular groups may appear to be disadvantaged."); *accord EEOC v. Dinuba Med.*

---

[5] Rule 23(e) requires pre-entry notice and comment period for class members (Sections (e)(1)(B) and (e)(5)(A)), a mandatory hearing (Section (e)(2)), calculations regarding how proposed class relief will be allocated (Section (e)(2)(C)(ii)), and inclusion of the text of agreements incidental to the settlement (Section (e)(3)).

1  *Clinic*, 222 F.3d 580, 588 (9th Cir. 2000); *see also EEOC v. Pan Am. World*

2  *Airways, Inc.*, Nos. C-81-3636 RFP, C-81-4590 RFP, 1988 WL 224232, at \*9

3  (N.D. Cal. June 17, 1988) (approving settlement and consent decree and holding

4  that EEOC's authority "in no way depends upon Federal Rule of Civil Procedure

5  23"). [6]

6     Second, the federal government – unlike a private litigant or lawyers – has no

7  financial interest in the resolution that might improperly influence its negotiations.

8  It does not recover attorneys' fees or costs or otherwise detract from any financial

9  recovery that is available to eligible claimants.

10     Third, this is not an "opt out" class.  Rather, the EEOC has negotiated its

11  peace with Activision Blizzard on the terms it determined to be reasonable for it to

12  compromise potential claims of sexual harassment, pregnancy discrimination, and

13  related retaliation under Title VII.  Defendants' employees may be eligible to seek a

14  monetary payment under the Decree, but they are not bound by the Decree unless

15  they choose to participate by submitting a claim form, their claim is accepted by

16  EEOC, and they then elect to sign a release in exchange for a monetary payment.

17  *See*, Exhibit 2 (Claim Process Graphic).  Only an employee who "opts-in" by

18  submitting a claim, signing a release and accepting the related payment will have

19  sexual harassment, pregnancy discrimination, and related retaliation claims

20  extinguished through this process.

21

22  [6] Although courts do not apply the requirements listed in Rule 23 itself to
    government negotiated consent decrees, sometimes courts utilize the definition of

23  "fair, adequate, and reasonable" from the case law interpreting Rule 23 when
    evaluating government *opt-out* settlements that will extinguish the rights of

24  absentees.  *Wilkerson*, 171 F.R.D. at 283 (evaluating EEOC ADEA settlement –
    required to be opt-out and extinguish rights by law unlike Title VII settlements –

25  with reference to Rule 23 multi-factor test of "fair, adequate and reasonable" but
    not applying requirements of the Rule itself); Section 7(c)(1), 29 U.S.C.

26  § 626(c)(1); *EEOC v. Pan Am. World Airways, Inc.*, 897 F.2d 1499, 1505 (9th Cir.

27  1990) ("Once the EEOC commences an age discrimination suit, the right to
    commence a private action twice authorized by the ADEA ceases to exist.").  No

28  such provision requiring opt-out settlements exists in Title VII.

## V.    SPECIFIC RESPONSES TO COURT-POSED ITEMS

Finally, the Court asked the Parties to address its questions and make certain clarifications in the language of the Decree.  Following is a chart that details the Court's questions and requests with the Parties' responses.

| Court's Question/Requested Clarification | Parties' Response |
|---|---|
| Include all documents mentioned in the Consent Decree.<br><br>Tr. 6:19-21.[7] | Attached to the the Amended Proposed Consent Decree are the Notice (Attachment A), Claim Form (Attachment B), and Release of Claims (Attachment C). |
| Clarify whether equal pay claims other than pregnancy claims were alleged in the Complaint and would be resolved by this Decree.<br><br>Tr. 22:17-19; 27:12-15; 28:8-10. | The Complaint makes no allegations regarding equal pay. (Dkt. 1).  An equal pay claim is referenced in the Complaint because the EEOC's Commissioner's Charge made an allegation of pay discrimination.  Pursuant to its agreement with DFEH not to investigate pay claims, EEOC did not make findings regarding equal pay or pursue that claim.  The EEOC is required to investigate a claim before conciliating and/or litigating that claim. 42 U.S.C.A. § 2000e-5(b); *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 483-484 (2015) (EEOC required to investigate and make findings on particular claims before pursuing conciliation or litigation on those claims).  Thus, the Complaint does not assert an equal pay claim. |
| Clarify the scope of the Consent Decree in Paragraph 1 of Section II (entitled "Purpose and Scope") and Section IV.A (entitled "Release").<br><br>Tr. 27:4-10. | The language of this Section was edited to clarify the scope of the proposed Consent Decree, which is limited to the claims brought by the EEOC in the Action.<br><br>To clarify, it now states: "In the |

---

[7] All transcript cites are from the December 13, 2021 Motion to Intervene hearing and are attached as Exhibit E to the Declaration of Taylor Markey In Support of this Joint Request.

JOINT RESPONSE TO COURT REQUESTED CLARIFICATIONS IN SUPPORT OF AMENDED [PROPOSED] CONSENT DECREE

| Court's Question/Requested Clarification | Parties' Response |
|---|---|
| | interest of resolving this matter, the Parties have agreed that this Action should be finally settled by entry of this Decree, and all claims **brought by the EEOC**, including those arising out of any of the same factual predicates as those ~~implicated by~~ **in** the Action, will be fully and completely resolved by this Decree." |
| | To the extent the Court inquired as to the use of the phrase "same factual predicate," this language is permitted by Ninth Circuit case law. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006). |
| | The language in Section IV.A is the EEOC's standard release language for *its* own potential claims against an employer. Markey Decl., Exh. D. |
| Clarify scope of EEOC's release to Activision Blizzard and Eligible Claimants' releases to Activision Blizzard.<br><br>Tr. 27:2-10. | The scope of the **EEOC's release** is described in Section IV.A of the Decree. |
| | The scope of **Eligible Claimants' release** is set forth in the Release of Claims (Attachment C to Decree). |
| | Those Eligible Claimants who agree to release their sexual harassment, pregnancy discrimination, and related retaliation claims will release their right to proceed or otherwise recover any monetary relief under Title VII, FEHA, or other state or local law for such claims and for any other claims they could have brought in any court based on those same facts (*e.g.*, other tort or contract claims). For any claim nevertheless asserted, by (or on behalf of) an Eligible Claimant, that is covered by an Eligible Claimant's |

| Court's Question/Requested Clarification | Parties' Response |
|---|---|
| | release, the court before whom such a claim is asserted would address the preclusive effect of the release in that action. *See In re Robbs*, 67 F.3d 308 (9th Cir. 1995) (the preclusive effect of any release on other claims will be determined by the Court where those claims sit); *see also Ruiz v. Snohomish Cty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1168 (9th Cir. 2016) ("[T]o the extent that Defendants argue that the district court may predetermine the res judicata effect of its judgment, they are mistaken as a matter of law."); *Medellin v. Texas*, 552 U.S. 491, 513 n.9 (2008) ("A court adjudicating a dispute may not be able to predetermine the res judicata effect of its own judgment.") (quotations omitted); *MK Hillside Partners v. Comm'r of Internal Revenue*, 826 F.3d 1200, 1207 (9th Cir. 2016) ("The first court does not get to dictate to other courts the preclusion consequences of its own judgment") (quoting 18 Federal Practice § 4405); *see also Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 396 (1996) (Ginsburg, J., concurring in part and dissenting in part) ("A court conducting an action cannot predetermine the *res judicata* effect of the judgment; that effect can be tested only in a subsequent action."). |
| Identify the process for reaching the Settlement Fund amount.<br><br>Tr. 36:2-38:5. | As a result of three days of private mediation and extensive arms-length negotiations undertaken by the Parties during the conciliation process over a period of months, the Parties were able to reach a comprehensive settlement on monetary and injunctive terms, memorialized in the Decree. While the ultimate resolution could have taken the form of a confidential conciliation |

| Court's Question/Requested Clarification | Parties' Response |
|---|---|
| | agreement, as part of the negotiations, the Parties agreed to resolve the case with a publicly-filed consent decree, which offers transparency to the public regarding the resolution of this important case.<br><br>The Parties will submit for the Court's *in camera* review the Parties' respective positions regarding monetary relief during the Parties' negotiations that were made pursuant to conciliation confidentiality requirements and mediation privilege. |
| Identify size and gender makeup of Defendants' workforce.<br>Tr. 27:21-28:15. | Defendants' United States workforce has 13,143 employees as of August 2021. Potential Claimants include individuals of all genders, but the vast majority of Eligible Claimants are expected to be female based on the EEOC's investigation. Female employees make up 21 percent of Defendants' United States workforce. |
| Clarify definition of "*Cy Pres* Fund."<br>Tr. 28:17-23; 47:20-48:24. | Clarified definition of "*Cy Pres* Fund" as "consists of those Undistributed Excess Funds that may be distributed to charitable organizations that have received tax-exempt status under Internal Revenue Code § 501(c)(3) and whose missions involve advancing women in the video game and technology industries or promoting awareness around sexual harassment and gender equality issues." *See* Amended Consent Decree, Section III.I.<br><br>Added definitions of "Diversity and Inclusion Fund" and "Undistributed Excess Funds." *See* Amended Consent Decree, Sections III.L and III.U. |
| Clarify who can enforce compliance | Only the EEOC can enforce |

| Court's Question/Requested Clarification | Parties' Response |
|---|---|
| with the Consent Decree.<br><br>Tr. 28:24-29:6. | compliance with the terms of the Decree.  EEOC consent decrees exist to maintain employers' compliance with Title VII, not to regulate the government's actions. |
| Address whether three-year term of Consent Decree is sufficient and whether the deadline for the Exit Report should be adjusted to allow the EEOC sufficient time to assess compliance.<br><br>Tr. 29:23-30:8; 32:25-33:5; 52:19-23. | The goal of the Consent Decree is not for the EEOC to monitor a company forever but rather for the EEOC to monitor a company for a sufficient period of time for lasting changes to be implemented and their positive impact to be demonstrated.  In the EEOC's experience, three years provides ample time for the changes to be made and for the EEOC to monitor compliance.  The Parties recognize that change takes time and, for that reason, have built in numerous intermediate timeframes to ensure all aspects of the Decree are completed within the three-year period.  Many of the changes will begin or be fully implemented within the first one hundred eighty (180) days of the Decree, such as appointment of the EEO Consultant, EEO Coordinator, and Claims Administrator; commencement of the claims process; review of policies, procedures, and recordkeeping; revisions of the performance evaluation forms; and availability of mental health or counseling services.  Ultimately, Defendants, through the EEO Consultant, will submit six semi-annual reports including an initial report and an exit report (now due 180 days before the expiration of the Consent Decree instead of 90 days; *see* Amended Consent Decree, Section XII.K.3.), which will detail all progress they have made with regard to the Decree.  These semi-annual reports will include progress reports regarding |

| Court's Question/Requested Clarification | Parties' Response |
|---|---|
| | the annual audits conducted by the EEO Consultant.  Although the Court questioned whether annual auditing was sufficiently frequent, in the EEOC's experience, auditing a nationwide employer of this size cannot be realistically completed in six months.  The EEO Consultant will be reporting on the progress of the audits as they are taking place but working towards a goal of completing a full company-wide audit each year, which the Parties believe is a reasonable and attainable goal.  These deadlines will each provide an opportunity for the EEOC to review compliance and seek further compliance if necessary. EEOC plays an active monitoring role and has sought and received extensions of Consent Decrees when necessary in other cases.  Markey Decl., Exhs. A-C (EEOC compliance actions in *AHMC Garfield Medical Center LP*, *Lucinda Management, LLC*, and *Magnolia Health Corporation* achieving extension of the term of consent decrees). |
| Clarify language in Section VIII.A regarding (i) Defendants' attorneys being present during interviews of management and persons who possess attorney-client privileged information; and (ii) whether the Defendants must comply with EEOC's request to review, interview, or inspect under Section VIII.A.<br><br>Tr. 33:7-35:14. | Language clarified that:<br><br>1.  Defendants' attorneys may be present if the EEOC interviews a member of management or any person who possesses attorney-client privileged information of Defendants regarding the topic of the interview, unless the interview is about that person's own sexual harassment, pregnancy discrimination, or related retaliation claim.<br><br>2.  Defendants *must* comply with the EEOC's requests – as permitted in Section VIII.A. – to review, |

| Court's Question/Requested Clarification | Parties' Response |
|---|---|
| | interview, or inspect within 30 days of the request, unless otherwise agreed. *See* Section VIII.A. |
| Provide more detail on claim evaluation and share distribution process, including whether the process is conducted entirely through paperwork. Tr. 38:24-39:3; 41:13-14; 47:15-48:24; 49:21-24; 50:7-12. | *See* Exhibit 2 (Graphic of Settlement Process). Apart from collecting paper and electronic responses to the Claim Form, the EEOC and the Claims Administrator can contact potential claimants by phone or email to ask follow-up questions. EEOC and the Claims Administrator may also be contacted by potential claimants by phone or email to answer their questions about the process. |
| Explain the impact on someone who makes a claim if the claim is rejected. Does the claim remain confidential? Can the claim be pursued in another forum? Tr. 39:4-7. | EEOC will maintain the confidentiality of all claims, including those that are rejected. Individuals who EEOC deems ineligible will maintain whatever rights they previously possessed to pursue a claim against Defendants, as this is an opt-in decree. |
| Describe process for determining which Potential Claimants are eligible, scoring claims, and whether scoring will occur on a rolling basis. Tr. 40:3-12; 41:6-14; 44:2-13; 46:21-47:6. | Scoring will occur on a rolling basis. *See* Claim Form (Attachment B to Decree) for detail on scoring process with the EEOC making the final determination on eligibility and allocation. |
| Clarify that Eligible Claimants are those that could assert "viable" claims. Tr. 40:20-41:5. | Updated definition of Eligible Claimant. *See* Section III.O. |
| Provide an explanation regarding any money that may go back to Defendants as part of the Diversity and Inclusion Fund. Tr. 48:12-24. | After the Claims Administrator distributes funds to the Eligible Claimants included on the EEOC's final Distribution List, any funds remaining will be allocated by EEOC to a *Cy Pres* fund to be distributed to |

| Court's Question/Requested Clarification | Parties' Response |
|---|---|
| | charitable organizations approved by the EEOC; some of the funds may be allocated, upon request to and approval by the EEOC, to a Diversity and Inclusion Fund to provide for diversity and inclusion programs. *See* Section IX.B.4.n.  Defendants cannot use these funds for any purpose but rather must use them to provide benefits to their workers above and beyond the requirements of the law and the proposed Decree.  Because of this limitation on the use of the funds, this does not constitute a true reversion.[8] |
| Clarify EEOC's input related to selection of charitable organizations to receive *Cy Pres* Fund.<br>Tr. 50:15-51:5. | Clarified that charitable organizations will be selected by Defendants with approval by the EEOC.  *See* Section IX.B.4.n. |
| Review language in Section X.A.<br>Tr. 51:9-12. | Language revised and clarified.  *See* Section X.A. |
| Whether EEOC must approve Internal Coordinator.<br>Tr. 51:20-52:7. | Clarified that EEOC does not have approval over Internal Coordinator, who will be Defendants' employee. *See* Section XII.B. EEOC will have approval over the external EEO Consultant who is not directly employed by Defendants, but Defendants will hire the Internal |

---

[8] Even assuming *arguendo* that the Diversity and Inclusion Fund provision were a reversion, it can reasonably be included in the Decree because it must be used for a narrow purpose, only with the approval of the EEOC, and is intended to remedy or prevent sexual harassment and other forms of sex discrimination in Defendant's workplace. *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1059 (9th Cir. 2019) ("That is not to say that a reversionary clause can never reasonably be included in a settlement; in some cases, the reversionary clause may provide *articulable benefits to the class*, and *any concerns about perverse incentives or collusion may be ameliorated by other aspects of the settlement*.")(emphasis added). Any concerns raised by the inclusion of a fund for diversity and inclusion efforts are outweighed by the fair and transparent claims process.

| Court's Question/Requested Clarification | Parties' Response |
|---|---|
| | Coordinator, who the Decree requires to be qualified and experienced in the area of EEO compliance. |
| Clarify whether Defendants must implement EEO Consultant's feedback or a good faith alternative resolution based on audit of Identified Departments and Functions.<br><br>Tr. 52:10-18. | Clarified that Defendants will implement changes based on the EEO Consultant's feedback or their own good faith alternative resolution. *See* Section XII.C.2. |
| Clarify meaning of "audit of disciplinary programs."<br><br>Tr. 52:24-53:6. | Clarified that "disciplinary programs" are "disciplinary measures." *See* Section XII.C.3. |
| Review Section XII.C.5.d. to ensure it does not prevent claimants from talking about their complaints.<br><br>Tr. 54:7-11. | Revised to reflect that the confidentiality of the complaint, complainant, and investigation shall be maintained **by Defendants** to the fullest extent possible. *See* Section XII.C.5.d. |
| Clarify how often supervisory employees will be trained under the terms of the Decree and whether all supervisory employees are included.<br><br>Tr. 53:24-54:2. | Supervisory employees will be trained annually under the terms of the Decree (as will all other employees). Section XII.D.4. All supervisory employees, including new hires, will be included in this requirement. Section XII.D.1. The trainings required by the Decree go above and beyond what is required by law, including bystander intervention and civility components. |

# VI.    <u>CONCLUSION</u>

Based on the foregoing, and in the interests of justice, the Parties respectfully move that the Court approve the Parties' Amended Proposed Consent Decree. (Dkt. 50-1.)

Respectfully submitted,

DATED:  January 4, 2022        U.S. EQUAL EMPLOYMENT
                               OPPORTUNITY COMMISSION


By:_____/s/ Taylor Markey_____
                               TAYLOR MARKEY
                               Senior Trial Attorney, EEOC

DATED:  January 4, 2022        PAUL HASTINGS LLP


By:_____/s/ Elena R. Baca_____
                               ELENA R. BACA

Attorneys for Defendants