ELENA R. BACA (SB# 160564)
elenabaca@paulhastings.com
FELICIA A. DAVIS (SB# 266523)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California  90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

RYAN D. DERRY (SB# 244337)
ryanderry@paulhastings.com
PAUL HASTINGS LLP
101 California Street
Forty-Eight Floor
San Francisco, California 94111
Telephone:  (415) 856-7000
Facsimile:  (415) 856-7100

Attorneys for Defendants
ACTIVISION BLIZZARD, INC., BLIZZARD
ENTERTAINMENT, INC., ACTIVISION
PUBLISHING, INC., and KING.COM, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ACTIVISION BLIZZARD, INC., BLIZZARD ENTERTAINMENT, INC., ACTIVISION PUBLISHING, INC., and KING.COM, INC., and DOES ONE through TEN, inclusive,<br><br>Defendants. | CASE NO. 2:21-CV-07682 DSF-JEM<br><br>**DEFENDANTS' OPPOSITION TO DFEH'S MOTION TO STAY PENDING APPEAL**<br><br>Date:     February 28, 2022<br>Time:    1:30 p.m.<br>Dept:     7D<br>Judge:   Hon. Dale S. Fischer |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ....................................................................................7

II.  THE COURT SHOULD DENY DFEH'S REQUEST FOR A STAY........8

A.   Legal Standards................................................................................8

  1.  The *Landis* standard for granting or denying a stay.................8

  2.  The *Nken* standard for granting or denying a stay. ...............10

B.   None Of The *Landis* Factors Warrants A Stay. ............................11

  1.  Activision Blizzard employees, potential claimants, and
      the EEOC will be damaged by a stay. ..................................11

    a.  Further delay of the EEOC settlement is
        unwarranted. .........................................................11

    b.  A stay will undermine the EEOC's mandate to
        investigate and conciliate federal claims, and affect
        employers' willingness to resolve future claims. .........13

    c.  A stay would encourage the DFEH to seek to
        intervene and disrupt future EEOC conciliation
        efforts....................................................................14

  2.  DFEH will suffer no hardship from denial of a stay.............15

    a.  The Court already has allowed DFEH to state its
        purported concerns regarding the Consent Decree. ......15

    b.  A stay is not needed to protect any DFEH interest.......15

      i.   DFEH has no right to usurp private
           individuals' right to settle state or federal
           claims............................................................15

      ii.  No evidence will be destroyed. ........................16

    c.  DFEH will continue to pursue its own case if a stay
        is denied. ...............................................................16

    d.  The EEOC and Private Legal Counsel provided
        through the Consent Decree will protect any
        interest DFEH may have..........................................17

  3.  A stay would not simplify any issues of law or proof or
      promote the orderly course of justice. ..................................18

    a.  Because the Court already has and will consider
        DFEH's recent input, formal intervention would
        not impact the Court's consideration of the Consent
        Decree....................................................................18

DEFS.' OPPOSITION TO DFEH'S MOTION
                                                 TO STAY PENDING APPEAL

**TABLE OF CONTENTS**
(continued)

Page

        b.    Because DFEH Seeks A Stay Of Indefinite Length,
The Court Should Deny The Request......................... 19

   C.   A Stay Also Should Be Denied Under The *Nken* Standards. ........... 20

        1.    DFEH cannot make, and does not attempt to make, a
"strong showing" of likelihood of success on the merits........ 21

        2.    DFEH cannot show likelihood of irreparable injury............. 22

        3.    Balancing the equities does not favor a stay......................... 22

        4.    A stay would not be in the public interest............................ 23

III.   CONCLUSION ................................................................. 23

DEFS.' OPPOSITION TO DFEH'S MOTION
TO STAY PENDING APPEAL

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Al Otro Lado v. Wolf,*

5
    952 F.3d 999 (9th Cir. 2020)............................................................20, 22

6
*Alan Darush MD APC v. Revision LP,*

7
    2013 WL 12142621 (C.D. Cal. Aug. 28, 2013) ...........................................20

8
*Alvarez v. NBTY, Inc.,*
    2020 WL 804403 (S.D. Cal. Feb. 18, 2020) ................................................21

9
*Arakaki v. Cayetano,*

10
    324 F.3d 1078 (9th Cir. 2003) ....................................................................18

11
*Ass'n for Retarded Citizens v. Dep't of Developmental Servs.,*
    38 Cal. 3d 384 (1985) ................................................................................16

12
*Chalian v. CVS Pharmacy, Inc.,*

13
    2020 WL 6821316 (C.D. Cal. Nov. 10, 2020) ................................. 10, 20, 21

14
*CMAX, Inc. v. Hall,*
    300 F.2d 265 (9th Cir. 1962)........................................................................9

15
*Dependable Highway Express, Inc. v. Navigators Ins. Co.,*

16
    498 F.3d 1059 (9th Cir. 2007)...............................................................13, 20

17
*Doe #1 v. Trump,*

18
    957 F.3d 1050 (9th Cir. 2020)................................................................21, 22

19
*Dyna-Med, Inc. v. Fair Emp't & Hous. Comm'n,*
    43 Cal. 3d 1379 (1987) ..............................................................................16

20
*EEOC v. Federal Express Corp.,*

21
    268 F. Supp. 2d 192 (E.D.N.Y. 2003) .......................................................17

22
*Hillsborough County v. Automated Medical Laboratories, Inc.,*
    471 U.S. 707 (1985) ...................................................................................14

23
*Hilton v. Braunskill,*

24
    481 U.S. 770 (1987) ..................................................................... 10, 20, 21

25
*Hoeun Yong v. I.N.S.,*

26
    208 F.3d 1116 (9th Cir. 2000).....................................................................20

27
*In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Practices Litig.,*
    2013 WL 3463503 (E.D. Pa. July 10, 2013)................................................14

28

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4

*In re Pet Food Prods. Liab. Litig.*,
629 F.3d 333 (3d Cir. 2010)............................................................... 18

5

6

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
314 F.3d 99 (3rd Cir. 2002) ............................................................. 14

7

*John R. Sand & Gravel Co. v. United States*,
60 Fed. Cl. 347 (2004) .................................................................... 21

8

9

*Lal v. Capital One Fin. Corp.*,
2017 WL 282895 (N.D. Cal. 2017)..................................................... 13

10

11

*Landis v. North American Co.*,
299 U.S. 248 (1936) .............................................................. *passim*

12

*Lane v. Wells Fargo Bank*,
2013 U.S. Dist. LEXIS 87669 (N.D. Cal. June 21, 2013)............................. 17

13

14

*Leyva v. Certified Grocers of California, Ltd.*,
593 F.2d (9th Cir. 1979)................................................................... 19

15

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005)............................................. 8, 9, 10, 11, 19

16

17

*Mach Mining v. EEOC*,
575 U.S. 480 (2015) ...................................................................... 11

18

19

*Maine v. Dir., U.S. Fish & Wildlife Serv.*,
262 F.3d 13 (1st Cir. 2001)............................................................... 14

20

*Merck Sharp & Dohme Corp. v. Albrecht*,
139 S. Ct. 1668 (2019)................................................................... 14

21

22

*Moore v. Verizon Commc'ns, Inc.*,
2013 U.S. Dist. LEXIS 15609 (N.D. Cal. Feb. 5, 2013).............................. 17

23

*Nat'l Rural Telecomms. Coop. v. DIRECTV*,
319 F. Supp. 2d 1094 (C.D. Cal. 2003)..................................... 10, 11, 20, 21

24

25

*Nicholson v. REI Energy, LLC*,
370 F. Supp. 3d 1199 (D. Or. 2019)....................................................... 19

26

27

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................... *passim*

28

*Peck v. County of Orange*,
528 F. Supp. 3d 1100 (C.D. Cal. 2021).......................................... 9, 10, 18

DEFS.' OPPOSITION TO DFEH'S MOTION
TO STAY PENDING APPEAL

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Ray Capital Inc. v. M/V Newlead Castellano*,
  2016 WL 6883990 (S.D. Ga. Nov. 18, 2016) ................................................ 21

*Richards v. Ernst & Young LLP*,
  2012 WL 92738 (N.D. Cal. Jan. 11, 2012) .................................................... 21

*Snap Advances, LLC v. Caring Hands and Supplementary Enrichment Educ., LLC*,
  2020 WL 1031797 (D. Utah Jan. 28, 2020) .................................................. 21

*Stiner v. Brookdale Senior Living, Inc.*,
  383 F. Supp. 3d 949 (N.D. Cal. 2019) .......................................................... 21

*Tyler v. Travelers Commercial Ins. Co.*,
  499 F. Supp. 3d 693 (N.D. Cal. 2020) .......................................................... 20

*United States ex rel. Giles v. Sardie*,
  191 F. Supp. 2d 1117 (C.D. Cal. 2000) ......................................................... 20

*Washington v. Trump*,
  847 F.3d 1151 (9th Cir. 2017) .............................................................. 10, 22

**STATUTES**

42 U.S.C. § 2000e–5(b) ...................................................................... 11

42 U.S.C. § 2000e–5(f)(1) ................................................................... 11

42 U.S.C. § 2000e-2 (Title VII) ....................................................... 7, 11, 13

CAL. EVID. CODE § 413 ...................................................................... 16

CAL. GOV'T CODE § 12900 (FAIR EMPLOYMENT AND HOUSING ACT (FEHA)) .................................................................................. 15

DEFS.' OPPOSITION TO DFEH'S MOTION
TO STAY PENDING APPEAL

1    **I.    INTRODUCTION**

2        DFEH's Motion for a Stay, like its Motion to Intervene, relies on a purported

3  interest it simply does not have.  DFEH states that it seeks to "preserve" its interest

4  in "California claims" (Dkt. 60 ("Motion") at 2), but as this Court already has

5  recognized, the state law claims of individuals belong to the individuals, not DFEH.

6  And those individuals who reside in California have the right to release those

7  claims, or not.  The proposed Consent Decree gives Activision Blizzard employees

8  who live anywhere in the United States that choice; it waives no state law claims on

9  their behalves.  DFEH has no statutory right to review, approve, or second-guess

10  any individual's decisions to release her own state-law claims.

11        Nor does the proposed Consent Decree preclude DFEH from pursuing its

12  state court lawsuit and seeking injunctive relief that "protects the California

13  public."  And, as this Court also recognized, the Consent Decree does not interfere

14  with any evidence that might be relevant to that lawsuit; to the contrary, the

15  proposed Consent Decree expressly preserves that evidence, which DFEH is free to

16  request in discovery in its lawsuit.

17        On the other hand, a stay would affect legitimate interests.  Potential

18  claimants anywhere in the United States would see their ability to recover for their

19  claims indefinitely delayed.  Implementation and transparency into the sweeping

20  injunctive relief negotiated by the EEOC also would be delayed.  And, critically, it

21  would result in a state actor thwarting the EEOC's authority and ability to bring and

22  resolve its own lawsuits and interfering with the rights of Activision Blizzard, Inc.,

23  Activision Publishing, Inc., Blizzard Entertainment, Inc. and King.com, Inc.

24  (collectively "Activision Blizzard") to conciliate and resolve claims under Title VII

25  of the Civil Rights Act of 1964 ("Title VII").  Allowing what DFEH demands

26  would impede not only the resolution of this litigation, but also open the door to

27  interfering with the EEOC's power in any action where DFEH or other state

28

DEFS.' OPPOSITION TO DFEH'S MOTION
TO STAY PENDING APPEAL

agencies do not have any legitimate interest of their own.[1]

For the reasons discussed herein, the Court should deny DFEH's motion.

## II.    THE COURT SHOULD DENY DFEH'S REQUEST FOR A STAY

### A.    Legal Standards

Federal courts may decide a motion for stay according to one of two sets of factors that the Supreme Court has set forth, depending on the type of stay requested.  Under either set of factors DFEH's request for a stay should be denied.

#### 1.    The *Landis* standard for granting or denying a stay.

DFEH argues that the factors set forth in *Landis v. North American Co.*, 299 U.S. 248 (1936) should apply to its Motion.  Motion at 8:9-10:9.  In *Landis*, the Supreme Court addressed a district court's power to stay a case, which it found was "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *Id.* at 254.  In *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005), the Ninth Circuit noted a district court "has discretionary power to stay proceedings in its own court under *Landis*," and explained:

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed.  Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

---

[1] DFEH's footnote reference to disclosures made in the proposed merger agreement between Activision Blizzard and Microsoft Corporation are of no value.  *See* Motion at 6, n.1.  As is typical in such transactions, there are confidential disclosure schedules to the merger agreement that set forth exceptions to, and modifications of, the representations and warranties in the merger agreement. *See* Activision Blizzard, Inc.'s U.S. Securities and Exchange Commission Form 8-K, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/718877/000110465922005154/tm223212d3_8k.htm.  Nor do the representations or disclosure schedules – made in a different context and for a different purpose – suggest that Activision Blizzard seeks to "evad[e] accountability" in any way, as DFEH speculates.

1    *Id.* at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

2         Courts in this circuit generally have concluded that the *Landis* factors apply

3    to requests to stay *proceedings*, as opposed to requests to stay a district court's

4    *judgment* or *order* pending an appeal of the same case.  *Peck v. County of Orange*,

5    528 F. Supp. 3d 1100, 1105-06 (C.D. Cal. 2021) (Fischer, J.) (staying proceedings

6    where Ninth Circuit's consideration of interlocutory appeal of partial summary

7    judgment could render trial of remaining claims moot).

8         Although DFEH has couched its request as one to stay the proceedings, its

9    true goal — as shown in its rationale — is to interfere with the EEOC's lawful

10   exercise of its authority and Activision Blizzard's rights.  With this motion, DFEH

11   seeks to stay this Court's potential approval of the Consent Decree, so that it can

12   challenge the Consent Decree on appeal (if the Ninth Circuit were to permit DFEH

13   to intervene).[2]  Specifically, DFEH's asserted basis for seeking the stay is to

14   prevent the Consent Decree from taking effect, because it claims that "[i]f a stay is

15   not granted, public enforcement would be impaired in specific and immediate ways

16   as the parties perform under the agreement."  Motion at 12:5-7.  The parties would

17   perform under the agreement, of course, only if this Court approves and enters the

18   Consent Decree.

19        DFEH also argues that absent a stay, the parties "will be obligated to perform

20   under the terms of the agreement" even though "the approval decision will be

21   subject to review and may well be vacated by the Ninth Circuit."  *Id.* at 9:24-27.

22   _____

23   [2] Since this Court already has granted DFEH a right to comment on the Consent
     Decree, which it has now done, DFEH's appeal of the denial of the right to
24   intervene is not premised on a need to comment on the terms of the Consent
     Decree.  Indeed, DFEH has submitted a 13-page statement of "Objections"
25   (Dkt. 58) – rather than filing an amicus brief as permitted by the Court's
     December 20, 2021 Order (Dkt. 46 ("Order")) – as well as an attorney declaration
26   and 215 pages of exhibits that it asks the Court to consider in deciding whether to
     approve the Consent Decree.  DFEH does not identify any argument or evidence
27   that it would have submitted to the Court if its motion to intervene had been granted
     that it has not now submitted with in its Objections and supporting declaration.
28

DEFS.' OPPOSITION TO DFEH'S MOTION
                                         TO STAY PENDING APPEAL

This rationale demonstrates that DFEH's true goal is to stay implementation of the Consent Decree (if approved) while challenging it on appeal.  As such, the factors this Court should consider for the stay request are those set forth in *Nken v. Holder*, 556 U.S. 418 (2009), which are discussed in Section II.C, below.  But even if the Court applies the *Landis/Lockyer* factors, it should deny the stay request, for the reasons set forth in section II.B., below.

### 2.    The *Nken* standard for granting or denying a stay.

Under *Nken*, courts considering a stay request examine:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

556 U.S. at 426 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  "'The first two factors . . . are the most critical,' and the last two steps are reached '[o]nce an applicant satisfies the first two factors.'"  *Washington v. Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017) (citing *Nken*, 556 U.S. at 434-35).  As noted above, the *Nken* factors are considered when a party "request[s] to stay a district court's judgment or order pending an appeal of the same case."  *Peck*, 528 F. Supp. 3d at 1106 (emphasis deleted) (citations omitted).

Courts in this District have applied the four-part test under *Nken* and *Hilton* in resolving motions requesting a stay pending appeal from the denial of a motion to intervene.  For example, in *Chalian v. CVS Pharmacy, Inc.*, 2020 WL 6821316, at *2 (C.D. Cal. Nov. 10, 2020), the Court applied the *Nken* standards in denying such a stay, finding that the proposed intervenors "have not made a sufficiently strong showing that they are likely to succeed on the merits of their appeal of the Court's denial of their motion to intervene" and "have not shown irreparable injury unless a stay is granted."  *See also Nat'l Rural Telecomms. Coop. v. DIRECTV*, 319 F. Supp. 2d 1094, 1107-08 (C.D. Cal. 2003) (applying *Hilton* and denying stay

motion where proposed intervenor "has not shown a probability of success on the merits of its appeal of the Court's [Order] denying its motion to intervene").

Activision Blizzard submits that the *Nken* standards apply here as well, because DFEH's ultimate goal is to stay any enforcement of the Consent Decree (in the event it is permitted to intervene and challenge it on appeal), which would require meeting the *Nken* standards. But under either set of standards, the DFEH cannot establish a basis for a stay, as explained below.

**B.   None Of The *Landis* Factors Warrants A Stay.**

Under the *Landis/Lockyer* factors, the DFEH's stay motion should be denied.

**1.   Activision Blizzard employees, potential claimants, and the EEOC will be damaged by a stay.**

Granting a stay will damage not only the parties, but also the Activision Blizzard employees (and former employees) anywhere in the United States who stand to benefit from the resolution negotiated between the EEOC and Activision Blizzard.

**a.   Further delay of the EEOC settlement is unwarranted.**

After a three-year investigation, Activision Blizzard had a right to address and attempt to reach a resolution through good faith discussions and negotiations with the EEOC under Title VII's conciliation process. 42 U.S.C. § 2000e–5(b); *see also Mach Mining v. EEOC*, 575 U.S. 480, 486 (2015) (the conciliation "obligation is a key component . . . Congress chose '[c]ooperation and voluntary compliance' as its 'preferred means.'"). The EEOC's mission, then, was to "endeavor to eliminate [an] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id*. (citing 42 U.S.C. § 2000e–5(f)(1)). And so the parties proceeded.

After a lengthy conciliation process, the EEOC and Activision Blizzard reached a settlement to resolve the EEOC's claims under Title VII. The settlement is designed to spur transformative change in the technology industry by preventing

discrimination and harassment going forward, while simultaneously resolving past claims.  To that end, the settlement provides for extensive policy-and-practice measures that will improve Activision Blizzard's workplaces, including:

- *Policy Review*.  Ensuring that workplace policies and practices incorporate best practices and promote a workplace free of discrimination and harassment.
- *Complaint Reporting.*  Reviewing and revising investigation procedures to encourage employee reporting.
- *Training.*  Implementing compliance training for all supervisory employees, HR/Investigation training for employees responsible for investigating complaints, and workplace harassment prevention training.
- *External Consultant Review.*  Engaging a consultant responsible for, among other things, conducting annual audits, reviewing relevant internal complaints as well as Activision Blizzard's discrimination and complaint investigation policies and procedures, and assessing trainings.
- *New EEO Coordinator Position.*  Creating an internal Equal Employment Opportunity Coordinator position to assist with implementation of the Consent Decree and broader equal employment opportunity initiatives and activities.
- *Performance Metrics.*  Revising performance evaluation forms for managers, supervisors, and HR personnel, to evaluate compliance with anti-discrimination, anti-harassment, and anti-retaliation policies and procedures, and giving employees the opportunity to provide performance feedback on managers.
- *Mental Health Services.*  Expanding offerings for employees in need of mental health or counseling services.
- *Staffing Agency Compliance.*  Ensuring that staffing agencies give persons assigned to Activision Blizzard copies of its workplace policies

-12-

1    and procedures.

2        A stay will delay the implementation of these workplace improvements for

3    an indefinite period, to the detriment of thousands of Activision Blizzard

4    employees.  Courts routinely reject stay requests in such circumstances.  *See, e.g.*,

5    *Dependable Highway Express, Inc. v. Navigators Ins. Co.,* 498 F.3d 1059, 1066

6    (9th Cir. 2007) (holding that the district court abused its discretion in granting a

7    stay requested by Defendant, where the stay could last for an indefinite period of

8    time); *Lal v. Capital One Fin. Corp.*, 2017 WL 282895, at *3-4 (N.D. Cal. 2017)

9    (denying motion for stay because indefinite nature of the stay while the court

10   awaited a California Court of Appeal decision would cause possible prejudice to

11   Plaintiff).

12       The settlement also establishes an $18-million class fund available to

13   potential claimants anywhere in the United States who may voluntarily elect to

14   participate in the settlement and obtain an evaluation of their claims.  DFEH's

15   efforts already have delayed the potential claimants' ability to participate in and

16   benefit from the settlement, and granting a stay will only cause further unwarranted

17   delay.

18              **b.**    **A stay will undermine the EEOC's mandate to**

19                  **investigate and conciliate federal claims, and affect**

20                  **employers' willingness to resolve future claims.**

21       The EEOC's complaint brings, and the proposed Consent Decree settles,

22   *federal* claims under Title VII.  Granting a stay to DFEH so that it can further delay

23   and disrupt the EEOC's settlement of its own Title VII suit would open the door to

24   multi-state objections in every federal-agency settlement—effectively precluding

25   the EEOC from carrying out its statutory mandate.  When it comes to enforcing

26   federal law, the specifically designated federal agency (here, the EEOC) not only

27   takes precedence over state and local agencies, but also is presumed to adequately

28   represent the interests of the private parties whose rights Congress has authorized it

-13-

to invoke.  *See, e.g.*, *Maine v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001).  Indeed, the Supreme Court has long held that the Constitution precludes States (and state agencies) from actively frustrating federal efforts to meet "the need[s] identified by Congress," *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 717 (1985), when, as here, the federal agency that Congress has specifically tasked with meeting those needs is taking action "pursuant to [its] congressionally delegated authority," *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1679 (2019).

Granting a stay not only would undermine the EEOC's efforts to settle these claims, but would threaten similar federal claims in cases going forward.  Courts routinely reject such efforts because they prejudice the parties to the settlement as well as the individuals affected by the alleged unlawful practices.  *See, e.g.*, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 105 (3rd Cir. 2002) ("Allowing comprehensive settlements to be undermined in this way would undeniably deter similar settlements in the future."); *In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 2013 WL 3463503, at *2, *8 (E.D. Pa. July 10, 2013) (highlighting  "chilling effect" that comes when States "demand more money from the defendants," and noting that, if such intercessions were permitted, then "defendants would no doubt be reluctant to enter into settlement agreements in the first instance").  Given DFEH's lack of a cognizable interest in the resolution of state-law money-damage claims that properly belong to individual employees, siding with DFEH and granting a stay in this case would provide a playbook for States to frustrate federal settlement efforts far beyond this case.

### c.   A stay would encourage the DFEH to seek to intervene and disrupt future EEOC conciliation efforts.

DFEH has made clear its goal is to block implementation of the EEOC settlement so that DFEH can be the sole arbiter of any employment law settlement that allows California employees to consider and release potential parallel federal

DEFS.' OPPOSITION TO DFEH'S MOTION
TO STAY PENDING APPEAL

and state law claims.  But as the Court has recognized, nothing in California law authorizes DFEH to countermand individual Californians' remedial decisions even for state-law discrimination claims (Order at 2).  Granting a stay would not only delay a reasonable settlement by the federal agency that brought the action, but encourage DFEH to use the same tactics in other cases.

### 2.   DFEH will suffer no hardship from denial of a stay.

#### a.   The Court already has allowed DFEH to state its purported concerns regarding the Consent Decree.

In denying DFEH's motion to intervene, this Court already provided DFEH with the primary benefit of an intervening party:  the ability to submit an amicus brief stating its position with respect to the Consent Decree.  Order at 3.  DFEH has responded by filing a 13-page statement of "Objections," as well as a supporting declaration that attached hundreds of pages of exhibits.  DFEH does not claim it would have provided the Court with any more or different argument or evidence had its motion to intervene been granted.  Denying the stay will not affect DFEH's ability to make its position known or to have its arguments considered; it has been heard.  As a result, denying a stay will not cause DFEH any legally cognizable harm.

#### b.   A stay is not needed to protect any DFEH interest.

##### i.   DFEH has no right to usurp private individuals' right to settle state or federal claims.

As this Court already recognized, DFEH's expressed interest in "upholding the rights of California citizens" actually belongs only to "the individuals who might make claims under the claims process, not to DFEH."  Order at 2.  Indeed, DFEH has no cognizable interest in this litigation because it lacks authority to resolve private parties' individual claims (under either state or federal law) or to object to their resolution as a matter of California law.  Nowhere in the California Fair Employment and Housing Act (from which the DFEH derives its authority)

-15-

has the California Legislature granted DFEH any authority to interfere with an individual claimant's remedial decisions.  That lack of legislative authorization is dispositive.  *See Dyna-Med, Inc. v. Fair Emp't & Hous. Comm'n*, 43 Cal. 3d 1379, 1389 (1987) (DFEH cannot pursue "a remedy which the Legislature has withheld"); *see also Ass'n for Retarded Citizens v. Dep't of Developmental Servs.*, 38 Cal. 3d 384, 391 (1985) (actions that enlarge a California administrative agency's statutorily conferred power "must be declared void").  Given this lack of an interest in the litigation, DFEH cannot establish that it would be harmed without a stay.

### ii.    No evidence will be destroyed.

To protect potential claimants from future retaliation, the proposed Consent Decree requires that documents referencing the allegations be segregated from their personnel files—not destroyed.  Proposed Am. Consent Decree § X.A.  In fact, the Consent Decree requires Activision Blizzard to retain all documents related to compliance with the Consent Decree in its recordkeeping requirements, which would apply to these documents.  *Id.* § XII.J.H.  Moreover, Activision Blizzard has an independent legal obligation not to destroy documents relevant to a pending lawsuit under laws against spoliation.  Cal. Evid. Code § 413.  Thus, these files would be available in response to discovery requests by DFEH in its state court action.  Finally, as this Court already has made clear, "there is no serious possibility" that it would approve a Consent Decree that would allow, let alone mandate, the destruction of evidence relevant to litigation.  Order, at 2.  Thus, no stay is needed to preserve relevant documentation.

### c.    DFEH will continue to pursue its own case if a stay is denied.

Denying a stay will have no impact on DFEH's ability to pursue its own litigation to obtain injunctive relief that protects "public enforcement of California

DEFS.' OPPOSITION TO DFEH'S MOTION
TO STAY PENDING APPEAL

law."  Motion at 11:27-28.[3]  To the extent DFEH claims that its litigation will be impacted because "individual employees' claims would be extinguished" (Motion at 11:20-23), it will be the right of those individual employees, not DFEH, to decide whether to extinguish those claims in exchange for a monetary settlement, as explained above in Section II.B.2.b.  The Consent Decree itself does not waive any individual employee's claims.  Moreover, to the extent a stay would be used to advance DFEH's objective of intervening in this lawsuit to protect its state court action, such maneuvering is improper.  *See, e.g.*, *Lane v. Wells Fargo Bank*, 2013 U.S. Dist. LEXIS 87669, at *43 (N.D. Cal. June 21, 2013) (intervention to protect a different lawsuit was "totally unfounded" and "a hold-up maneuver unworthy of [civil] practice"); *Moore v. Verizon Commc'ns, Inc.*, 2013 U.S. Dist. LEXIS 15609, at *40-42 (N.D. Cal. Feb. 5, 2013) (denying application where movant sought intervention to protect rights in a separate claim).

### d.   The EEOC and Private Legal Counsel provided through the Consent Decree will protect any interest DFEH may have.

Although DFEH has not identified any interest that would be harmed by the denial of stay, it is clear that the EEOC has acted to protect the interests of those who will be impacted by the settlement agreement.  Under the Consent Decree, individuals who are found eligible for relief will receive one hour of private legal representation from a referral list of respected plaintiff's employment lawyers or a lawyer of their choice, at no cost to them, and be advised as to the effect of the releases.  *See* Decree § IX.B.4.h.  Moreover, Activision Blizzard has agreed that the

---

[3] DFEH's citation to *EEOC v. Federal Express Corp.*, 268 F. Supp. 2d 192 (E.D.N.Y. 2003), actually supports denial of a stay.  That case held that a prior EEOC Consent Decree did not bar the State of New York from pursuing its own claims for injunctive relief.  *Id.* at 203 ("[T]he Georgia Consent Decree does not preclude [New York] from bringing a suit for injunctive relief.").  The EEOC was dismissed from that case only because its prior Consent Decree precluded *it* from re-litigating the same issue.  *Id.* at 204-05.

DEFS.' OPPOSITION TO DFEH'S MOTION
TO STAY PENDING APPEAL

form of the release itself will not include, among other things, an arbitration agreement, confidentiality or non-disclosure provisions, non-disparagement provisions, or no-rehire clauses. Activision Blizzard also has agreed to specifically notify potential claimants of DFEH's lawsuit and its claims in the text of the release. *See* Dkt. 50-4 (Acknowledgement and Release) at 3.

Each of these measures protect the interests that DFEH claims to want to protect, further demonstrating that DFEH would not suffer hardship from the denial of a stay. *See Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) ("When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises."); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 n.26 (3d Cir. 2010) ("To overcome the presumption of adequate representation, the proposed intervenor must ordinarily demonstrate adversity of interest, collusion, or nonfeasance on the part of a party to the suit.") (citations and internal quotation marks omitted).

### 3. A stay would not simplify any issues of law or proof or promote the orderly course of justice.

Unlike in *Peck*, there is no reason to await the Ninth Circuit's ruling on the pending appeal before moving forward in this case.[4] Rather, granting a stay would complicate the issues and serve only to further delay resolution.

### a. Because the Court already has and will consider DFEH's recent input, formal intervention would not impact the Court's consideration of the Consent Decree.

Even though the Court denied DFEH's motion to intervene, it nonetheless allowed DFEH to "present its position as to the proposed revised consent decree via an amicus brief." Order at 3. Rather than file an amicus brief, DFEH filed full-

---

[4] In *Peck*, this Court determined that the Ninth Circuit's ruling on an appeal from a partial summary judgment could render the trial on the remaining claims moot. 528 F. Supp. 3d at 1106-1107. The Ninth Circuit's ruling here will not have any similar impact on future actions by this Court.

fledged "Objections To Approval Of Proposed Amended Consent Decree." Thus, even if the Ninth Circuit were to conclude that intervention should have been granted, this Court's decision on the Consent Decree will not be affected, because DFEH already has submitted its objections. There is, and will be, nothing more for this Court to consider, even if DFEH is permitted to intervene formally.

The Ninth Circuit's decision in *Lockyer v. Mirant Corp.,* 398 F.3d 1098 (9th Cir. 2005), is instructive. In *Lockyer,* the court concluded that a stay under the *Landis* factors was not justified, concluding under the third factor that a pending bankruptcy court proceeding in Texas would be unlikely to decide, or contribute to the decision of, the issues before the district court. *Id.* at 1113. The same is true here. The Ninth Circuit's decision on DFEH's appeal will have no bearing on how this Court rules on the proposed Consent Decree, because the Court would receive nothing from DFEH as an intervening party that it will not already have considered. *See Nicholson v. REI Energy, LLC*, 370 F. Supp. 3d 1199 (D. Or. 2019) (denying stay because there was no question of law which might soon be answered if a stay was granted, and thus a stay would not promote the "orderly course of justice").

**b.**   **Because DFEH Seeks A Stay Of Indefinite Length, The Court Should Deny The Request.**

DFEH requests a stay while the Ninth Circuit considers its appeal, an indefinite period of time, but one that easily could last over a year. *See* Ninth Circuit 2020 Annual Report[5] at p. 63 (median time from filing Notice of Appeal or Docket Date to Last Opinion or Final Order in 2020 was 12.5 months). "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d, 857, 864 (9th Cir. 1979). "Generally, stays should not be indefinite in nature."

---

[5] Available at https://www.ca9.uscourts.gov/judicial-council/annual-reports/.

DEFS.' OPPOSITION TO DFEH'S MOTION TO STAY PENDING APPEAL

1   *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th

2   Cir. 2007).  Even a stay that terminates upon the resolution of an appeal has an

3   indefinite term.  *See Hoeun Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000).

4          Since the Ninth Circuit's ultimate decision will not provide this Court with

5   any information it does not already have, and would cause indefinite delay, the

6   Court should deny DFEH's request.  *See, e.g., Tyler v. Travelers Commercial Ins.*

7   *Co.,* 499 F. Supp. 3d 693, 704 (N.D. Cal. 2020) ("Staying this case for an indefinite

8   amount of time cuts against the Court's interest in managing its docket

9   efficiently."); *Alan Darush MD APC v. Revision LP,* 2013 WL 12142621, at *2-3

10  (C.D. Cal. Aug. 28, 2013) (possibility that a pending decision from the Ninth

11  Circuit could be consequential in the present case was uncertain and not enough to

12  justify a stay under the third *Landis* factor).

13         In light of the above, the third *Landis* factor also provides no basis for a stay,

14  and DFEH's motion should be denied.

15         **C.     A Stay Also Should Be Denied Under The *Nken* Standards.**

16         DFEH ignores the four factors that must be analyzed to decide its motion

17  under *Nken*.  Nor does it even cite to *Nken* or *Hilton* (which the Supreme Court

18  relied upon in *Nken*), or attempt to distinguish the prior cases in this District Court

19  which applied the four-factor test under those Supreme Court decisions in denying

20  a motion to stay pending appeal from an order denying intervention.  *See Chalian*,

21  2020 WL 6821316, at *2; *Nat'l Rural Telecomms. Coop.*, 319 F. Supp. 2d at 1107-

22  08.  Therefore, DFEH has waived any argument based on the *Nken* standard, and it

23  may not introduce any new facts or legal arguments based on *Nken* in its reply.  *See*

24  *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000)

25  ("It is improper for a moving party to introduce new facts or different legal

26  arguments in the reply brief than those presented in the moving papers.").

27         Because the applicant seeking a stay bears the burden of showing that the

28  circumstances justify a stay (*see Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 (9th Cir.

DEFS.' OPPOSITION TO DFEH'S MOTION
TO STAY PENDING APPEAL

2020)), DFEH's failure to show a stay is warranted under *Nken* by itself warrants the denial of its motion.  Nevertheless, Activision Blizzard provides below a brief application of the four factors adopted in *Nken*, demonstrating that DFEH's motion should be denied under the *Nken* standard as well.[6]

> **1.    DFEH cannot make, and does not attempt to make, a "strong showing" of likelihood of success on the merits.**

To justify the issuance of a stay under the first *Nken* factor, the applicant must first demonstrate a "strong showing" of likelihood of success on the merits. *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020).  DFEH cannot meet its high burden of demonstrating a "strong showing" of likelihood of success on the merits, because, as discussed above and in the Court's Order:  (1) the right of individuals to settle their claims belongs to those individuals, not DFEH; (2) there is no serious possibility the Court would approve a consent decree that allowed destruction of evidence relevant to litigation;  (3) this case will not impair or impede DFEH's ability to protect its interests; and (4) DFEH is not seeking to intervene in order to

---

[6] To the extent that DFEH may argue in its reply brief that the *Nken* standard only applies when the party requesting a stay seeks to preserve the status quo that existed prior to granting of an injunction or similar judicial relief, such argument is undermined by prior decisions applying the *Nken* factors to deny a stay pending appeal from an order denying a motion to intervene.  *See, e.g.*, *Chalian*, 2020 WL 6821316, at *2; *Nat'l Rural Telecomms. Coop.*, 319 F. Supp. 2d at 1107-08; *see also Snap Advances, LLC v. Caring Hands and Supplementary Enrichment Educ., LLC*, 2020 WL 1031797, at *1-2 (D. Utah Jan. 28, 2020) (applying four-factor test adopted in *Hilton* and *Nken* to deny stay pending appeal from denial of motion to intervene); *Ray Capital Inc. v. M/V Newlead Castellano*, 2016 WL 6883990, at *1-2 (S.D. Ga. Nov. 18, 2016) (applying *Hilton* in denying motion for stay pending appeal from denial of motion to intervene); *John R. Sand & Gravel Co. v. United States*, 60 Fed. Cl. 347, 349-50 (2004) (applying *Hilton* in denying motion for stay pending appeal from denial of motion to intervene).  Nor can such an attempt to distinguish *Nken* be squared with decisions in this Circuit that have applied *Nken* in deciding whether a stay was warranted pending appeal from an order denying class certification (*see, e.g.*, *Alvarez v. NBTY, Inc.*, 2020 WL 804403, at *1 (S.D. Cal. Feb. 18, 2020) (applying *Nken* factors)), or from an order denying a motion to compel arbitration (*see, e.g.*, *Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 953 (N.D. Cal. 2019) (applying *Nken* factors); *Richards v. Ernst & Young LLP*, 2012 WL 92738, at *2 (N.D. Cal. Jan. 11, 2012) (applying *Nken* factors)).

raise claims that share a common question of fact or law with the EEOC's claims. Order at 1-3. In requesting a stay, DFEH does not argue that the Court erred in making any of the above findings. Nor does it point to any new information or evidence that would support a different result. Therefore, DFEH does not and cannot make a strong showing that it is likely to succeed on the merits of its appeal.

### 2.   DFEH cannot show likelihood of irreparable injury.

Under the second *Nken* factor, the applicant must show a likelihood of irreparable injury if a stay is not granted. *Doe #1*, 957 F.3d at 1058. Mere assertions of injury without evidence are insufficient to satisfy this factor. *Id.* at 1059. Where an applicant's showing of irreparable injury is relatively weak, an "especially strong showing" of likelihood of success on the merits is required for a stay to be granted. *Al Otro Lado*, 952 F.3d at 1011. As discussed in Section II.B.2, applying the "hardship" factor under *Landis*, DFEH will not suffer any injury if a stay is denied. It has made its case already to the Court, in its lengthy filing in support of its Objections, and it has identified no information that the Order denying intervention has prevented it from presenting for the Court's consideration. Further, as the Court has concluded, "[t]his case will also not, as a practical matter, impair or impede DFEH's ability to protect its interests." Order at 2. Therefore, DFEH does not and cannot make any showing that it would be irreparably harmed if the Court denies its motion for a stay.

### 3.   Balancing the equities does not favor a stay.

Because DFEH has not satisfied the first two *Nken* factors, the Court need not reach the remaining two factors. *See Washington*, 847 F.3d at 1164 (9th Cir. 2017). Nevertheless, DFEH also cannot meet the third factor, which requires that the balance of equities tips in favor of granting a stay, as demonstrated above in Sections II.B.1 (demonstrating the harm to employees, potential claimants, and the EEOC from a stay) and II.B.2 (demonstrating the lack of harm to DFEH from denial of stay).

DEFS.' OPPOSITION TO DFEH'S MOTION
TO STAY PENDING APPEAL

4.      **A stay would not be in the public interest.**

Finally, DFEH cannot demonstrate that a stay would be in the public interest, as required by the fourth *Nken* factor.  To the contrary, for the reasons discussed above in Section II.B.1, a stay would damage not only the parties, but also the Activision Blizzard employees (and former employees) who stand to benefit from the resolution negotiated by the EEOC.  A stay also would undermine the EEOC's mandate to investigate and conciliate federal claims, and will impact employers' willingness to resolve future claims.  Further, a stay would encourage further efforts by DFEH and potentially other state agencies to block beneficial settlement agreements negotiated by the EEOC, even when these state agencies are not acting to protect a legitimate interest.  Therefore, DFEH does not and cannot make a showing this final factor under *Nken* is met.

## III.  CONCLUSION

For the foregoing reasons, DFEH's motion for stay should be denied.

DATED:  February 7, 2022            PAUL HASTINGS LLP

By:          s/ Elena R. Baca
                ELENA R. BACA

Attorneys for Defendants
ACTIVISION BLIZZARD, INC.,
BLIZZARD
ENTERTAINMENT, INC., ACTIVISION
PUBLISHING, INC., and KING.COM,
INC.