1  Jahan C. Sagafi (SBN 224887)
   OUTTEN & GOLDEN LLP
2  One California Street, Suite 1250
   San Francisco, CA 94111
3  Telephone: (415) 638-8800
   Facsimile: (415) 638-8810
4  Email: jsagafi@outtengolden.com

5  Christian Schreiber (SBN 245597)
   Monique Olivier (SBN 190385)
6  OLIVIER SCHREIBER & CHAO LLP
   201 Filbert Street, Suite 201
7  San Francisco, CA 94133
   Telephone: (415) 484-0980
8  Facsimile: (415) 659-7758
   Email: christian@osclegal.com
9  Email: monique@osclegal.com

10 Rachel Bien (SBN 315886)
   OLIVIER SCHREIBER AND CHAO LLP
11 1149 North Gower Street Suite 215
   Los Angeles, CA 90038
12 Telephone: (415) 484-0522
   Facsimile: (415) 658-7758
13 Email: rachel@osclegal.com

14 *Attorneys for Proposed Intervenor*
   *California Department of Fair Employment and Housing*
15

16                    **UNITED STATES DISTRICT COURT**

17                    **CENTRAL DISTRICT OF CALIFORNIA**

18

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVISION BLIZZARD INC., BLIZZARD ENTERTAINMENT, INC., ACTIVISION PUBLISHING, INC., KING.COM, INC., and DOES ONE through TEN, inclusive,<br><br>Defendants. | Case No. 2:21-CV-07682 DSF-JEM<br><br>**CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S REPLY TO EEOC AND ACTIVISION'S OPPOSITIONS TO MOTION TO STAY PROCEEDINGS**<br>Date:     February 28, 2022<br>Time:     1:30 p.m.<br>Judge:    Dale S. Fischer<br>Courtroom: 7D<br>Action Filed: September 27, 2021 |

CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S REPLY TO EEOC AND ACTIVISION'S OPPOSITIONS TO MOTION TO STAY PROCEEDINGS

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................2

    I.    The DFEH Has Standing to Pursue a Stay. .................................2

    II.    The Motion for a Stay Is Appropriately Analyzed Under *Landis*. ...........................................................................................................3

    III.    The Relevant *Landis* Factors Weigh in Favor of Granting a Stay. ...........................................................................................................3

        A.    Potential Claimants, the Public, and the Parties Will Not Be Harmed By a Stay. ........................................................4

            1.    A Stay Will Protect Potential Claimant-Victims and the Public from Harm. ...............................................4

            2.    The EEOC Will Not Be Harmed by a Stay. ............6

        B.    DFEH Would Suffer Hardship Absent a Stay. ...................9

        C.    Evidence Spoliation ..........................................................11

        D.    A Stay Will Promote the Orderly Course of Justice. ......11

        E.    Stays Pending Appeal Are Common. ...............................12

CONCLUSION..................................................................................................12

i

CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S REPLY TO EEOC AND ACTIVISION'S OPPOSITIONS TO MOTION TO STAY PROCEEDINGS

# TABEL OF AUTHORITIES

<a>
</a>

**CASES**                                                           **PAGE(S)**

*23andMe Inc., v. Ancestry.com DNA*,
   No. 18 Civ. 02791, 2018 WL 5793473, at \*3 (N.D. Cal. Nov. 2, 2018), *aff'd*, 778 F. App'x 966 (Fed. Cir. 2019) .................................................. 3

*Alan Darush MD APC v. Revision LP*,
   No. 12 Civ. 1210296, 2013 WL 12142621 (C.D. Cal. Aug. 28, 2013) ......................................................................................................... 12

*Alexander v. Gardner-Denver Co.*,
   415 U.S. 36 (1974) ............................................................................ 1, 5, 8

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003) .................................................................. 11

*Associated Indem. Corp. v. Wilson Bros. Distrib. Co.*,
   No. 15 Civ. 0101, 2015 WL 13425121 (D. Alaska Nov. 13, 2015) ................ 10

*Chalian v. CVS Pharmacy, Inc*,
   No. 16 Civ. 08979, 2020 WL 6821316 (C.D. Cal. Nov. 10, 2020) ................. 3

*Christopher v. SmithKline Beecham Corp.*,
   567 U.S. 142 (2012) ................................................................................... 8

*Del Rio v. Creditanswers, LLC*,
   No. 10 Civ. 346, 2010 WL 3418430 (S.D. Cal. Aug. 26, 2010) .................... 12

*DFEH v. Cathy's Creations, Inc.*
   (2020) 54 Cal.App.5th 404, 410 ............................................................... 10

*Edwards v. City of Houston*,
   78 F.3d 983 (5th Cir. 1996) (en banc) ........................................................ 9

*EEOC v. Grays Harbor Comm. Hosp.*,
   791 F. Supp. 2d 1004 (W.D. Wash. 2011) ....................................... 2, 5, 6, 8

*EEOC v. Navy Fed. Credit Union*,
   424 F.3d 397 (4th Cir. 2005) ................................................................ 7, 8

*EEOC v. Pan Am. World Airways, Inc.*,
   622 F. Supp. 633 (N.D. Cal. 1985) ................................................... 1, 6, 10

ii

CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S REPLY TO EEOC AND ACTIVISION'S OPPOSITIONS TO MOTION TO STAY PROCEEDINGS

*Landis v. North American Co.*,
 299 U.S. 248 (1936) .................................................................................................... 3

*Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*,
 478 U.S. 501 (1986) .................................................................................................... 4

*Lockyer v. Mirant Corp.*,
 398 F.3d 1098 (9th Cir. 2005) ..................................................................................... 3

*McCollouch v. Minn. Lawyers Mut. Ins. Co.*,
 2010 WL 441533 (D. Mont. Feb. 3, 2010) ............................................................... 12

*Nken v. Holder*,
 556 U.S. 418 (2009) .................................................................................................... 3

*Ontiveros v. Zamora*,
 2013 WL 1785891 (E.D. Cal. Apr. 25, 2013) ............................................................. 7

*Peck v. Cty. of Orange*,
 528 F. Supp. 3d 1100 (C.D. Cal. 2021) (Fischer, J.) ............................................ 3, 12

*In re Pet Food Prods. Liab. Litig.*,
 629 F.3d 333 (3d Cir. 2010) ...................................................................................... 11

*Reed v. United Tchrs. Los Angeles*,
 208 Cal. App. 4th 322 (2012) ...................................................................................... 9

*Robert Ito Farm, Inc. v. Cty. of Maui*,
 842 F.3d 681 (9th Cir. 2016) ....................................................................................... 2

*Shaw v. Hahn*,
 56 F.3d 1128 (9th Cir.1995) ...................................................................................... 10

*Sifuentes v. Brazelton*,
 No. 09 Civ. 2902, 2014 WL 186867 (N.D. Cal. Jan. 16, 2014) ............................... 12

*Trees v. Serv. Emps. Int'l Union Loc. 503*,
 No. 21 Civ. 468, 2021 WL 5829017 (D. Or. Dec. 8, 2021) ....................................... 7

*Trujillo v. Santa Clara Cty.*,
 775 F.2d 1359 (9th Cir. 1985) ..................................................................................... 7

*Tyler v. Travelers Com. Ins. Co.*,
 499 F. Supp. 3d 693 (N.D. Cal. 2020), *appeal dismissed*, No. 20
 Civ.17365, 2021 WL 2231126 (9th Cir. May 6, 2021) ............................................ 12

*U.S.S.E.C. v. Citigroup Glob. Markets, Inc.*,
  752 F.3d 285 (2d Cir. 2014) ................................................................................ 6

*United States v. Colorado*,
  937 F.2d 505 (10th Cir. 1991) ............................................................................ 6

*W.R. Grace & Co. v. Loc. Union 759, Int'l Union of United Rubber,
  Cork, Linoleum & Plastic Workers of Am.*,
  461 U.S. 757 (1983) ........................................................................................... 4

**STATUTES** **PAGE(S)**

42 U.S.C. §§ 2000e-5(c)-(d), 7, and 8 ................................................................. 7, 8

42 U.S.C. § 2000h-4 ................................................................................................ 8

Cal. Gov. Code, §12900, 12953, 12964.5, 12975, 12999. ............................. 1, 2, 4 ,5

Cal. Gov. Code, §§ 12920, 12920.5, 12930, 12965 ............................................. 10

Cal. Labor Code, §432.6 ......................................................................................... 1

Civil Rights Act Title VII, 42 U.S.C. 2000e et seq. ................................................ 1

Fair Employment and Housing Act .......................................................................... 1

**INTRODUCTION**

The California Department of Fair Employment and Housing (DFEH) requests a stay pending the Ninth Circuit's resolution of its appeal of the Court's intervention order, to avoid the inefficiencies and injustice that would inevitably result if the Ninth Circuit agrees with the DFEH on intervention and the merits. Here, the Court faces the unfortunate situation where the parties request judicial approval of a proposed consent decree that overreaches the Equal Employment Opportunity Commission (EEOC)'s statutory authority and its pleadings in this case (and thereby this Court's subject-matter jurisdiction) to impede an already-pending DFEH government enforcement action in state court. ECF No. 1 at 2:8-11.

Specifically, while the settlement covers claims under Title VII of the Civil Rights Act, 42 U.S.C. 2000e et seq. ("Title VII"), within the EEOC's authority, it also reaches much further than Title VII. It seeks court approval of provisions that not only impede DFEH's ongoing state enforcement action and victims' state rights, but also violate both federal and state law.[1] It *inter alia* conditions *any* relief in this Title VII-only case upon a *forced* waiver of state claims and rights in DFEH's ongoing action, *in violation of California law*; and includes a proposed release that expressly extinguishes state claims and state statutory rights, *outside EEOC's authority and this Court's subject-matter jurisdiction*. ECF No. 50-4 at 3.

The Ninth Circuit has already spoken on the jurisdictional line this decree proposes to cross. *EEOC v. Pan Am. World Air, Inc.*, 897 F.2d 1499, 1507 (9th Cir. 1990) ("EEOC has no power to extinguish state claims or state statutory rights."); *see also Alexander v. Gardner-Denver Co.*, 415 U.S. 36 , 47-48 (1974) ("Title VII

---

[1] Under California law, the settlement agreement is void against public policy because, as a condition of receipt of payment, it forces employees to waive state rights and claims under the Fair Employment and Housing Act (FEHA, Cal. Gov. Code, §12900 et seq.), including the right to pursue a civil action for monetary relief with the DFEH. Cal. Gov. Code, §12953; Cal. Labor Code, §432.6; Cal. Gov. Code, §12964.5. Both of these claims are alleged in DFEH's ongoing government enforcement action against Activision.

provides for consideration of employment-discrimination claims in several forums."). Nonetheless, the EEOC disregards federal and state law, and concedes that it bargained away the state law claims, for no additional consideration, as it has no power to do so. *See* ECF No. 62 at 6:13-15 n.4. As EEOC has conceded in the past, conditioning Title VII relief on waivers of state claims is against the public interest. *EEOC v. Grays Harbor Comm. Hosp.*, 791 F. Supp. 2d 1004 (W.D. Wash. 2011). And, it is even more so here, as California is currently prosecuting a state action under more protective state law and California is where over 75% of Activision's employees work. Cal. Gov. Code, § 12999.

The stay is necessary here for several reasons. First, it will ensure that victim's rights, the DFEH's ongoing state court litigation, and California's public interest are not hindered. Second, it will give the parties and Court the benefit of the Ninth Circuit's guidance on the structure of the litigation. Third, it will avoid significant harms, such as Activision's clear plan to use the decree and any resulting releases and evidence suppression to impede DFEH's state court action and California law. Cal. Gov. Code, §12975. Given the stakes – the allegedly rampant and severe discrimination, harassment, and retaliation by Activision against over 13,000 employees – a stay will ensure that resolution of these claims proceed in a logical, careful manner, allowing for appellate oversight. In short, prudence and conservatism counsel strongly in favor of a stay, and the DFEH has readily demonstrated the appropriateness of a stay under the relevant factors. This Court should stay the action pending resolution of the appeal.

## ARGUMENT

**I. The DFEH Has Standing to Pursue a Stay.**

Contrary to the EEOC's argument, ECF No. 62 at 2:27-3:22, the DFEH's standing to seek a stay arises from its unsuccessful Motion to Intervene. The Ninth Circuit has held that an unsuccessful intervenor has standing to appeal the denial of its motion to intervene under the collateral order doctrine. *See Robert Ito Farm,*

*Inc. v. Cty. of Maui*, 842 F.3d 681, 688 (9th Cir. 2016). Another court in this District has recently explained that "[i]t follows that a litigant that has standing to appeal a collateral order may seek to stay the underlying action pending that appeal." *Chalian v. CVS Pharmacy, Inc*, No. 16 Civ. 08979, 2020 WL 6821316, at *2 (C.D. Cal. Nov. 10, 2020) (finding that "[b]ecause the [proposed intervenor] can appeal the order denying them intervention, they have standing to move to stay this case pending that appeal").

## II. The Motion for a Stay Is Appropriately Analyzed Under *Landis*.

In the Ninth Circuit, *Landis v. North American Co.*, 299 U.S. 248 (1936) sets the standard for a motion to stay a district court's proceedings.[2] *Peck v. Cty. of Orange*, 528 F. Supp. 3d 1100, 1105-06 (C.D. Cal. 2021) (Fischer, J.). Because the DFEH seeks to stay the proceedings of this Court, and there is currently no judgment or order whose implementation the Court could stay, *Landis* applies. The EEOC agrees. ECF No. 62 at 4:24-28 n.1. Activision's hypothesis about the DFEH's "true goal" does not change the legal standard. ECF No. 63 at 9:8-10, 10:1-6. The Court should grant the stay to protect against the disarray that would ensue from proceeding and then having the Ninth Circuit reverse.

## III. The Relevant *Landis* Factors Weigh in Favor of Granting a Stay.

The determination of whether to grant a motion to stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). In *Lockyer v. Mirant Corp.*, the Ninth Circuit elaborated on the relevant factors, including "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions

---

[2] Activision argues that *Nken v. Holder*, 556 U.S. 418 (2009) applies, but that case provides the standard "when there is a request to stay a district court's judgment or order pending an appeal of the same case." *23andMe, Inc. v. Ancestry.com DNA, LLC*, No. 18 Civ. 02791, 2018 WL 5793473, at *3 (N.D. Cal. Nov. 2, 2018), *aff'd*, 778 F. App'x 966 (Fed. Cir. 2019).

of law which could be expected to result from a stay." 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir.1962)). The DFEH has shown that each of the four factors weighs in favor of a stay.

### A. Potential Claimants, the Public, and the Parties Will Not Be Harmed By a Stay.

#### 1. A Stay Will Protect Potential Claimant-Victims and the Public from Harm.

A stay will protect the thousands of victims and public from the significant risk of implementation of a settlement that the Ninth Circuit later concludes was improper. For example, the Ninth Circuit may hold that the Court should have denied a consent decree that waives state law claims over which neither the Court nor the EEOC had jurisdiction. *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501, 525 (1986) (unlike here, a proper consent decree must be within the court's *subject-matter jurisdiction,* the *pleadings,* and the law). Without jurisdiction, neither the EEOC nor the Court had any power to obtain additional consideration (at the bargaining table or in the decree approval process) for victims beyond Title VII.

Moreover, the Ninth Circuit may also hold that the Court should not have approved a consent decree without intervention that unlawfully bargains away third-party state rights and remedies, including the DFEH's right to enforce state law on behalf of victims and the public without interference, and victims' rights to relief in DFEH's ongoing state action. *See* Cal. Gov. Code, §§ 12964.5, 12953, 12975. As the United States Supreme Court has ruled, the EEOC does not have the power to abrogate unilaterally a third-party's rights to encourage an employer to conciliate with the Commission. *W.R. Grace & Co. v. Loc. Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 771 (1983) ("Although the ability to abrogate unilaterally the provisions of a collective bargaining agreement might encourage an employer to conciliate with the

Commission, the employer's added incentive to conciliate would be paid for with the union's contractual rights;" and thus improper); *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44 (1974) (EEOC's power does not have coercive legal effect). Indeed, here, the proposed consent decree is paid for by third-party rights, not Title VII litigation. No litigation occurred here. And even so, relief under Title VII does not encompass the decree's impact on state claims and rights, including interference with the DFEH's ongoing state action on behalf of victims and the public, destruction of evidence related to that action, and forced waivers of state claims and rights, in violation of California law. Cal. Gov. Code, §§ 12964.5, 12953, 12975.

The Ninth Circuit could also determine the EEOC's flip flop position on forced waivers of state law claims outside its authority[3] required further notice to potential claimant-victims and the inclusion of the DFEH as a party here. The Ninth Circuit should have the ability to rule on these issues before claimant-victims are potentially denied full notice of the EEOC's reversal of its long standing policy against bargaining away state claims, full participation in the DFEH state action, or full relief under state law for the discrimination, harassment, and retaliation they have suffered. If the decree is approved without a stay, thousands of victims will be led into individual conversations with Activision's lawyers, where they could waive rights and claims without additional consideration. *See* ECF No. 58-3, Declaration of Jahan Sagafi, Exs. B, D (EEOC submissions in *Grays Harbor*). By contrast, the careful, conservative path here is to stay the action, allow the Ninth Circuit to provide guidance about the DFEH's role, and then proceed based on that guidance.[4]

A stay would also serve the *public interest* more broadly, as the DFEH seeks

---

[3] Notably, EEOC attempts to distinguish its past precedent by *admitting* that here, it bargained away claims over which it has no jurisdiction. ECF No. 62 at n.4.

[4] The EEOC's hyperbolic attacks (accusing the DFEH of "sow[ing] confusion" and "waging a disruptive campaign," ECF No. 62 at 4:11-12, 4:22-23) only highlight the importance of waiting for appellate instruction. The fact that two agencies staffed by attorneys with decades of experience in these matters have interpreted the decree in different ways speaks to the very high stakes and the benefit of the Ninth Circuit weighing in on this highly unusual and unfortunate situation.

to ensure that the significant California law rights, claims and remedies can be resolved on the merits through the advocacy of the only government agency authorized to pursue them, and the only government agency with the expertise with the experience of litigating them. "Because the issuance of a consent decree places the power of the court behind the compromise struck by the parties, the district court must ensure that the agreement is not illegal, a product of collusion, or against the *public interest*." *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991). "A consent decree may disserve the *public interest* if it bar[s] private litigants from pursuing their own claims independent of the relief obtained under the consent decree." *U.S.S.E.C. v. Citigroup Glob. Markets, Inc.,* 752 F.3d 285, 297 (2d Cir. 2014). EEOC itself has conceded the terms in this decree are against the public interest. ECF 58-5, Sagafi Decl., Ex. D at 8. The fact that the EEOC chose to overstep its authority and undermine the public interest and the DFEH's ongoing litigation is unfortunate, and it may erode public trust, but the EEOC cannot blame the DFEH for seeking to stop the EEOC's misconduct. ECF No. 62 at 9:16 – 10:1. A stay will allow the Ninth Circuit to address the DFEH's argument that any settlement must abide by the statutory limitations on the EEOC's power that EEOC itself acknowledged (and argued zealously for) in *Grays Harbor*, 791 F. Supp. 2d at 1006 (agreeing with the EEOC, which asserted that it had no authority to release state law claims). The Ninth Circuit is indeed aware of such limitations on EEOC's power. *Pan Am. World Air*, 897 F.2d at 1507.

**2. The EEOC Will Not Be Harmed by a Stay.**

The EEOC has pointed to no specific harm it could experience from a stay. While it speaks generally of its "[i]ntegrity," it lists no concrete harm. ECF No. 62 at 7:4. The hypothesis that the DFEH might "undermine EEOC's authority and autonomy" describes an abstract anxiety, not a harm that satisfies the legal

standard.[5] ECF No. 62 at 9:9-10; *see, e.g.*, *Trees v. Serv. Emps. Int'l Union Loc. 503*, No. 21 Civ. 468, 2021 WL 5829017, at *8 (D. Or. Dec. 8, 2021) (finding speculative harm to be inadequate); *Ontiveros v. Zamora*, 2013 WL 1785891, at *5 (E.D. Cal. Apr. 25, 2013) (finding that abstract claims of harm that would result from a stay carry little weight). During a stay, nothing will happen in the case. Nothing will be undermined; instead, allowing the litigation to proceed will undermine DFEH's authority to enforce California law. The EEOC will be free to pursue business as usual, enforcing Title VII as Congress intended.

Activision and the EEOC continue to misunderstand the primacy of DFEH's role in enforcement of California laws. *See* ECF No. 63 at 14:1-8. Whereas Title VII provides a floor of minimum protections, it also invites states to exceed that floor, which California has done. Given the panoply of greater protections the California legislature has established, granting sole governmental enforcement authority to the DFEH, it is the DFEH to which courts defer. *See* ECF No. 24-1 at 4:18-5:13. By contrast, the environmental, medical device, and drug regulation contexts cited by Activision, ECF No. 63 at 13:25 – 14:8, are far afield from employment discrimination law and Title VII's express deference to state agencies like the DFEH.

Title VII's concession that state agencies have exclusive jurisdiction over charges arising in their jurisdiction for a period of time, 42 U.S.C. § 2000e-5(c)-(d), was "designed to provide the deferral [i.e., state] agencies with the opportunity to resolve discrimination claims without federal intervention." *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 410 (4th Cir. 2005); *see also Trujillo v. Santa Clara*

---

[5] EEOC uses its brief to again allude to its baseless and unsupported allegations regarding current DFEH attorneys. As DFEH has noted elsewhere, EEOC is required by law to share information with DFEH. 42 U.S.C. §§ 2000e-5, 7 and 8. EEOC's allegations, which the Court struck in October 2021, are just as baseless now as they were then. In addition, DFEH's filing of its ethics consultant's correspondence with the EEOC (which belies EEOC's claims that it provided proof of the alleged issues) does not waive DFEH's assertions of privilege with respect to its own communications with the EEOC. ECF No. 62 at 9 n. 8.

*Cty.*, 775 F.2d 1359, 1366 (9th Cir. 1985) ("Title VII was enacted not to preempt state discrimination law, but rather to supplement it if state law was inadequate."). Likewise, under Title VII, if an EEOC Commissioner issues a charge, like the Commissioner's charge underlying this federal action, the DFEH may elect to take the charge, investigate, and resolve the matter itself. 42 U.S.C. § 2000e-5, subd. (d). Title VII plainly does not preempt state law. 42 U.S.C. § 2000e-7; *Alexander*, 415 U.S. at 47-48 (noting legislative "intent to accord *parallel or overlapping remedies against discrimination*....Title VII provides for consideration of employment-discrimination claims in *several forums*.").

Reflecting Congressional considerations of federalism, federal agencies like the EEOC owe corresponding state agencies deference in the investigation of employment discrimination charges, including under Title VII, that arise within their jurisdiction. *Navy Fed. Credit Union*, 424 F.3d at 410; 42 U.S.C. § 2000h-4, 2000e-5, 7-8. Here, the EEOC has violated that principle.[6] It is owed no deference for abandoning its principled position in *Grays Harbor*. *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 (2012) (no deference to agency's changed interpretation of regulations where that constitute an "unfair surprise").

Given this highly unusual (in fact, seemingly unprecedented) situation, there is no risk of future interventions by a state agency. The DFEH is unaware of – and the parties have failed to cite – any scenario where the EEOC has constructed a settlement that would undermine pursuit of state law claims currently being litigated by its sister state agency. Thus, this decision will have extremely limited precedential import.[7] In fact, the EEOC has the power to ensure this never

---

[6] The EEOC cannot escape its earlier position in *Grays Harbor*. ECF No. 62 at n.4. In *Grays Harbor*, the EEOC was correct in warning that inclusion of state law releases "would diminish, not enhance, [claimants'] private rights" and highlighting the significance of having "a legal advocate seeking greater relief for additional state and local claims during settlement discussions," which the EEOC could not be, given its federal-only mandate. ECF No. 58-5 Sagafi Decl., Ex. D.

[7] Thus, the parties' concern that the DFEH might seek to intervene in other cases is meritless. ECF No. 63 at 15:22-16:8; ECF No. 62 at 11:19-22.

happens again, if it reverts to its longstanding practice of staying within its statutory bounds as a federal agency tasked with enforcing federal law, leaving state law claims to those with the actual authority and expertise to pursue them.

In short, a stay will mark a careful, measured pause while the courts confirm the proper contours of agency authority and the Court's jurisdiction.

### B. DFEH Would Suffer Hardship Absent a Stay.

Both parties misunderstand the nature of the real and concrete harms that the DFEH would suffer if a stay is not granted. They focus on the Court's decision to allow the filing of an amicus brief. But implementation of the decree over the DFEH's objection, *before* the Ninth Circuit has an opportunity to weigh in, is precisely the kind of harm that a stay avoids. The concrete harm that the DFEH would suffer in that instance is interference with its state court action, as Activision has indicated it intends to use this action to defeat the state court prosecution. But as the Fifth Circuit did in *Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) (en banc), the Ninth Circuit could reverse this Court's denial of intervention and, in the same opinion, vacate the subsequent judgment entered at a fairness hearing at which intervenors could not fully participate as parties. *Id.* at 1006. In the intervening months, Activision's use of the proposed amended consent decree would unduly delay the DFEH's action. This very real potential hardship weighs heavily in favor of a stay.

Activision has stated in court that it will use the decree to fully or partially bar or stay the DFEH's ongoing state action. When asked by the state court judge, "Does [the federal court] settlement contemplate the dismissal of the claims here?" ECF No. 41-1 at 2:16-17, Activision (represented by the same lawyers as here) responded, "Not in their entirety." *Id.* at 2:18. In other words, Activision preserves room to seek a partial dismissal of the state action without a decision on the merits. *Reed v. United Tchrs. Los Angeles*, 208 Cal. App. 4th 322, 329 (2012) (citing federal cases to conclude that a consent decree that abrogates a third party's rights

without a merits decision violates due process).  Based on its representations to the state court, Activision will likely invoke the decree as res judicata against the state action, purporting that the EEOC and DFEH are in privity.  *See, e.g.*, *Shaw v. Hahn*, 56 F.3d 1128, 1131–32 (9th Cir.1995) (finding privity when the interests of a party in a subsequent action were adequately represented by the party in the former action).  Any of these outcomes constitutes a substantial harm.  *See Associated Indem. Corp. v. Wilson Bros. Distrib. Co.*, No. 15 Civ. 0101, 2015 WL 13425121, at *2 (D. Alaska Nov. 13, 2015) (staying declaratory judgment proceedings to avoid defendants being collaterally estopped from litigating issues in the underlying proceedings).  California's interests deserve protection from this Court.  Cal. Gov. Code, §§ 12920, 12920.5, 12930, 12965; *DFEH v. Cathy's Creations, Inc.* (2020) 54 Cal.App.5th 404, 410 ("the DFEH's task is to represent the interests of the state and to effectuate the declared public policy of the state to protect and safeguard the rights and opportunities of all persons from unlawful discrimination.").

If the parties' goal was merely to provide claimants-victims' with the individual choice to release their state law claims in exchange for compensation, they would not need a consent decree to do so.  Victims will be confused by the decree and the parties know it: "[j]udicial approval of a settlement agreement places the power and prestige of the court behind the compromise struck by the parties." *EEOC v. Pan Am. World Airways, Inc.*, 622 F. Supp. 633, 641 (N.D. Cal. 1985) (quoting *Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983)).  Thus, the Court should not lend its authority to a consent decree that is outside the pleadings, the EEOC's authority and the Court's subject-matter jurisdiction, or is otherwise illegal, a product of collusion, and designed to undermine the police powers of California should be denied.

Additionally, under the decree, participating claimants will be stripped of the representation that the DFEH provides through its state action.  These individuals, separated from the counsel who are uniquely expert in the facts and legal arguments

relevant to claims against Activision, will receive a paltry hour of advice from a lawyer unfamiliar with the issues – hardly resulting in "knowing" and voluntary waivers. Contrary to Activision's argument, the EEOC, as a federal agency unable to pursue or develop expertise with state claims (which are much stronger than federal claims), does not and cannot adequately represent the DFEH's interests. *See* ECF No. 24-1 at 17:23 – 19:12; ECF No. 36 at 8:4-22; *see Arakaki v. Cayetano*, 324 F.3d 1078, 1086-87 (9th Cir. 2003) (holding that first intervenor was "capable and willing to make all of [the second intervenor's] arguments," so redundant intervention was not appropriate); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010) (listing collusion and nonfeasance as examples of ways a party can reveal itself to be an inadequate representative).

### C. Evidence Spoliation

The consent decree requires Activision to alter evidence that will be highly relevant to the DFEH's ongoing state action. ECF No. 50-1 at 22:5 – 22:28. And although Activision purports to preserve such evidence separately under EEOC supervision, *id*. at 45:4 – 46:18, it does not deny that records will be altered. With the DFEH in the process of pursuing formal discovery of this material in the state action, any alteration of evidence would also constitute material harm.

### D. A Stay Will Promote the Orderly Course of Justice.

Many efficiencies will result from this stay. First, a stay here would eliminate the need for the Ninth Circuit to expend judicial resources determining whether a stay is necessary. Second, and most important, a stay will avoid the need to unwind the settlement if the Ninth Circuit rules in the DFEH's favor. Implementation will involve hundreds or thousands of covered individuals reflecting on sex discrimination, sexual harassment, sexual assault, retaliation, and related harms perpetrated by Activision managers. Many of those individuals will spend hours to ensure they completely and diligently fill out detailed claim forms, describing Activision's wrongdoing. Activision's lawyers will then seek to speak

with them to learn about their claims and attempt to convince them to sign away their legal rights in verbose, highly technical release documents that preclude the individuals from ever pursuing justice under federal or state law.[8] If the Ninth Circuit then reverses the Court's intervention decision, all of that activity will be undone, with the parties recommencing the litigation and possible settlement talks.

### E. Stays Pending Appeal Are Common.

A stay pending appeal is often appropriate and is not for "indefinite duration" as Activision and the EEOC suggest, as DFEH's opening brief is due in June. ECF No. 63 at 19:17-22; ECF No. 62 at 16:11; *see McCollouch v. Minn. Lawyers Mut. Ins. Co.*, 2010 WL 441533, *5 (D. Mont. Feb. 3, 2010) (finding that granting a stay pending appeal was not a stay of indefinite length). Stays pending appeal are common and are regularly granted. *See, e.g.*, *Peck*, 528 F. Supp. 3d 1100 (granting stay pending appeal); *Sifuentes v. Brazelton*, No. 09 Civ. 2902, 2014 WL 186867 (N.D. Cal. Jan. 16, 2014) (same); *Del Rio v. Creditanswers, LLC*, No. 10 Civ. 346, 2010 WL 3418430 (S.D. Cal. Aug. 26, 2010) (same).

Activision cites two easily distinguishable cases to support its position. ECF No. 63 at 20:4-12. In both *Tyler v. Travelers Com. Ins. Co.*, 499 F. Supp. 3d 693 (N.D. Cal. 2020), *appeal dismissed*, No. 20 Civ.17365, 2021 WL 2231126 (9th Cir. May 6, 2021) and *Alan Darush MD APC v. Revision LP*, No. 12 Civ. 1210296, 2013 WL 12142621 (C.D. Cal. Aug. 28, 2013) the courts denied stays pending the appeal of a *different* case that was not assured to have any impact on the proceedings. Here, the Ninth Circuit appeal will directly impact this case.

### CONCLUSION

Based on the foregoing, DFEH respectfully requests the Court to grant the motion to stay.

---

[8] In addition, the state action will be undermined by the evidence alteration allowed by the decree.

| | |
|---|---|
| Dated: February 14, 2022 | Respectfully submitted,<br><br>/s/ Jahan C. Sagafi<br>Jahan C. Sagafi (SBN 224887)<br>OUTTEN & GOLDEN LLP<br>One California Street, Suite 1250<br>San Francisco, CA 94111<br>Telephone: (415) 638-8800<br>Facsimile: (415) 638-8810<br>Email: jsagafi@outtengolden.com<br><br>Christian Schreiber (SBN 245597)<br>Monique Olivier (SBN 190385)<br>OLIVIER SCHREIBER & CHAO LLP<br>201 Filbert Street, Suite 201<br>San Francisco, CA 94133<br>Telephone: (415) 484-0980<br>Facsimile: (415) 659-7758<br>Email: christian@osclegal.com<br>Email: monique@osclegal.com<br><br>Rachel Bien (SBN 315886)<br>OLIVIER SCHREIBER AND CHAO LLP<br>1149 North Gower Street Suite 215<br>Los Angeles, CA 90038<br>Telephone: (415) 484-0522<br>Facsimile: (415) 658-7758<br>Email: rachel@osclegal.com |