ELENA R. BACA (SB# 160564)
elenabaca@paulhastings.com
FELICIA A. DAVIS (SB# 266523)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California  90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

RYAN D. DERRY (SB# 244337)
PAUL HASTINGS LLP
ryanderry@paulhastings.com
101 California Street
Forty-Eighth Floor
San Francisco, California 94111
Telephone:  (415) 856-7000
Facsimile:   (415) 856-7100

Attorneys for Defendants
ACTIVISION BLIZZARD, INC., BLIZZARD
ENTERTAINMENT, INC., ACTIVISION
PUBLISHING, INC., and KING.COM, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>              Plaintiff,<br><br>      vs.<br><br>ACTIVISION BLIZZARD, INC., BLIZZARD ENTERTAINMENT, INC., ACTIVISION PUBLISHING, INC., and KING.COM, INC., and DOES ONE through TEN, inclusive,<br><br>              Defendants. | CASE NO. 2:21-CV-07682 DSF-JEM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO JESSICA GONZALEZ'S MOTION TO INTERVENE**<br><br>Date:      April 4, 2022<br>Time:     1:30 p.m.<br>Dept.:     7D<br>Judge:    Hon. Dale S. Fischer |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................... 5

II. FACTUAL BACKGROUND .......................................................... 6

    A. As DFEH Expends Months Railing Against The EEOC's Exercise Of Its Statutory Authority, Activision Blizzard's Employees Are Left Without Negotiated And Available Settlement Funds ...................................................................... 6

    B. DFEH's Rejected Arguments, Previously Mimicked By CWA, Are Now Advanced (Again) By Proxy. ........................................ 7

    C. The Consent Decree Between The EEOC And Activision Blizzard Constitutes A Good-Faith, Fair, And Reasonable Resolution In Which Individual Claimants Like Proposed Intervenor Can Voluntarily Choose Whether Or Not To Participate ..................................................................................... 9

    D. This Untimely Motion Comes *After* Activision Blizzard Has Taken Significant Steps To Comply With The Consent Decree, As Directed By The Court At The December Hearing ..................... 10

III. ARGUMENT ............................................................................... 11

    A. Proposed Intervenor's Individual Rights Will In No Way Be Affected – Much Less *Impaired* – By The Consent Decree .............. 12

    B. Proposed Intervenor Has Not "Timely" Sought Intervention. ........... 13

    C. To The Extent Proposed Intervenor Has Any Interest, It Is Adequately Represented By The EEOC. ........................................ 15

    D. The Parties In This Action – Including Potential Claimants – Will Be Significantly Prejudiced If Proposed Intervenor Is Permitted To Intervene. ....................................................................... 16

IV. CONCLUSION ............................................................................ 17

MPA IN SUPPORT OF DEFTS'
OPPOSITION TO GONZALEZ'S
MTN TO INTERVENE

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Alaniz v. California Processors, Inc.*,
  73 F.R.D. 269 (N.D. Cal.1976) .......................................................... 12, 13

*Alaniz v. Tillie Lewis Foods*,
  572 F.2d 657 (9th Cir. 1978) (*per curiam*), *cert. denied*,
  439 U.S. 837 (1978) ................................................................................ 14

*Allen v. Bedolla*,
  787 F.3d 1218 (9th Cir. 2015) ................................................................. 14

*Cohorst. v. BRE Props., Inc.*,
  No. CV-10-2666-JM, 2011 WL 3475274 (S.D. Cal. Aug. 5, 2011).................. 13

*Commc'ns Workers of Am. v. New Jersey Dep't of Pers.*,
  282 F.3d 213 (3d Cir. 2002) ...................................................................... 8

*Cooper v. Newsom*,
  13 F.4th 857 (9th Cir. 2021), *reh'g en banc denied*
  No. 18-16547, 2022 WL 610294 (9th Cir. Mar. 2, 2022)................................ 11

*Culbreath v. Dukakis*,
  630 F.2d 15 (1st Cir. 1980) ...................................................................... 16

*EEOC v. ABM Indus. Inc.*,
  No. 1:07-cv-01428 LJO JLT, 2010 WL 744714
  (E.D. Cal. Mar. 3, 2010)........................................................................... 16

*EEOC v. Bay Club Fairbanks Ranch, LLC*,
  No. 3:18-CV-1853 W (AGS), 2021 WL 1056590
  (S.D. Cal. Mar. 19, 2021) ........................................................................ 15

*Hofstetter v. Chase Home Fin., LLC*,
  No. C 10-01313 WHA, 2011 WL 5415073
  (N.D. Cal. Nov. 8, 2011) .......................................................................... 13

*In re Pet Food Prods. Liab. Litig.*,
  629 F.3d 333 (3d Cir. 2010) ..................................................................... 15

*In re Volkswagen "Clean Diesel" Mktg.,
  Sales Practices, and Prods. Liab. Litig.*,
  MDL No. 2672 CRB (JSC), 2016 WL 4376623
  (N.D. Cal. Aug. 17, 2016), *aff'd*,
  894 F.3d 1030 (9th Cir. 2018) .................................................................. 13

*Maine v. Dir., U.S. Fish & Wildlife Serv.*,
   262 F.3d 13 (1st Cir. 2001) ................................................................ 15

*Nat'l Ass'n for Advancement of Colored People v. New York*,
   413 U.S. 345 (1973) ........................................................................... 14

*Neary v. Regents of Univ. of Cal.*,
   3 Cal. 4th 273 (1992), *superseded by statute on other ground*s ........ 16

*Officers for Justice v. Civil Serv. Comm'n*
   *of City & Cnty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) .............................................................. 16

*Perry v. Proposition 8 Official Proponents*,
   587 F.3d 947 (9th Cir. 2009) .............................................................. 12

*Raquedan v. Centerplate of Delaware Inc.*,
   376 F. Supp. 3d 1038 (N.D. Cal. 2019).............................................. 13

*Vill. Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*,
   50 Cal. 4th 913 (2010) ........................................................................ 16

*Wilderness Soc'y v. U.S. Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011) (*en banc*).............................................. 11

*Zepeda v. PayPal, Inc.*,
   No. 10-cv-02500-SBA (JCS), 2014 WL 1653246
   (N.D. Cal. Apr. 23, 2014).................................................................... 12

**STATUTES**

42 U.S.C. § 2000e-2 (Title VII)........................................................*passim*

**RULES**

FED. R. CIV. P. 23 .......................................................................................... 7

FED. R. CIV. P. 23(e)..................................................................................... 8

FED. R. CIV. P. 24 ............................................................................*passim*

1  **I.    INTRODUCTION**

2      It is hard to fathom any legitimate reason for the present Motion.  As the parties

3  made clear during the meet and confer process:  the Amended Consent Decree before

4  this Court (Dkt. 50-1) does not *in any way* affect the rights of Proposed Intervenor,

5  former Blizzard Entertainment employee Jessica Gonzalez.  Declaration of Elena R.

6  Baca in Support of Opposition ¶ 6.  Proposed Intervenor need do nothing, submit

7  nothing, take nothing, or have anything to do with the Consent Decree, if approved.

8      The proposed Amended Consent Decree makes available $18,000,000 that the

9  United States Equal Employment Opportunity Commission's ("EEOC") will

10  administer to eligible claimants, *i.e.,* those who present a cognizable claim, elect to

11  "opt-in" and accept the payment in exchange for a release.  No current or former

12  employee, including Proposed Intervenor, is compelled to "opt-in."   That

13  indisputable reality, compounded by her untimely action, compels a straightforward

14  conclusion:  the Proposed Intervenor falls far short of Federal Rule of Civil Procedure

15  Rule 24's ("Rule 24") requirements.

16      Indeed, this Motion, with its now-all-too-familiar mischaracterizations and

17  arguments, should be seen for what it is:  part of a campaign of misinformation and

18  disruption initiated by the California Department of Fair Employment & Housing

19  ("DFEH") to interfere with the EEOC's authority and frustrate Activision Blizzard,

20  Inc., Blizzard Entertainment, Activision Publishing and King.Com's (collectively

21  "Activision Blizzard") statutory rights.[1]  As this Motion presents nothing new and its

22  _____

23  [1]  No question, these filings are coordinated.  On October 12, 2021, the
Communications Workers of America ("CWA") – represented by Proposed

24  Intervenor's current counsel – filed an "objection," attaching a document that
disclosed its coordination with DFEH.  Dkt. 20 at pp. 6-10.  On February 10, 2022,

25  Proposed Intervenor filed a similar "objection."  Dkt. 64.  The Court struck the filing.
Dkt. 65.  After DFEH's motion to intervene was denied, CWA issued a press release

26  on February 11, 2022, announcing *this Motion* – and referring to it as *its own*.  *See*

27  *CWA Files Objection to Proposed Amended Consent Decree on Behalf of Activision*
*Blizzard Employees, Demands Full Fairness Hearing,* COMMUNICATION WORKERS

28

MPA IN SUPPORT OF
                                                      DEFTS' OPPOSITION TO GONZALEZ'S
                                                      MTN TO INTERVENE

1 | messenger is unable to meet the requirements of Rule 24, it should be denied.

## II.  FACTUAL BACKGROUND

### A.  As DFEH Expends Months Railing Against The EEOC's Exercise Of Its Statutory Authority, Activision Blizzard's Employees Are Left Without Negotiated And Available Settlement Funds.

The factual background preceding the proposed Amended Consent Decree at issue in this Motion is detailed in Defendants' Opposition to DFEH's Motion to Intervene.  Dkt. 31, at pp. 9-12.  In short, on September 26, 2018, the EEOC served a Commissioner's Charge providing notice that it would investigate Activision Blizzard for potential claims of sex discrimination (including harassment), retaliation, and discrimination in pay in violation of Title VII.  *See* Dkt. 31-1 (Declaration of Elena R. Baca in Support of Opposition to DFEH's Motion to Intervene ("Baca Decl. (DFEH)") ¶ 3, Ex. A (Dkt. 31-2)).  The following month, DFEH served an overlapping, Director's Complaint against Activision Blizzard.  *See* Dkt. 31-1 (Baca Decl. (DFEH) ¶ 4, Ex. B (Dkt. 31-3)).  The Commissioner's Charge was concurrently filed with DFEH, and the Director's Complaint was concurrently filed with the EEOC.  *See* Dkt. 31-1 (Baca Decl. (DFEH) ¶¶ 3-4, Exs. A, B (Dkts. 31-2, 31-3)).

In the meantime, Activision Blizzard not only cooperated with both investigations, including making its employees aware of the EEOC's workplace survey, but actively worked to enhance its workplace practices from top to bottom.  When the EEOC concluded its investigation and issued a Letter of Determination, the Parties began a months-long conciliation process, facilitated by a private

<hr>

OF AMERICA, https://bit.ly/3J9617W (last visited March 9, 2022).   Yet despite their many efforts to (improperly) wade into this case, it was evident during the meet and confer process on February 23, 2022, that Proposed Intervenor's counsel was unfamiliar with the Consent Decree terms, and instead required DFEH's counsel to detail the (supposed) rationale for the arguments in the current Motion.  Baca Decl. ¶¶ 5-6.

mediator.[2]  Dkt. 31.  After much work, the Parties finalized a Consent Decree, which
was lodged with this Court on September 27, 2021.  Dkts. 11 and 11-1.

DFEH then trained its sights on the federal court, initiating a campaign of delay
and misinformation plainly intended to derail the Parties' settlement.  Months passed,
with DFEH filing various documents and (unsuccessfully) seeking to intervene.  *See*
Dkt. 13 (*ex parte* application to shorten time); Dkt. 18 (objections to evidence); Dkt.
21 (motion to strike); Dkt. 24 (motion to intervene); Dkt. 40 (motion to strike); Dkt.
46 (order denying motion to intervene).  DFEH then abused the limited, *amicus curie*
status the Court allowed it, filing an "objection" (as would a party) rather than an
*amicus.*  Dkt. 58.  One month later, after DFEH appealed the Court's Order denying
intervention, DFEH filed a motion to stay.  Dkt. 60.  This DFEH obstruction, too,
was denied, with the Court noting that, if the matter was stayed, "the relief [in the
Consent Decree] for certain will not happen for some time even if the settlement is
otherwise appropriate and beneficial."  Dkt. 67.

### B.  DFEH's Rejected Arguments, Previously Mimicked By CWA, Are Now Advanced (Again) By Proxy.

Relevant here, among DFEH's previously advanced and rejected arguments
are claims that:  (i) the Amended Consent Decree compels the destruction of evidence
(it does not); (ii) employees who opt-in (and elect to release harassment and related
retaliation claims) should be stopped from doing so to allow DFEH to seek to recover
*on their behalf* in its state-law lawsuit; and (iii) Federal Rule of Civil Procedure 23's

---

[2] Then-unknown to Activision Blizzard, DFEH agreed that the EEOC would
investigate (and, thus, satisfy the statutory pre-filing conditions for any enforcement
action) gender harassment and related retaliation claims; DFEH then, apparently,
refused to participate in the settlement negotiations.  Dkt. 31, p. 12; Dkt. 31-1 (Baca
Decl. (DFEH), ¶ 12, Ex. I (Dkt. 31-10)).  Instead, DFEH elected to file a state court
lawsuit, substantively failing to meet its statutory pre-filing requirements, and
included harassment and related retaliation claims (*see* Dkt. 31, at p. 5).

fairness-hearing requirements should apply.[3]

The Court rejected DFEH's arguments, noting the Court would never allow destruction of evidence, even if it were called for in the Amended Consent Decree (it does not). The Court stated:

> The interest in protecting evidence from being destroyed would be a potentially valid interest that could allow intervention, but there is no serious possibility that the Court would enter a consent decree that would purport to allow or mandate destruction of evidence relevant to litigation. EEOC also denies that any evidence destruction is intended by the terms of the consent decree. Therefore, DFEH's evidence concern is – at best – speculative.

Dkt. 46, at p. 2. The Court also noted that DFEH had no "interest" or "right" to an individual's claim; a person may elect to release his/her claim anytime without the need for DFEH approval. The Court stated:

> The first interest belongs to the individuals who might make claims under the claims process, not to DFEH. DFEH's argument would allow it potentially to intervene in almost any employment action in California. Rule 24 is not that broad. In any event, individual Californians have a right to settle their claims with or without counsel and without input from DFEH – or the EEOC for that matter.

*Id*. The Court also rejected the request that it impose Rule 23(e) class action approval requirements (that apply to opt-out classes) in this Title VII action. Dkt. 43, at pp. 19-21; *see also Commc'ns Workers of Am. v. New Jersey Dep't of Pers.*, 282 F.3d 213, 219-20 (3d Cir. 2002) (similarly rejecting attempt to import Rule 23(e)'s requirements to this context).

On February 10, 2022, former Blizzard Entertainment employee Jessica Gonzalez – represented by CWA's counsel – filed an Objection to Proposed Consent Decree and Request for Fairness Hearing ("Gonzalez Objection"). Dkt. 64. The

---

[3] CWA, which has an active labor campaign at Activision Blizzard's Raven Studios, joined with DFEH, filing a document with this Court advancing DFEH's positions. *See* Dkt. 20. It was later overruled. *See* Dkt. 43, at p. 4.

Gonzalez Objection advanced the same arguments DFEH pressed but lost.  The Court quickly struck it, as Ms. Gonzalez was "a non-party to the action."  Dkt. 65.  The following month, still represented by CWA counsel, Ms. Gonzalez has reappeared. Now, as Proposed Intervenor, she attempts to inject herself into the Consent Decree review process – even though she has no actual affected interest – and asks this Court (again) to consider DFEH's previously rejected and still-meritless arguments.

**C.**      **<u>The Consent Decree Between The EEOC And Activision Blizzard Constitutes A Good-Faith, Fair, And Reasonable Resolution In Which Individual Claimants Like Proposed Intervenor Can Voluntarily Choose Whether Or Not To Participate.</u>**

As this Court is now well aware, the Consent Decree takes nothing away from former Activision Blizzard employees like Potential Intervenor; rather, it provides for completely voluntary relief.  Specifically, the Consent Decree creates an $18-million class fund available to potential claimants who voluntarily elect to participate in the settlement and release claims against Activision Blizzard. Dkt. 50-1, at p. 11. Current and former employees who wish to participate can submit a claim form.  Dkt. 50-3.  To be clear, no one is required to do so, and there will be no retaliation or adverse consequences for anyone who chooses not to opt in.  Dkt. 50-1.  If any individual elects not to participate, either by choosing not to submit a claim form or by rejecting the settlement offer after receiving notice of their payment amount and the company-provided release agreement, their rights are unaffected.  Dkt. 50-4. Claimants will also have access to counsel of their choice to review the settlement offer, and Activision Blizzard will pay for one hour of services, so that claimants are fully informed and counseled in deciding whether to participate in the settlement and release their claims. Dkt. 50-1, at p. 17.  In short, participation in the Consent Decree, including by Proposed Intervenor, is entirely voluntary.

**D.** **This Untimely Motion Comes *After* Activision Blizzard Has Taken Significant Steps To Comply With The Consent Decree, As Directed By The Court At The December Hearing.**

During the December Hearing, the Court instructed that certain changes be made to the Consent Decree, but permitted Activision Blizzard to proceed with putting in place certain features of the Consent Decree in the interim.[4]  On January 4, 2022, the Parties lodged the Amended Consent Decree, currently pending the Court's review and approval.  *See* Dkt. 50-1.

Since the December Hearing, Activision Blizzard has already put in place the following:    (i) Activision Blizzard **hired an internal Equal Employment Opportunity Coordinator** to assist with implementation of the Consent Decree and broader equal employment opportunity initiatives and activities (Consent Decree Section XII.B); (ii) Activision Blizzard **engaged a claims administrator** to assist with carrying out the terms of the Decree (Consent Decree Section IX.B); and (iii) **the claims administrator has developed a website** that will be accessible to potential claimants to submit claim forms electronically (Consent Decree Section IX.B.4.a).  *See* Baca Decl. ¶ 3.

Activision Blizzard has also taken a number of steps to implement meaningful policy and practice changes that go beyond the terms of the Consent Decree.  These include but are not limited to:  (i) launching a Workplace Responsibility Committee of Activision Blizzard's Board of Directors, charged with overseeing the Company's progress in successfully implementing its new policies, procedures, and commitments to improve workplace culture and eliminate harassment and

---

[4] *See* Dkt. 43, at 60:14-23 (The Court:  "I think from my comments—or I hope from my comments that you have a comfort level that something very close to what you've proposed is going to be what I approve.  So looking for or interviewing coordinators or consultants or whatever is not going to be wasted time because that's going to be part of this.  So anything that your client wants to start working on that you want to advise them to start working on so that they can hit the ground running with this process, that's totally up to you and fine with me.").

MPA IN SUPPORT OF DEFTS'
OPPOSITION TO GONZALEZ'S
MTN TO INTERVENE

discrimination at Activision Blizzard; (ii) vastly broadening the size of Activision Blizzard's Ethics & Compliance and Employee Relations Teams; (iii) implementing a new zero-tolerance harassment policy Company-wide; (iv) releasing the Company's U.S. Pay Equity Review 2020 and 2021 Representation Data report, providing greater transparency as to the Company's compensation and demographics information; (v) waiving required arbitration of individual sexual harassment and discrimination claims for any Activision Blizzard employee who chooses not to arbitrate such claims arising out of an event that occurred after October 28, 2021; (vi) tripling Activision Blizzard's investment in anti-harassment and anti-discrimination training; (vii) investing in expanded mental health counseling services for employees who have experienced harassment or discrimination.  *See* Baca Decl. ¶ 4, Ex. 1.

In sum, Activision Blizzard has put in place all of the features of the Consent Decree (and more) that it is presently permitted to implement, and it stands ready to implement the remaining steps of the Consent Decree should the Court approve the agreement.

## III.  <u>ARGUMENT</u>

Proposed Intervenor has no legitimate basis to intervene.  Rule 24 of the Federal Rules of Civil Procedure requires parties seeking intervention to (1) timely establish that (2) they have "a 'significantly protectable' interest relating to the . . . the subject of the action" that (3) will be "impair[ed] or impede[d]" without intervention and that (4) is not "[]adequately represented by the parties to the action." *Cooper v. Newsom*, 13 F.4th 857, 864-65 (9th Cir. 2021) (quoting *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (*en banc*)), *reh'g en banc denied* No. 18-16547, 2022 WL 610294 (9th Cir. Mar. 2, 2022).  "The four parts of the test often are very interrelated and the ultimate conclusion reached as to whether intervention is of right may reflect that relationship." *Id*. (internal quotation marks and citation omitted).  Proposed Intervenor plainly fails to meet the impairment,

adequacy, and timeliness elements – any one of which is sufficient to dismiss the Motion. *See Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) ("Failure to satisfy any one of the requirements is fatal to the application, and we need not reach the remaining elements if one of the elements is not satisfied.").

### A.  Proposed Intervenor's Individual Rights Will In No Way Be Affected – Much Less *Impaired* – By The Consent Decree.

It is well established that a putative settlement group member's interests will not be impaired absent intervention. "[C]ourts have frequently denied intervention in the class action settlement context, citing concerns about prejudice, as well as putative intervenors' ability to protect their interests by less disruptive means" such as by "*opting out of the settlement class*." *Zepeda v. PayPal, Inc.*, No. 10-cv-02500-SBA (JCS), 2014 WL 1653246, at *4 (N.D. Cal. Apr. 23, 2014) (emphasis added). This Court should do the same.

*Alaniz v. California Processors, Inc.*, 73 F.R.D. 269 (N.D. Cal.1976), is instructive. The plaintiffs there asserted a Title VII class action on behalf of female and minority cannery workers, alleging discriminatory denial of opportunities to obtain higher-paying and year-round positions within the canning industry. The parties entered a class settlement, and several putative class members filed motions to intervene to contest various aspects of the agreement. *Id.* at 274. The court denied the intervention motions, explaining:  "Although the Intervenors, as potential members of the class, undoubtedly may claim an interest in the subject matter of the action, I find that *they are not so situated that the disposition of this action may, as a practical matter, impair or impede their ability to protect their interests*." *Id.* at 289 (emphasis added). Specifically, the court noted that "the Agreement allows any class member who does not wish to be bound by the terms of the Agreement *to exclude themselves by opting out*. Such persons, including the intervenors if they so desire, are not bound by the Agreement and may pursue their own remedies in this or any other appropriate forum." *Id.* (emphasis added). The same is true here, as explained

1    at length above.

2         Numerous courts in the Ninth Circuit have similarly held that where a class-

3    action settlement allows claimants to opt out (or not opt in), such individuals do *not*

4    have a right to intervene on the action under Rule 24.  *See, e.g.*, *In re Volkswagen*

5    *"Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, MDL No. 2672 CRB

6    (JSC), 2016 WL 4376623, at *4 (N.D. Cal. Aug. 17, 2016) (denying putative

7    intervenor's motion because the putative intervenor could "opt out of the Settlement

8    and litigate his claims independently, or he may instead object to it"), *aff'd*, 894 F.3d

9    1030 (9th Cir. 2018); *Hofstetter v. Chase Home Fin., LLC*, No. C 10-01313 WHA,

10   2011 WL 5415073, at 2-3 (N.D. Cal. Nov. 8, 2011) (denying intervention where

11   putative intervenor "*had an opportunity to opt out of the [class action] settlement*

12   *after he read the release of claims* printed in the settlement notice," and explaining

13   that "[t]his opportunity adequately safeguarded his rights and interests."); *Raquedan*

14   *v. Centerplate of Delaware Inc.*, 376 F. Supp. 3d 1038, 1042-43 (N.D. Cal. 2019)

15   (denying putative class member's motion to intervene where settlement agreement

16   included an opt out provision);  *Cohorst. v. BRE Props., Inc*., No. CV-10-2666-JM

17   (BGSx), 2011 WL 3475274, at *6 (S.D. Cal. Aug. 5, 2011) (same).  The result should

18   be no different here, as Proposed Intervenor can choose not to opt in to the settlement

19   (it is entirely voluntary and optional).  She therefore cannot meet her burden as to

20   impairment of a significantly protectable interest under Rule 24.[5]

21        **B.    Proposed Intervenor Has Not "Timely" Sought Intervention.**

22        There are three factors for the Court to consider when determining whether a

23   Rule 24 motion is timely:  (i) "the stage of the proceeding[s]" at which an applicant

24

---

25   [5] Nor is it clear whether Proposed Intervenor has complied with the predicate to assert
26   a Title VII claim:  namely, filing an EEOC Charge with the EEOC or through a
     concurrently filed DFEH Complaint.  Proposed Intervenor attached a "Right to Sue"
27   form (Dkt 69-3), listing Blizzard Entertainment.  Blizzard Entertainment has not
     located this "Right to Sue" form (Dkt 69-3) – or any other EEOC or DFEH complaint
28   – from Proposed Intervenor.

MPA IN SUPPORT OF DEFTS'
                                        OPPOSITION TO GONZALEZ'S
                                        MTN TO INTERVENE

1   seeks to intervene, (ii) "the reason for and the length of the delay," and (iii) whether
2   the parties would suffer prejudice.  *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659
3   (9th Cir. 1978) (*per curiam*), *cert. denied*, 439 U.S. 837 (1978).

4     Setting aside the issues with Proposed Intervenor's alleged DFEH "charge"
5   submitted by CWA counsel, which independently preclude her attempt to intervene,
6   Proposed Intervenor's motion comes far too late.  It is now *five months* after the
7   Consent Decree was filed in September 2021 and *four months* after DFEH's
8   intervention motion was filed.  Courts routinely deny intervention as untimely when,
9   as here, a party seeks to intervene months into the litigation and on the eve of a
10  settlement being entered.  *See, e.g., Nat'l Ass'n for Advancement of Colored People*
11  *v. New York*, 413 U.S. 345, 367 (1973) (affirming order denying request for
12  intervention as untimely where the case had been filed three months prior and the
13  only step remaining was entry of judgment, and where "appellants knew or should
14  have known of the pendency of the [] action because of an informative February
15  article in the New York Times discussing the controversial aspect of the suit [and]
16  public comment by community leaders"); *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th
17  Cir. 2015) (affirming district court's decision to deny as untimely a motion to
18  intervene filed "on the eve of settlement" where the putative intervenor's intervention
19  could "prejudice settling parties by potentially derailing settlement talks.").  There is
20  no basis for a different conclusion here.

21    In the Motion, Proposed Intervenor blames the delay on the fact that DFEH
22  filed a prior motion to intervene in October, and Proposed Intervenor "saw no need
23  to file a duplicative motion because she believed DFEH would adequately represent
24  her interests as an employee within the state of California."  Dkt. 69-1, at p. 5.  The
25  problem with that argument is plain for all to see:  Proposed Intervenor admits that
26  this Motion is "duplicative" of the prior DFEH Motion **that this Court already**
27  **denied**.  Far from being timely, this Motion is a waste of time for the Court and the
28  potential claimants who stand to benefit from the settlement.  Moreover, as detailed

above (*supra*, Section II.B.), the Court has already heard DFEH's and CWA's intervention requests and held a two-hour hearing on the Consent Decree; the Amended Consent Decree has been lodged (Dkt. 50); and features of the Decree have already been implemented.  Proposed Intervenor's Motion comes too little, too late.

### C.   <u>To The Extent Proposed Intervenor Has Any Interest, It Is Adequately Represented By The EEOC.</u>

"To overcome the presumption of adequate representation, the proposed intervenor must ordinarily demonstrate adversity of interest, collusion, or nonfeasance on the part of a party to the suit." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 n.26 (3d Cir. 2010) (citation omitted).  Proposed Intervenor fails to articulate, let alone substantiate, any plausible adversity between the EEOC and individual claimants or evidence of collusion.  The EEOC is the federal instrumentality specifically charged by Congress with enforcing Title VII.  As a result, the EEOC is an adequate representative of Proposed Intervenor's interests in this Action as a matter of federal law. *See Maine v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001) (recognizing "presumption" that "the government will adequately defend its actions, at least where its interests appear to be aligned with those of the proposed intervenor").  The EEOC's mission is to protect civil rights, and federal law vests the EEOC with the responsibility to act as the gatekeeper for individual recipients of relief under the Consent Decree.  And that is what it has done here:  The EEOC negotiated and secured private counsel for individual claimants who can advise the claimants, without a potential conflict of interest, on the meaning and impact of compromising their claims.

Proposed Intervenor has no right to intervene in these federal proceedings to second guess the terms of the Consent Decree. *See, e.g., EEOC v. Bay Club Fairbanks Ranch, LLC*, No. 3:18-CV-1853 W (AGS), 2021 WL 1056590, at *6 (S.D. Cal. Mar. 19, 2021) (denying intervention by claimant to object to EEOC consent decree because intervention would "prolong a case that has been litigated since 2018

MPA IN SUPPORT OF DEFTS'
OPPOSITION TO GONZALEZ'S
MTN TO INTERVENE

and is on the verge of settlement" and "the time and resources spent mediating the case before Judge Papas and negotiating a potential resolution would effectively be nullified," thus "allowing Scott to intervene would prejudice the parties"); *EEOC v. ABM Indus. Inc.*, No. 1:07-cv-01428 LJO JLT, 2010 WL 744714, at \*5-6 (E.D. Cal. Mar. 3, 2010) (denying motion to intervene by claimants seeking to object to EEOC consent decree; "When the existing representation is by 'a governmental body or officer charged by law with representing the interests of the absentee,' there is a *presumption of adequacy*," and it is not sufficient to "rest their vague contentions on their apparent belief that there is an inherent lack of authority in the EEOC to obtain relief for those who have suffered discrimination," which is a "misstatement of the law [and] ignores the moving parties' burden to 'produce something more than speculation to the purported inadequacy in order to justify intervention as of right.'") (citation omitted).

### D. <u>The Parties In This Action – Including Potential Claimants – Will Be Significantly Prejudiced If Proposed Intervenor Is Permitted To Intervene.</u>

It is well settled in California that "[t]he law favors settlements." *Vill. Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 50 Cal. 4th 913, 930 (2010) (citations omitted). Indeed, in California, "settlement agreements are highly favored as productive of peace and good will in the community, as well as reducing the expense and persistency of litigation." *Neary v. Regents of Univ. of Cal.*, 3 Cal. 4th 273, 277 (1992) (internal quotation marks and citations omitted), *superseded by statute on other ground*s. "This is . . . even more so where the subject matter is employment . . . ." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *accord, e.g.*, *Culbreath v. Dukakis*, 630 F.2d 15, 22 (1st Cir. 1980) (affirming denial of unions' motion to intervene in EEOC suit involving consent decree, and noting that "courts strongly favor resolution of suits such as this one by voluntary agreement"). Proposed Intervenor's attempt to intervene in this matter and interfere with implementation of a comprehensive

settlement of Title VII claims that is the culmination of a three-year EEOC investigation (and the parties' extensive settlement negotiation efforts) will ***impede***, not ***promote***, the public and private interests advanced in the Consent Decree.  She has no right under Rule 24 to intervene and interfere with the exercise of the EEOC's authority to resolve the claims at issue, or to stall the relief provided for in the Consent Decree that will go to other employees.  The prejudice that will come from intervention is another reason to deny the Motion.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Activision Blizzard respectfully requests that the Court deny Proposed Intervenor's Motion to Intervene.

DATED:  March 14, 2022               PAUL HASTINGS LLP
                                     ELENA R. BACA
                                     RYAN D. DERRY
                                     FELICIA A. DAVIS


                                     By:    /s/Elena R. Baca
                                     _____
                                            ELENA R. BACA

                                     Attorneys for Defendants
                                     ACTIVISION BLIZZARD, INC.,
                                     BLIZZARD ENTERTAINMENT, INC.,
                                     ACTIVISION PUBLISHING, INC., and
                                     KING.COM, INC.